SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
PHILIP F. ATKINS-PATTENSON, Cal. Bar No. 94901
ARTHUR J. FRIEDMAN, Cal. Bar No. 160867
CRAIG A. PINEDO, Cal. Bar No. 191337
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947
E-Mail:     patkinspattenson@sheppardmullin.com
           afriedman@sheppardmullin.com
           cpinedo@sheppardmullin.com

COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
655 Montgomery Street, Suite 1700
San Francisco, California 94111
Telephone:    415-788-3030
Facsimile:    415-882-7040
E-Mail:    jdc@coopkirk.com

Attorneys for Plaintiff
STONEBRAE L.P.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| STONEBRAE L.P., a Delaware limited partnership,<br><br>               Plaintiff,<br><br>     v.<br><br>TOLL BROS., INC.; a Pennsylvania corporation; TOLL BROTHERS, INC., a Delaware corporation; DOES 1 through 15, inclusive,<br><br>               Defendants. | Case No. 08-CV-00221 EMC<br><br>**PLAINTIFF STONEBRAE L.P.'S NOTICE OF MOTION AND MOTION TO REMAND ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    March 12, 2008<br>Time:    10:30 a.m.<br>Crtrm.:  C, 15th Floor<br><br>Before the Hon. Edward M. Chen |

## <u>TABLE OF CONTENTS</u>

Page(s)

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

II.    RELEVANT FACTS ................................................................................................ 3

    A.    The Parties ................................................................................................... 3

    B.    State Court Jurisdiction .............................................................................. 3

    C.    The Stonebrae Development ....................................................................... 4

    D.    The Dealings Between Plaintiff Stonebrae and Defendant Toll Bros. ............ 4

    E.    The Village B Purchase Agreement ........................................................... 5

    F.    Toll Bros. Refuses To Close Escrow On The Village B Purchase
       Agreement As Its Parent's Financial Situation Deteriorates ...................... 6

    G.    Stonebrae Files Its Complaint And Toll Bros. Removes To This Court ......... 7

III.    ARGUMENT ........................................................................................................... 8

    A.    Legal Standard ............................................................................................ 8

    B.    Toll Bros.' Notice Of Removal Was Facially Defective ............................ 9

    C.    Stonebrae Has Adequately Alleged An Inducing Breach Of Contract
       Claim Against Toll Under California Law ................................................ 10

    D.    Toll Bros. Cannot Establish That Toll's Conduct Was Clearly
       Privileged .................................................................................................. 13

    E.    The Court Should Exercise Its Discretion To Award Stonebrae Fees
       And Costs .................................................................................................. 16

IV.    CONCLUSION ..................................................................................................... 17

MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Aguon-Schulte v. Guam Election Commission,*
    469 F.3d 1236 (9th Cir. 2006)..................................................................................10

*Ely Valley Mines Inc. v. Hartford Acci. & Indem. Co.,*
    644 F.2d 1310 (9th Cir. 1981)......................................................................................9

*Fredrickson v. Consol Supply Corp.,*
    2006 U.S. Dist. LEXIS 16838 (D. Or. March 21, 2006) ............................................16

*Gaus v. Miles, Inc.,*
    980 F.2d 564 (9th Cir. 1992)....................................................................................8, 13

*Hamilton Materials Inc. v. Dow Chem. Corp.,*
    494 F.3d 1203 (9th Cir. 2007)......................................................................................9

*Macey v. Allstate Prop. & Cas. Ins. Co.,*
    220 F. Supp. 2d 1116 (N.D. Cal. 2002) ......................................................................9

*Moore v. Permanente Medical Group, Inc.,*
    981 F.2d 443 (9th Cir. 1992)......................................................................................15

*Nickelberry v. DaimlerChrysler Corp.,*
    2006 U.S. Dist. LEXIS 22545 (N.D. Cal. April 17, 2006) ..........................................9

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1998)........................................................................................9

*Plute v. Roadway Package Sys., Inc.,*
    141 F. Supp. 2d 1005 (N.D. Cal. 2001) ......................................................................9

*Prize Frize, Inc. v. Matrix, Inc.,*
    167 F.3d 1261 (9th Cir. 1999)......................................................................................9

*Ritchey v. Upjohn Drug Co.,*
    139 F.3d 1313 (9th Cir. 1998)......................................................................................8

*Sanchez v. Monumental Life Ins. Co.,*
    102 F.3d 398 (9th Cir. 1996)........................................................................................8

*Sessions v. Chrysler,*
    517 F.2d 759 (9th Cir. 1975)..................................................................................11-12

*Smith v. Aon Risk Svcs.,*
    1997 U.S. App. LEXIS 33618 (9th Cir. Nov. 17, 1997) ............................................16

## STATE CASES

*Collins v. Vikter Manor, Inc.,*
    47 Cal. 2d 875 (1957)..................................................................11-12, 14-15

-ii-

MEM OF P'S AND A'S IN SUPPORT OF
                                                                                                          STONEBRAE'S MOTION TO REMAND

<u>STATE CASES (Cont'd)</u>

*Culcal Stylco v. Vornado, Inc.,*
    26 Cal. App. 3d 879 (1972)........................................................... 11-12, 14-15

*Kozlowsky v. Westminster National Bank,*
    6 Cal. App. 3d 593 (1970).................................................................12, 14-15

*Perkins v. Superior Court,*
    117 Cal. App. 3d 1 (1981)........................................................................... 11

*Ramona Manor Convalescent Hospital v. Care Ent.,*
    177 Cal. App. 3d 1120 (1986)...................................................................... 12

<u>FEDERAL STATUTES</u>

28 U.S.C. § 1332............................................................................................... 8

28 U.S.C. § 1447........................................................................................ 1, 9, 15

Federal Rules of Civil Procedure
    Rule 12(b)(6) .......................................................................................... 11

<u>MISCELLANEOUS</u>

Restatement (Second) of Torts § 769 (1979)....................................... 2-3, 13-15

-iii-

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that, on March 12, 2008, at 10:30 a.m., or as soon

3    thereafter as the matter may be heard, in Courtroom C, Fifteenth Floor, of the United

4    States District Court located at 450 Golden Gate Avenue, San Francisco, California,

5    94102, the Hon. Edward M. Chen presiding, Plaintiff Stonebrae L.P. ("Stonebrae") will

6    and hereby does, pursuant to 28 U.S.C § 1447, move for an order remanding this case back

7    to the Alameda County Superior Court (Case No. RG07358865), and for attorney's fees

8    and costs incurred as a result of the removal of that action to this Court.

9    This motion is based on this Notice of Motion, the accompanying

10    Memorandum of Points and Authorities, the Declaration of Philip F. Atkins-Pattenson, the

11    papers and pleadings on file in this action, such other further papers as may be submitted

12    prior to or at the hearing of this motion, and argument at the hearing.

13    **MEMORANDUM OF POINTS AND AUTHORITIES**

14    Plaintiff Stonebrae L.P. ("Stonebrae") respectfully submits this

15    Memorandum of Points and Authorities in support of its Motion to Remand this action

16    back to state court.  As established below, this is an action between a Delaware limited

17    partnership, on the one hand, and a Delaware and a Pennsylvania corporation, on the other

18    hand, concerns a contract to be performed in Alameda County and raises only issues

19    arising under state law.  It properly belongs in state court where it was filed.

20    **I.**

21    **INTRODUCTION AND SUMMARY OF ARGUMENT**

22    This action arises out of a written contract between Stonebrae and defendant

23    Toll Bros., Inc. ("Toll Bros."), in which Toll Bros. agreed to purchase 56 finished lots from

24    Stonebrae for the construction and sale of single family residences in Hayward, California.

25    Stonebrae alleges Toll Bros. breached the contract by, among other things, failing to close

26    escrow and purchase the lots from Stonebrae, and that this was at the direction of its parent

27    company, defendant Toll Brothers, Inc. ("Toll").  Stonebrae filed this action in the

28    Alameda County Superior Court because the real property that is the subject of the written

-1-

MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

contract at issue is located in Alameda County, the contract was to be performed there, and this case raises only state law issues. In addition, Stonebrae and Toll are both residents of Delaware, thereby providing no diversity jurisdiction in this Court.

Nevertheless, Toll Bros. removed the case to this Court, claiming Toll's status as a Delaware resident should be ignored because Toll was allegedly "fraudulently joined" on two grounds: (1) Stonebrae cannot state a claim for relief against Toll for inducing Toll Bros. to breach its contract with Stonebrae, and (2) Toll's conduct is privileged under Section 769 of the Restatement of Torts. To prove "fraudulent joinder," however, Toll Bros. bears the overwhelming burden of proving, based on clear and convincing evidence, that there is "no possibility" Stonebrae can establish a cause of action against Toll under California law. Toll cannot come close to satisfying this burden.

The Court, however, need not even address the substantive deficiencies of Toll Bros.' removal because it is procedurally defective in that Toll did not expressly join or consent in the removal, as required. The deadline for Toll to join or consent in the removal was 30 days after being served with Stonebrae's Complaint. Toll was served with the Complaint on December 13, 2007. Thirty days after that date was January 14, 2008. Toll did not file any written joinder or consent in the removal by that date (or ever). Under well-established Ninth Circuit authority, therefore, the removal was "procedurally defective" and the Court can and should remand for this reason alone.

Even if Toll Bros. had complied with mandatory Federal procedure, the remand of this action is warranted because Stonebrae has adequately alleged a claim against Toll for inducing breach of contract – if not in its initial Complaint, then certainly in its First Amended Complaint. As Stonebrae alleges in both complaints: Toll had knowledge of the contract between Toll Bros. and Stonebrae, the contract was valid, Toll acted intentionally to induce its subsidiary to breach the contract, Toll breached the contract, and Stonebrae was damaged as a result of the breach. As California courts have routinely held in this and similar contexts based on virtually identical allegations, that is all that is required to plead a claim for inducing breach of contract under California law.

MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

Additionally, the privilege defense Toll Bros. seeks to invoke on its parent's behalf does not apply here.  On its face, Section 769 of the Restatement (Second) of Torts only applies to claims for interference with "prospective contractual relations," not claims for inducing breach of contract (which is what Stonebrae alleges).  Moreover, the privilege applies only when the actor "does not employ improper means."  Toll cannot prove this element.  As Stonebrae alleges, in both its original and amended complaints, Toll induced its subsidiary to breach its contract with Stonebrae, which is not only improper, it is illegal.

Accordingly, Stonebrae respectfully requests the Court to remand this action back to the Alameda County Superior Court and award Stonebrae its fees and costs.

## II.

## RELEVANT FACTS

**A.      The Parties**

Plaintiff Stonebrae is a limited partnership organized under the laws of the State of Delaware.  (Stonebrae's First Amended Complaint ("FAC"), ¶ 1.)[1]  Stonebrae is the owner and master developer of a residential master planned community located atop the Walpert Ridge in Hayward, California (the "Stonebrae Development").  (*Id.* ¶¶ 1, 7.)

Defendant Toll Bros. is a corporation organized under the laws of the State of Pennsylvania.  (FAC ¶¶ 2-3.)  Toll Bros. is a wholly-owned subsidiary of Toll, which is a corporation organized under the laws of the State of Delaware, and a publicly-held corporation whose shares trade on the NYSE, and which is engaged in the business of residential construction and advertises itself as "America's Luxury Home Builder."  (*Id.*)

**B.      State Court Jurisdiction**

Jurisdiction and venue are proper in the Alameda County Superior Court, where Stonebrae filed this action, as the real property that is the subject of the contract at issue in this lawsuit is located in Hayward, California, the contract was to be performed

---

[1]      For the Court's convenience, a true and correct copy of the First Amended Complaint is attached as Exhibit A to the Declaration of Philip F. Atkins-Pattenson ("Atkins-Pattenson Decl."), filed and served herewith.

MEM OF P'S AND A'S IN SUPPORT OF STONEBRAE'S MOTION TO REMAND

1   therein, and the amount in dispute is within the unlimited jurisdiction of that court.  (FAC
2   ¶ 6.)

3   **C.    The Stonebrae Development**

4           The Stonebrae Development is situated atop the scenic Walpert Ridge in
5   Hayward, California, and consists of approximately 1,600 acres (of which approximately
6   1,100 are dedicated as permanent open space), to be developed in phases with
7   approximately 600 residential building lots, a 650-student public elementary school for the
8   Hayward Unified School District, adjacent sports facilities to be operated by the Hayward
9   Area Recreation District, an 18-hole golf course, tennis courts, and clubhouse and related
10  amenities (collectively, the "Stonebrae Development").  (FAC ¶ 7.)

11          Stonebrae obtained and vested the land use entitlements, a long-term
12  Development Agreement with the City of Hayward, as well as the various federal, state
13  and local permits for construction of the Stonebrae Development.  Under the development
14  plan for the Stonebrae Development, Stonebrae would be responsible for mass grading,
15  infrastructure improvements, construction of the school, the golf course, tennis courts, one
16  or more clubhouses, and related amenities.  Stonebrae would not be responsible for the
17  construction and sale of the individual residences; rather, Stonebrae would sell "finished
18  lots" to merchant builders, such as Defendant Toll Bros., who would build the homes and
19  sell them to the public.  (FAC ¶ 8.)

20          As noted above, the Stonebrae Development was to be built in phases as
21  provided in the Development Agreement and other land use entitlements.  The first phase
22  of the residential development, commonly known as "Village A," consists of 214 single
23  family residential lots, with the second phase, known as "Village B," consisting of 149
24  single family residential lots.  (FAC ¶ 9.)

25  **D.    The Dealings Between Plaintiff Stonebrae and Defendant Toll Bros.**

26          On July 26, 2005, Stonebrae and Toll Bros. executed that certain Purchase
27  and Sale Agreement and Joint Escrow Instructions (the "Village A Purchase Agreement"),
28  pursuant to which Toll Bros. agreed to purchase from Stonebrae 102 of the 214 lots located

-4-

MEM OF P'S AND A'S IN SUPPORT OF
                                        STONEBRAE'S MOTION TO REMAND

1  within Village A.  The close of escrow under the Village A Purchase Agreement occurred

2  on or about May 1, 2006.  (FAC ¶ 10.)

3           By virtue of the negotiation and execution of the Village A Purchase

4  Agreement, and the close of the escrow provided for therein, Toll Bros. was able to, and

5  did, fully familiarize itself with the Stonebrae Development, the entitlements and permits

6  therefor, the work performed by Stonebrae, and perform its "Due Diligence Investigation"

7  as provided in Section 4.1, which included "all matters" that Toll "deemed relevant" to its

8  purchase of the 102 lots under the Village A Purchase Agreement.  (FAC ¶ 11.)

9           Based on its knowledge of the Stonebrae Development from the Village A

10  Purchase Agreement, Toll Bros. negotiated with Stonebrae to purchase additional lots

11  located in the second phase of the development, Village B.  (FAC ¶ 12.)

12  **E.      The Village B Purchase Agreement**

13           On or about May 1, 2006, roughly contemporaneous with the close of escrow

14  under the Village A Purchase Agreement, Toll Bros. and Stonebrae executed that certain

15  Purchase and Sale Agreement and Joint Escrow Instruction (the "Village B Purchase

16  Agreement"), pursuant to which Toll Bros. agreed to purchase 56 lots for the construction

17  and sale of single family residences.  The Village B Purchase Agreement was subsequently

18  amended by a First Amendment, dated May 31, 2006, and a Second Amendment, dated

19  June 2, 2006.  (FAC ¶ 13.)  A true and correct copy of the Village B Purchase Agreement,

20  as amended, is attached as Exhibit 1 to the FAC.

21           The purchase price to be paid by Toll Bros. to Stonebrae at the close of

22  escrow under the Village B Purchase Agreement is $31,854,200.  Pursuant to Section 2.2

23  of the Village B Purchase Agreement, Toll Bros. deposited in escrow a letter of credit in

24  the amount of $4,774,944.  (FAC ¶ 14.)

25           Pursuant to Section 4, Toll Bros. was entitled to and did conduct its "Due

26  Diligence Investigation" with respect to "all matters" that Defendant Toll "deemed

27  relevant" with respect to its purchase of the 56 lots under the Village B Purchase

28  Agreement.  While Toll Bros. had the legal right during the "Due Diligence Period" not to

-5-

1  proceed with the Village B Purchase Agreement for any reason, pursuant to Section 4.6,

2  Toll Bros. timely provided Stonebrae with its written approval of its Due Diligence

3  Investigation of the lots it was purchasing under the Village B Purchase Agreement.

4  Under the Village B Purchase Agreement, upon the expiration of the "Due Diligence

5  Period," the letter of credit became non-refundable and served as the earnest money

6  deposit, and Toll Bros. became obligated to close escrow and purchase the 56 lots from

7  Stonebrae except only if Toll Bros.' conditions precedent to the close of escrow pursuant to

8  Section 6.2 were not satisfied.  (FAC ¶ 15.)

9              In reliance upon Toll Bros.' approval of its "Due Diligence Investigation,"

10  the expiration of the "Due Diligence Period" and its decision to proceed with the purchase

11  of the 56 lots, Stonebrae proceeded with performance of the "Stonebrae Pre-Closing

12  Work" as described more particularly in Exhibit H to the Village B Purchase Agreement.

13  Stonebrae estimates that it has incurred in excess of $7 million performing the "Stonebrae

14  Pre-Closing Work" and otherwise preparing to complete the close of escrow.  (FAC ¶ 16.)

15  **F.    Toll Bros. Refuses To Close Escrow On The Village B Purchase Agreement As**

16  **Its Parent's Financial Situation Deteriorates**

17              While Stonebrae was incurring these substantial sums to complete the

18  "Stonebrae Pre-Closing Work" and otherwise preparing for the close of escrow in

19  accordance with the Village B Purchase Agreement, Toll Bros. had decided not to proceed

20  with the close of escrow and the purchase of the 56 lots, which would have required Toll

21  Bros. to pay Stonebrae the sum of $31,854,200.  (FAC ¶ 17.)

22              On or about November 8, 2007, Toll filed its Form 8-K, announcing its

23  preliminary 4th Quarter and FY 2007 results:

24              (a)    For the 4th Quarter, home building revenues declined 36% compared

25  to FY 2006 4th Quarter, and backlog declined 36% from the same comparable period;

26              (b)    For the 4th Quarter, gross signed contracts declined 38% compared to

27  FY 2006 4th Quarter, and the number of homes under contract declined 33% from the

28  same comparable period;

-6-

1            (c)      For the 4th Quarter, net signed contracts declined 35% in the number

2    of homes, and 48% in dollars, compared to the 4th Quarter of FY 2006; and

3            (d)      For FY 2007, home building revenues declined 24% and net signed

4    contracts declined 33% compared with FY 2006's year-end results.  (FAC ¶ 18.)

5            Meanwhile, at the Stonebrae Development, Toll Bros. has a substantial

6    amount of inventory (both completed and partially completed) in Village A, and has

7    suffered many cancellations of contracts to purchase its homes in Village A.  At the

8    present time, Toll Bros. has completed the sale of only 21 homes on the 102 residential

9    Village A lots it purchased from Stonebrae.  (FAC ¶ 19.)

10           To avoid the close of escrow under the Village B Purchase Agreement, Toll

11   Bros. – at the express direction of Toll – offered a number of pretextual reasons why it

12   purportedly is under no obligation to close the escrow, acquire the 56 lots from Stonebrae

13   and pay Stonebrae the purchase price of $31,854,200, and on that basis has purported to

14   terminate the Village B Purchase Agreement and has demanded that the letter of credit in

15   escrow be released to it.  (FAC ¶ 20.)

16   **G.      Stonebrae Files Its Complaint And Toll Bros. Removes To This Court**

17           On November 29, 2007, Stonebrae filed this lawsuit in the Alameda County

18   Superior Court, asserting three causes of action:  (1) declaratory relief (against Toll Bros.),

19   (2) breach of contract (against Toll Bros.), and (3) inducing breach of contract (against

20   Toll).  Stonebrae served the summons and complaint on Toll Bros. and Toll on December

21   12 and December 13, 2007, respectively.  (Atkins-Pattenson Decl. Exs. B & C.)

22           On January 11, 2008, Toll Bros. removed this action to this Court.  Toll did

23   not join in the removal or file any consent to the removal.  (Atkins-Pattenson Decl. ¶ 6.)

24           On January 15, 2008, Stonebrae filed its First Amended Complaint.  In

25   support of its third claim for relief against Toll, Stonebrae alleged:  (1) the Village B

26   Purchase Agreement is a valid and enforceable contract between Toll Bros. and Stonebrae;

27   (2) Toll knew or was otherwise aware of the existence of the Village B Purchase

28

MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

1  Agreement; (3) Toll Bros. breached the Village B Purchase Agreement, and (4) Stonebrae

2  was damaged by the resulting breach.  (FAC ¶¶ 31, 32, 37 & 38.)

3          Stonebrae also specifically alleged that Toll "intended to and did induce Toll

4  Bros. to breach the Village B Purchase Agreement."  (FAC ¶ 35.)  Stonebrae further

5  alleged that, in response to its severely deteriorating financial condition, Toll sought to

6  reduce the contractual liabilities on its consolidated financial statements, such as that

7  represented by the Village B Purchase Agreement, and directed its subsidiaries and

8  affiliates (including Toll Bros.) to take steps to do so by whatever means necessary,

9  including by breaching the contracts giving rise to those liabilities, and that Toll Bros.

10  acted pursuant to such directives from Toll.  (FAC ¶¶ 34.)

11          Stonebrae also specifically alleged that Toll's conduct was "not privileged" in

12  that it was predominantly, if not exclusively, intended to interfere with and harm

13  Stonebrae's contractual rights under the Village B Purchase Agreement, and was illegal

14  and improper in that Toll instructed and conspired with Toll Bros. to manufacture a pretext

15  of Stonebrae's purported failures to perform (as alleged in paragraphs 20 and 23 of the

16  TAC) in an effort to unlawfully circumvent Toll Bros.' contractual obligations and

17  liabilities under the Village B Purchase Agreement.  (FAC ¶ 36.)

**III.**

**ARGUMENT**

**A.    Legal Standard**

21          As this Court well knows, jurisdiction based on diversity of citizenship

22  requires complete diversity of citizenship, i.e., plaintiff must be a citizen of a different state

23  than all of the defendants.  (28 U.S.C. § 1332.)  On a motion to remand, Toll Bros. faces a

24  "strong presumption" against removal and bears the burden of establishing that removal

25  was proper.  (*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).)

26  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the

27  first instance."  (*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).)

28

MEM OF P'S AND A'S IN SUPPORT OF
                                                                          STONEBRAE'S MOTION TO REMAND

1          Moreover, to establish that Toll was fraudulently joined, Toll Bros. carries

2 the heavy burden of establishing the absence of *any* possibility of recovery.  (*Ritchey v.*

3 *Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).)  To meet this burden, Toll Bros.

4 is required to prove that Stonebrae has not stated a claim against Toll and, more

5 importantly, that, under California law, Stonebrae "would not be afforded leave to amend

6 [the] complaint to address the purported pleading deficienc[ies] on which [the removing

7 defendant] relies."  (*Nickelberry v. DaimlerChrysler Corp.*, 2006 U.S. Dist. LEXIS 22545,

8 *4-5 (N.D. Cal. April 17, 2006) [remanding case back to Alameda County Superior Court

9 because the removing defendant failed to prove plaintiff could not amend her complaint to

10 cure the alleged pleading deficiency].)  Consistent with the requirement on a remand

11 motion that any failure to state a claim against the non-diverse defendant be "obvious,"

12 "[f]raudulent joinder must be proven by clear and convincing evidence."  (*Hamilton*

13 *Materials Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007).)

14          Finally, on a motion to remand, this Court must initially resolve all disputed

15 questions of fact and all ambiguities in favor of Stonebrae.  (*Macey v. Allstate Prop. &*

16 *Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117-18 (N.D. Cal. 2002).)  If, after doing so, there is

17 *any possibility* that Stonebrae may recover against Toll, the Court must grant this motion.

18 (*Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1012 (N.D. Cal. 2001).)

19          Applying these principles to this case, it is abundantly clear that Toll Bros.

20 cannot meet its burden to show, based on clear and convincing evidence, that Stonebrae

21 has not properly alleged a cause of action against Toll and cannot possibly do so.

22 **B.**     **Toll Bros.' Notice Of Removal Was Facially Defective**

23          At the threshold, the Court should remand this action back to state court on

24 the ground that Toll Bros. removal notice was procedurally improper.

25          The removal statute requires all defendants to join in or file written

26 consent to the removal notice.  (*Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998)

27 ["All defendants must join a notice of removal"]; *Ely Valley Mines Inc. v. Hartford Acci. &*

28 *Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981) ["[A]ll defendants who may properly join

-9-

          MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

1  in the removal petition must join."].)  Failure to do so renders the removal notice

2  procedurally defective and the case subject to remand.  (28 U.S.C. § 1447(c) [remand may

3  be ordered for "any defect" in the removal procedure]; *Prize Frize, Inc. v. Matrix, Inc.*, 167

4  F.3d 1261, 1266 (9th Cir. 1999) [remanding case to state court based on failure of co-

5  defendants to join in removal]; *Aguon-Schulte v. Guam Election Commission*, 469 F.3d

6  1236, 1240 (9th Cir. 2006) [failure to join all defendants in notice of removal "qualifies as

7  a 'defect' in a removal procedure" under section 1447(c)].)

8      Here, although Toll was properly served with this lawsuit on December 13,

9  2007, it did not join in the notice of removal filed by Toll Bros.  (*See* Toll Bros. Notice of

10  Removal at 1:2 ["Please take notice that *Defendant Toll Bros., Inc.* ("Toll") hereby

11  removes to the United States District Court…."].)  Nor did Toll file any separate written

12  joinder or consent to removal within 30 days of service of process (or ever).

13      Accordingly, because the removal notice was facially defective, removal was

14  improper and the case should be remanded back to state court.

15  **C.    Stonebrae Has Adequately Alleged An Inducing Breach Of Contract Claim**

16  **Against Toll Under California Law**

17      Not only was its notice of removal defective on its face, Toll Bros. has not

18  come close to meeting its burden to prove there is no possibility that Stonebrae can prove

19  its claim against Toll for inducing breach of contract.  In its removal papers, Toll Bros.

20  does not dispute that Stonebrae has alleged four of the five required elements for

21  inducement of breach of contract, *i.e.*, that the contract between it and Stonebrae is valid,

22  that Toll knew of the contract, that Toll Bros. breached the contract, and that Stonebrae

23  was damaged by the resulting breach.  The only element Toll Bros. argues Stonebrae has

24  not alleged – and cannot even possibly allege – is the third element:  that Toll intended to

25  induce a breach or disruption of the Village B Purchase Agreement.

26      Toll Bros. is mistaken.  Stonebrae alleges that, in light of the deteriorating

27  housing market and its increasing inventory of completed and partially-completed homes

28

-10-

MEM OF P'S AND A'S IN SUPPORT OF
                                                                                            STONEBRAE'S MOTION TO REMAND

at the Stonebrae Development, Toll instructed its subsidiary Toll Bros. to reduce

contractual liabilities by whatever means necessary, including by breaching the contracts:

> Plaintiff Stonebrae is informed and believes, and on that basis alleges, that in response to its severely deteriorating financial condition, Defendant [Toll] sought to reduce the contractual liabilities on its consolidated financial statements, such as that represented by the Village B Purchase Agreement, and directed its subsidiaries and affiliates to take steps to do so by whatever means necessary, including by breaching the contracts. Plaintiff Stonebrae is further informed and believes, and on that basis alleges, that subsidiaries and affiliates of Defendant [Toll], including Defendant Toll [Bros.], acted pursuant to such directives from Defendant [Toll].

Stonebrae further alleges that "Toll intended to and did induce Toll Bros. to breach the Village B Purchase Agreement with Stonebrae."  (FAC ¶ 35.)  In federal court, this allegation alone is sufficient to plead intent and survive a motion to dismiss under Rule 12(b)(6).  (Fed.R.Civ.P. 9(b) ["Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."].)  Thus, Toll Bros. cannot prove fraudulent joinder based on any failure to state a claim against Toll.  (*Sessions v. Chrysler*, 517 F.2d 759, 761 (9th Cir. 1975) ["[I]nasmuch as [plaintiff's] case against the individual defendants was sufficient to withstand a dismissal motion under Fed.R.Civ.P. 12(b)(6), the joinder of claims against them was not fraudulent so as to warrant dismissal on that score."].)

The same is true in state court, both generally and in the specific context of a claim against a parent company for inducing its subsidiary to breach its contract with the plaintiff.  (*Perkins v. Superior Court* (1981) 117 Cal.App.3d 1, 5 [reversing order striking "intentionally" from complaint on grounds that it constituted a conclusion of law because the "distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree"]; *Culcal Stylco v. Vornado, Inc.* (1972) 26 Cal.App.3d 879, 883 [allegation that parent company "intentionally interfered with the license agreements" between its subsidiary and the plaintiff was sufficient to plead intent and withstand demurrer to claim against parent for interfering with the license agreements].)

-11-

MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

1   Also instructive is the Supreme Court's decision in *Collins v. Vikter Manor,*
2   *Inc.* (1957) 47 Cal.2d 875.  In *Collins*, an action to recover a real estate commission, the
3   Court addressed whether plaintiff real estate brokers had adequately alleged a claim
4   against defendant corporation (Vikter Manor) for breach of contract, and against two of the
5   corporation's officers and directors (who, because no stock was issued, were the beneficial
6   owners of the corporate assets) for inducing breach of contract.  In support of their tort
7   claim, plaintiffs alleged that, while a commission-producing escrow was still open, the
8   individual defendants, with full knowledge of plaintiffs' contract, "wrongfully,
9   intentionally, and without justification," caused the corporation to refrain from closing
10  escrow and making the agreed-upon payment to plaintiffs.  (*Id.* at 879.)  That is precisely
11  what Stonebrae alleges Toll induced Toll Bros. to do in violation of the contract at issue
12  here.  (FAC ¶¶ 15, 17, 20, 35 & 37.)  In *Collins*, the court held these allegations were
13  sufficient to state a claim for inducing breach of contract against the breaching party's
14  owners.  (*Id.* at 883.)  Under *Sessions*, this precludes a finding of fraudulent joinder.

15  Likewise, in *Kozlowsky v. Westminster National Bank* (1970) 6 Cal.App.3d
16  593, the court upheld a bank president's claim against the majority shareholder of the bank
17  for inducing the bank to breach plaintiff's employment contract.  In support of that cause of
18  action, plaintiff alleged defendant "intentionally, wantonly, maliciously and without
19  justification" caused the bank to discharge him.  (*Id.* at 598.)  In reversing the trial court's
20  order sustaining defendant's demurrer to the inducing breach of contract claim, the court
21  explained that this allegation "imports that defendant was not acting for the protection of
22  his legitimate interests as a shareholder."  (*Id.* at 600.)

23  The same result is warranted here.  Just as the plaintiffs in *Culcal*, *Collins*,
24  and *Kozlowsky*, Stonebrae alleges Toll "intended to and did induce" Toll Bros. to breach its
25  contract with Stonebrae, that Toll's conduct was "illegal and improper," and that its
26  conduct was "not privileged."  (FAC ¶¶ 35-36.)  As those cases all held, these allegations
27
28

-12-

MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

1  are sufficient to state a claim against the corporate parent or other owner of a contracting

2  party for inducing breach of contract, thereby precluding a finding of fraudulent joinder.[2]

3        The point is this:  whether the Court examines Stonebrae's allegation that

4  Toll "intended" to induce Toll Bros. to breach its contract with Stonebrae in isolation or in

5  the context of the facts alleged throughout the remainder of its complaint, the end result is

6  the same.  Stonebrae has adequately alleged Toll intentionally interfered with the Village B

7  Development Agreement.  And, if there were any doubt (and Stonebrae submits there is

8  none), it must be resolved in favor of remand.  (*Gaus*, 980 F.2d at 566.)

9  **D.**      **Toll Bros. Cannot Establish That Toll's Conduct Was Clearly Privileged**

10        Toll Bros. also argues its parent cannot be held liable for inducing Toll Bros.

11  to breach the Village B Purchase Agreement based on the privilege conferred by Section

12  769 of the Restatement of Torts, and that this privilege is apparent on the face of the

13  Complaint.  (Notice of Removal at 5:3-4 ["Even assuming that the Complaint…allege[d]

14  that Toll [ ] intentionally acted to induce a breach of the [Village B Purchase Agreement],

15  the Complaint on its face establishes that any such conduct would be within the scope of

16  the financial interest privilege."].)  Toll Bros. is wrong on both counts.

17        As a threshold matter, Section 769 does not apply.  In its quotation from

18  Section 769, Toll Bros. omitted the portion expressly limiting its applicability to cases

19  alleging interference with "prospective contractual relation[s]."  The complete text of the

20  current version of Section 769 of the Restatement (Second) of Torts reads as follows:

21          One who, having a financial interest in the business of a third person
   intentionally causes that person *not to enter into a prospective*

22          *contractual relation with another*, does not interfere improperly with
   the other's relation if he:

23

24          (a)  does not employ wrongful means, and

---

[2] In its removal papers, Toll Bros. relied exclusively on the Fourth Appellate

25  District's decision in *Ramona Manor Convalescent Hospital v. Care Ent.* (1986)
   177 Cal.App.3d 1120, to show that Stonebrae had not adequately plead intent.  But

26  that case addressed whether plaintiff had offered sufficient evidence to <u>prove</u> intent
   at trial and has no bearing on whether Stonebrae has adequately <u>plead</u> intent.  The

27  *Perkins*, *Culcal*, *Collins* and *Kozlowski* cases, however, do address this issue and, as
   explained above, support the conclusion that Stonebrae has adequately plead intent.

28

      MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

1    (b)  acts to protect his interest from being prejudiced by the relation.
(Restatement (Second) of Torts § 769 (1979) [emphasis added].)

2

3    Here, Stonebrae alleges Toll induced Toll Bros. to *breach* its existing

4    contract with Stonebrae, not merely to refrain from entering into a prospective contractual

5    relationship.  (FAC ¶¶ 35-38.)  This distinction makes all the difference.  (Restatement

6    (Second) of Torts § 769 cmt. b ["The rule stated in this Section does not apply to the

7    causing of a breach of contract."].)  The Court can and should end its inquiry here.

8    Nor is any privilege apparent from the face of Stonebrae's allegations.  The

9    *Culcal*, *Collins*, and *Kozlowski* cases are instructive on this issue as well.  In *Culcal*, the

10   court applied a proposed revision to Section 769 that was never enacted (but which, if

11   enacted, would conceivably apply to a breach of contract) in the context of a claim against

12   the parent company for inducing its subsidiary to breach a contract.  Specifically, plaintiff

13   (Culcal) sued defendants for interference with the plaintiff's contractual rights under

14   certain license agreements between plaintiff and the licensor (Food Giant).  Plaintiff

15   alleged each of the defendants "with knowledge of the terms of the license agreements

16   'intentionally and without justification'…induced Food Giant," a subsidiary of the

17   defendants, to terminate the license agreements.  On demurrer, the trial court dismissed the

18   inducement claim without leave to amend on the ground that the alleged interference was

19   justified by reason of defendants' all being members of the same corporate family as the

20   licensor.  (*Culcal*, 26 Cal.App.3d at 880.)

21   The Court of Appeal reversed, holding a parent corporation's interference

22   with a subsidiary's contract was not privileged as a matter of law by virtue of that

23   relationship.  The court explained that Section 769 "is essentially a state-of-mind privilege

24   and therefore its existence cannot normally be satisfactorily determined on the basis of

25   pleadings alone.  The resolution of the issue turns on the defendants' predominant purpose

26

27

28

-14-

1  in inducing the breach of the contract," which is "preferably a matter to be determined on

2  the basis of proof rather than of pleading." (*Culcal*, 26 Cal.App.3d at 883.)[3]

3        More to the point, the court held that plaintiff's allegations that defendants

4  "intentionally interfered with the license agreements of Food Giant 'without

5  justification'…*suggest an absence of privilege*," and "since a complaint must be liberally

6  construed with a view to substantial justice to the parties," it was error for the trial court to

7  dismiss the complaint. (*Id.* at 883 [emphasis added].) Likewise, *Collins* and *Kozlowski*

8  both held no privilege was apparent from the pleadings based on similar allegations.

9  (*Collins*, 47 Cal.2d at 883 ["any…such privilege…does not affirmatively appear on the

10 face of the complaint"]; *Kozlowski*, 6 Cal.App.3d at 600 [allegation that defendant

11 "intentionally" and "without justification" caused the bank to discharge him "imports that

12 defendant was not acting for the protection of his legitimate interests as a shareholder"].)

13       Notably, Toll Bros.' burden on this motion is even higher than the burden

14 defendants failed to meet in *Culcal*, *Collins*, and *Kozlowski*. In those cases, the court, as

15 Toll Bros. seeks to do, applied a version of Section 769 that did not limit its applicability

16 to prospective contractual relations. Yet, even then, those cases all held, based on similar

17 allegations, that (1) the plaintiff had adequately stated a claim for inducing breach of

18 contract and (2) that any privilege was not apparent on the face of the pleadings. Of

19 course, now Section 769 expressly does not apply to actions involving breach of contract.

20       In addition, *Culcal*, *Collins*, and *Kozlowski* addressed the privilege in the

21 context of a demurrer and all held that the plaintiffs in those cases had adequately alleged

22 an inducing breach of contract claim. Here, unlike on demurrer, Toll Bros.' burden is

23 significantly higher for the reason that there is a "strong presumption" against removal and

24 because Toll Bros. must prove, based on clear and convincing evidence, the absence of *any*

25 possibility that Stonebrae could prevail on its inducing breach of contract claim against

26

27     [3]    Here, even if Section 769 did apply (which it does not), Stonebrae specifically
    alleges that Toll's predominant purpose was to interfere with and harm Stonebrae's
    contractual rights under the Village B Purchase Agreement. (FAC ¶ 36.)

28

    MEM OF P'S AND A'S IN SUPPORT OF
STONEBRAE'S MOTION TO REMAND

1  Toll, as plead, or upon any amendment.  Put simply, if Toll Bros. could not prevail on a

2  motion to dismiss in this Court or a demurrer in state court, which the above cases show it

3  cannot, it could not possibly meet its burden to defeat this motion.

4  **E.      The Court Should Exercise Its Discretion To Award Stonebrae Fees And Costs**

5          Stonebrae requests an award of attorney's fees and costs.  The removal

6  statute provides in relevant part that "an order remanding the case may require payment of

7  just costs and any actual expenses, including attorney's fees, incurred as a result of the

8  removal." (28 U.S.C. § 1447(c).)  A district court has broad discretion under this

9  provision.  (*Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 447 (9th Cir. 1992)

10  [award of costs and fees pursuant to section 1447(c) is reviewed for abuse of discretion].)

11          An award of fees and costs is warranted in this case.  Toll Bros. should have

12  known its removal was procedurally defective without Toll's joinder in the removal, which

13  alone is sufficient to award fees.  (*Smith v. Aon Risk Svcs.*, 1997 U.S. App. LEXIS 33618,

14  *2-3 (9th Cir. Nov. 17, 1997) [affirming award of fees and costs based on defendant's

15  improper removal without joining all defendants]; *Fredrickson v. Consol Supply Corp.*,

16  2006 U.S. Dist. LEXIS 16838, *6 (D. Or. March 21, 2006) [awarding fees in favor of

17  plaintiff because "[t]he law requiring joinder in or consent to removal of all defendants is

18  well-settled"].)  To say nothing of the fact that Toll Bros. either knew or should have

19  known it was removing this action and imposing otherwise unnecessary fees and costs on

20  Stonebrae based on a section of the Restatement that had been amended nearly 30 years

21  ago to bar its use in cases involving a breach of an existing contract.

22          Fees and costs are particularly justified if, after being informed that its

23  removal was procedurally defective and based on inapposite authority, and after the filing

24  of the First Amended Complaint which erases any doubt as to whether Stonebrae had

25  properly plead a claim for relief against Toll, Toll Bros. continues to prosecute its

26  fraudulent joinder arguments and impose additional fees and costs on Stonebrae.

27

28

MEM OF P'S AND A'S IN SUPPORT OF
                                                STONEBRAE'S MOTION TO REMAND

**IV.**

**<u>CONCLUSION</u>**

Based on the foregoing – because Toll Bros. has not met and cannot meet its burden to prove Stonebrae cannot possibly state a claim for inducing breach of contract against Toll – the Court should remand this action back to the Alameda County Superior Court and award Stonebrae its fees and costs incurred as a result of Toll Bros.' removal.

Dated:  January 31, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/  Philip F. Atkins-Pattenson
          PHILIP F. ATKINS-PATTENSON
          Attorneys for Plaintiff
          STONEBRAE L.P.