DONALD J. PUTTERMAN (State Bar No. 90822)
E-Mail: *dputterman@sideman.com*
RYAN J. MECKFESSEL (State Bar No. 215952)
E-Mail: *rmeckfessel@sideman.com*
MARGARET A. ZIEMIANEK (State Bar No. 233418)
E-Mail: *mziemianek@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Eighth Floor
San Francisco, California 94111-3629
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

TIMOTHY J. HOBAN (State Bar No. 192461)
E-Mail: *thoban@tollbrothersinc.com*
REGIONAL COUNSEL FOR TOLL BROS., INC.
725 Town & Country Rd, Suite 500
Orange, California 92868
Telephone: (714) 347-1300
Facsimile: (714) 835-9683

Attorneys for Defendants
TOLL BROS., INC., a Pennsylvania corporation, and
TOLL BROTHERS, INC., a Delaware corporation

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| STONEBRAE L.P., a Delaware limited partnership,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TOLL BROS., INC., a Pennsylvania corporation; TOLL BROTHERS, INC., a Delaware corporation; DOES 1 through 15, inclusive,<br><br>　　　　Defendants. | CASE NO. 08-CV-00221 EMC<br><br>**E-FILED**<br><br>**DEFENDANT TOLL BROTHERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6), 21; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　March 26, 2008<br>Time:　　10:30 a.m.<br>Room:　　C, 15th Floor<br>Judge:　　Hon. Edward M. Chen<br><br>Removal Filed:　　January 11, 2008 |

1 **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2     **PLEASE TAKE NOTICE THAT** on March 26, 2008, at 10:30 a.m., in Courtroom C of the above-entitled Court, or as soon thereafter as this matter may be heard, Defendant TOLL BROTHERS, INC. ("Toll Brothers"), by and through its counsel, hereby moves to dismiss the First Amended Complaint in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), or alternatively, for an order dismissing Toll Brothers as a fraudulently joined defendant pursuant to FRCP 21.

    This motion is made on the grounds that Plaintiff cannot state a claim against Toll Brothers for inducing Toll Bros., Inc. to breach its contract with Plaintiff, because:

(1)   the financial interest privilege appears on the face of the First Amended Complaint, by operation of Plaintiff's theory that the contract was breached due to Toll Brothers' deteriorating financial condition and conduct designed to reduce its contractual liabilities; and

(2)   Plaintiff's sole remedy for the injury alleged in the Complaint – Toll's failure to close escrow – is set forth in the liquidated damages clause of the contract, and on the allegations pled by Plaintiff, that clause cannot be circumvented by seeking damages for the same wrong from the corporate parent, Toll Brothers.

    This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Appendix of Foreign Authorities, all the records on file in this action, and on such other and further evidence and argument as the Court may permit in connection with this motion.

DATED: February 20, 2008

REGIONAL COUNSEL FOR TOLL BROS., INC.
Timothy J. Hoban

SIDEMAN & BANCROFT LLP
Donald J. Putterman
Ryan J. Meckfessel
Margaret A. Ziemianek

By:   */s/ Margaret A. Ziemianek*
    Margaret A. Ziemianek
    Attorneys for Defendants

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.  INTRODUCTION AND SUMMARY OF ARGUMENT........................................................1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................................2

III. ARGUMENT ..............................................................................................................................5

    A.  Applicable Legal Standards .............................................................................................5

    B.  The FAC's New Conclusory Allegations Both Contradict the Original Complaint and Show that the Financial Interest Privilege Still Applies....................6

        1.  Plaintiff's New Allegations Fail to Avoid the Privilege ................................9

        2.  The Cases Relied Upon in Plaintiff's Motion for Remand Do Not Negate the Financial Interest Privilege ..........................................................11

    C.  Plaintiff Cannot Evade the Liquidated Damages Provision By Manufacturing A Claim Against Toll's Corporate Parent, Toll Brothers................13

IV. CONCLUSION .........................................................................................................................15

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

i   Case No. 08-CV-00221 EMC
DEFENDANT TOLL BROTHERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
F.R.C.P. 12(b)(6), 21; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page**

**CALIFORNIA STATE CASES**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) .................................................................................................. 6

*Applied Equip. Corp. v. Litton Saudi Arabia*
    7 Cal. 4th 503, 516 (1994) ............................................................................................... 11, 14

*Boulevard Assoc. v. Sovereign Hotels, Inc.*
    72 F.3d 1029 (2d Cir. 1995) ..................................................................................................... 11

*Clinco v. Roberts*
    41 F. Supp. 2d 1080 (C.D. Cal. 1999) ....................................................................................... 5

*Collins v. Vickter Manor, Inc.*
    47 Cal. 2d 875 (1957) ............................................................................................................. 12

*Copperweld Corp., et al. v. Independence Tube Corp.*
    467 U.S. 752 (1984) ................................................................................................................ 10

*Culcal Stylco, Inc. v. Vornado, Inc.*
    26 Cal. App. 3d 879 (1972) .................................................................................................... 12

*Durning v. First Boston Corp.*
    815 F.2d 1265 (9th Cir. 1987) .................................................................................................. 3

*Feary v. Aaron Burglar Alarm, Inc.*
    32 Cal. App. 3d 553 (1973) .................................................................................................... 14

*Freeman & Mills, Inc. v. Belcher Oil Co.*
    11 Cal. 4th 85 (1995) .............................................................................................................. 11

*Gasnik v. State Farm Ins. Co.*
    825 F. Supp. 245 (E.D. Cal. 1992) ........................................................................................... 6

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*
    896 F.2d 1542 (9th Cir. 1990) .................................................................................................. 3

*Holden v. Hagopian*
    978 F.2d 1115 (9th Cir. 1992) ............................................................................................. 6, 8

*Ilkhchooyi v. Best*,
    37 Cal. App. 4th 395, 412 (1995) ........................................................................................... 11

*Kozlowsky v. Westminster National Bank*
    6 Cal. App. 3d 593 (1970) ...................................................................................................... 12

*McCabe v. General Foods Corp.*
    811 F.2d 1336 (9th Cir. 1987) ............................................................................................. 5, 9

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

*McGlinchy v. Shell Chem. Co.*
    845 F.2d 802 (9th Cir. 1988) ................................................................................ 6, 8

*Pacific Gas & Elec. Co. v. Bear Sterns & Co.*,
    50 Cal. 3d 1118 (1990) .............................................................................................. 7

*Ramona Manor Convalescent Hosp. v. Care Enterprises, et al.*,
    177 Cal. App. 3d 1120 (1986) ................................................................................ 7, 9

*Ritchy v. Upjohn Drug Co.*,
    139 F.3d 1313 (9th Cir. 1998) ..................................................................................... 9

*SAMI Franchising, Inc.*,
    916 F. Supp. 1024 (D. Nev. 1996) ............................................................................. 5

*Smilecare Dental Group v. Delta Dental Plan of California, Inc.*,
    88 F.3d 780 (9th Cir.), *cert. denied*, 519 U.S. 1028 .................................................. 6

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ................................................................................... 10

*Waste Conversion Systems, Inc. v. Greenstone Industries, Inc., et al.*
    33 S.W. 3d 779 (Tenn., 2000) ............................................................................ 10, 11

**STATUTES**

28 U.S.C. § 1447(e) ............................................................................................................ 5

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 1, 2, 5

Federal Rules of Civil Procedure 15(a) .............................................................................. 5

Federal Rules of Civil Procedure 21 ................................................................................... 1

Restatement (Second) Torts, § 767 ............................................................................. 11, 13

**RULES**

Fed. R. Evid. 1007 ............................................................................................................ 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Stonebrae, L.P.'s ("Stonebrae") claim against Defendant Toll Brothers, Inc. ("Toll Brothers") is simply an effort by Stonebrae to pick and choose those contract provisions it seeks to enforce, and those it prefers to evade. Specifically, Stonebrae looks to avoid a liquidated damages clause, to which it previously agreed with Defendant Toll Bros., Inc. ("Toll"), by the expedient of using conclusory – which change at the drop of a hat, or rather, at the drop of removal – allegations to sue Toll's corporate Parent, Toll Brothers for inducing breach of contract. Moreover, Stonebrae does so even though both its Complaint and First Amended Complaint ("FAC") facially show that the alleged inducement in any event was privileged.

The original Complaint and the FAC arise out of the alleged breach of a contract between Plaintiff and Toll, which is Toll Brothers' wholly-owned subsidiary. Toll Brothers is not and has never been a party to this contract. Stonebrae initially filed in state court,[1] seeking declaratory relief and contractual liquidated damages against Toll, but also seeking unlimited and unliquidated tort damages against Toll Brothers for allegedly inducing Toll to breach its contract. Defendant Toll timely removed the action on the well-taken position that Toll Brothers is a fraudulently joined defendant against whom no cause of action has been or can be stated. Toll's Notice of Removal ("Removal") points out that Stonebrae's claim against Toll Brothers alleged, on information and belief, that Toll Brothers merely had issued a general directive to its subsidiaries and affiliates to reduce their contractual liabilities – allegations which do not state a claim for inducing breach of contract. Toll further emphasized that, in any event, the defense of financial interest privilege appears on the face of the complaint, given that Toll is a wholly owned subsidiary of Toll Brothers and that Plaintiff itself pleaded that both Toll and Toll Brothers were only seeking to protect their own financial solvency. Stonebrae responded by filing the FAC, adding new but equally conclusory and factually unsupported allegations, to the effect that Toll

---

[1] *Stonebrae L.P., v. Toll Bros., Inc., et al.,* Case Number RG07358685 (the "State Court Case").

1  Brothers did intend to impact the specific contract at issue and did intend to cause a breach of this
2  contract. These conclusory allegations were blatantly taken from the Removal and not from any
3  old or new knowledge of any kind, and are a brazen attempt to avoid removal by retaining a sham
4  defendant. Indeed, Stonebrae's conduct and allegations are an obvious Rule 11 violation.

5        The FAC's new allegations do not in any way alter Stonebrae's substantive theory of the
6  case. Plaintiff itself insists that Toll decided "not to proceed with the close of escrow and the
7  purchase of the 56 lots" due to the deteriorating financial condition of its parent, Toll Brothers.
8  Although the FAC now alleges that Toll made this decision at the express direction of Toll
9  Brothers, and not just in response to a general corporate directive (leaving aside for the moment
10 the breathtakingly sham nature of these revisions) Plaintiff's 'new' allegations as to Toll Brothers
11 still unequivocally establish that the alleged conduct was motivated by financial self-protection
12 and therefore fall within the financial interest privilege. Nor do these allegations in any way
13 change the fact that Stonebrae cannot both seek to enforce a contract - and specifically a liquidated
14 damages clause which it voluntarily conceded was a substitute for otherwise speculative damages
15 – and simultaneously seek to evade that same liquidated damages clause by suing the corporate
16 parent for allegedly inducing breach to protect its finances.

17       We respectfully submit that the FAC should be dismissed as to Toll Brothers pursuant to
18 Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), on the grounds that (1) any
19 alleged conduct by Toll Brothers was privileged, and (2) Stonebrae's damages arising out of the
20 alleged breach are governed exclusively by the liquidated damages clause, which cannot be
21 circumvented by suing the corporate parent, Toll Brothers, or any other affiliate of Toll. For the
22 same reasons, Toll Brothers is a fraudulently joined defendant and should be dismissed from this
23 action, pursuant to FRCP 21.

24 **II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY**

25       The FAC alleges that Plaintiff is the "owner and master developer of a residential master
26 planned development" in Hayward, California. FAC, ¶ 7. Plaintiff and Defendant Toll entered
27 into a contract referred to as the Village A Purchase Agreement, dated July 26, 2005, and closed
28 escrow on or about May 1, 2006. *Id*., ¶ 10. On or about May 1, 2006, Stonebrae and Toll entered

DEFENDANT TOLL BROTHERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO
F.R.C.P. 12(b)(6), 21; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1 into a Purchase and Sale Agreement and Joint Escrow Instructions ("the Village B Purchase
2 Agreement" or "the Agreement"). *Id.*, ¶ 13. The purchase price under the Village B Purchase
3 Agreement was $31,854, 200. *Id.*, ¶ 14. Toll deposited in escrow a letter of credit for $4,774,944,
4 representing 14.99% of the total purchase price. *Id.*

5 Plaintiff alleges that Toll conducted its Due Diligence Investigation and "timely provided
6 Plaintiff Stonebrae with its written approval of its Due Diligence Investigation of the lots it was
7 purchasing under the Village B Purchase Agreement." *Id.*, ¶ 15. Plaintiff alleges that the letter of
8 credit became "non-refundable" upon the expiration of the Due Diligence Period.[2] *Id.* Plaintiff
9 alleges that it performed the Pre-Closing Work in reliance upon Defendant's conduct, and incurred
10 in excess of $7 million performing this work.[3] FAC, ¶16.

11 Plaintiff alleges – on information and belief – that while it was performing the Pre-Closing
12 Work, "*Defendant Toll had decided*, in light of the deteriorating financial condition of Toll
13 Brothers, Inc., *and for its own financial reasons*, not to proceed with the close of escrow and the
14 purchase of 56 lots. . . . " *Id.*, ¶ 17 (emphasis added). Plaintiff further alleges that to avoid close
15 of escrow under the Agreement, "*Defendant Toll* – upon information and belief, *at the direction of*
16 *Defendant Toll Brothers, Inc. – has offered a number of pretextual reasons why it purportedly is*
17 *under no obligation to close the escrow*…and on that basis has purported to terminate the Village
18 B Purchase Agreement and has demand that the letter of credit in escrow be released to it." *Id.*,

---

[2] Plaintiff's allegation is contradicted by the FAC. The Deposit (consisting of the initial cash deposit of $250,000 and $4,524,944 letter of credit) is refundable upon Escrow Cancellation, if Stonebrae is the Defaulting Party. *See* Ex. 1, at p. 12, §7.4(a) ("If Escrow is cancelled and Stonebrae is the Defaulting Party, Stonebrae shall pay the Escrow and title fees and cancellation charges and the Escrow Holder (or Stonebrae, if the Deposit has already been released) shall return the Deposit to Builder.") *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555, n. 19 (9th Cir. 1990) (documents attached to a complaint are treated as part of the complaint ); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (factual allegations can be disregarded if contradicted by materials attached as exhibits to complaint).

[3] The purported significance attached to this allegation is without merit, since such work was to "be completed at Stonebrae's sole cost and expense." Ex. 1, at p. 16, §9.1.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  ¶ 20 (emphasis added).[4]

2      Plaintiff asks for declaratory relief against Toll, seeking a judicial determination that
3  "Defendant Toll is obligated to proceed to close escrow or, alternatively, is in default, in which
4  case Plaintiff Stonebrae is entitled to terminate the Village B Purchase Agreement and to instruct
5  the escrow holder to draw upon the letter of credit and release the amount thereof to Plaintiff
6  Stonebrae in accordance with Section 17.1(c)." *Id.*, ¶ 25. Plaintiff's second cause of action, for
7  Breach of Contract against Toll, alleges that Toll breached the Village B Purchase Agreement and
8  seeks recovery of liquidated damages. *Id.*, ¶¶ 28-29.

9      Plaintiff's third cause of action, Inducing Breach of Contract, is its claim against Toll
10 Brothers. *See, e.g.*, FAC, ¶¶ 31-38. Plaintiff alleges that "in response to its severely deteriorating
11 financial condition, Defendant Toll Brothers, Inc. sought to reduce the contractual liabilities on its
12 consolidated financial statements, such as that represented by the Village B Purchase Agreement,
13 and directed its subsidiaries and affiliates to take steps to do so by whatever means necessary,
14 including by breaching the contracts." *Id.*, ¶ 34. Plaintiff alleges, upon information and belief,
15 that Toll "acted pursuant to such directives from Defendant Toll Brothers, Inc." *Id*. Plaintiff goes
16 on to allege that Toll Brothers "intended to and did induce Defendant Toll to breach the Village B
17 Purchase Agreement between Plaintiff Stonebrae and Defendant Toll." *Id.*, ¶ 35.

18     In one of the FAC's new allegations, Plaintiff urges that Toll Brothers' conduct was not
19 privileged, because it was "predominantly, if not exclusively, intended to interfere with and harm
20 Plaintiff Stonebrae's contractual rights" under the Agreement, and was "illegal and improper" in
21 that Toll Brothers "instructed and conspired with Defendant Toll to manufacture a pretext of
22 Plaintiff Stonebrae's purported failures to perform…in an effort to unlawfully circumvent

23

24 [4] The phrase "at the direction of Defendant Toll Brothers, Inc." was not included in this
25 allegation in the original complaint. *See* State Court Complaint, ¶ 20. The claim itself is specious,
   since Exhibit 2 to the FAC (November 28, 2007 letter from Stonebrae to Toll) indicates that Toll
26 had identified numerous deficiencies regarding Stonebrae's Pre-Closing Work (*see* Ex. 2 at p. 3).
27 The letter therefore implies that no "satisfactorily completion of the Pre-Closing Walk-through"
   had occurred. *See* Ex. 1, at p. 9, § 6.2(a).
28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

Defendant Toll's contractual obligations and liabilities" under the Agreement. *Id.*, ¶ 36.

Plaintiff filed the Complaint in the State Court Case on November 29, 2007, and served the Complaint on Toll on December 12, 2007. Toll timely removed this action on January 11, 2008. On January 15, 2008, Plaintiff responded by filing a First Amended Complaint,[5] adding conclusory allegations to the Third Cause of Action, relating to the deficiencies raised in Toll's Removal. Pursuant to stipulation of the parties and orders of this Court, Defendants' deadlines to respond to the FAC were extended to February 20, 2008.

## III. ARGUMENT

The sole cause of action alleged against Toll Brothers is the Third Cause of Action, "Inducing Breach of Contract." Plaintiff's attempt to cure the deficiencies pointed out in Toll's Removal through the new allegations in the FAC only demonstrates that the claim cannot be amended to state a cause of action against Toll Brothers, because the financial interest privilege applies to any alleged conduct by Toll Brothers based on Plaintiff's theory of the case. Moreover, Plaintiff's sole remedy for the alleged injury in this action (Toll's refusal to close escrow and termination of the Agreement) is strictly limited to the liquidated damages clause, and cannot be circumvented by seeking damages for the same alleged injury from Toll Brothers.

### A. Applicable Legal Standards

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

---

[5] The law is unclear as to whether Plaintiff's FAC was properly filed without leave of Court under FRCP 15(a). Where an amended complaint adds new *parties* whose joinder would destroy diversity, courts have ruled that there is no amendment as matter of right under FRCP 15(a), and the discretionary standard of 28 U.S.C. § 1447(e) applies instead. *See, e.g., Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999); *Winner's Circle of Las Vegas, Inc. v. SAMI Franchising, Inc.*, 916 F. Supp. 1024, 1026 (D. Nev. 1996) (finding no amendment "as of right" under 15(a) where amendment would destroy diversity). The Ninth Circuit previously affirmed denial of leave to file an amended complaint where plaintiff's proposed amended complaint attempted to cure the fraudulent joinder of his managers/supervisors by removing the allegation that they acted on the employer's behalf, and instead alleging that they maliciously fired him out of their own self-interest. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1349 (9th Cir. 1987). The district court denied leave, concluding the contradictory allegations were offered in bad faith to destroy removal jurisdiction. Although FRCP 15(a) was not at issue, *McCabe* is instructive as to what, if any, consideration should be given to the FAC, instead of the original complaint.

upon which relief can be granted.  A court may dismiss a complaint as a matter of law for: (1) lack of a cognizable theory, or (2) insufficient facts under a cognizable legal claim.  *Smilecare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir.), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996).  The district court is obliged to presume that the plaintiff's factual allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

However, the Court is not required to accept conclusory allegations in the complaint as true in considering its sufficiency; rather the court should examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff.  *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  *See also, Adams*, 355 F.3d at 1183 (unwarranted inferences are insufficient to defeat a motion to dismiss).  The Court need not accept conclusions cast in the form of facts if those conclusions cannot reasonably be drawn from the pleader's description of what happened.

Under FRCP 21, fraudulently joined defendants can be "dropped" from an action on motion of a party or the court's own motion.  *See, e.g., Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 248-49 (E.D. Cal. 1992) (granting motion to drop insurance agents fraudulently joined in negligent misrepresentation claim).

### B. The FAC's New Conclusory Allegations Both Contradict the Original Complaint and Show that the Financial Interest Privilege Still Applies

Defendant Toll removed this action on the ground that Toll Brothers was a fraudulently joined defendant, and therefore this Court has diversity jurisdiction over the action.  Toll's Removal pointed out that Toll Brothers' alleged general directive to its subsidiaries and affiliates "to reduce contractual liabilities" could not be tortious inducement as a matter of law, because such a claim for relief requires intent to breach the specific contract.[6]  The Removal also stated

---

[6] *See* Removal at pp. 3-4.  A cause of action for inducing a breach of contract requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual (footnote continued)

1  that even if Stonebrae could amend the claim, the financial interest privilege appeared on the face
2  of the Complaint and barred any claim against Toll Brothers.  *See* Removal at pp. 5-9.
3      Two court days after Toll removed the action, Plaintiff filed its First Amended Complaint.
4  As set forth below, Plaintiff's new allegations in the Third Cause of Action consist of conclusory
5  statements which purport to cure the deficiencies noted in the Removal:

|  | **Complaint** | *First Amended Complaint* **(modifications in italics)** |
|---|---|---|
| ¶ 30-33 | [no changes] | |
| ¶ 34 | "Plaintiff Stonebrae is informed and believes, and on that basis alleges, that in response to its severely deteriorating financial condition, Defendant Toll Brothers, Inc. sought to reduce its contractual liabilities on its consolidated financial statements, such as that represented by the Village B Purchase Agreement, and directed its subsidiaries and affiliates to do so. Plaintiff Stonebrae is further informed and believes, and on that basis alleges, that subsidiaries and affiliates of Defendant Toll Brothers, Inc., including Defendant Toll, acted pursuant to such directives from Defendant Toll Brothers, Inc." | "Plaintiff Stonebrae is informed and believes, and on that basis alleges, that in response to its severely deteriorating financial condition, Defendant Toll Brothers, Inc. sought to reduce its contractual liabilities on its consolidated financial statements, such as that represented by the Village B Purchase Agreement, and directed its subsidiaries and affiliates to do so *by whatever means necessary, including by breaching the contracts*.  Plaintiff Stonebrae is further informed and believes, and on that basis alleges, that subsidiaries and affiliates of Defendant Toll Brothers, Inc., including Defendant Toll, acted pursuant to such directives from Defendant Toll Brothers, Inc." |
| ¶ 35 | As hereinabove alleged, Defendant Toll breached the Village B Purchase Agreement. | *Defendant Toll Brothers, Inc. intended to and did induce Defendant Toll to breach the Village B Purchase Agreement between Plaintiff Stonebrae and Defendant Toll.* |
| ¶36 | As a direct and proximate result of Defendant Toll Brothers, Inc.'s conduct, and the resulting breach of the Village B Purchase Agreement, | *Defendant Toll Brothers, Inc.'s conduct alleged herein was not privileged in that it was: (1) predominantly, if not exclusively, intended to interfere with* |

---

relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Pacific Gas & Elec. Co. v. Bear Sterns & Co.*, 50 Cal. 3d 1118, 1126 (1990). To satisfy the third element, defendant must have "intended to affect the contract of a specific person," and intended not only the acts which constituted the interference, but intended to cause the interference itself.  *Ramona Manor Convalescent Hosp. v. Care Enterprises, et al.,* 177 Cal. App. 3d 1120, 1130-33 (1986) ("[t]he essential thing is the *purpose to cause the result*.") (emphasis original).

| | Plaintiff Stonebrae has been damaged in an amount to be proven at trial. | *and harm Plaintiff Stonebrae's contractual rights under the Village B Purchase Agreement, and (2) illegal and improper in that, upon information and belief, Defendant Toll Brothers, Inc. instructed and conspired with Defendant Toll to manufacture a pretext of Plaintiff Stonebrae's purported failures to perform (as alleged above in paragraphs 20 and 23) in an effort to unlawfully circumvent Defendant Toll's contractual obligations and liabilities under the Village B Purchase Agreement.* |
|---|---|---|
| ¶37 | [no ¶ 37 in Complaint] | Same as ¶ 35 of the Complaint |
| ¶38 | [no ¶ 38 in Complaint] | Same as ¶ 36 of Complaint |

The Court is not required to accept the FAC's new allegations under these circumstances.[7] But even if the Court chose to do so, Plaintiff's theory regarding Toll Brothers <u>still</u> necessarily invokes the financial interest privilege as a bar to the tortious inducement claim. Plaintiff alleges:

(1) Toll Brothers' deteriorating financial condition motivated Toll to breach the Agreement with Stonebrae (¶ 17);

(2) Toll Brothers' alleged direction to its subsidiaries and affiliates to reduce contractual liabilities "by whatever means necessary, including by breaching the contracts" was solely motivated by and done "*in response to its severely deteriorating financial condition.*"[8] (¶ 34); and

(3) Toll and Toll Brothers allegedly conspired to manufacture a pretext for breach in order to "circumvent Defendant Toll's *contractual obligations and liabilities under the Village B Purchase Agreement.*" (¶ 36).

---

[7] Plaintiff's new conclusory allegations that Toll Brothers intentionally acted to induce a breach of the contract at issue contradict Plaintiff's asserted theory of the case: "*Defendant Toll had decided*, in light of the deteriorating financial condition of Toll Brothers, Inc., and for its own financial reasons, not to proceed with the close of escrow." ¶ 17. Conclusory allegations which cannot be reasonably drawn from plaintiff's description of what happened need not be accepted by the Court. *See*, *e.g.*, *Holden*, 978 F.2d at 1121; *McGlinchy*, 845 F.2d at 810. In light of the questionable Rule 11 basis for these new allegations and contradiction to Plaintiff's claim that Toll decided not to proceed with close of escrow, the allegations should be rejected.

[8] Plaintiff even includes information from Toll Brothers' November 8, 2007 Form 8-K to support its theory of motive. *See* FAC, ¶ 18 (a) – (d).

DEFENDANT TOLL BROTHERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6), 21; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  Thus, <u>the sum total of Plaintiff's allegations regarding Toll Brothers and its conduct with respect

2  to the contract is that Toll Brothers "act[ed] to protect [its] interest from being prejudiced by the

3  relation,"</u> within the meaning of the financial interest privilege.  Plaintiff alleges no other purpose

4  – improper or otherwise – for which Toll Brothers purportedly induced a breach of this contract.

5  The privilege appears on the face of the complaint as a matter of law, and therefore dismissal of

6  the FAC and of Toll Brothers is proper.  *See McCabe v. General Foods Corp.*, 811 F.2d at 1339

7  (affirming district court order denying remand and eliminating individual managers from wrongful

8  termination action where privilege appeared on face of complaint).

### 1. Plaintiff's New Allegations Fail to Avoid the Privilege

10  Plaintiff's new allegations do not avoid the financial interest privilege evident from the

11  face of the FAC, because Plaintiff's fundamental theory – that Toll Brothers induced a breach of

12  the contract due to its own deteriorating financial condition and need to reduce contractual

13  liabilities – is in and of itself privileged.[9]

14  The FAC proffers two newly minted theories as to why the privilege does not apply:

15  (1) Toll Brothers' conduct was predominately intended to interfere with and harm Plaintiff's rights

16  under the contract, and (2) the conduct was illegal and improper conduct because Toll Brothers

17  "instructed and conspired" with Toll to "manufacture a pretext" for breach of the Agreement.

18  FAC, ¶ 36.  Neither theory obviates the conclusion that the motivation plead in the FAC is

19  inherently privileged.

20  Plaintiff's first theory is irrelevant to privilege, as it only alleges the legal requirement of

21  intent set forth in *Ramona Manor*: that Toll Brothers not only intended the acts constituting

22  interference, but intended to cause the interference itself.  177 Cal. App. 3d at 1130-31 ("[t]he

23  essential thing is the *purpose to cause the result*." (emphasis original).  This intention, even if true,

24  does not amount to improper purpose, because Toll Brothers' "predominant purpose" and

---

[9]  *See Ritchy v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998) (affirming denial of remand motion on fraudulent joinder grounds, where statute of limitations defense appeared on face of complaint); *McClure*, 811 F.2d at 1339 (same, where privilege appeared on face of complaint).

motivation, according to Plaintiff itself, was to reduce contractual liabilities of its subsidiaries.

Plaintiff's second contention, that Toll Brothers' alleged conduct was illegal and improper because Toll Brothers conspired with Toll to manufacture a pretext for breaching the contract, also fails to negate the privilege. Plaintiff's characterization aside,[10] the conduct alleged to be "illegal and improper" (conspiring with Toll to create a pretext for breach a contract) is neither illegal nor improper. Plaintiff offers no facts to support the claim of illegal conduct, or than the reference to a conspiracy. However, the U.S. Supreme Court has held that a parent corporation and its wholly owned subsidiary are not legally capable of conspiring. *Copperweld Corp., et al. v. Independence Tube Corp*. 467 U.S. 752 (1984) (in context of conspiracy for purposes of Section 1 of the Sherman Act). The Court stated that the concept of conspiracy and the notion that "conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" lacks meaning in the context of a parent and wholly owned subsidiary relationship, because

> "..in reality a parent and a wholly owned subsidiary always have a 'unity of purpose or a common design.' They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests."

*Id*. at 770 (internal citations omitted).

This reasoning has been adopted in the context of whether a parent is privileged to induce its wholly owned subsidiary to breach a contract. *See, e.g., Waste Conversion Systems, Inc. v. Greenstone Industries, Inc., et al.*, 33 S.W. 3d 779, 782 (Tenn., 2000) (citing *Copperweld* and stating: "Even though the Court provided this reasoning in the context of an antitrust case, we believe the underlying relationship between two corporations would be no different in a tortious interference of contract case."). The Second Circuit observed that "[c]ourts in other states have uniformly found that a parent company does not engage in tortious conduct when it directs its wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic

---

[10] The Court is required to consider the facts alleged, not Plaintiff's legal conclusion as to those facts. *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003).

interest to perform." *Boulevard Assoc. v. Sovereign Hotels, Inc.*, 72 F.3d 1029 (2d Cir. 1995); *see also Waste Conversion Systems,* 33 S.W. 3d 779 (Tenn., 2000) (finding parent corporation is privileged to interfere with contracts of wholly owned subsidiary "absent clear evidence that the parent employed wrongful means or acted with an improper purpose" and citing decisions from 11th, 8th, 3rd, and 2nd Circuits, Minnesota and Alaska district courts).  The alleged conduct falls well short of anything illegal or improper.  Indeed, the very nature of the parent/subsidiary relationship supports of finding of privilege, where as here, the parent allegedly directs the subsidiary to act in a manner consistent with overall financial health of the enterprise.

Even assuming Toll Brothers and Toll created a pretextual reason to terminate, terminating a contract for a pretextual reason, or even in bad faith, is not illegal or improper. *See Applied Equip. Corp. v. Litton Saudi Arabia*, 7 Cal. 4th 503, 516 (1994) ("the law generally does not distinguish between good and bad motives for breaching a contract"); *Cf. Ilkhchooyi v. Best*, 37 Cal. App. 4th 395, 412 (1995) ("The motive of the party breaching a contract has no bearing on the scope of damages recoverable."); *Freeman & Mills, Inc. v. Belcher Oil Co*., 11 Cal. 4th 85, 98 (1995) (no distinction between "willful" breaches of contract and other breaches) (internal citations omitted). Nor does such conduct come close to "improper means." *See* Restatement (Second) Torts, § 767, cmt. c. (improper means include predatory practices, inducements, physical violence, fraudulent misrepresentation and threats of illegal conduct.)  No facts in the FAC suggest any improper means were employed by Toll Brothers in making its purported general directive, or in "inducing" Toll to breach its contract.  Nor does it allege facts to suggest that the "interfering conduct" was carried out by threats of violence, prosecution or misrepresentations, or that it was motivated by anything other than a valid financial interest of a parent corporation in the dealings of its wholly owned subsidiary.  The purpose for creating a pretext to breach the contract – according to the FAC – was part of Toll Brothers' effort to reduce contractual liabilities.  No matter how that purpose is dressed up by Stonebrae, it remains the same: privileged.

### 2. The Cases Relied Upon in Plaintiff's Motion for Remand Do Not Negate the Financial Interest Privilege

Plaintiff's motion to remand argues that the financial interest privilege cannot serve as a

1  basis for dismissing its claim against Toll Brothers, relying on three cases in which the facts

2  establishing application of the privilege were <u>not</u> on the face of the complaint. These cases are

3  therefore inapposite, as explained herein.

4        In *Culcal Stylco, Inc. v. Vornado, Inc*., 26 Cal. App. 3d 879 (1972), the Complaint alleged

5  that the defendants induced Food Giant to terminate license agreements, require plaintiffs to

6  vacate the licensed premises, and to place the shoe departments involved in charge of a competing

7  group of corporations. *Id*. at 881. The Court stated that the Food Giant's parent corporation *did*

8  come within the protection of Restatement of Torts section 769, but held that the allegations that

9  the parent's intentional conduct was willful, wanton, malicious, oppressive and fraudulent

10  suggested the absence of the privilege. *Id*. at 883-84. No such allegations are made here.

11        In *Collins v. Vickter Manor, Inc*., 47 Cal. 2d 875 (1957), the court allowed a cause of

12  action against the two officers/directors of a corporation for inducing the corporation to breach its

13  contract, finding that the directors "wrongfully, intentionally, and without justification prevented

14  the corporation from depositing in the escrow those documents necessary in order to close the

15  escrow." *Id*. at 879-80. The court stated that whether or not defendants believed the course of

16  action to be in the best interests of the corporation did not "affirmatively appear on the face of the

17  complaint." *Id*. at 883. Here, conversely, Plaintiff's theory is that Toll Brothers directed Toll to

18  breach the contract in accordance with the overall goal of reducing contractual liabilities for Toll

19  Brothers and its wholly-owned subsidiaries. Therefore the privilege does "affirmatively appear on

20  the face of the complaint."

21        In *Kozlowsky v. Westminster National Bank*, 6 Cal. App. 3d 593 (1970), the court

22  considered whether a cause of action for interference could be stated against a majority

23  stockholder/director, and stated: "[w]e cannot say, as a matter of law, that, by virtue of [his]

24  position as majority stockholder and director, his interference with the business relationships of

25  the Bank would be, *under all conceivable circumstances*, privileged." *Id*. at 600 (emphasis

26  added). Here, it is the *circumstances pled by Plaintiff* that give rise to privilege.

27        Plaintiff has not and cannot provide a single authority overruling a demurrer or denying a

28  motion to dismiss where, as here, a parent corporation's proper motive for interfering with

contracts of its subsidiary is pleaded on the face of the complaint. In its zeal to bolster its contract claims by detailing a purported motive for breach of contract—Toll Brothers' financial difficulties—Plaintiff pleaded directly into the motive and means that are uniformly accepted as within the financial interest privilege. The proposition that a privilege to interference lies is widely accepted, especially where the acts complained of are intended to protect the alleged tortfeasor's financial interest.[11] This is borne out by Plaintiff's own authorities in its motion to remand, none of which, as detailed above, involve specific allegations that the alleged tortfeasor was acting in furtherance and to protect its own financial interests.

### C. Plaintiff Cannot Evade the Liquidated Damages Provision By Manufacturing A Claim Against Toll's Corporate Parent, Toll Brothers

In addition to the bar of the financial interest privilege, on the facts pleaded by Plaintiff itself, the inducement claim against Toll Brothers is precluded by the liquidated damages clause in Plaintiff's contract with Toll. Stonebrae's sole remedy for Toll's failure to close escrow is set forth in the expansive liquidated damages clause in section 17.1(c)(ii) of the Agreement:

> "the parties expressly understand and agree (a) that Stonebrae's actual damages resulting from such builder default would be substantial but extremely difficult to ascertain and (b) [the liquidated damages sum] is a reasonable sum, considering all of the circumstances existing as of the agreement date."

*See* FAC, Ex. 1 at p.34.

Pursuant to Sections 1676 and 1671 of the California Civil Code, liquated damages clauses are presumed valid, and no supporting contractual language is needed. Civil Code §1671(b). Thus, the *voluntary* language included in the liquidated damages clause at issue herein, expressly stating that damages would be difficult to ascertain and that the liquidated damage amount constitutes a reasonable sum, is a party admission by Plaintiff as to the stated facts. Fed. R. Evid. 1007. Moreover, Plaintiff has ratified the clause by requesting a judicial determination that the contract has been breached and that Plaintiff is entitled to the liquidated damage sum. (Prayer for

---

[11] *See* 45 Am. Jur. 2nd, Interference ¶ 29; *see also* Restatement (Second) Torts § 767; *Cf.* Restatement (Second) Torts § 769 *and* Restatement (First) Torts § 769.

13    Case No. 08-CV-00221 EMC
DEFENDANT TOLL BROTHERS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6), 21; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Relief, ¶2). Plaintiff is estopped from simultaneously attempting to evade the very same liquidated damages clause by suing a corporate parent or other corporate affiliate on conclusory allegations of inducement and necessarily arguing that the liquidated damages provision does *not* reasonably and accurately set forth the measure of damages. That they are trying to do so by suing a corporate parent or affiliate of the contracting party, rather than the contracting party itself, is a distinction without a difference on the allegations presented here.

Although in general, a party's right to sue in contract does not bar the right to sue a third party tortfeasor for inducing breach of contract, here there is a complete unity of interest plead on the face of the FAC. The purpose of permitting recovery for inducing breach of contract is to deter *third parties* – true third parties – from interfering with contracts and promoting the stability of contracts. As to a parent and its wholly owned subsidiary, the financial interest privilege ensures that interference merely to protect financial solvency, is privileged – not wrongful – conduct. Only interference intended to gain an unfair advantage or employs an unfair means is actionable. *See* Section III-B-1, *supra*; *Applied Equip. Corp. v. Litton Saudi Arabia*, 7 Cal. 4th 503, 514 (1994) ("The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance.")

A corporate parent directing its subsidiary to breach a contract in order to preserve the parent's or the subsidiary's finances is, as a matter of law neither an improper means nor seeking unfair advantage. In contrast, a party claiming damages by the improper means of pleading a cause of action in tort which actually sounds in contract is not permitted to avoid contractual limitations on damages. *See Feary v. Aaron Burglar Alarm, Inc*., 32 Cal. App. 3d 553, 558 (1973) (rejecting plaintiff's attempt to seek actual damages on the basis of the trial court's finding that defendants were negligent in performing their duties under the contract). Here, Plaintiff claims damages from Toll Brothers based upon alleged conduct which induced Toll to breach the Village B Purchase Agreement. *No injury is alleged other than the resulting breach.* By seeking actual or compensatory damages for the breach from Toll Brothers, Plaintiff simply seeks to recover in tort what it cannot recover in contract.

To allow a claim alleging interference by a corporate parent in circumstances such as this

1 is, in substance, to allow a party to selectively avoid the terms of the very contract which it seeks
2 to enforce, specifically, by avoiding the liquidated damages clause. The inevitable consequence
3 would be to effectively render liquidated damages clauses voidable at the whim of a contracting
4 party who expressly agreed to the limitation of liability in exchange for the potential recovery of a
5 reasonable liquidated sum. Such a result would reflect neither the law nor the intent of the parties
6 entering into contracts in which they agree to liquidated damages in the event of a breach.

7 Because Plaintiff cannot establish any harm, injury or damages apart from the alleged
8 breach of contract by a wholly-owned subsidiary at the direction of the parent corporation, for
9 purposes of reducing contractual liabilities, the liquidated damages clause is Plaintiff's sole
10 remedy, and no cause of action can stand against Toll Brothers.

## IV.    CONCLUSION

For the foregoing reasons, no claim for relief can be stated against Toll Brothers, and dismissal is proper under FRCP 12(b)(6). Alternatively, dismissal of Toll Brothers from this action is proper pursuant to FRCP 21.

DATED: February 20, 2008                REGIONAL COUNSEL FOR TOLL BROS., INC.
                                        Timothy J. Hoban

                                        SIDEMAN & BANCROFT LLP
                                        Donald J. Putterman
                                        Margaret A. Ziemianek
                                        Ryan J. Meckfessel


                                        By:    /s/ *Margaret A. Ziemianek*
                                             Margaret A. Ziemianek
                                        Attorneys for Defendants
                                        TOLL BROS., INC., a Pennsylvania corporation, and
                                        TOLL BROTHERS, INC., a Delaware corporation

10644\528304v1

10644\528304v1