SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PHILIP F. ATKINS-PATTENSON, Cal. Bar No. 94901
ARTHUR J. FRIEDMAN, Cal. Bar No. 160867
CRAIG A. PINEDO, Cal. Bar No. 191337
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947
E-Mail:       patkinspattenson@sheppardmullin.com
             afriedman@sheppardmullin.com
             cpinedo@sheppardmullin.com

COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
655 Montgomery Street, Suite 1700
San Francisco, California 94111
Telephone:    415-788-3030
Facsimile:    415-882-7040
E-Mail:     jdc@coopkirk.com

Attorneys for Plaintiff
STONEBRAE L.P.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| STONEBRAE L.P., a Delaware limited partnership, <br><br>                 Plaintiff, <br><br>     v. <br><br> TOLL BROS., INC.; a Pennsylvania corporation; TOLL BROTHERS, INC., a Delaware corporation; DOES 1 through 15, inclusive, <br><br>               Defendants. | Case No. 08-CV-00221 EMC <br><br> **PLAINTIFF STONEBRAE L.P.'S OPPOSITION TO DEFENDANT TOLL BROTHERS, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6), 21** <br><br> Date:     March 26, 2008 <br> Time:    10:30 a.m. <br> Crtrm.:  C, 15th Floor <br><br> Before the Hon. Edward M. Chen |

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. RELEVANT FACTS ................................................................................................. 2

    A.    The Parties ................................................................................................. 2

    B.    The Stonebrae Development ........................................................................ 2

    C.    The Dealings Between Plaintiff Stonebrae and Defendant Toll Bros............. 3

    D.    The Village B Purchase Agreement .............................................................. 4

    E.    Toll Bros. Refuses To Close Escrow On The Village B Purchase Agreement As Its Parent's Financial Situation Deteriorates .......................... 5

    F.    Stonebrae Files Its Complaint And Toll Bros. Removes To This Court......... 6

    G.    Stonebrae Moves To Remand ...................................................................... 7

III. ARGUMENT ........................................................................................................... 7

    A.    Legal Standard............................................................................................. 7

    B.    The Court Lacks Jurisdiction To Hear Toll's Motion ................................... 9

    C.    Privilege Aside, Toll Does Not Dispute Stonebrae Has Adequately Alleged An Inducing Breach Of Contract Claim Against Toll Under California Law ............................................................................................ 10

    D.    Toll Bros. Cannot Establish That Toll's Conduct Was Facially Privileged.................................................................................................. 10

    E.    The Liquidated Damages Clause Does Not Apply To Toll ......................... 15

IV. CONCLUSION ...................................................................................................... 17

W02-WEST:5CP\400722057.1

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>FEDERAL CASES</u>

4

*Aguon-Schulte v. Guam Election Commission*,
   469 F.3d 1236 (9th Cir. 2006)......................................................................... 10

5

6

*Ely Valley Mines Inc. v. Hartford Acci. & Indem. Co.*,
   644 F.2d 1310 (9th Cir. 1981)........................................................................... 9

7

*Fredrickson v. Consol Supply Corp.*,
   2006 U.S. Dist. LEXIS 16838 (D. Or. March 21, 2006) ............................... 16

8

9

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992)......................................................................... 8, 13

10

*Hamilton Materials Inc. v. Dow Chem. Corp.*,
   494 F.3d 1203 (9th Cir. 2007)........................................................................... 9

11

12

*Macey v. Allstate Prop. & Cas. Ins. Co.*,
   220 F. Supp. 2d 1116 (N.D. Cal. 2002) ........................................................... 9

13

*Moore v. Permanente Medical Group, Inc.*,
   981 F.2d 443 (9th Cir. 1992)........................................................................... 15

14

15

*Nickelberry v. DaimlerChrysler Corp.*,
   2006 U.S. Dist. LEXIS 22545 (N.D. Cal. April 17, 2006) .............................. 9

16

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998)............................................................................. 9

17

18

*Plute v. Roadway Package Sys., Inc.*,
   141 F. Supp. 2d 1005 (N.D. Cal. 2001) ........................................................... 9

19

*Prize Frize, Inc. v. Matrix, Inc.*,
   167 F.3d 1261 (9th Cir. 1999)........................................................................... 9

20

21

*Ritchey v. Upjohn Drug Co.*,
   139 F.3d 1313 (9th Cir. 1998)........................................................................... 8

22

*Sanchez v. Monumental Life Ins. Co.*,
   102 F.3d 398 (9th Cir. 1996)............................................................................. 8

23

24

*Sessions v. Chrysler*,
   517 F.2d 759 (9th Cir. 1975)....................................................................... 11-12

25

*Smith v. Aon Risk Svcs.*,
   1997 U.S. App. LEXIS 33618 (9th Cir. Nov. 17, 1997) ............................... 16

26

<u>STATE CASES</u>

27

*Collins v. Vikter Manor, Inc.*,
   47 Cal. 2d 875 (1957)............................................................... 11-12, 14-15

28

-ii-

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

<u>STATE CASES (Cont'd)</u>

*Culcal Stylco v. Vornado, Inc.,*
    26 Cal. App. 3d 879 (1972)........................................................................... 11-12, 14-15

*Kozlowsky v. Westminster National Bank,*
    6 Cal. App. 3d 593 (1970)...............................................................................12, 14-15

*Perkins v. Superior Court,*
    117 Cal. App. 3d 1 (1981)................................................................................... 11

*Ramona Manor Convalescent Hospital v. Care Ent.,*
    177 Cal. App. 3d 1120 (1986)............................................................................ 12

<u>FEDERAL STATUTES</u>

28 U.S.C. § 1332............................................................................................................. 8

28 U.S.C. § 1447....................................................................................................... 1, 9, 15

Federal Rules of Civil Procedure
    Rule 12(b)(6)............................................................................................................ 11

<u>MISCELLANEOUS</u>

Restatement (Second) of Torts § 769 (1979)..................................................... 2-3, 13-15

-iii-

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

Plaintiff Stonebrae L.P. ("Stonebrae") respectfully submits this memorandum in opposition to the motion to dismiss filed by defendant Toll Brothers, Inc. ("Toll").

# I.

## INTRODUCTION AND SUMMARY OF ARGUMENT

As a threshold matter, this Court lacks jurisdiction to hear Toll's motion to dismiss Stonebrae's First Amended Complaint (the "FAC") for the reasons set forth in Stonebrae's earlier-filed remand motion.  Specifically:  the removal of this case to this Court by Toll's subsidiary Toll Bros., Inc. ("Toll Bros.") was procedurally defective and Toll Bros. cannot satisfy its burden to prove Toll was "fraudulently joined" in any event. Not surprisingly, and despite bearing the burden to overcome these basic jurisdictional roadblocks to its motion, Toll ignores them entirely.  The Court therefore need not address Toll's motion and can and should end the inquiry there.  But even if the Court does address Toll's motion to dismiss the FAC, it should deny Toll's motion for several reasons.

*First*, Toll relies on the privilege recognized by Section 769 of the Restatement (Second) of Torts.  Toll Bros. relied on this same privilege in its removal papers, but as Stonebrae showed in its remand papers (filed a month prior to the instant motion by Toll), Section 769 has *no* application here.  That section applies only to interference with *prospective* contractual relations claims, while the FAC alleges that Toll induced breach of an *existing* contract between Stonebrae and Toll Bros.

*Second*, Toll argues that the FAC must be dismissed because Stonebrae allegedly cannot show that Toll employed wrongful means.  There are several flaws to this argument, including that Toll has reversed the burden (*i.e.*, Toll must show that it did not employ wrongful means and that this is apparent on the face of the FAC), ignores the FAC's allegations of wrongful means (FAC §§ 20, 23 and 36), and relies for its "unity of purpose" argument on the *Copperweld* decision, even though it is a Section 1 Sherman Act case and has never been applied outside of that context by any California court.

*Finally,* Toll's argument that the liquidated damages clause in the contract between Stonebrae and Toll Bros. immunizes Toll against a claim for inducement of

-1-

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

breach of that contract is unsupported and unsupportable.  Not only is that not the law, Toll's failure to cite a single case for this extraordinary proposition is telling.

As Stonebrae shows, even assuming this Court has jurisdiction to hear Toll's motion, when Toll's baseless charges of Rule 11 violations and bad faith are put to the side where they properly belong, Toll's motion to dismiss the FAC should be denied in its entirety.

## II.

## RELEVANT FACTS

### A.    The Parties

Plaintiff Stonebrae is a limited partnership organized under the laws of the State of Delaware.  (Stonebrae's First Amended Complaint ("FAC"), ¶ 1.)  Stonebrae is the owner and master developer of a residential master planned community located atop the Walpert Ridge in Hayward, California (the "Stonebrae Development").  (*Id.* ¶¶ 1, 7.)

Defendant Toll Bros. is a corporation organized under the laws of the State of Pennsylvania.  (FAC ¶¶ 2-3.)  Toll Bros. is a wholly-owned subsidiary of Toll, which is a publicly-held corporation organized under the laws of the State of Delaware and whose shares trade on the NYSE, and which is engaged in the business of residential construction and advertises itself as "America's Luxury Home Builder."  (*Id.*)

### B.    The Stonebrae Development

The Stonebrae Development consists of approximately 1,600 acres (of which approximately 1,100 are dedicated as permanent open space), to be developed in phases with approximately 600 residential building lots, a 650-student public elementary school for the Hayward Unified School District, adjacent sports facilities to be operated by the Hayward Area Recreation District, an 18-hole golf course, tennis courts, and clubhouse and related amenities (collectively, the "Stonebrae Development").  (FAC ¶ 7.)

Stonebrae obtained and vested the land use entitlements, a long-term Development Agreement with the City of Hayward, as well as the various federal, state and local permits for construction of the Stonebrae Development.  Under the development

1   plan for the Stonebrae Development, Stonebrae would be responsible for mass grading,

2   infrastructure improvements, construction of the school, the golf course, tennis courts, one

3   or more clubhouses, and related amenities.  Stonebrae would not be responsible for the

4   construction and sale of the individual residences; rather, Stonebrae would primarily sell

5   "finished lots" to merchant builders, such as Defendant Toll Bros., who would build the

6   homes and sell them to the public.  (FAC ¶ 8.)

7           As noted above, the Development Agreement contemplates that the

8   Stonebrae Development was to be built in phases.  The first phase of the residential

9   development, commonly known as "Village A," consists of 214 single family residential

10  lots, with the second phase, known as "Village B," consisting of 149 single family

11  residential lots.  (FAC ¶ 9.)

12  **C.      The Dealings Between Plaintiff Stonebrae and Defendant Toll Bros.**

13          On July 26, 2005, Stonebrae and Toll Bros. executed that certain Purchase

14  and Sale Agreement and Joint Escrow Instructions (the "Village A Purchase Agreement"),

15  pursuant to which Toll Bros. agreed to purchase from Stonebrae 102 of the 214 lots located

16  within Village A.  The close of escrow under the Village A Purchase Agreement occurred

17  on or about May 1, 2006.  (FAC ¶ 10.)

18          By virtue of the negotiation and execution of the Village A Purchase

19  Agreement, and the close of the escrow provided for therein, Toll Bros. was able to, and

20  did, fully familiarize itself with the Stonebrae Development, the entitlements and permits

21  therefor, the work performed by Stonebrae, and perform its "Due Diligence Investigation"

22  as provided in Section 4.1, which included "all matters" that Toll "deemed relevant" to its

23  purchase of the 102 lots under the Village A Purchase Agreement.  (FAC ¶ 11.)

24          Based on its knowledge of the Stonebrae Development from the Village A

25  Purchase Agreement, Toll Bros. negotiated with Stonebrae to purchase additional lots

26  located in the second phase of the development, Village B.  (FAC ¶ 12.)

27

28

-3-

**D.     The Village B Purchase Agreement**

On or about May 1, 2006, roughly contemporaneous with the close of escrow under the Village A Purchase Agreement, Toll Bros. and Stonebrae executed that certain Purchase and Sale Agreement and Joint Escrow Instruction (the "Village B Purchase Agreement"), pursuant to which Toll Bros. agreed to purchase 56 lots for the construction and sale of single family residences.  The Village B Purchase Agreement was subsequently amended by a First Amendment, dated May 31, 2006, and a Second Amendment, dated June 2, 2006.  (FAC ¶ 13.)  A true and correct copy of the Village B Purchase Agreement, as amended, is attached as Exhibit 1 to the FAC.

The purchase price to be paid by Toll Bros. to Stonebrae at the close of escrow under the Village B Purchase Agreement is $31,854,200.  Pursuant to Section 2.2 of the Village B Purchase Agreement, Toll Bros. deposited in escrow a letter of credit in the amount of $4,774,944.  (FAC ¶ 14.)

Pursuant to Section 4, Toll Bros. was entitled to and did conduct its "Due Diligence Investigation" with respect to "all matters" that Defendant Toll "deemed relevant" with respect to its purchase of the 56 lots under the Village B Purchase Agreement.  While Toll Bros. had the legal right during the "Due Diligence Period" not to proceed with the Village B Purchase Agreement for any reason, pursuant to Section 4.6, Toll Bros. timely provided Stonebrae with its written approval of its Due Diligence Investigation of the lots it was purchasing under the Village B Purchase Agreement. Under the Village B Purchase Agreement, upon the expiration of the "Due Diligence Period," the letter of credit became non-refundable and served as the earnest money deposit, and Toll Bros. became obligated to close escrow and purchase the 56 lots from Stonebrae except only if Toll Bros.' conditions precedent to the close of escrow pursuant to Section 6.2 were not satisfied.  (FAC ¶ 15.)

In reliance upon Toll Bros.' approval of its "Due Diligence Investigation," the expiration of the "Due Diligence Period" and its decision to proceed with the purchase of the 56 lots, Stonebrae proceeded with performance of the "Stonebrae Pre-Closing

1  Work" as described more particularly in Exhibit H to the Village B Purchase Agreement.

2  Stonebrae estimates that it has incurred in excess of $7 million performing the "Stonebrae

3  Pre-Closing Work" and otherwise preparing to complete the close of escrow.  (FAC ¶ 16.)

4  **E.      Toll Bros. Refuses To Close Escrow On The Village B Purchase Agreement As**

5  **Its Parent's Financial Situation Deteriorates**

6          While Stonebrae was incurring these substantial sums to complete the

7  "Stonebrae Pre-Closing Work" and otherwise preparing for the close of escrow in

8  accordance with the Village B Purchase Agreement, Toll Bros. had decided not to proceed

9  with the close of escrow and the purchase of the 56 lots, which would have required Toll

10  Bros. to pay Stonebrae the sum of $31,854,200.  (FAC ¶ 17.)

11          On or about November 8, 2007, Toll filed its Form 8-K, announcing its

12  preliminary 4th Quarter and FY 2007 results:

13          (a)      For the 4th Quarter, home building revenues declined 36% compared

14  to FY 2006 4th Quarter, and backlog declined 36% from the same comparable period;

15          (b)      For the 4th Quarter, gross signed contracts declined 38% compared to

16  FY 2006 4th Quarter, and the number of homes under contract declined 33% from the

17  same comparable period;

18          (c)      For the 4th Quarter, net signed contracts declined 35% in the number

19  of homes, and 48% in dollars, compared to the 4th Quarter of FY 2006; and

20          (d)      For FY 2007, home building revenues declined 24% and net signed

21  contracts declined 33% compared with FY 2006's year-end results.  (FAC ¶ 18.)

22          Meanwhile, at the Stonebrae Development, Toll Bros. has a substantial

23  amount of inventory (both completed and partially completed) in Village A, and has

24  suffered many cancellations of contracts to purchase its homes in Village A.  As of the

25  time the FAC was filed, Toll Bros. had completed the sale of only 21 homes on the

26  102 residential Village A lots it purchased from Stonebrae.  (FAC ¶ 19.)

27          To avoid the close of escrow under the Village B Purchase Agreement, Toll

28  Bros. – at the express direction of Toll – offered a number of pretextual reasons why it

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

1  purportedly is under no obligation to close the escrow, acquire the 56 lots from Stonebrae

2  and pay Stonebrae the purchase price of $31,854,200, and on that basis has purported to

3  terminate the Village B Purchase Agreement and has demanded that the letter of credit in

4  escrow be released to it.  (FAC ¶ 20.)

5  **F.    Stonebrae Files Its Complaint And Toll Bros. Removes To This Court**

6           On November 29, 2007, Stonebrae filed this lawsuit in the Alameda County

7  Superior Court, asserting three causes of action:  (1) declaratory relief (against Toll Bros.),

8  (2) breach of contract (against Toll Bros.), and (3) inducing breach of contract (against

9  Toll).  Stonebrae served the summons and complaint on Toll Bros. and Toll on December

10 12 and December 13, 2007, respectively.  (Dkt. No. 14, Exs. B & C.)

11          On January 11, 2008, Toll Bros. removed this action to this Court.  Toll did

12 not join in the removal or file any consent to the removal.  (Dkt. No. 1.)

13          On January 15, 2008, Stonebrae filed its First Amended Complaint.  In

14 support of its third claim for relief against Toll, Stonebrae alleged:  (1) the Village B

15 Purchase Agreement is a valid and enforceable contract between Toll Bros. and Stonebrae;

16 (2) Toll knew or was otherwise aware of the existence of the Village B Purchase

17 Agreement; (3) Toll Bros. breached the Village B Purchase Agreement, and (4) Stonebrae

18 was damaged by the resulting breach.  (FAC ¶¶ 31, 32, 37 & 38.)

19          Stonebrae also specifically alleged that Toll "intended to and did induce Toll

20 Bros. to breach the Village B Purchase Agreement."  (FAC ¶ 35.)  Stonebrae further

21 alleged that, in response to its severely deteriorating financial condition, Toll sought to

22 reduce the contractual liabilities on its consolidated financial statements, such as that

23 represented by the Village B Purchase Agreement, and directed its subsidiaries and

24 affiliates (including Toll Bros.) to take steps to do so by whatever means necessary,

25 including by breaching the contracts giving rise to those liabilities, and that Toll Bros.

26 acted pursuant to such directives from Toll.  (FAC ¶¶ 34.)

27          Stonebrae also specifically alleged that Toll's conduct was "not privileged" in

28 that it was predominantly, if not exclusively, intended to interfere with and harm

Stonebrae's contractual rights under the Village B Purchase Agreement, and was illegal and improper in that Toll instructed and conspired with Toll Bros. to manufacture a pretext of Stonebrae's purported failures to perform (as alleged in paragraphs 20 and 23 of the FAC) in an effort to unlawfully circumvent Toll Bros.' contractual obligations and liabilities under the Village B Purchase Agreement.  (FAC ¶ 36.)

**G.    Stonebrae Moves To Remand**

On January 31, 2008, one month before Toll filed its motion to dismiss, Stonebrae moved to remand this case back to the Alameda County Superior Court.  In its remand motion, Stonebrae explained that the removal was procedurally defective because Toll did not join or consent in the removal, the "financial interest privilege" asserted by Toll Bros. in its removal papers does not apply, and that Stonebrae has adequately alleged the elements for inducing breach of contract against Toll.  (Dkt. No. 13.)

As we show below, even though Stonebrae's arguments go to the threshold issue of whether this Court can even consider Toll's motion, Toll ignores them entirely, relying instead on baseless charges of Rule 11 violations and bad faith and patently inapposite legal authority.  For this reason and others, Toll's motion should be denied.

**III.**

**<u>ARGUMENT</u>**

**A.    Legal Standard**

Toll moves to dismiss based on Rule 12(b)(6) and "as a fraudulently joined defendant pursuant to [Rule] 21."  (Dkt. No. 22.)  Toll set its motion for hearing the same time as Stonebrae's earlier-filed motion to remand.  As Stonebrae argues in that motion, the removal of this action was improper because this Court lacks diversity jurisdiction over this case, including jurisdiction to hear Toll's motion to dismiss.  Thus, the Court must first address Stonebrae's motion to determine if it has jurisdiction to hear Toll's motion.  If jurisdiction is lacking, Toll's motion is moot.  If, however, the Court determines it has diversity jurisdiction because Toll was fraudulently joined, the Court can decide Toll's motion.  Thus, all roads lead to the same standard:  whether Toll was fraudulently joined.

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

1    As this Court well knows, jurisdiction based on diversity of citizenship

2  requires complete diversity of citizenship, i.e., plaintiff must be a citizen of a different state

3  than all of the defendants.  (28 U.S.C. § 1332.)  The party asserting jurisdiction faces a

4  "strong presumption" against jurisdiction and bears the burden of establishing that removal

5  based on diversity jurisdiction was proper.  (*Sanchez v. Monumental Life Ins. Co.*, 102

6  F.3d 398, 403-04 (9th Cir. 1996).)  "Federal jurisdiction must be rejected if there is any

7  doubt as to the right of removal in the first instance."  (*Gaus v. Miles, Inc*., 980 F.2d 564,

8  566 (9th Cir. 1992).)

9    Moreover, to establish that Toll was fraudulently joined, Toll Bros. carries

10  the heavy burden of establishing the absence of *any* possibility of recovery.  (*Ritchey v.

11  Upjohn Drug Co*., 139 F.3d 1313, 1318 (9th Cir. 1998).)  To meet this burden, Toll Bros.

12  is required to prove that Stonebrae has not stated a claim against Toll and, more

13  importantly, that, under California law, Stonebrae "would not be afforded leave to amend

14  [the] complaint to address the purported pleading deficienc[ies] on which [the removing

15  defendant] relies."  (*Nickelberry v. DaimlerChrysler Corp.*, 2006 U.S. Dist. LEXIS 22545,

16  *4-5 (N.D. Cal. April 17, 2006) [remanding case back to Alameda County Superior Court

17  because the removing defendant failed to prove plaintiff could not amend her complaint to

18  cure the alleged pleading deficiency].)  Consistent with the requirement on a remand

19  motion that any failure to state a claim against the non-diverse defendant be "obvious,"

20  "[f]raudulent joinder must be proven by clear and convincing evidence."  (*Hamilton

21  Materials Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007).)

22    Applying these principles to this case, it is abundantly clear that Toll Bros.

23  cannot meet its burden to show, based on clear and convincing evidence, that Stonebrae's

24  FAC has not properly alleged a cause of action against Toll and cannot possibly do so.[1]

25

26  [1] In a footnote, Toll suggests Stonebrae *might* have needed the Court's permission to file its
FAC.  (Toll Mot. at p. 5, n. 5.)  Not so.  Under Fed.R.Civ.P. 15(a), a plaintiff may

27  amend its complaint once "as of course" before a responsive pleading is filed.
Neither Toll nor Toll Bros. answered or otherwise responded to Stonebrae's initial

28  Complaint.  Instead, Toll Bros. removed this action on January 11, 2008.  In any

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

**B.     The Court Lacks Jurisdiction To Hear Toll's Motion**

It is axiomatic that this Court lacks jurisdiction to hear Toll's motion to dismiss unless this action was properly removed in the first place.  As Stonebrae established in its motion to remand, however, Toll did not join in or file written consent to the removal notice, as required.  As a result, the removal notice filed by Toll Bros. was procedurally improper, thereby depriving this Court of jurisdiction to hear this motion.

The removal statute requires all defendants to join in or file written consent to the removal notice.  (*Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998) ["All defendants must join a notice of removal"]; *Ely Valley Mines Inc. v. Hartford Acci. & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981) ["[A]ll defendants who may properly join in the removal petition must join."].)  Failure to do so renders the removal notice procedurally defective and the case subject to remand.  (28 U.S.C. § 1447(c) [remand may be ordered for "any defect" in the removal procedure]; *Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999) [remanding case to state court based on failure of co-defendants to join in removal]; *Aguon-Schulte v. Guam Election Commission*, 469 F.3d 1236, 1240 (9th Cir. 2006) [failure to join all defendants in notice of removal "qualifies as a 'defect' in a removal procedure" under section 1447(c)].)

Here, although Toll was properly served with this lawsuit on December 13, 2007, it did not join in the notice of removal filed by Toll Bros.  (*See* Toll Bros. Notice of Removal at 1:2 ["Please take notice that *Defendant Toll Bros., Inc.* ("Toll") hereby removes to the United States District Court…."].)  Nor did Toll file any separate written joinder or consent to removal.  Accordingly, because the removal notice was facially defective, removal was improper and the Court lacks jurisdiction to hear Toll's motion.

---

event, Toll's argument is based on the false premise that the FAC "adds new parties."  It does not.  Both Toll and Toll Bros. were named in both complaints.

-9-

**C.**    **Privilege Aside, Toll Does Not Dispute Stonebrae Has Adequately Alleged An Inducing Breach Of Contract Claim Against Toll Under California Law**

Not only was its notice of removal defective on its face, Toll has dropped any pretense that Stonebrae has not adequately alleged the required elements for an inducing breach of contract claim against Toll, *i.e.*, that the contract between Toll Bros. and Stonebrae is valid, that Toll knew of the contract, that Toll intended to induce a breach or disruption of the contract, that Toll Bros. breached the contract, and that Stonebrae was damaged by the resulting breach. Consequently, Toll's motion to dismiss the FAC must be denied unless it can show its alleged conduct was facially privileged or, alternatively, that the liquidated damage clause somehow bars Stonebrae's claim. It cannot come close.

**D.**    **Toll Cannot Establish That Its Alleged Conduct Was Facially Privileged**

Toll's lead argument is that it cannot be held liable for inducing Toll Bros. to breach the Village B Purchase Agreement based on the privilege conferred by Section 769 of the Restatement (Second) of Torts, and that this privilege is apparent on the face of the FAC. (Toll Mot. at p. 6.) Toll is wrong on both counts.

**1.**    **Section 769 Does Not Apply**

As a threshold matter, Section 769 does not apply. As Stonebrae pointed out in its remand motion, filed and served on Toll weeks before Toll filed its motion to dismiss, Toll Bros. misquoted Section 769 in its removal papers. Specifically, Toll Bros. omitted the portion of that section expressly limiting its applicability to cases alleging interference with "prospective contractual relation[s]." The complete text of the current version of Section 769 of the Restatement (Second) of Torts reads as follows:

> One who, having a financial interest in the business of a third person intentionally causes that person *not to enter into a prospective contractual relation with another*, does not interfere improperly with the other's relation if he:
>
> (a)  does not employ wrongful means, and
>
> (b)  acts to protect his interest from being prejudiced by the relation. (Restatement (Second) of Torts § 769 (1979) [emphasis added].)

-10-

1       Stonebrae further explained that because it does not allege Toll interfered

2  with any prospective contractual relation – rather, it alleges Toll induced Toll Bros. to

3  *breach* its existing contract with Stonebrae (FAC ¶¶ 35-38) – the rule stated in section 769

4  does not apply.  (Restatement (Second) of Torts § 769 cmt. b ["The rule stated in this

5  Section does not apply to the causing of a breach of contract."].)

6       Toll ignores this argument entirely, conceding section 769 does not apply.

7       **2.     Toll Failed To Satisfy Its Burden To Prove Facially Privileged Conduct**

8       Nevertheless, Toll continues to assert section 769 in support of its "privilege"

9  defense.  (Toll Mot. at p. 13, n. 11.)  As the moving party, Toll has the burden to prove its

10  alleged conduct is "facially privileged."  At a minimum, this requires Toll to specify the

11  legal authority for the privilege it is asserting, list the required elements, and explain how

12  the allegations satisfy all the required elements.  Toll does none of these things.

13       First, although the privilege is Toll's lead argument and purportedly "widely

14  accepted," Toll offers no legal support for its privilege until page 13 of its brief.  Even

15  then, and buried in a footnote, Toll offers nothing more than a hodge-podge of "*see*," "*see*

16  *also*," and "*cf.*" cites from various sections of the Restatement of Torts (both First and

17  Second versions) and from Am. Jur. 2d.  Making vague assertions of a "financial interest

18  privilege" based on secondary sources consisting of different elements, qualified by signals

19  showing the sources do not directly state the proposition for which they are offered, and

20  devoid of authority showing which (if any) of Toll's secondary sources have been adopted

21  by California courts, is woefully insufficient to satisfy Toll's burden.

22       Second, although each of the purportedly analogous sources offered by Toll

23  in support of its privilege defense has different elements, Toll lists none of them.

24       Third, Toll makes no effort to explain how the allegations contained in the

25  TAC satisfy all the required elements of each (or any) of the sources cited in footnote 11.

26       Having acknowledged by their actions that section 769 does not apply,

27  defendants Toll and Toll Bros. could and should have saved Stonebrae and the Court the

28  needless time and expense of having to address this issue by withdrawing the notice of

-11-

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

removal and refraining from filing their redundant motion to dismiss.  Instead, they elected to impose further expense on Stonebrae and the Court without any good faith basis for doing so.  Stonebrae suspects they will continue to do so by opposing Stonebrae's remand motion.  Stonebrae asks the Court to keep this in mind in deciding whether to award attorney's fees and costs in favor of Stonebrae in connection with its remand motion.

### 3.    Toll Fails To Show Its Conduct Was Facially Proper

Next, Toll argues Stonebrae failed to "negate the privilege" – just which privilege, Toll will not say – because Stonebrae cannot show Toll employed wrongful means.  But Toll has the burden exactly backwards.  Assuming Toll is still relying on Section 769, it is Toll's burden to show it "did not employ wrongful means," not Stonebrae's burden to "negate" this showing.  Toll cannot do so.

Toll makes two arguments as to why its alleged conduct is neither illegal nor improper.  Neither argument has merit.  First, based on the *Copperweld* case and decisions from other jurisdictions, Toll argues that, even if Toll and Toll Bros. conspired to manufacture pretextual reasons for Toll Bros. to avoid its contractual obligations to Stonebrae, a parent and its subsidiary are legally incapable of conspiring.  This argument goes nowhere.  *Copperweld* held a parent and its subsidiary are legally incapable of conspiring for purposes of Section 1 of the Sherman Act only.  No California state or federal case has extended this holding outside the antitrust context, and Toll offers no reason for this Court to break new ground in this case.  In addition, Toll's reliance on *Copperweld* and its "complete unity of purpose" analysis is fundamentally at odds with Toll's own characterization of Stonebrae's theory in this case:  that Toll Bros. breached the contract for its own financial reasons.  (Toll Br. at p. 8, n. 7.)

Moreover, the FAC alleges Toll employed two improper means, neither of which Toll addresses in its motion.  The first is by inducing Toll Bros. to breach the contract.  "Inducing" is improper means under the Restatement.  (Toll Br. at p. 11.)  The second is by manufacturing pretextual (i.e., false) reasons for terminating the contract.  A misrepresentation is also an improper means under the Restatement.  (*Id.*)

-12-

Second, Toll argues that a contracting party's motive for breaching a contract is irrelevant. (Toll Br. at p. 11.) This misses the point entirely. The party asserting the privilege here is Toll, a non-party to the contract, whose motive is relevant for purposes of the privilege it is asserting, as Toll itself has acknowledged. (*Id.* at pp. 9-10.)

**4.    Toll's Attempt To Distinguish Stonebrae's Cases Is Unavailing**

In its remand motion, Stonebrae cited several California cases addressing the so-called "financial interest privilege" of Section 769 in the context of a claim for inducing breach of contract against a corporate parent (or other owner) of a contracting party. All of those cases rejected application of the privilege based on allegations virtually identical to the allegations contained in the FAC. (Dkt. No. 13 at pp. 11-15.) Toll's half-hearted attempt to distinguish those cases, while offering none of its own, is telling.

For instance, in *Culcal Stylco v. Vornado, Inc.* (1972) 26 Cal.App.3d 879, the court held a prior version of Section 769 of the Restatement of Torts did not apply based on plaintiff's allegation that the parent "with knowledge of the terms of the license agreements 'intentionally and without justification'…induced [the subsidiary]" to terminate its contracts with plaintiff. Far from establishing the privilege on the face of the pleadings, these allegations "suggest an absence of privilege." (*Culcal*, 26 Cal.App.3d at 883.)

Toll argues "no such allegations are made here." (Toll Mot. at p. 12.) Toll is mistaken. Stonebrae alleges: (1) Toll had knowledge of the contract between Stonebrae and Toll Bros., (2) Toll induced Toll Bros. to breach the contract, (3) Toll intended to interfere with the contract, and (4) Toll's interference was not privileged. (FAC ¶¶ 31-38.)

Next, Toll attempts to distinguish *Collins* on the ground that, even assuming the privilege defendants were asserting in that case existed, any such privilege did not affirmatively appear on the face of the pleadings. That is our case exactly. As noted above, Toll has yet to specify what privilege it is asserting, much less explain how any such privilege appears on the face of the pleadings. In the absence of such a showing, the allegations that defendants "wrongfully, intentionally, and without justification" induced a contracting party to breach its contract with plaintiff control.

1    Finally, Toll attempts to distinguish *Kozlowski* based on that court's

2  statement that it could not say "as a matter of law, that, by virtue of [his] position as

3  majority stockholder and director, his interference with the business relationships of the

4  Bank would be, under all conceivable circumstances, privileged."  But Toll ignores the

5  circumstance in which the court held it could (and did) determine defendant's conduct was

6  *not privileged*:  where plaintiff alleges the defendant "intentionally" and "without

7  justification" caused the bank to breach its contract with plaintiff.  According to the court,

8  this allegation "imports that defendant was not acting for the protection of his legitimate

9  interests as a shareholder" – the same interest Toll asserts as parent to Toll Bros.

10    Toll also attempts to distinguish all of these cases because none occurred in

11  the context of a pleading challenge.  (Toll Mot. at p. 12.)  Again, not so – they all did.

12  (*Culcal*, 26 Cal.App.3d at 883 [reversing trial court's dismissal of plaintiff's complaint on

13  demurrer]; *Collins*, 47 Cal.2d at 883 [reversing dismissal of plaintiff's inducement claim

14  on demurrer based on section 769 because "any…such privilege…does not affirmatively

15  appear on the face of the complaint"]; *Kozlowski*, 6 Cal.App.3d at 600 [reversing order

16  sustaining demurrer to inducement claim with instructions to overrule demurrer].)

17    We note that the burden on Toll is even higher than the burden on the

18  defendants failed to meet in *Culcal*, *Collins*, and *Kozlowski*, for two basic reasons.  First, in

19  those cases, the court applied a version of Section 769 *that did not limit its applicability to*

20  *prospective contractual relations*.  Yet, even then, those cases all held, based on similar

21  allegations, that (1) the plaintiff had adequately stated a claim for inducing breach of

22  contract and (2) that any privilege was not apparent on the face of the pleadings.  Of

23  course, now Section 769 expressly does not apply to actions involving breach of contract.

24    Second, *Culcal*, *Collins*, and *Kozlowski* addressed the privilege in the context

25  of a demurrer and all held that the plaintiffs in those cases had adequately alleged an

26  inducing breach of contract claim.  Here, Toll's motion to dismiss is set for hearing the

27  same day as Stonebrae's motion to remand.  Because the Court only has jurisdiction to hear

28  Toll's motion if the action were properly removed, the Court must first decide Stonebrae's

-14-

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

1  motion to remand.  On a motion to remand, unlike on demurrer, there is a "strong

2  presumption" against removal and the removing party (Toll Bros.) must prove, based on

3  clear and convincing evidence, the absence of *any* possibility that Stonebrae could prevail

4  on its inducing breach of contract claim against Toll, as plead, or upon any amendment.

5  The above cases show Toll Bros. has not met, and could not possibly meet its burden.  As

6  a result, the Court should grant Stonebrae's remand motion, thereby mooting Toll's motion.

7  **E.      The Liquidated Damages Clause Does Not Apply To Toll**

8           Finally, based primarily on vague considerations of "estoppel," "ratification,"

9  and purported "admissions" which cannot be found anywhere in the FAC, Toll attempts to

10  construct an argument that Stonebrae's inducing breach of contract claim against Toll is

11  somehow barred by the liquidated damages clause (LCD) contained in the Village B

12  Purchase Agreement between Stonebrae and Toll Bros.  This argument lacks merit.

13           We begin with Toll's acknowledgement that a contracting "party's right to

14  sue in contract does not bar the right to sue a third party tortfeasor for inducing breach of

15  contract."  (Toll Mot. at 14:7-8.)  Toll goes on to argue that a different rule applies to it,

16  however, because it is "not a stranger" to the contract at issue here and therefore is not a

17  "true third party."  (*Id*. at 14:10.)  Nonsense.  *Culcal*, *Collins* and *Kozlowski* all upheld a

18  claim against a corporate parent (or other business owner) for inducing its subsidiary (or

19  other contracting entity) to breach its contract.  Toll's attempt to carve out a different rule

20  for corporate parents simply cannot be reconciled with these cases.

21           Toll's cases do not hold otherwise.  In *Woods v. Fox Broadcasting Sub., Inc.*

22  (2005) 129 Cal.App.4th 344, the court rejected a corporate defendant's (Fox) argument that

23  it was "not a stranger" to the underlying contract because it owned nearly half of one of the

24  contracting parties (Fox Family) and therefore could not be held liable for interference

25  with Fox Family's contract with the plaintiffs – i.e., the same argument Toll makes here.

26  Fox did not assert any privilege on demurrer "[b]ecause any claim of privilege here would

27  not have been apparent from the face of the [challenged pleading]."  (*Id*. at 351, n. 7.)

28  Nevertheless, the trial court sustained its demurrer to the interference claims based on a

-15-

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

1  quote from *Allied Equip. Corp. v. Litton Saudi Arabia* (1994) 7 Cal.4th 503, that the duty

2  not to interfere with a contract "falls only on strangers," the same quote relied on by Toll.

3          The Court of Appeal reversed, holding that the above quote from *Allied*

4  *Equipment* was "dicta at best" as that case "never considered the immunity of someone

5  who was not a party to the contract." (*Woods*, 129 Cal.App.4th at 352.)  The court

6  explained that when *Applied Equipment* used the term "stranger to a contract," it did so

7  interchangeably with the terms "noncontracting parties" and "third parties." (*Id*. at 353.)

8  *Applied Equipment* was therefore distinguishable from the case before it because "neither

9  *Applied Equipment* nor any of the authorities it relied upon when discussing the liability of

10  third parties arose from factual settings like the one here – where a powerful shareholder

11  allegedly interferes in a contract between the corporation whose shares it owns and some

12  other person or entity." (*Id*.)  In such cases, the rule set forth in the *Collins* line of cases

13  applies.  (*Id*.)  As noted above, those cases hold that the owners of a business entity can be

14  held liable for interfering with that entity's contracts, bringing the analysis full circle.

15          Nor does Toll's other cited case – *Feary v. Aaron Burglar Alarm, Inc.* (1973)

16  32 Cal.App.3d 553 – apply.  In *Feary*, the court held the liquidated damages clause

17  prevented the plaintiff from recovering against the defendant in tort *because the defendant*

18  *was also a party to the contract containing the liquidated damages clause*.  As Toll states

19  in its motion, "Toll Brothers is not and has never been a party to this contract." (Toll Mot.

20  at 1:12-13.)  It is not Stonebrae who is "pick[ing] and choos[ing] those contract provisions

21  it seeks to enforce, and those it prefers to evade." (*Id*. at 1:4-5.)  Non-party Toll is.

22          Moreover, by statute, an LCD only limits the damages available for a breach

23  of contract.  (Civ. Code § 1671 [statute applicable to provisions "in the contract liquidating

24  the damages for the breach of the contract"].)  Under California law, the measure of

25  damages for *tortious* inducement include contract damages, but are not so limited.  For

26  instance, unlike the measure of damage for breach of contract, the tort measure of damages

27  is not limited to damages contemplated by the parties when the contract is made, but rather

28  "allows recovery for unforeseen expenses," including punitive damages.  (*Duff v.*

PLAINTIFF'S MEM IN OPPOSITION TO DEFENDANT
TOLL BROTHERS, INC.'S MOTION TO DISMISS

1 *Engelberg* (1965) 237 Cal.App.2d 505, 508; Civ. Code § 3333 [tort measure of damages is

2 all detriment proximately caused "whether it could have been anticipated or not"]; *Sole*

3 *Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 233 [measure of damages

4 for inducing breach of contract include the pecuniary loss of the benefits of the contract,

5 consequential damages, emotional distress or harm to reputation, and punitive damages].)

6         More to the point, even if Toll could show the measure of damages for

7 tortious inducement is limited to the liquidated damage amount, it does not follow that

8 Stonebrae has no claim against Toll.  The opposite is true:  "[I]t is now agreed that the fact

9 that there is an available action against the party who breaks the contract is no defense to

10 the one who induces the breach, since the two are joint wrongdoers, and each is liable for

11 the loss."  (*Duff*, 237 Cal.App.2d at 508 [quoting Professor Prosser].)

12         Thus, because Toll offers no authority for its novel theory that Stonebrae's

13 inducing breach of contract claim against non-party Toll is barred by the LCD in the

14 contract – indeed, all authority points to the opposite conclusion – this argument also fails.

**IV.**

**CONCLUSION**

17         Based on the foregoing – because Toll has not met and cannot meet its

18 burden to prove it joined in the removal of this action by its subsidiary Toll Bros. – the

19 Court should deny Toll's motion to dismiss as moot.  Alternatively, because Toll has not

20 shown the allegations against it are "facially privileged" or barred by the liquidated

21 damage clause contained in the contract between Toll Bros. and Stonebrae, the Court

22 should deny Toll's motion to dismiss for this additional reason.

23 Dated:  March 5, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        /s/  Philip F. Atkins-Pattenson
PHILIP F. ATKINS-PATTENSON
Attorneys for Plaintiff
STONEBRAE L.P.

-17-