SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
    Including Professional Corporations
PHILIP F. ATKINS-PATTENSON, Cal. Bar No. 94901
ARTHUR J. FRIEDMAN, Cal. Bar No. 160867
CRAIG A. PINEDO, Cal. Bar No. 191337
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947
E-Mail: patkinspattenson@sheppardmullin.com
          afriedman@sheppardmullin.com
          cpinedo@sheppardmullin.com

COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
655 Montgomery Street, Suite 1700
San Francisco, California 94111
Telephone: 415-788-3030
Facsimile: 415-882-7040
E-Mail: jdc@coopkirk.com

Attorneys for Plaintiff
STONEBRAE L.P.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| STONEBRAE L.P., a Delaware limited partnership,<br><br>              Plaintiff,<br><br>   v.<br><br>TOLL BROS., INC.; a Pennsylvania corporation; TOLL BROTHERS, INC., a Delaware corporation; DOES 1 through 15, inclusive,<br><br>             Defendants. | Case No. 08-CV-00221 EMC<br><br>**PLAINTIFF STONEBRAE L.P.'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND**<br><br>Date: March 26, 2008<br>Time: 10:30 a.m.<br>Crtrm.: C, 15th Floor<br><br>Before the Hon. Edward M. Chen |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

II. ARGUMENT ................................................................................................................ 2

    A. The Correct Legal Standard ............................................................................ 2

    B. The Court Lacks Jurisdiction To Hear Toll's Motion ..................................... 3

    C. Stonebrae Has Adequately Alleged An Inducing Breach Of Contract Claim ................................................................................................................ 4

    D. Toll Bros. Still Cannot Prove Toll's Alleged Conduct Was Facially Privileged ......................................................................................................... 4

        1. The Evolution of Toll/Toll Bros.' Privilege Defense ........................... 5

        2. Sections 769 Of The Restatement Of Torts Does Not Apply .............. 6

        3. Toll Bros.' Attempt To Distinguish Stonebrae's Cases Is Unavailing ............................................................................................. 7

        4. Toll's Conduct Was Not Facially Privileged Under Section 767 Either .................................................................................................... 9

    E. The Liquidated Damages Clause Has No Bearing On Stonebrae's Inducing Breach Of Contract Claim Against Toll ......................................... 12

    F. This Court Should Exercise Its Discretion To Award Stonebrae Its Fees ................................................................................................................ 14

III. CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

Gardner v. UICI,
  508 F.3d 559 (9th Cir. 2007)......................................................................................... 15

Gaus v. Miles, Inc.,
  980 F.2d 564 (9th Cir. 1992)........................................................................................... 3

Hamilton Mat. Inc. v. Dow Chem. Corp.,
  494 F.3d 1203 (9th Cir. 2007)......................................................................................... 3

Kruso v. Int'l Telephone & Telegraph Corp.,
  872 F.2d 1416 (9th Cir. 1989)......................................................................................... 4

Nickelberry v. DaimlerChrysler Corp.,
  2006 U.S. Dist. LEXIS 22545 (N.D. Cal. April 17, 2006) .........................................3-4

Parrino v. FHP, Inc.,
  146 F.3d 699 (9th Cir. 1998)........................................................................................... 4

Ritchey v. Upjohn Drug Co.,
  139 F.3d 1313 (9th Cir. 1998)......................................................................................... 3

Sanchez v. Monumental Life Ins. Co.,
  102 F.3d 398 (9th Cir. 1996)........................................................................................... 3

Western Asbestos Settlement Trust v. Zurich-American Ins. Co.,
  No. C04-5263 SI, 2005 U.S. Dist. LEXIS 6130, at *12
  (N.D. Cal. March 30, 2005) ..............................................................................1, 9-10, 12

## CALIFORNIA CASES

Culcal Stylco v. Vornado, Inc.,
  26 Cal.App.3d 879 (1972) .........................................................................................7-9, 13

Duff v. Engelberg,
  237 Cal.App.2d 505 (1965)............................................................................................ 14

Sole Energy Co. v. Petrominerals Corp.
  128 Cal.App.4th 212 (2005) ......................................................................................... 14

Woods v. Fox Broadcasting Sub., Inc.
  129 Cal.App.4th 344 (2005) ......................................................................................... 13

## OTHER STATE CASES

Bendix Corp. v. Adams,
  610 P.2d 24 (Alaska 1980)............................................................................................... 6

## FEDERAL STATUTES

15 U.S.C.
 § 1 .................................................................................................................................. 6

28 U.S.C.
 § 1446(a) .................................................................................................................... 9, 12

## CALIFORNIA STATUTES

Civil Code
 § 1671 .............................................................................................................................. 14
 § 3333 .............................................................................................................................. 14

## COURT RULES

Federal Rules of Civil Procedure
 Rule 11 ..................................................................................................................... 2, 6, 9
 Rule 12(b)(6) ..................................................................................................................... 2
 Rule 15(a) .......................................................................................................................... 4

## MISCELLANEOUS

45 Am. Jur. 2d ........................................................................................................................ 5

Restatement (Second) of Torts
 § 767 .................................................................................................................. 1, 5-6, 9-12
   comment b ................................................................................................................ 10
   comment d ................................................................................................................ 11
   comment e ................................................................................................................ 11
   comment f ................................................................................................................. 11
   comment h ................................................................................................................ 12
   comment i ................................................................................................................. 12
 § 769 ..................................................................................................................... 1-2, 5-7, 9, 15
   comment b .................................................................................................................. 5

-iii-
W02-WEST:5CP\400742517.1     PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND

Plaintiff Stonebrae L.P. ("Stonebrae") respectfully submits this reply memorandum in support of its motion to remand this action back to the Alameda County Superior Court, where it was initially filed and where it properly belongs.

## I.
## INTRODUCTION AND SUMMARY OF ARGUMENT

In its haste to deprive Stonebrae of its choice of forum, defendant Toll Bros., Inc. ("Toll Bros.") removed this case without determining if there was any good faith basis to do so. Had Toll Bros. done so, it would have learned that its lead argument based on section 769 of the Restatement of Torts fails because that section, by its terms, applies only to claims for interference with *prospective* contractual relations, not *existing* contractual relations, which is what Stonebrae alleges in this case. Toll Bros. does not dispute this.

Stripped of its lead argument, Toll Bros. offers a handful of other, mostly new arguments to justify its removal. None of these arguments come anywhere close to satisfying its heavy burden on this remand motion to prove that, under well-settled California law, it is obvious that Stonebrae has not and could not plead an inducing breach of contract claim against Toll Brothers, Inc. ("Toll").

*First*, Toll Bros. continues to assert its "privilege" argument, although now based on section 767 of the Restatement (Second) of Torts. Toll Bros. is grasping at straws. Section 767 does not purport to confer any privilege – it expressly disclaims doing so – and Toll Bros. makes no attempt to show that even one of the seven non-exhaustive factors to be considered in determining its applicability is apparent on the face of Stonebrae's First Amended Complaint ("FAC"). In addition, Toll Bros. did not unveil this argument until months after it removed this case – still another reason this Court should reject it. (*Western Asbestos Settlement Trust v. Zurich-American Ins. Co*., No. C04-5263 SI, 2005 U.S. Dist. LEXIS 6130, at *12 (N.D. Cal. March 30, 2005) [refusing to consider new grounds for removal raised in opposition to remand motion].)

*Second*, although the FAC is the operative pleading, Toll Bros. focuses on the allegations in the initial Complaint. The proper inquiry on a motion to remand,

however, is whether Stonebrae has stated *or could amend the complaint to state a claim for relief against Toll*. As Stonebrae shows below, and Toll Bros. does not seriously dispute, the FAC adequately alleges the required elements for an inducing breach of contract claim against Toll. For Toll Bros. to argue otherwise is to ignore the FAC.

*Finally,* Toll Bros.' new argument that the liquidated damages clause in its contract with Stonebrae immunizes *Toll*, a non-party to the contract, against a claim for inducement of breach of that contract is unsupported and unsupportable. Not so. Even if the Court could consider this new argument, which it cannot, California courts have routinely held that the availability of a breach of contract claim against the breaching party *does not* immunize third parties for inducing the breach.

In short, when Toll Bros.' baseless charges of Rule 11 violations and bad faith are put to the side where they properly belong, the Court will see that Toll Bros. lacked any good faith basis to remove this action and to continue to prosecute its removal. Instead of withdrawing its removal, Toll Bros. dug in its heels, continued to assert the "financial interest privilege" of section 769 knowing full well it did not apply, and asserted new and equally meritless arguments in an attempt to justify its removal after the fact. Regrettably, one of the nation's largest homebuilders has signaled early on that it intends to use its size and resources to pursue a scorched earth approach to this case – just the type of litigation tactics the statute authorizing fees and costs on remand was designed to deter.

Accordingly, Stonebrae requests the Court grant this motion to remand and award fees and costs in favor of Stonebrae and against Toll Bros.

## II.

## ARGUMENT

### A.     The Correct Legal Standard

Toll Bros. misstates the burden on this motion as merely "whether the claim [against Toll] 'is sufficient to withstand a dismissal motion under Rule 12(b)(6).'" (Toll Bros. Opp. at 5:21-24.) Not so. On a motion to remand, the removing party faces the following presumptions and burdens that do not apply on a motion to dismiss:

(1) The party asserting jurisdiction faces a "strong presumption" against jurisdiction. (*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).)

(2) Courts strictly construe the removal statute against removal jurisdiction. (*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).)

(3) "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." (*Gaus*, 980 F.2d at 566.)

(4) To establish fraudulent joinder, Toll Bros. carries the "heavy burden" of establishing the absence of *any* possibility of recovery against Toll. (*Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).)

(5) To meet its burden, Toll Bros. is required to prove that Stonebrae has not stated a claim against Toll, such failure is "obvious" according to well-settled California law, and, more importantly, that, under California law, Stonebrae "would not be afforded leave to amend [the] complaint to address the purported pleading deficienc[ies] on which [the removing defendant] relies." (*Nickelberry v. DaimlerChrysler Corp.*, 2006 U.S. Dist. LEXIS 22545, *4-5 (N.D. Cal. April 17, 2006) [remanding case back to Alameda County Superior Court because the removing defendant failed to prove plaintiff could not amend her complaint to cure the alleged pleading deficiency].)

(6) "Fraudulent joinder must be proven by clear and convincing evidence." (*Hamilton Mat. Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007).)

Thus, out of the blocks, Toll Bros. applies the wrong burden and ignores the applicable presumptions, tie-breakers and evidentiary burdens that all favor remand. Applying the correct burden on this remand motion compels the conclusion that Toll Bros. cannot satisfy its burden to prove this Court has jurisdiction under any of its theories.

**B.     The Court Lacks Jurisdiction To Hear Toll's Motion**

Toll does not dispute that it did not consent or join in the removal. Instead, it argues, based on the *United Computer Systems* case, that it was not required to join in the removal because it was fraudulently joined. United Computer Systems does not support Toll Bros.' position. The case quoted by *United Computer Systems* for this proposition

1  (*Emrich*) did not involve fraudulent joinder.  Nor did any of the cases relied on by *Emrich*
2  address whether a named defendant who was properly and timely served with process need
3  not join in the removal based on the argument that it was fraudulently joined.
4        Thus, Toll expects more from *United Computer* and the cases on which it
5  relies than their facts and holdings will allow.  The general rule that "all defendants must
6  join a notice of removal" applies here, rendering the notice of removal procedurally
7  defective.  (*Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998).)

**C.    Stonebrae Has Adequately Alleged An Inducing Breach Of Contract Claim**

9        To prove fraudulent joinder, Toll Bros. must show that the complaint does
10 not state a claim and cannot be amended to do so.  (*Nickelberry*, 2006 U.S. Dist. LEXIS at
11 *4-5.)  Although Toll Bros. argues that the Complaint did not adequately allege intent,
12 elsewhere in its brief it acknowledges, albeit begrudgingly, that the FAC "might" have
13 resolved this alleged deficiency.  In fact, the FAC did just that.  (FAC ¶¶ 31-38.)
14       Toll Bros. cites *Kruso v. Int'l Telephone & Telegraph Corp.*, 872 F.2d 1416,
15 1426, n. 12 (9th Cir. 1989), but that case has no application here.  In *Kruso*, plaintiff
16 moved for reconsideration of the Court's denial of his remand motion based on allegations
17 contained in his *unfiled* "Proposed First Amended Complaint" attached to his motion for
18 reconsideration.  Here, however, Stonebrae *filed* its FAC pursuant to Stonebrae's statutory
19 right under Fed.R.Civ.P. 15(a) to amend its complaint once "as a matter of course" before
20 any responsive pleading was filed.  In a footnote, Toll Bros. suggests this filing *might* have
21 been improper without leave of Court on the ground that leave is required to add new
22 parties.  But, of course, no new parties were added to the FAC:  Toll and Toll Bros. were
23 named in both the original Complaint and the FAC.  Moreover, any doubt about whether
24 the FAC was the operative pleading was erased when Toll Bros. answered it.  (Dkt. 24.)

**D.    Toll Bros. Still Cannot Prove Toll's Alleged Conduct Was Facially Privileged**

26       Toll Bros. continues to argue that Toll cannot, as a matter of law, be held
27 liable for inducing breach of the Village B Purchase Agreement based on the privilege
28

1 conferred by Section 769 of the Restatement (Second) of Torts, and that this privilege is
2 apparent on the face of the FAC.  (Toll Bros. Opp. at p. 7.)  Toll Bros. is still wrong.

### 1. The Evolution of Toll/Toll Bros.' Privilege Defense

Before addressing Toll Bros.' privilege defense on the merits, a brief discussion of the evolution of this argument is helpful to understanding why it fails.

In its removal papers, Toll Bros. argued that Toll was fraudulently joined because Stonebrae's inducing breach of contract claim against Toll was barred by the "financial interest privilege…[a]s set forth in section 769 of the Restatement of Torts." (Dkt. No. 1 at 5:5-6.)  In its remand motion, filed a few weeks later, Stonebrae explained that Toll Bros. had misquoted section 769 by omitting the language expressly limiting its applicability to actions for "prospective contractual relations," and ignoring comment b to section 769 making clear that "[t]he rule stated in this Section does not apply to the causing of a breach of contract." (Restatement (Second) of Torts § 769 cmt. b.)

In its motion to dismiss, filed one month after Stonebrae's remand motion, Toll furiously backpedaled from its previous argument that its alleged wrongdoing was privileged under section 769 by referring vaguely to a "financial interest privilege" that was "widely accepted" and barred Stonebrae's inducing breach of contract claim against Toll.  No mention was made as to the source of the alleged privilege, however, until page 13, where, buried in a footnote and qualified with "*see*," "*see also*," or "*cf.*" signals, Toll cited sections 767 and 769 of the Restatement of Torts, section 769 of the Restatement (Second) of Torts, and paragraph 29 of 45 Am. Jur. 2d.  (Dkt. No. 22 at p. 13, n. 11.)

In its opposition to Toll's motion to dismiss, Stonebrae pointed out that each source stood for a fundamentally different proposition, contained different elements, and, regardless, did not directly state the proposition for which it was being offered.  In addition, and despite bearing the burden to show that it was "obvious" that Toll's alleged wrongdoing is facially privileged, Toll still had not even attempted to show how all or even one of the required elements for any of those sections appear on the face of the FAC.

Now, on its third try, and having blithely levied baseless accusations of Rule 11 violations and bad faith against Stonebrae, Toll Bros. is still in search of authority for its privilege theory. It appears to have settled on some combination of sections 767 and 769 of the Restatement (Second) of Torts. (Toll Bros. Opp. at 9:9-12.) But, as discussed below, neither section supports finding that Toll's alleged misconduct is facially privileged.

**2.    Sections 769 Of The Restatement Of Torts Does Not Apply**

As Stonebrae has argued and Toll and Toll Bros. have yet to dispute, section 769, on its face, expressly limits its applicability to cases alleging interference with "prospective contractual relation[s]." Stonebrae's claim against Toll, however, is and has always been based on breach of an *existing* contract. (Compl. ¶¶ 31-36, FAC ¶¶ 31-38.) This distinction makes all the difference and Toll has yet to show otherwise.[1]

Instead, Toll Bros. skips right past this core defect in its privilege defense and reiterates the argument that Stonebrae failed to negate the privilege under section 769 because Stonebrae cannot show Toll employed wrongful means. But Toll Bros. still has the burden exactly backwards. It is Toll Bros.' burden to show Toll "did not employ wrongful means," not Stonebrae's burden to negate this showing.

Toll Bros. makes the same two arguments Toll made in its motion to dismiss as to why Toll's alleged conduct is not improper. Neither argument has merit.

*First*, Toll Bros. continues to rely on the *Copperweld* case and decisions from other jurisdictions to argue that it is legally incapable of conspiring with its parent Toll. This argument goes nowhere. *Copperweld* held a parent and its subsidiary cannot form a conspiracy for purposes of Section 1 of the Sherman Act. No California state or federal case has extended this holding outside the antitrust context, and Toll Bros. offers no reason for this Court to break new ground in this case. In addition, Toll Bros.' reliance on *Copperweld* and its "complete unity of purpose" analysis is fundamentally at odds with

---

[1] Indeed, in *Bendix Corp. v. Adams*, 610 P.2d 24, 29-30 (Alaska 1980), cited by Toll Bros., the Alaska Supreme Court reiterated that when an existing contract is involved, section 769 of the Restatement of Torts does not apply.

its own characterization of Stonebrae's theory in this case: that Toll Bros. breached the contract for its *own financial reasons*. (Toll Bros. Opp. at 2:10-13.)

*Second*, Toll Bros. argues that a contracting party's motive for breaching a contract is irrelevant. (Toll Bros. Opp. at p. 12.) This argument misses the point entirely. The party asserting the privilege here is Toll, a non-party to the contract, whose motive *is* relevant to the privilege it appears to be asserting, as Toll Bros. itself has acknowledged. (*Id*. at 9:12.)

Moreover, in focusing on the conspiracy allegation, Toll Bros. ignores two separate and independent improper means the FAC alleges Toll employed – both of which Toll Bros. concedes are improper. The first is by inducing Toll Bros. to breach the contract. As Toll Bros. concedes, "inducement" is an improper means. (Toll Bros. Opp. at 12:12-14.) The second is by manufacturing pretextual (*i.e.*, false) reasons for terminating the contract. (FAC ¶ 36.) A misrepresentation is also an improper means under the Restatement. (*Id*.) Both are alleged in the FAC, but ignored by Toll Bros in its opposition.

After three attempts, Toll Bros. and its parent have yet to overcome the basic problem with their privilege theory: section 769 simply does not apply. Try as it might to distract the Court's attention from this point by ignoring it, Toll Bros. cannot escape it. Nor can it ignore that it has failed to show Toll's conduct was facially proper and that the only California cases addressing section 769 in this context cited by either party (*Culcal*, *Collins*, and *Kozlowski*) all upheld an inducing breach of contract claim against the parent (or other owner) of the contracting party and rejected the privilege. In *Culcal*, the court refused to apply the privilege to a claim against a parent company for inducing its subsidiary to breach its contract based on the allegation that the parent intended to interfere with the contract and did so without any justification – our case exactly. Toll Bros. has yet to offer any persuasive reason for distinguishing *Culcal*, *Collins* and *Kozlowski*.

**3.    Toll Bros.' Attempt To Distinguish Stonebrae's Cases Is Unavailing**

In its remand motion, Stonebrae cited several California cases addressing the so-called "financial interest privilege" of Section 769 in the context of a claim for inducing

breach of contract against a corporate parent (or other owner) of a contracting party.  All of those cases rejected application of the privilege based on allegations virtually identical to the allegations contained in the FAC.  (Dkt. No. 13 at pp. 11-15.)

Toll Bros. argues none of the cases cited by Stonebrae are applicable because "the privilege in those cases did not appear on the face of the complaint."  Exactly.  And *the reason* those courts held the privilege did not appear on the face of the complaints in those cases is the same reason the privilege does not appear on the face of the FAC:  the existence of allegations that the parent (or other owner) "intended" to induce its subsidiary (or other entity) to breach the contract with plaintiff and did so "without justification."

For instance, in *Culcal Stylco v. Vornado, Inc.* (1972) 26 Cal.App.3d 879, the court, on demurrer, addressed plaintiff's allegation that the parent "with knowledge of the terms of the license agreements 'intentionally and without justification'…induced [the subsidiary]" to terminate its contracts with plaintiff.  The court reversed the trial court's order dismissing plaintiff's inducing breach of contract claim on the pleadings because these allegations "suggest an absence of privilege." (*Culcal*, 26 Cal.App.3d at 883.)  The same allegations are made here:  (1) Toll had knowledge of the contract between Stonebrae and Toll Bros., (2) Toll induced Toll Bros. to breach the contract, (3) Toll intended to interfere with the contract, and (4) Toll's interference was not privileged.  (FAC ¶¶ 31-38.)

Likewise, in *Collins*, the court held that the allegation that defendants "wrongfully, intentionally, and without justification" induced a contracting party to breach its contract with plaintiff precluded a finding that any "financial interest privilege" affirmatively appeared on the face of the pleadings.  Because Stonebrae makes these same allegations, this case falls squarely within the holding of *Collins*.  (FAC ¶¶ 31-38.)

Finally, in *Kozlowski* the court held defendant's conduct was not facially privileged based on the allegation that the defendant "intentionally" and "without justification" caused the bank to breach its contract with plaintiff.  This allegation "imports that defendant was not acting for the protection of his legitimate interests as a

1  shareholder."  So too here, where Stonebrae makes both allegations, thereby defeating any
2  interest Toll asserts in its capacity as the parent and sole shareholder of Toll Bros.
3          In addition, Toll Bros. does not dispute that the burden on it is even higher
4  than the burden the defendants failed to meet in *Culcal*, *Collins*, and *Kozlowski*, for two
5  basic reasons.  In those cases, the court applied a prior version of section 769 *that did not*
6  *limit its applicability to prospective contractual relations*.  Even then, those cases all held,
7  based on allegations substantially identical to those made in Stonebrae's FAC, that the
8  plaintiff had adequately stated a claim for inducing breach of contract and that any
9  privilege was not apparent on the face of the pleadings.  Of course, now section 769
10 expressly does not apply to actions involving breach of contract.
11         Nor does Toll Bros. dispute that *Culcal*, *Collins*, and *Kozlowski* addressed
12 the privilege in the context of a demurrer and held that the plaintiffs in those cases had
13 adequately alleged an inducing breach of contract claim.  On a motion to remand,
14 however, there is a "strong presumption" against removal and the removing party (Toll
15 Bros.) must prove, based on clear and convincing evidence, the absence of *any* possibility
16 that Stonebrae could prevail on its inducing breach of contract claim against Toll, as plead,
17 or upon any amendment.[2]  Toll Bros. has not met and could not possibly meet its burden.
18         **4.**    **Toll's Conduct Was Not Facially Privileged Under Section 767 Either**
19         At the threshold, the removal statute requires a notice of removal to state the
20 factual basis and the grounds for removal.  (28 U.S.C. § 1446(a).)  A notice of removal
21 cannot be amended to add a separate basis for removal after the 30-day period for removal
22 under section 1446 has run.  (*Western Asbestos Settlement Trust*, 2005 U.S. Dist. LEXIS
23 6130, at *12 [citing Ninth Circuit authority].)  Nowhere in Toll Bros.' notice of removal
24 does it purport to remove this action based on section 767 of the Restatement (Second) of

---

[2] Notably, although Toll Bros. bears the burden to prove Stonebrae could not possibly prevail on its inducing breach of contract claim based on clear and convincing evidence, it offered *no evidence* to rebut any of Stonebrae's allegations.  This includes allegations regarding Toll's intent that Toll Bros. has seen fit to label "specious" and "almost certainly a Rule 11 violation," but done nothing to rebut.

1  Torts or offer any factual basis for doing so.  Toll Bros. only raised this argument for the
2  first time in its opposition to Stonebrae's remand motion and, even then, offered no factual
3  basis for a removal under section 767.  This argument therefore cannot be considered.
4  (*Western Asbestos Settlement Trust*, 2005 U.S. Dist. LEXIS 6130, at *12 [refusing to
5  consider new grounds for removal raised in opposition to remand motion].)

6  But even if the Court considers grounds for removal not stated anywhere in
7  the removal notice, section 767 does not confer a privilege to interfere, but relates only to
8  whether the interference is "improper."  (Restatement (Second) of Torts § 767 cmt. b
9  ["[T]his branch of tort law has not developed a crystallized set of definite rules as to the
10 existence or nonexistence of a privilege to act….Because of this fact, this Section is
11 expressed in terms of whether the interference is improper or not, rather than in terms of
12 whether there was a specific privilege to act in the manner specified."].)  Thus, section 767
13 does not support (indeed, expressly disclaims) the use for which Toll Bros. offers it.

14 Moreover, determining whether Toll's interference is improper within the
15 meaning of section 767 requires consideration of the following seven factors:
16     (a)  the nature of the actor's conduct,
17     (b)  the actor's motive,
18     (c)  the interests of the other with which the actor's conduct interferes,
19     (d)  the interests sought to be advanced by the actor,
20     (e)  the social interests in protecting the freedom of action of the actor and
21 the contractual interests of the other,
22     (f)  the proximity or remoteness of the actor's conduct to the interference, and
23     (g)  the relations between the parties.
24 These factors are not exhaustive.  (Restatement (Second) of Torts § 767 cmt.
25 b ["This section states the important factors to be weighed against each other and balanced
26 in arriving at a judgment; but it *does not exhaust the list of possible factors*."].)
27 Although Toll and Toll Bros. have both cited section 767, and both
28 acknowledge bearing the burden to show this section confers a privilege that appears on

the face of the FAC, and that this is "obvious," neither makes *any attempt* to do so. For instance, neither Toll nor Toll Bros. has listed the factors that must be considered in determining whether Toll's interference was proper under section 767. Nor have they made any attempt to show how Toll's conduct – as alleged in the FAC – satisfies these factors. As such, Toll Bros. has not come close to satisfying its burden to show Toll's alleged conduct is "facially privileged" under section 767, let alone that it is "obvious."

If anything is obvious, it is that none of the factors favor any privilege:

(a)   <u>Nature of the actor's conduct</u>.  Toll Bros. acknowledges that inducement and misrepresentations are two of the enumerated means of interference deemed improper under the Restatement. (Toll Bros. Opp. at 12:12-14.) Because both are alleged here, this factor weighs against any privilege. (FAC ¶¶ 35-36.)

(b)   <u>Actor's motive</u>.  Stonebrae alleges Toll predominant purpose was to interfere with Stonebrae's rights under the contract. (FAC ¶ 36.) Such a motive carries "substantial weight in the balancing process." (Restatement (Second) of Torts § 767 cmt. d.) This factor therefore also weighs against any privilege.

(c)   <u>The interests of the plaintiff</u>.  The interest asserted by Stonebrae is an existing contractual right, as opposed to merely a prospective one. (FAC ¶ 36.) The holder of a contractual right has a "stronger claim" to its protection than the holder of a prospective one. (*Id.* at cmt. e.) Again, this factor weighs against any privilege.

(d)   <u>Toll's interest</u>.  The interest in harming another's contractual interest, which is what Stonebrae alleges motivated Toll, "carries no weight." (*Id.* at cmt. f.)

(e)   <u>Social interests</u>.  Where, as here, the alleged interference involves persuading a contracting party to commit a breach of its contract with the plaintiff, the social utility of the actor's conduct is "lesser." (*Id.* at cmt. e.) Thus, this factor also weighs against any privilege.

(f)   <u>Proximity of actor's conduct to the interference</u>.  Stonebrae alleges Toll induced Toll Bros. to breach the contract at issue. One who induces a contracting party not to perform his contract with another "interferes directly with the other's

contractual relation." The interference is an "immediate consequence of the conduct," and the weight to be given this factor is so strong that "other factors need not play as important a role" in determining whether the actor's interference was improper. (*Id*. at cmt. h.)

        (g)    <u>Relations between the parties</u>. Outside the context of competitors or business advisors, neither of which is the case, the overriding consideration here is whether the relationship between the injured party (Stonebrae) and the party influenced by the actor's conduct (Toll Bros.) is "that of a prospective contract, an existing contract or a contract terminable at will." (*Id*. at cmt. i.) Because the contract in this case is an existing one entitled to the greatest protection, this factor too weighs against any privilege.

Thus, because the notice of removal filed by Toll Bros. did not mention section 767 as a possible ground for removal and failed to state any factual support for any such privilege, and Toll Bros. has yet to make any attempt to show that Toll's conduct was facially privileged under section 767, Toll Bros. has not met its heavy burden to defeat this remand motion.

**E.    The Liquidated Damages Clause Has No Bearing On Stonebrae's Inducing Breach Of Contract Claim Against Toll**

Finally, Toll Bros. argues Stonebrae's inducing breach of contract claim against Toll is barred by the liquidated damages clause (LCD) contained in the Village B Purchase Agreement between Stonebrae and Toll Bros. This argument is identical to the argument made by Toll in its motion to dismiss. (Dkt. No. 22 at p. 14.) As Stonebrae argued in response to that motion, this argument lacks merit for numerous reasons.

As noted above, the removal statute is clear that a notice of removal must state the factual basis and the grounds for removal. (28 U.S.C. § 1446(a).) Not even under the most deferential review can this argument or its factual basis be found in Toll Bros.' notice of removal. As with its argument under section 767, Toll Bros. did not unveil this argument until it filed its opposition to Stonebrae's remand motion, which is too late. (*Western Asbestos Settlement Trust*, 2005 U.S. Dist. LEXIS 6130, at *12 [refusing to consider new grounds for removal raised in opposition to remand motion].)

Regardless, as Toll correctly pointed out in its motion to dismiss the FAC, a contracting "party's right to sue in contract does not bar the right to sue a third party tortfeasor for inducing breach of contract." (Dkt. No. 22 at 14:7-8.) Toll went on to argue that a different rule applies to it, however, because it is "not a stranger" to the contract at issue here and therefore is not a "true third party." (*Id*. at 14:10.) As Stonebrae pointed out in its response to that motion, however, Toll's attempt to carve out a different rule for itself cannot be reconciled with *Culcal*, *Collins* and *Kozlowski*, all of which upheld a claim against a corporate parent (or other business owner) for inducing its subsidiary (or other contracting entity) to breach its contract. Toll Bros. appears to agree.[3]

Yet, Toll Bros. continues to make the argument that the liquidated damages clause is Stonebrae's "sole remedy, and no cause of action can stand against Toll Bros." Notably, Toll Bros. fails to cite any authority in support of this remarkable proposition. But, assuming its theory is based on the same authority cited by Toll in its motion to dismiss – *Allied Equipment* and *Feary* – as Stonebrae showed in its opposition to that motion, neither of those cases apply.

Briefly, in *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, the court held that the quote from *Allied Equipment* upon which Toll Bros. relies was "dicta at best" as that case "never considered the immunity of someone who was not a party to the contract." (*Woods*, 129 Cal.App.4th at 352.) The court explained that, in cases "where a powerful shareholder allegedly interferes in a contract between the corporation whose shares it owns and some other person or entity," the *Collins* line of cases applies. (*Id*.) As noted above, those cases hold that a corporate parent can be held liable for interfering with its subsidiary's contracts, bringing the analysis full circle.

---

[3] In its opposition to Toll's motion to dismiss, Stonebrae explained why Toll's "not a stranger" theory and the cases cited by Toll in support of its theory do not preclude a claim against Toll for inducing breach of contract. (Dkt. No. 26 at pp. 15-17.) Notably, in its opposition to Stonebrae's remand motion, filed several hours after Stonebrae filed its opposition to Toll's motion, Toll Bros. makes no mention of Toll's theory that it is not a "true third party" and does not cite the cases relied on by Toll in support of this theory.

Likewise, *Feary* did not apply because that case involved a tort claim between parties to the contract containing the LCD. As Toll and Toll Bros. have pointed out several times, Toll is not a party to the contract between Stonebrae and Toll Bros.

Moreover, by statute, an LCD only limits the damages available for a breach of contract. (Civ. Code § 1671 [statute applicable to provisions "in the contract liquidating the damages for the breach of the contract"].) Under California law, the measure of damages for *tortious* inducement include contract damages, but are not so limited. For instance, unlike the measure of damage for breach of contract, the tort measure of damages is not limited to damages contemplated by the parties when the contract is made, but rather "allows recovery for unforeseen expenses," including punitive damages. (*Duff v. Engelberg* (1965) 237 Cal.App.2d 505, 508; Civ. Code § 3333 [tort measure of damages is all detriment proximately caused "whether it could have been anticipated or not"]; *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 233 [measure of damages for inducing breach of contract include the pecuniary loss of the benefits of the contract, consequential damages, emotional distress or harm to reputation, and punitive damages].)

More to the point, even if Toll Bros. could show the measure of damages for tortious inducement is limited to the liquidated damage amount, it does not follow that Stonebrae has no claim against Toll. The opposite is true: "[I]t is now agreed that the fact that there is an available action against the party who breaks the contract is no defense to the one who induces the breach, since the two are joint wrongdoers, and each is liable for the loss." (*Duff*, 237 Cal.App.2d at 508 [quoting Professor Prosser].)

Thus, because Toll Bros. failed to raise this issue in its notice of removal and offers no authority for its novel theory that Stonebrae's inducing breach of contract claim against Toll is barred by the LCD in the contract, this argument also fails.

**F.     This Court Should Exercise Its Discretion To Award Stonebrae Its Fees**

Finally, Toll Bros. argues it had an objectively reasonable basis for removal because "ample authority supports" its argument that Toll was fraudulent joined. This assertion is demonstrably false and the latest in a long line of overstatements intended to

mask the inescapable truth: Toll Bros. failed to cite a single case decided since section 769 was amended in 1979 to exclude cases involving a breach of contract from its reach.

Toll Bros. likens this case to the situation in *Gardner v. UICI*, 508 F.3d 559 (9th Cir. 2007), but the cases are nothing alike. In *Gardner*, the Ninth Circuit, in denying an award of fees against the removing party, relied on the existence of "California cases that could potentially preclude" plaintiff's claim against the allegedly fraudulently joined party. (*Id*. at 562.) After three tries, neither Toll nor Toll Bros. has cited *a single California case* "that could potentially preclude" a claim against Toll based on Section 769. Again, this is because Section 769 is inapplicable in cases alleging breach of an existing contract, and no California case has held otherwise. If Toll Bros. were not aware of this limitation when it filed its notice of removal, it certainly was after receiving Stonebrae's remand motion and still did not withdraw its removal.

Likewise, the two new arguments Toll Bros. asserted in its opposition to Stonebrae's remand motion are devoid of any supporting California case authority. Nor did these arguments occur to Toll Bros. until after it removed the case and therefore have no bearing on whether its proffered grounds for removal are "objectively reasonable." One can hardly envision a case more deserving of an award of fees and costs.

## III.
## CONCLUSION

As Stonebrae has shown, Toll Bros. has not met its heavy burden to defeat Stonebrae's remand motion. Stonebrae respectfully requests this Court grant its remand motion, and award Stonebrae its fees and costs.

Dated: March 12, 2008

        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

        By      /s/ Philip F. Atkins-Pattenson
            PHILIP F. ATKINS-PATTENSON
            Attorneys for Plaintiff
            STONEBRAE L.P.