1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STONEBRAE, L.P.,

         Plaintiff,

    v.

TOLL BROS., INC., *et al.*,

         Defendants.

_____/

No. C-08-0221 EMC

**ORDER DENYING PLAINTIFF'S
MOTION TO REMAND; AND
GRANTING DEFENDANT'S MOTION
TO DISMISS**

**(Docket Nos. 13, 22)**

    Plaintiff Stonebrae, L.P. has sued two different but related entities, Defendants Toll Bros., Inc. and Toll Brothers, Inc. The former (Toll Bros., Inc.) is a subsidiary of the latter (Toll Brothers, Inc.). For purposes of clarity, the former (Toll Bros., Inc.) will hereinafter be referred to as "Toll Subsidiary" and the latter (Toll Brothers, Inc.) as "Toll Parent."

    Stonebrae initiated its lawsuit against Defendants in state court. Subsequently, Toll Subsidiary removed the case to federal court, arguing that the federal court has diversity jurisdiction over the case because Toll Parent was fraudulently joined. Toll Parent did not join in the removal. Currently pending before the Court are two motions: (1) Stonebrae's motion to remand and (2) Toll Parent's motion to dismiss. Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **DENIES** the motion to remand and **GRANTS** the motion to dismiss.

## I.    FACTUAL & PROCEDURAL BACKGROUND

    The parties do not appear to dispute that (1) Stonebrae is a limited partnership organized under the laws of the state of Delaware; (2) Toll Subsidiary is a corporation organized under the

**United States District Court**
For the Northern District of California

1    laws of the state of Pennsylvania; and (3) Toll Parent is a corporation organized under the laws of

2    the state of Delaware.

3         Stonebrae filed suit against Defendants in state court on November 29, 2007.  On January 11,

4    2008, Toll Subsidiary removed the case to federal court, arguing that the federal court has diversity

5    jurisdiction over the case because Toll Parent, whose presence would destroy diversity jurisdiction,

6    was fraudulently joined.  Four days later, Stonebrae filed an amended complaint in federal court,

7    upon which it now relies in supporting its claim that Toll Parent was not fraudulently joined.  It is

8    fairly clear that Stonebrae filed the amended complaint to address the problems in the original

9    complaint as pointed out by Toll Subsidiary in its notice of removal.

10        The original complaint and first amended complaint ("FAC") filed by Stonebrae are largely

11    the same except for the allegations asserted against Toll Parent.  In both complaints, Stonebrae

12    alleges as follows:

13    (1)      Stonebrae is the owner and master developer of a residential master planned development in

14          Hayward, California, and Toll Subsidiary is a merchant builder that builds and sells

15          individual residences to the public.  *See* Compl. ¶¶ 7-8; FAC ¶¶ 7-8.

16    (2)      Stonebrae and Toll Subsidiary entered into two purchase and sale agreements.  Under the

17          Village A agreement, Toll Subsidiary agreed to buy from Stonebrae 102 of the 214 lots

18          located within Village A of the planned development.  *See* Compl. ¶ 10; FAC ¶ 10.  Under

19          the Village B agreement, Toll Subsidiary agreed to buy from Stonebrae 56 of the 149 lots

20          located within Village B of the planned development.  *See* Compl. ¶¶ 9, 13; FAC ¶¶ 9, 13.

21          Only the Village B agreement is directly at issue in the instant lawsuit.  Under the terms of

22          the Village B agreement, Toll Subsidiary would pay Stonebrae almost $32 million; Toll

23          Subsidiary deposited in escrow a letter of credit worth almost $5 million.  *See* Compl. ¶ 14;

24          FAC ¶ 14.

25    (3)      Toll Subsidiary breached the Village B agreement.  More specifically, Toll Subsidiary

26          "decided, in light of the deteriorating financial condition of [Toll Parent[1]], and for its own

27    ─────────────────

28         [1] Paragraph 18 of the original complaint and FAC provides details about Toll Parent's deteriorating financial condition.  *See* Compl. ¶ 18; FAC ¶ 18.

1   financial reasons, not to proceed with the close of escrow and the purchase of the 56 lots,

2   which would have required [Toll Subsidiary] to pay Plaintiff Stonebrae the sum of

3   $31,854,200.00." Compl. ¶ 17; FAC ¶ 17.

4         In both the original complaint and the FAC, Stonebrae charges Toll Parent with having

5   induced Toll Subsidiary to breach the Village B agreement.  However, there are significant

6   differences in the two complaints with respect to the allegations supporting the claim for inducement

7   against Toll Parent.

8   (1)    As noted above, both the original complaint and the FAC contain the same allegation in

9           paragraph 17: "Plaintiff Stonebrae is informed and believes, and on that basis alleges, that

10          while Plaintiff Stonebrae was incurring these substantial sums to complete the 'Stonebrae

11          Pre-Closing Work and otherwise preparing for the close of escrow in accordance with the

12          Village B Purchase Agreement, Defendant Toll [Subsidiary] had decided, in light of the

13          deteriorating financial condition of Toll [Parent], and for its own financial reasons, not to

14          proceed with the close of escrow and the purchase of the 56 lots, which would have required

15          Defendant Toll [subsidiary] to pay Plaintiff Stonebrae the sum of $31,854,200.00." Compl. ¶

16          17; FAC ¶ 17.

17  (2)    The complaints begin to differ, however, in paragraph 20.  Paragraph 20 in each complaint is

18          the same except that the FAC contains one additional phrase.  For purposes of clarity, that

19          additional phrase has been bolded.  "To avoid the close of escrow under the Village B

20          Purchase Agreement, Defendant Toll [Subsidiary] **-- upon information and belief, at the**

21          **direction of Defendant Toll [Parent] --** has offered a number of pretextual reasons why it

22          purportedly is under no obligation to close the escrow, acquire the 56 lots from Plaintiff

23          Stonebrae and pay Plaintiff Stonebrae the purchase price of $31,854,200.00, and on that

24          basis has purported to terminate the Village B Purchase Agreement and has demanded that

25          the letter of credit in escrow be released to it." FAC ¶ 20.

26  (3)    Similarly, Paragraph 34 of each complaint is the same except that the FAC contains one

27          additional phrase.  Again, for purposes of clarity, that additional phrase has been bolded.

28          "Plaintiff Stonebrae is informed and believes, and on that basis alleges, that in response to its

**United States District Court**
For the Northern District of California

1   severely deteriorating financial condition, Defendant Toll [Parent] sought to reduce the

2   contractual liabilities on its consolidated financial statements, such as that represented by the

3   Village B Purchase Agreement, and directed its subsidiaries and affiliates to take steps to do

4   so **by whatever means necessary, including by breaching the contracts**.  Plaintiff

5   Stonebrae is further informed and believes, and on that basis alleges, that subsidiaries and

6   affiliates of Defendant Toll [Parent], including Defendant Toll [Subsidiary], acted pursuant

7   to such directives from Defendant Toll [Parent]."  FAC ¶ 34.

8   (4)   Finally, the FAC contains allegations that are not included at all in the original complaint.

9        More specifically, in ¶ 35, the FAC states: **"Defendant Toll [Parent] intended to and did**

10       **induce Defendant Toll [Subsidiary] to breach the Village B Purchase Agreement**

11       **between Plaintiff Stonebrae and Defendant Toll [Subsidiary]."**  FAC ¶ 35.  In ¶ 36, the

12       FAC states: **"Defendant Toll [Parent's] conduct alleged herein was not privileged in that**

13       **it was (1) predominantly, if not exclusively, intended to interfere with and harm**

14       **Plaintiff Stonebrae's contractual rights under the Village B Purchase Agreement, and**

15       **(2) illegal and improper in that, upon information and belief, Defendant Toll [Parent]**

16       **instructed and conspired with Defendant Toll [Subsidiary] to manufacture a pretext of**

17       **Plaintiff Stonebrae's purported failures to perform (as alleged above in paragraphs 20**

18       **and 23) in an effort to unlawfully circumvent Defendant Toll [Subsidiary]'s contractual**

19       **obligations and liabilities under the Village B Purchase Agreement."**  FAC ¶ 36.

20       As noted above, it is fairly clear that Stonebrae filed the FAC to address the problems in the

21   original complaint as pointed out by Toll Subsidiary in its notice of removal.

22                                **II.   DISCUSSION**

23   A.   Plaintiff's Motion to Remand

24        1.   Legal Standard

25        It is well established that an action is removable to a federal court only if it might have been

26   brought there originally.  *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act

27   of Congress, any civil action brought in a State court of which the district courts of the United States

28   have original jurisdiction, may be removed by the defendant or the defendants, to the district court

**United States District Court**
For the Northern District of California

1    of the United States for the district and division embracing the place where such action is

2    pending."). The removal statute is strictly construed, and a court must reject federal jurisdiction if

3    there is any doubt as to whether removal was proper. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485

4    (9th Cir. 1996). The removing defendant bears the burden of proving the propriety of removal, *see*

5    *id.*, and by clear and convincing evidence. *See Hamilton Materials Inc. v. Dow Chem. Corp.*, 494

6    F.3d 1203, 1206 (9th Cir. 2007).

7         As noted above, removal jurisdiction turns on whether Toll Parent was fraudulently joined in

8    this suit. The Ninth Circuit has stated that, "[a]lthough there is a general presumption against

9    fraudulent joinder, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and

10   the failure is obvious according to the settled rules of the state, the joinder of the resident defendant

11   is fraudulent.'" *Id.* Unfortunately, "[t]he Ninth Circuit has not provided [any] more specific

12   direction on the exact fraudulent-joinder standard." *Bellecci v. GTE Sprint Communications Corp.*,

13   No. C 02-03974 WHA, 2003 U.S. Dist. LEXIS 640, at *8 (N.D. Cal. Jan. 14, 2003). It has

14   indicated, however, that a joinder is not fraudulent if the plaintiff's case is "sufficient to withstand a

15   dismissal motion under Fed. R. Civ. P. 12(b)(6)." *Sessions v. Chrysler Corp.*, 517 F.2d 759 (9th Cir.

16   1975).

17        2.   Procedural Defect

18        As a preliminary matter, the Court addresses Stonebrae's argument that the case should be

19   remanded to state court because of a procedural defect -- *i.e.*, Toll Parent's failure to timely join the

20   removal by Toll Subsidiary. *See* 28 U.S.C. § 1441(a). Stonebrae's procedural argument should is

21   without merit. The Ninth Circuit has stated that, "under 28 U.S.C. § 1446(a), all defendants in a

22   state action must join in the petition for removal, *except* for nominal, unknown or fraudulently

23   joined parties." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (emphasis

24   added); *see also United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002)

25   (stating that, "[a]lthough the usual rule is that all defendants in an action in a state court must join in

26   a petition for removal, the 'rule of unanimity' does not apply to 'nominal, unknown or fraudulently

27   joined parties'"); *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) (holding that "a removing party

28   need not obtain the consent of a co-defendant that the removing party contends is improperly

**United States District Court**
For the Northern District of California

1  joined"). As Defendants contend that Toll Parent was fraudulently joined, this procedural argument

2  turns on the merits of the substantive argument discussed below. It adds no independent argument

3  to the analysis.

4         3.     <u>Original Complaint v. FAC</u>

5        The Court thus turns to the issue of whether the removal by Toll Subsidiary was

6  substantively proper. To resolve this issue, however, the Court must first address the question of

7  whether, in evaluating the removal, it must look to the original complaint filed by Stonebrae or the

8  FAC, which was filed only after Toll Subsidiary pointed out in its notice of removal deficiencies in

9  the original complaint.

10       In resolving this issue, the Court finds that the Ninth Circuit's ruling in *Kruso v.*

11 *International Telephone & Telegraph Corp.*, 872 F.2d 1416 (9th Cir. 1989), governs. In *Kruso*, the

12 plaintiffs had initially filed in state court but thereafter the defendants removed the case to federal

13 court on the basis that two of the defendants were fraudulently joined. The lower court denied the

14 plaintiffs' motion to remand and dismissed the complaint with respect to the two nondiverse

15 defendants because the joinder was not justified on the face of the complaint. *See id.* at 1419-20.

16 Subsequently, the plaintiffs asked the lower court to reconsider its order denying remand. Attached

17 to the motion to reconsider was a proposed first amended complaint which the plaintiffs stated they

18 would file in state court if the case was remanded. According to the plaintiffs, they did not want to

19 file the proposed amended complaint in federal court because they did not want to concede

20 jurisdiction. The motion to reconsider was denied. *See id.* at 1420.

21       On appeal, the plaintiffs challenged the lower court's determination that the two nondiverse

22 defendants had been improperly joined. In appealing, the plaintiffs relied on the allegations made in

23 the proposed amended complaint as well as the allegations made in the original complaint "to

24 support their contention that they have stated valid claims against [the two nondiverse defendants]."

25 *Id.* at 1426 n.12. The Ninth Circuit refused to consider the allegations contained in the proposed

26 amended complaint because the right to removal is determined by the pleadings as they stand when

27 the petition for removal is filed. *See id.* Thus, only the original complaint would be considered.

28

**United States District Court**
For the Northern District of California

1    Consistent with *Kruso*, the Court must look in the first instance to the original complaint in

2    deciding the motion to remand.[2]

3        4.   <u>Financial Interest Privilege</u>

4    Toll Subsidiary contends that Stonebrae's joinder of Toll Parent to the action was fraudulent

5    because, based on the allegations in the original complaint, the actions of Toll Parent were protected

6    by the financial interest privilege as set forth in the Restatement (First) of Torts § 769.  That

7    privilege has been adopted by the California courts.  *See Sade Shoe Co. v. Oschin & Snyder*, 162

8    Cal. App. 3d 1174, 1181 (1984) (quoting § 769); *Lowell v. Mother's Cake & Cookie Co.*, 79 Cal.

9    App. 3d 13, 21-22 (1978) (same); *Culcal Stylco, Inc.*, 26 Cal. App. 3d 879, 882 (1972) (same);

10    *Kozlowsky v. Westminster Nat'l Bank*, 6 Cal. App. 3d 593, 599 (1970) (same).

11    Section 769 of the Restatement (First) of Torts provides as follows:

12    One who has a financial interest in the business of another is
       privileged purposely to cause him not to enter into or continue a
13    relation with a third person in that business if the actor

14    (a)    does not employ improper means, and

15    (b)    acts to protect his interest from being prejudiced by the
       relation.

16

17    Rest. (1st) of Torts.

18    Section 769 of the Restatement (Second) of Torts differs slightly.  It provides:

19    One who, having a financial interest in the business of a third person
       intentionally causes that person not to enter into a prospective
20    contractual relation with another, does not interfere improperly with
       the other's relation if he
21

22    (a)    does not employ wrongful means and

23    (b)    acts to protect his interest from being prejudiced by the
       relation.

24    Rest. (2d) of Torts § 769.  One of the comments to the Restatement (Second) gives illustrations of

25    the application of the privilege:

26

27        [2] In addition to the pleading, a defendant is entitled to present facts showing the joinder to be
       fraudulent, such as by presenting affidavits and deposition testimony.  *See Morris v. Princess Cruises,*
28    *Inc.*, 236 F. 3d 1061, 1067-68 (9th Cir. 2001).  No such evidence was presented here, however.

United States District Court
For the Northern District of California

1.      A provides the financial backing for B's theatrical production. The arrangement is in the form of a loan for the purposes of the production. While B undertakes to repay the loan in any event, in fact the chances of repayment depend upon the success of the play. B is about to engage C to play the leading role. Under the conditions stated in Clauses (a) and (b), A's interference with the prospective relation by causing B not to have C play that role is nor improper.

2.      A is employed by B Corporation under contract to invent a machine. He does so, and submits it to the corporation. C, a stockholder in the corporation, believes that the machine is unfit for the purpose, and that its adoption by the corporation will lead to heavy financial loss. For the protection of his interest in the corporation, he persuades its officers to reject the machine. C's interference is not improper.

*Id.*, cmt. c.

As the comment makes clear, for the privilege to apply, the actor cannot use wrongful means upon the person induced to interfere with the relationship, such as pressuring the person influenced by an illegal boycott or abusing a fiduciary relationship. *See id.*, cmt. d. Moreover, the actor must act with the purpose of protecting the actor's interest, and not for some other aim such as gratification of his or her ill will. *See id.*, cmt. e. The privilege does not apply if the actor does not believe his or her interest will be endangered by the relation he or she seeks to prevent. *See id.*

Toll Parent contends that the financial interest privilege appears from the face of the original complaint filed in state court and removed here. There is no dispute that the Toll Parent's ownership interest in Toll Subsidiary constitutes the kind of financial interest in the business of the influenced party that satisfies the privilege. *See Culcal*, 26 Cal. App. 3d at 882-83 (concluding that parent of Food Giant could assert that, under § 769, it had requisite financial interest in Food Giant to render its alleged interference with Food Giant's license agreements with plaintiffs privileged); *Sade*, 162 Cal. App. 3d at 1181 (stating that "[t]he financial interest privileged . . . is an interest in the nature of an investment, i.e., interest of a part owner, partner, stockholder and the like"). Nor is there any allegation in the original complaint that Toll Parent used wrongful means to influence Toll Subsidiary in breaching contract with Stonebrae.[3]

---

[3] Although Stonebrae alleges in the complaint that Toll Subsidiary offered a number of pretextual reasons excusing its performance, *see* Compl. ¶ 20, and in the FAC that Toll Parent's conduct was "illegal and improper" because it conspired with Toll Subsidiary to manufacture pretexts, *see* FAC ¶ 20, such allegations do not and would not constitute wrongful means § 769, even were the Court to

8

United States District Court

For the Northern District of California

1    The application of the privilege thus turns on two remaining questions. First, did Toll Parent

2    act to protect its interest from being prejudiced by the relation, or did it act instead out of ill will

3    towards Stonebrae or for some extraneous reason other than its belief that its interest would be

4    endangered by the Stonebrae contract? In this regard, a number of California courts have expressed

5    a reluctance to resolve this issue on the basis of the pleadings, noting that a defendant's intent or

6    state of mind is usually a factual question. *See Sade*, 162 Cal. App. 3d at 1181; *Culcal*, 26 Cal. App.

7    3d at 883; *Kozlowsky*, 6 Cal. App. 3d at 600. In each of these cases, however, either the complaint

8    contained allegations sufficient to support an inference of improper intent (*Culcal* and *Kozlowsky*) or

9    at least failed to contain allegations to show justification or privilege as a matter of law (*Sade Shoe*).

10   The question before the California courts have thus typically involved whether a financial interest

11   privilege can be established or negated on the face of the complaint in the context of a demurrer.

12   *See Sade*, 162 Cal. App. 3d at 1181 (concluding that plaintiff's "allegations are sufficient to state a

13   cause of action for interference with such relationships unless it can be said that the facts averred in

14   the complaint show justification or privilege as a matter of law"); *Culcal*, 26 Cal. App. 3d at

15   881(stating that "[j]ustification for inducing breach of contract by lawful means is an affirmative

16   defense unless the facts constituting the justification appear on the face of the complaint").

17   In the case at bar, the Court finds that the requisite intent sufficient to invoke the financial

18   interest privilege is evident from Stonebrae's own allegations contained on the face of its complaint.

19   The complaint alleges that the breach of Stonebrae's contract with Toll Subsidiary was taken "in

20   light of the deteriorating financial condition of Toll [Parent]." Compl. ¶ 17. It further alleges that

21   "in response to is severely deteriorating financial condition, Defendant Toll [Parent] sought to

22   reduce the contractual liabilities on its consolidated financial statements, such as that represented by

23   the Village B Purchase Agreement, and directed its subsidiaries and affiliates to take steps to do so,"

24   steps which resulted in the breach complained of. Compl. ¶ 34. Taking steps to arrest its own (and

25

26

27   _____

28   consider the allegations of the FAC. The comments to the Restatement make clear that the wrongful
     means must be employed to exert illegal or unfair influence on the party inducing the interference. It
     does not refer to the means by which the interference with the third party is carried out.

United States District Court

For the Northern District of California

1  its subsidiaries') deteriorating financial condition is precisely that kind of purpose that meets the

2  intent requirement of the financial interest privilege.[4]  *See* Rest. (2d) of Torts, cmt. c.

3          The second question presented is whether the financial interest privilege applies to suits for

4  inducement to breach contracts as well as claims of interference with prospective contractual

5  relations.  Section 769 of the Restatement -- both First and Second -- indicates that the financial

6  interest privilege has no application "to the causing of a breach of contract."  Rest. (1st) of Torts §

7  769, cmt. d; Rest. (2d) of Torts § 769, cmb. b (also stating that the rule "does not apply to the

8  causing of a breach of contract").  However, the California Supreme Court has applied the financial

9  interest privilege (albeit not citing § 769 explicitly) to actions for inducement of breach of contract.

10  *See Collins v. Vickter Manor, Inc.*, 47 Cal. 2d 875, 883 (1957) (indicating that defendants, who were

11  not just officers and directors of corporation but also beneficial owners of its property, could assert

12  that their actions which allegedly caused corporation to breach its contract with plaintiff was in the

13  best interests of the corporation and therefore privileged); *see also Culcal*, 26 Cal. App. 3d at 883

14  (discussing *Collins* in conjunction with § 769).  Numerous California Courts of Appeal have

15  likewise applied the privilege in the context of suits for inducing breaches of contracts.  *See Sade*,

16  162 Cal. App. 3d at 1180-81 (discussing financial interest privilege in case where claims made both

17  for interference with prospective economic advantage and interference with contract; not limiting

18  discussion of privilege to former claim); *Culcal*, 26 Cal. App. 3d at 882-83 (discussing financial

19  interest privilege in case where claim made for inducement of breach of contract); *Kozlowsky*, 6 Cal.

20  App. 3d at 598-99 (discussing financial interest privilege in case where claim made for interference

21  with contractual relation); *cf. Wanland v. Los Gatos Lodge*, 230 Cal. App. 3d 1507, 1522 (1991)

22  (discussing owner or manager's privilege, comparable to financial interest privilege, with respect to

23  a claim for interference with contract).

24

25

─────────────────────

26          [4] Stonebrae's allegation in the FAC that Toll Parent predominantly, if not exclusively, intended
to interfere with and harm Stonebrae's contractual rights under the Village B Purchase Agreement is
27  immaterial to the instant motion because the Court considers only the original complaint which was
removed in adjudicating Stonebrae's motion to remand.  Furthermore, as discussed *infra*, this
28  allegation, even if considered, would not suffice to negate the privilege.

United States District Court
For the Northern District of California

1   The only case which contains any hint to the contrary is *Winn v. McCulloch Corp.*, 60 Cal.

2   App. 3d 663 (1976).  In *Winn*, the plaintiffs alleged that they had a distributorship agreement with an

3   aircraft company; that the aircraft company breached the agreement; and that the defendants, a

4   corporation that owned stock in the aircraft company and that corporation's president; caused the

5   aircraft company to breach the agreement.  *See id.* at 669.  The court held that, on the face of the

6   complaint, the defendants' conduct would not be deemed per se justified as a matter of law based

7   solely on the fact that defendants stockholders had an ownership interest in the corporation.  *See id.*

8   at 672-63.  In so holding, the court noted that

9           [t]he Restatement of Torts and Professor Prosser diverge on the effect
            on the combination of circumstances alleged in the fifth amended
10          complaint upon the existence of justification for interference with a
            contractual relationship.  Prosser is of the view that the economic
11          interest of defendant-stockholders in a corporation which they induce
            to commit the breach is of itself justification for the defendants'
12          conduct.  (Prosser, Handbook of The Law of Torts (4th ed. 1971) pp.
            944-945.)  The Restatement view is to the contrary.  (Rest., Torts, §
13          769, com. d.).

14  *Id.* at 673.  *Winn*'s citation to comment d of the Restatement is best understood as a rejection of the

15  extreme rule advocated by Dean Prosser – that having a financial interest in the breaching party is

16  per se justified, irrespective of context or purpose.  Nothing in *Winn* suggests the court intended to

17  hold that the financial interest privilege of § 769 could never apply to a claim for inducing a breach

18  of contract.

19          Accordingly, the Court finds that based on the allegations of the complaint removed herein,

20  Stonebrae fails to state a claim against Toll Parent because, based on the face of the complaint, all

21  the elements of the financial interest privilege obtain.  Because the financial interest privilege

22  applies, Toll Parent was fraudulently joined and removal was proper.  Because removal was proper,

23  Stonebrae's request for fees is denied.

24  B.      Motion to Dismiss

25          The Court must now address Defendants' motion to dismiss Toll Parent from the suit.  In this

26  context, the Court must consider the FAC because that is the pleading to which Defendants' motion

27  under Rule 12(b)(6) is now directed.  For the reasons stated above, the FAC fails to state a cause of

28  action against Toll Parent because, on the face of the complaint, the financial interest privilege

United States District Court

For the Northern District of California

1   applies.  The new allegations in the FAC do not make a material difference.  Toll Parent's alleged

2   intent to specifically direct Toll Subsidiary to breach the contract (*see* FAC ¶¶ 20, 34, and 35) does

3   not negate the privilege.  As to the allegations of Toll Parent's intent in ¶ 36, the FAC does not

4   allege that the action was taken out of ill will or that Toll Parent's purpose was to injure Stonebrae

5   out of spite or hatred independent of the effect of the Village Agreement on Toll's finances.  The

6   FAC merely alleges that the action was taken to harm Stonebrae's contractual rights under the

7   Village B Agreement, *see* FAC ¶ 36 (alleging that Toll Parent's conduct was "predominantly, if not

8   exclusively, intended to interfere with and harm Plaintiff Stonebrae's contractual rights"), a

9   requirement for a claim for inducement of breach under California law.  *See Ramona Manor*

10  *Convaslescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1130-31 (1986) (stating that, for a

11  cause of action for inducement of breach, "proof of the requisite intent require[s] more than a

12  showing [that the defendant] intended the act which caused the interference; it required evidence

13  that [the defendant] intended to cause the interference itself").

14          Accordingly, the Court grants Toll Parent's motion to dismiss.  Stonebrae, however, shall

15  have leave to amend.  The Court cautions Stonebrae to consider whether a further amendment would

16  advance the litigation.  If Stonebrae is going to allege that Toll Parent had a purpose other than

17  protecting its financial interest -- an allegation seemingly inconsistent with FAC ¶¶ 17 and 34 -- it

18  must do so consistent with Rule 11.  Moreover, if Stonebrae were to successfully allege a claim

19  against Toll Parent sufficient to overcome the financial interest privilege at the pleading stage, given

20  this Court's holding that Toll Parent was fraudulently joined in the original complaint, by amending

21  Toll Parent back in, Stonebrae would effectively be joining a nondiverse defendant subsequent to

22  removal.   Under those circumstances, 28 U.S.C. Section 1447(e) would apply.

23          Under 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional

24  defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, *or*

25  permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e) (emphasis added).

26  Section 1447(e) give a court discretion in making a decision on joinder.  *See Newcombe v. Adolf*

27  *Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998) ("The language of § 1447(e) is couched in permissive

28  terms and it clearly gives the district court the discretion to deny joinder."); *see also Mayes v.*

United States District Court

For the Northern District of California

*Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999) ("Under Section 1447(e), the actual decision on whether or not to permit joinder of a defendant under these circumstances is committed to the sound discretion of the district court . . . ."). The Ninth Circuit has indicated that § 1447(e), taken in conjunction with Rule 19, gives a district court three options. The district court may: (1) deem the party "indispensable" and dismiss the case, (2) deem the party not indispensable and continue its jurisdiction over the lawsuit without joinder, or (3) allow joinder and remand the case to state court. *Yniques v. Cabral*, 985 F.2d 1031, 1035 (9th Cir. 1993). The Court would then have to consider a number of factors in determining whether to deny joinder or permit joinder and remand: (1) whether the defendant sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the claims against the new defendant appear valid; (3) the plaintiff's delay in seeking the joinder, including the reason for delay; (4) the plaintiff's motivation in seeking the amendment; (5) whether the statute of limitations would preclude an original action against the new defendant in state court (or another forum); (6) the likelihood of multiple litigation if the amendment is not permitted; (7) any prejudice to the defendant; (8) whether the plaintiff will be significantly injured if the amendment is not allowed; and (9) any other factor bearing on the equities.[5]

///

///

///

---

[5] *See, e.g.*, *Mayes*, 198 F.3d at 462 (listing as factors to consider "'the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities'"); *Newcombe*, 157 F.3d at 691 (upholding district court decision not to remand; noting that district court considered "the potential prejudice to [plaintiff], balanced the equities, and determined that no injustice would occur"); *Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003) (listing as factors "(1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment"); *IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000) (listing as factors "(1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff").

**III.    CONCLUSION**

For the foregoing reasons, Stonebrae's motion to remand is denied, and Toll Parent's motion to dismiss is granted.  Stonebrae shall have 30 days from the date of this order within which to file a second amended complaint should it seek to re-join Toll Parent.

This order disposes of Docket Nos. 13 and 22.


IT IS SO ORDERED.


Dated:  May 21, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge