UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONEBRAE, L.P., | No. C-08-0221 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE THIRTEENTH AFFIRMATIVE DEFENSE AND DISMISS FOURTH CLAIM OF RELIEF; AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| TOLL BROS., INC., *et al.*, | |
| Defendants. | |
| | **(Docket Nos. 63, 71)** |

_____/

Plaintiff Stonebrae L.P. filed suit against Defendant Toll Bros., Inc., asserting claims for, *inter alia*, breach of contract. *See* Docket No. 7 (amended complaint). In response, Toll raised various affirmative defenses and also filed counterclaims for relief. *See* Docket No. 61 (amended answer). In its thirteenth affirmative defense and fourth claim for relief, Toll argues that the contract entered into by the parties is an illegal contract and is therefore void. Currently pending before the Court are two motions: (1) Stonebrae's motion to strike the thirteenth affirmative defense and to dismiss the fourth claim for relief; and (2) Toll's motion for summary judgment based on the alleged illegality of the contract.

## I.  FACTUAL & PROCEDURAL BACKGROUND

On or about May 1, 2006, Stonebrae and Toll entered into a Purchase and Sale Agreement ("Agreement"). *See* Docket No. 61, Ex. A (Agreement). Under the Agreement, Stonebrae was to sell and Toll to purchase 56 residential lots in Hayward, California. The purchase price for the property at issue was almost $32 million. *See* Agreement § 2.1.

Section 6 of the Agreement describes conditions precedent to the close of escrow. Section 6.1 describes conditions precedent for the benefit of Stonebrae, § 6.2 describes conditions precedent for the benefit of Toll, and § 6.3 describes conditions precedent for the benefit of both. *See* Agreement §§ 6.1-6.3. It is Toll's position that part of § 6.3 renders the Agreement illegal. The relevant part of § 6.3 reads as follows:

> 6.3 <u>Mutual Conditions</u>. The following shall constitute conditions precedent to the Close of Escrow for the benefit of both Stonebrae and Builder, which conditions may be waived only by written waivers executed by and exchanged between Builder and Stonebrae and delivered to Escrow Holder:
>
> . . . .
>
> b. <u>Recordation of the Second Final Map; Expiration of Appeals Period</u>. The Second Final Map shall have been recorded and the period provided by law for the filing of any appeals of or judicial challenges to the City's approval of the Second Final Map shall have expired without the filing of any appeals or judicial challenges, or in the event that one or more appeals or judicial challenges of the foregoing approvals is timely filed, such appeal or judicial challenge has been withdrawn or resolved so that approval of the Second Final Map is not subject to further appeal or challenge. If the resolution of such appeal or challenge materially adversely affects the Lots and such resolution is not satisfactory to Builder in Builder's reasonable judgment, then Builder may terminate this Agreement by notice to Stonebrae within ten (10) days after Builder's receipt of notice from Stonebrae describing such resolution.

Agreement § 6.3(b).

## II. DISCUSSION

A. <u>Legal Standard</u>

Practically speaking, the Court need only focus on Toll's motion for summary judgment -- *i.e.*, is there a genuine dispute of material fact as to whether the Agreement is illegal. However, for purposes of this memo, "Mot." refers to Stonebrae's motion to dismiss; "Opp'n" to Toll's opposition to the motion to dismiss and motion for summary judgment; "Reply" to Stonebrae's reply in support of its motion to dismiss and opposition to the motion for summary judgment motion"; and Sur-Reply to Toll's reply in support of its motion for summary judgment.

1    Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if
2 the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
3 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
4 party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine
5 only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See*
6 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of
7 evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for
8 the [nonmoving party]." *Id.* at 252.  At the summary judgment stage, evidence must be viewed in
9 the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the
10 nonmovant's favor.  *See id.* at 255.

11    Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion
12 for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to
13 establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*,
14 477 U.S. 317, 322 (1986).  But, if the defendant is moving for summary judgment based on an
15 affirmative defense for which it has the burden of proof, the defendant "must establish beyond
16 peradventure *all* of the essential elements of the . . . defense to warrant judgment in [its] favor."
17 *Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks
18 omitted; emphasis in original); *see also Kinghorn v. Citibank, N.A.*, No. C 97-3111 FMS, 1999 U.S.
19 Dist. LEXIS 442, at *7-8 (N.D. Cal. Jan. 20, 1999) (noting same).  Illegality of a contract is an
20 affirmative defense.  *See Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 477 (9th
21 Cir. 1969); *Berger v. Seyfarth Shaw, LLP*, No. C 07-05279 JSW, 2008 U.S. Dist. LEXIS 80586, at
22 *6 (N.D. Cal. Aug. 28, 2008).

23 B.    Subdivision Map Act

24    According to Toll, the Agreement is illegal because part of § 6.3 violates the Subdivision
25 Map Act ("SMA").  Under the Act, "[n]o person shall sell . . . any parcel or parcels of real property .
26 . . for which a final map is required by this division or local ordinance, until the final map thereof in
27 full compliance with this division and any local ordinance has been *filed for record* by the recorder
28 of the county in which any portion of the subdivision is located." Cal. Gov't Code § 66499.30(a)

(emphasis added).  There is, however, a limited exception.  "Nothing contained in subdivision[] (a) . . . shall be deemed to prohibit an offer or contract to sell . . . where the sale . . . is *expressly conditioned* upon the approval and filing of a final subdivision map . . . , as required under this division."  *Id.* § 66499.30(e) (emphasis added).

In the instant case, there is no dispute that the Agreement was executed prior to the filing of a final map.  Thus, the only question is whether, under the terms of the Agreement, the sale of the real property was "expressly conditioned" upon the approval and filing of a final map.  Toll contends that, although there was a condition precedent requiring recordation of a final map, that condition could be waived by the parties, and therefore the sale of the real property was not, in fact, expressly conditioned upon the approval and filing of a final map.  In support of its argument, Toll relies on *Black Hills Investments, Inc. v. Albertson's, Inc.*, 146 Cal. App. 4th 883 (2007), and *Sixells, LLC v. Cannery Business Park*, No. C056267, 2008 Cal. App. LEXIS 2531 (Cal. Ct. App. Dec. 29, 2008) (certified for publication).  In *Black Hills*, a state appellate court held that a sale was not expressly conditioned upon the approval and filing of a map because there was a provision in the contract that the seller could waive the condition that it obtain and record a map legally subdividing the property prior to the agreed-upon closing date.  *See Black Hills*, 146 Cal. App. 4th at 893-94.  Relying on *Black Hills*, another state appellate court deemed a purchase and sale agreement void because it allowed the plaintiff-buyer to waive the recording of a final map.  *See Sixells*, 2008 Cal. App. LEXIS 2531, at *9.  *Sixells* is significant because unlike *Black Hills* where the seller retained the unilateral right to waive the condition, in *Sixells* the buyer held that right.  Thus, *Sixells* and *Black Hills* establish that any right to waive the condition of filing of a final subdivision map by any party renders the agreement illegal.  Moreover, both cases hold such an agreement is void *ab initio*, and is not merely voidable.

C.     Recordation Requirement

As noted above, in the instant case, the relevant part of the parties' agreement provided as follows:

> 6.3  Mutual Conditions.  The following shall constitute conditions precedent to the Close of Escrow for the benefit of both Stonebrae and Builder, which conditions may be waived only by

4

       written waivers executed by and exchanged between Builder and Stonebrae and delivered to Escrow Holder:

          . . . .

       b.    <u>Recordation of the Second Final Map; Expiration of Appeals Period</u>. The Second Final Map shall have been recorded *and* the period provided by law for the filing of any appeals of or judicial challenges to the City's approval of the Second Final Map shall have expired without the filing of any appeals or judicial challenges, or in the event that one or more appeals or judicial challenges of the foregoing approvals is timely filed, such appeal or judicial challenge has been withdrawn or resolved so that approval of the Second Final Map is not subject to further appeal or challenge. If the resolution of such appeal or challenge materially adversely affects the Lots and such resolution is not satisfactory to Builder in Builder's reasonable judgment, then Builder may terminate this Agreement by notice to Stonebrae within ten (10) days after Builder's receipt of notice from Stonebrae describing such resolution.

Agreement § 6.3(b) (emphasis added).

    Stonebrae essentially admits that, under § 6.3(b), the recordation requirement is at the very least a condition precedent -- indeed, Stonebrae must admit such because the SMA specifically requires that a sale be expressly conditioned on the recording of a final map. Stonebrae argues, however, that the waiver provision in § 6.3 did not apply to the recordation requirement but rather applied only to the requirement that "the period provided by law for the filing of any appeals . . . shall have expired . . . or . . . such appeal . . . has been withdrawn or resolved." Agreement § 6.3(b).

    In essence, Stonebrae contends that only finality of any appeal may be waived by the parties and thus sale under the Agreement is still expressly conditioned on recordation of the final map. Toll takes the opposite position, arguing the waiver in § 6.3 applies to both recordation and finality, thus rendering the Agreement void under *Black Hills* and *Sixells*. This is a question of contract interpretation.

    Under California law,

> [t]he interpretation of a contract involves a two-step process: First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine ambiguity, *i.e.*, whether the language is "reasonably susceptible" to the interpretation urged by a party. If in light of the extrinsic evidence the

> court decides the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step -- interpreting the contract.

*Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004) (internal quotation marks omitted). Moreover,

> the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning. Indeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face. Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.

*Wolf*, 114 Cal. App. 4th at 1350-51.

If, ultimately, parol evidence is admitted to aid in the second step of contract interpretation, and such evidence is contradictory, then there is a question of fact which precludes summary judgment. *See id.* On the other hand, if no parol evidence is admitted or the evidence is not in conflict, then a court's resolution of an ambiguity is a question of law. *See id.* In support of their respective arguments, the parties do not rely on any extrinsic evidence. Accordingly, the Court's interpretation of the contract is a question of law. *See id.*

If the Court were to look at § 6.3 of the Agreement in isolation, then Toll would have the better argument -- *i.e.*, there is nothing about § 6.3 that suggests that the waiver provision would apply to the second clause condition precedent identified in subdivision (b) (*i.e.*, that "the period provided by law for the filing of any appeals . . . shall have expired . . . or . . . such appeal . . . has been withdrawn or resolved") but not the first clause (*i.e.*, that the final map be recorded).

However, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Stonebrae has demonstrated that § 6.3 is reasonably susceptible to its interpretation -- *i.e.*, that the waiver provision applies only to the "finality" condition precedent, and not to the "recordation" condition precedent -- based on other provisions in the Agreement. That is, there are other provisions in the Agreement that suggest that the recordation requirement is more than just a condition precedent -- that it is, in fact, a covenant and therefore not subject to waiver under § 6.3.

*See American National Red Cross v. United Way California Capital Region*, No. CIV. S-07-1236 WBS DAD, 2007 U.S. Dist. LEXIS 95296, at *12-13 (E.D. Cal. Dec. 19, 2007) (stating that, in the contract under consideration, "recording the parcel map is a condition precedent to the close of escrow" and "the seller also promises [*i.e.*, covenants] to record the map, which means the seller would be in breach if it does not do so"; distinguishing *Black Hills* on the basis that, in that case, "recording the map was a condition precedent, but was not a covenant").

Most notably, § 8.1(a) of the Agreement provides that, "[o]n or before one (1) business day prior to the date set for the Close of Escrow, Stonebrae shall deposit in Escrow . . . [t]he Grant Deed." Agreement § 8.1(a). The Grant Deed is defined in § 18.2, which provides: "Stonebrae will convey *fee title* to the Property to [Toll] by a grant deed in the form of Exhibit [M] attached hereto with appropriate insertions (the 'Grant Deed')." Agreement § 18.2 (emphasis added). At the hearing, Toll did not dispute that fee title could not legally be conveyed absent a final (as opposed to a tentative) map. Moreover, Property is defined in Recital E as "Lots 29, 63-117 . . . as shown on the *Second Final Map*." Agreement, Recital E (emphasis added). Furthermore, Exhibit M, the form of Grant Deed agreed to by the parties, states in relevant part that "Stonebrae . . . hereby grants to Toll . . . the following described real property in the County of Alameda, State of California . . . : Lots ____, *as shown on the map* for Tract ____ filed ____ __, 200__, in Map Book ____, Pages __ through __, inclusive, Alameda County Records." Agreement, Ex. M (Grant Deed) (emphasis added). Thus, again, a final map is contemplated by the Agreement.[1]

In addition, § 5.1(a) of the Agreement states in relevant part that, "[a]t the Close of Escrow . . . and as a condition thereto, the Title Company shall issue to [Toll] at Stonebrae's expense an ALTA owner's policy of title insurance . . . in an amount equal to the Purchase Price, showing title to the Property, vested in Builder in *fee simple* . . . ." Agreement § 5.1(a) (emphasis added). Again, Toll

---

[1] While Toll contended at the hearing that the form of the Grant Deed permitted conveyance where only a tentative map had been filed, it conceded such would have been illegal. The Court cannot presume that the parties would expressly contract for such an illegal purpose, particularly where all the recitals clearly contemplate conveyance of a finally subdivided property. Moreover, the tentative map, according to the recital ("B") had already been recorded. The blanks left in Exh. M obviously contemplate information to be obtained in the future: *i.e.*, when the final map was recorded.

did not dispute that fee title could not be conveyed absent a final map. Again, Property is defined in Recital E in reference to the Second Final Map.

At the very least, based on the provisions cited above, § 6.3 of the Agreement is reasonably susceptible to Stonebrae's interpretation that the waiver applies not to recordation of the final map but to finality of any appeal. Stonebrae argues that, because the Agreement is reasonably susceptible to its interpretation, the Court must rule in its favor because, once "the Agreement is Capable of Two Interpretations, . . . the Court Must Choose the Interpretation that is Consistent with Compliance with the SMA." Pl.'s Reply at 8. The Court agrees. In *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008), the California Supreme Court stated that,

> "[w]here the language of a contract is clear and not absurd, it will be followed. *But if the meaning is uncertain*, the general rules of interpretation are to be applied." . . . . "If a contract is capable of two constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect . . . ."

*Edwards*, 44 Cal. 4th at 953-54 (emphasis added). The above statement in *Edwards* is consistent with the provisions of the California Civil Code. *See, e.g.*, Cal. Civ. Code § 1637 (stating that, "[f]or the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this Chapter are to be applied"); *id.* § 1638 (providing that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"); *id.* § 1643 (providing that "[a] contract must receive such a interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties").[2] Per *Edwards* and the provisions of the California Civil Code, given the ambiguity of § 6.3 as revealed by numerous provisions of the Agreement, the Court must interpret the Agreement so as to make the Agreement lawful. Thus, Stonebrae's, not Toll's interpretation, prevails.

---

[2] As noted above, the Court has no evidence as to what was the intent of the parties other than the language of the Agreement itself.

8

### III. CONCLUSION

For the foregoing reasons, the Court concludes that there is no genuine dispute of material fact as to the legality of the Agreement and further concludes that the Agreement does not violate the SMA. Accordingly, Toll's motion for summary judgment is denied and Stonebrae's motion to strike the thirteenth affirmative defense and to dismiss the fourth claim for relief is granted.

This order disposes of Docket Nos. 63 and 71.

IT IS SO ORDERED.

Dated: January 30, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge