United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STONEBRAE, L.P.,

    Plaintiff,

v.

TOLL BROS., INC., *et al.*,

    Defendants.
_____/

No. C-08-0221 EMC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**(Docket No. 130)**

    Plaintiff Stonebrae, L.P. has sued Defendant Toll Bros., Inc. for declaratory relief and breach of contract. Currently pending before the Court is Stonebrae's motion for leave to file a second amended complaint ("SAC"). Stonebrae proposes two amendments to its existing complaint: (1) to include specific factual allegations as to how Toll breached the implied covenant of good faith and fair dealing[1] and (2) to add a claim for declaratory relief regarding the validity and enforceability of the liquidated damages clause in the parties' contract. Toll opposes both proposed amendments.

    Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Stonebrae's motion.

**I. DISCUSSION**

A.   Legal Standard

    Federal Rule of Civil Procedure 15 governs motions for leave to amend. Under the rule, a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "'Four factors

---

[1] In its papers, Stonebrae makes clear that, for the asserted breach of the implied covenant, it is seeking only contract and not tort damages. *See* Reply at 3 (citing SAC ¶ 40(e) and Prayer ¶ 2).

are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007). In the instant case, futility is the key issue with respect to Stonebrae's proposed amendment regarding breach of the implied covenant of good faith and fair dealing.

In assessing futility, a court typically applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (stating that "[a]n amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)"); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (stating that "[t]he opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted," which is "the same standard of legal sufficiency that applies under Rule 12(b)(6)") (internal quotation marks omitted).

In its reply brief, Stonebrae argues that this means that "Toll must show that 'no set of facts' could support a claim for breach of the implied covenant." Reply at 1. The problem for Stonebrae is that the "no set of facts" language came from the Supreme Court's decision in *Conley v. Gibson*, 355 U.S. 41, 46 (1957), and that language has now essentially been repudiated by subsequent Supreme Court precedent, namely, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal v. Ashcroft*, 129 S.Ct. 1937 (2009). In the aftermath of *Twombly* and *Iqbal*, several courts have noted that the futility test can no longer be framed using the "no set of facts" language. *See, e.g.*, *Williams v. County of Ventura*, No. CV 07-7655-AHM (MLG)2009 U.S. Dist. LEXIS 110167, at *39-40 (C.D. Cal. Aug. 7, 2009) (stating that, in light of *Twombly* and *Iqbal*, "[i]t might more appropriately be said that an amendment is futile when the proposed amended complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face'"); *Advanced Micro Devices, Inc. v. Samsung Elecs. Co.*, No. C 08-986 SI, 2009 U.S. Dist. LEXIS 45736, at *13 n.2 (N.D. Cal. May 18, 2009) (in discussing futility of an amendment, noting that "the Supreme Court rejected the 'no set of facts' standard in *Bell Atlantic v. Twombly*"); *Rondigo, LLC v. Township of*

*Richmond*, No. 08-10432, 2009 U.S. Dist. LEXIS 82684, at *16 (E.D. Mich. Mar. 31, 2009) (noting that, "[w]hile courts are still to use the Rule 12(b)(6) standard for measuring futility of a proposed amended claim, *Twombly* rejected the Rule 12(b)(6) standard articulated in *Conley*").

In its reply brief, Stonebrae also contends that its motion for leave to amend cannot be denied unless Toll establishes that "it is 'inevitable' that it will prevail on summary judgment on this claim." Reply at 4 (quoting *California ex rel. Cal. Dept't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004)). The problem with this contention is that *Neville* actually states that "futility *includes* the inevitability of a claim's defeat on summary judgment." *Neville*, 358 F.3d at 673 (emphasis added). In other words, one way to establish futility is to show the inevitability of a claim's defeat on summary judgment but that is not the only way. As noted above, the Rule 12(b)(6) standard essentially provides another way to establish futility.

B.  <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 372, 371 (1992) (internal quotation marks omitted). The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 353, 349 (2000) (emphasis omitted). The covenant "not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093 (2004) (internal quotation marks omitted).

As noted above, the first amendment proposed by Stonebrae is to include specific factual allegations as to how Toll breached the implied covenant of good faith and fair dealing. Previously, the Court had expressed concern that, "if the alleged breach of the implied covenant was not independent of breach of the alleged express breach of the contract, [Stonebrae] would effectively be seeking inquiry into motive on a breach-of-contract claim, which is generally not permissible." Docket No. 129 (Order at 1); *see also Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 353, 327 (2000) (stating

that, "where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous"); *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (noting that, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated").

In its proposed SAC, Stonebrae makes various allegations as to how Toll allegedly breached the implied covenant of good faith and faith dealing.[2] *See generally* SAC ¶ 44. But each of these allegations is problematic for the reasons discussed below.

### 1. Satisfactory Completion of Pre-Closing Work

Stonebrae alleges that, prior to November 1, 2007, Toll decided it was not going to close escrow on the parties' Purchase Agreement "for reasons having nothing to do with Stonebrae's performance under the [contract]." SAC ¶ 44(a). Implicit in this allegation is that, subsequently, Toll claimed in bad faith that Stonebrae had not, *inter alia*, satisfactorily completed the Pre-Closing Work. *See* Purchase Agreement § 6.2(a) (providing, as a condition precedent in favor of Toll, that "Stonebrae shall have satisfactorily completed the 'Stonebrae Pre-Closing Work' . . . by the Outside Closing Date").

In evaluating whether these allegations are sufficient to state a claim for breach of the implied covenant, the Court takes guidance from a state appellate court opinion, *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44 (2002). In *Storek*, the plaintiffs entered into a construction loan agreement with Citicorp pursuant to which Citicorp agreed to lend plaintiffs approximately $9 million. *See id.* at 48. Under the agreement, Citicorp's obligation to make disbursements to the plaintiffs was subject to a number of conditions precedent – most notably, Citicorp had to make the determination that the project budget was in balance. *See id.* at 49. Initially, Citicorp made disbursements to the plaintiffs but, at some point, it refused, asserting that

---

[2] The allegations can be broken into two categories (as reflected by Stonebrae's reply brief): (1) conduct before November 2, 2007, and (2) conduct on and after November 2, 2007.

4

United States District Court / For the Northern District of California

the project budget was not in balance. *See id.* at 50. The plaintiffs sued Citicorp, contending that it had deliberately engineered the collapse of the project. *See id.* at 53.

At trial, the jury had agreed with the plaintiffs' position – *i.e.*, that Citicorp's determination that the project budget was out of balance was made in bad faith and that Citicorp breached the implied covenant of good faith and fair dealing when it withheld the disbursements based on those bad faith determinations. *See id.* at 54. On appeal, Citicorp argued that it was entitled to judgment as a matter of law because "there could be no breach of the implied covenant . . . when its offending conduct – withholding loan disbursements – was authorized by the express terms of the contract." *Id.*

The state appellate court began its analysis by noting that "the question whether the covenant of good faith contradicted the express terms of the loan agreement" was "a question of law," not fact. *Id.* at 55. That question in turn required the court "to examine whether Citicorp owed a duty to act in good faith when deciding whether to disburse the loan funds." *Id.* The court emphasized that the question whether a duty to act in good faith should be implied must be distinguished from the question whether a covenant of good faith that is implied has in fact been breached. *See id.* at 62 n.13. Ultimately, the court concluded that Citicorp did not have an implied duty to act in good faith.

The court explained that, under the loan agreement, Citicorp had an obligation to disburse loan funds upon fulfillment of a condition precedent – *i.e.*, Citicorp's satisfaction that the project budget was in balance.[3] *See id.* at 58. When a promisor's performance is expressly conditional upon the promisor's satisfaction, a court "will imply a covenant of good faith to limit the promisor's express contractual authority *only when necessary* to create mutuality." *Id.* at 61 (emphasis added). Here, the covenant of good faith and fair dealing did not need to "be implied to create a binding promise" because Citicorp's performance was conditional on its objectively reasonable satisfaction. *See id.*

---

[3] Contrary to what Citicorp argued, its "obligation to make the loan disbursements was not discretionary" because it was "*conditional* upon the fulfillment of [the] condition precedent." *Storek*, 100 Cal. App. 4th at 58 (emphasis in original).

5

The court noted that, "[w]hen, as here, a contract provides that the satisfaction of one of the parties is a condition precedent to that party's performance, two different tests are recognized: (1) the party may make a purely subjective decision but it must be made in good faith; or (2) the party must make the decision in accordance with an objective standard of reasonableness." *Id.* at 58-59. "The rationale behind [both] tests . . . relates to the familiar issue of whether a promise is illusory." *Id.* at 61. According to the court,

> [t]he choice of objective or subjective test to evaluate a promisor's satisfaction depends on the intent of the parties, as expressed in the language of the contract. In the absence of a specific expression in the contract or one implied from the subject matter, the preference of the law is for the less arbitrary reasonable person standard. The reasonableness test is especially preferable when factors of commercial value or financial concern are involved, as distinct from matters of personal taste [*e.g.*, artistic judgment].

*Id.* at 59-60.

Because the decision to be made by Citicorp – *i.e.*, whether to disburse loan funds – "was a matter entirely of financial concern," *id.* at 60, the objective test applied. The court concluded:

> [W]hen, as here, a promisor's performance is conditional on his objectively reasonable satisfaction, then the promisor's ability to avoid performance is sufficiently curtailed, the promise is not illusory, and the covenant of good faith and fair dealing need not be implied to create a binding promise.
>
> This analysis leads us to conclude that Citicorp owed no duty of good faith in determining whether the conditions precedent to its performance had been fulfilled. The loan agreement was a freely negotiated contract entered into by sophisticated entities. Under the terms of that contract, expressly agreed to by [the plaintiffs], Citicorp's obligation to disburse the loan funds was conditional on its objectively reasonable determination that the project budget was in balance. No obligation to act in good faith can be implied to contradict or limit that express condition precedent. No inquiry into good faith can be made.
>
> . . . .
>
> Consequently, the only available challenge to Citicorp's determination that the project budget was not in balance was a challenge to the reasonableness of that determination. Such a challenge, however, is a claim of nonperformance of the express terms of the contract, not a claim of breach of the implied covenant.

*Id.* at 61-62.

The instant case is analogous to *Storek*. In *Storek*, Citicorp had an obligation to disburse loan funds upon fulfillment of a condition precedent – *i.e.*, Citicorp's satisfaction that the project budget was in balance. In the instant case, Toll had an obligation to close escrow upon fulfillment of a condition precedent – *i.e.*, Toll's satisfaction that the Pre-Closing Work had been completed. *See* Purchase Agreement § 6.2(a) (providing, as a condition precedent in favor of Toll, that "Stonebrae shall have satisfactorily completed the 'Stonebrae Pre-Closing Work' . . . by the Outside Closing Date"). Because the parties' Purchase Agreement did not specify whether Toll's satisfaction should be evaluated under an objective test or subjective test, "the preference of the law is for the less arbitrary reasonable person standard." *Storek*, 100 Cal. App. 4th at 59. Furthermore, because, here, as in *Storek*, "factors of commercial value or financial concern are involved, as distinct from matters of personal taste [*e.g.*, artistic judgment]," *id.* at 60, the Court concludes that the objective test is applicable. And, as the court noted in *Storek*, "when . . . a promisor's performance is conditional on his objectively reasonable satisfaction, then the promisor's ability to avoid performance is sufficiently curtailed, the promise is not illusory, and the covenant of good faith and fair dealing need not be implied to create a binding promise." *Id.* at 61.

At the hearing on the motion for leave to amend, Stonebrae argued that the subjective test should be applied instead of the objective test because, under the parties' Purchase Agreement, Toll had to make a purely subjective decision as to whether the Pre-Closing Work had been "completed in a good and workmanlike manner." Purchase Agreement, Ex. J. Stonebrae contended that this fact makes the instant case distinguishable from *Storek*, where Citicorp had to make only a quantitative determination as to whether the project budget was in balance. The Court is not persuaded. As the court noted in *Storek*, "when the promisor's satisfaction deals with matters of fancy, taste, or judgment, the promisor's judgment is purely subjective. The covenant of good faith is implied in order to set a limit on the promisor's ability to express dissatisfaction and thereby supply adequate consideration to support the contract." *Storek*, 100 Cal. App. 4th at 61. Here, the Purchase Agreement did not give Toll leeway to decide whether the Pre-Closing Work had been satisfactorily completed as a matter of "personal taste." *Id.* at 60. Rather, it had to be completed in a "good and workmanlike manner" as adjudged by a standard of objective reasonableness.

Stronebrae made no showing that such a standard is inherently subjective. Moreover, the list specifying the pre-closing work, *see* Purchase Agreement, Ex. J, is reasonably detailed and objectively verifiable.

The objective test rather than subjective test of good faith applies in determining whether the pre-closing work was adequately completed. Accordingly, the only contention available to Stonebrae is that Toll did not act reasonably in concluding that Stonebrae had not satisfactorily completed the Pre-Closing Work. But "[s]uch a challenge . . . is a claim of nonperformance of the express terms of the contract, not a claim of breach of the implied covenant." *Storek*, 100 Cal. App. 4th at 62.

### 2. Failure to Inform re Pre-Closing Work

Stonebrae also alleges that there was a breach of the implied covenant because, prior to November 1, 2007, Toll knew that Stonebrae was spending millions preparing to close escrow (*i.e.*, completing the Pre-Closing Work) but never expressed dissatisfaction with the Work. *See* SAC ¶ 44(b).

Here, the problem for Stonebrae is that "the scope of conduct prohibited by the covenant . . . is circumscribed by the purposes and express terms of the contract." *Carma*, 2 Cal. 4th at 373. The covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349-50. Or to state the matter somewhat differently, "implied terms should never be read to vary express terms." *Carma*, 2 Cal. 4th at 374. Thus, when "acts and conduct [are] authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct." *Id.* (internal quotation marks omitted).

In the instant case, the implied terms advocated by Stonebrae would be at odds with the express terms of the Purchase Agreement. As Toll points out, the Purchase Agreement does not impose any substantive duty on Toll to monitor Stonebrae's Pre-Closing Work prior to the prescribed notice provisions expressly contained in the Agreement. *See* Purchase Agreement § 17.2(a) (giving Stonebrae ten days after receipt of notice of default to cure unless "the failure is of such a nature that it cannot be cured within such ten (10) day period," in which case Stonebrae shall

commence a cure within ten days and "diligently pursue such cure to completion not less than sixty (60) days following receipt of the Default Notice"). Moreover, the contract puts the burden on *Stonebrae* to keep Toll informed, providing that "Stonebrae shall deliver written notice to Builder upon substantial completion of the Stonebrae Pre-Closing Work." Purchase Agreement § 9.2.

The implied covenant proposed by Stonebrae would be at odds with the express terms of the Purchase Agreement and thus must be rejected.

### 3. Failure to Inform re Close-of-Escrow Date

Stonebrae next alleges that Toll violated the covenant of good faith and fair dealing because, prior to November 1, 2007, Toll never told Stonebrae of its position that escrow had to close by November 1, 2007, and that, if escrow did not close on that date, then Toll would terminate the Purchase Agreement. *See* SAC ¶¶ 44(c), (f).

Stonebrae, however, cites to no authority supporting its contention that a contracting party has an obligation to tell the other contracting party what its interpretation of the terms of a contract are, particularly when the terms on point are expressed in writing. Moreover, the covenant of good faith and fair dealing "does not impose an affirmative duty on a party to forbear from enforcing rights expressly given under the contract." *Storek*, 100 Cal. App. 4th at 56 n.10. In this case, each party has a different interpretation of the Agreement, but that is a dispute governed by express contract. Its resolution does not require or implicate any implied covenant.

### 4. Failure to Take Steps to Prepare for Close of Escrow and Failure to Tender Performance Required for Close of Escrow

Stonebrae's next allegation is that the implied covenant was breached by Toll failing to take any steps to prepare for a close of escrow on November 1, 2007 – including but not limited to arranging for a joint inspection of the Pre-Closing Work – and never tendering its own performance that was required for the close of escrow. *See* SAC ¶¶ 44(d)-(e).

To the extent the allegation is that Toll never tendered its own performance, that would be an allegation that Toll did not comply with the express terms of the Purchase Agreement. Therefore, any claim of breach of the implied covenant would be superfluous.

As for Stonebrae's assertion that Toll did not take any steps to prepare for the close of escrow – in particular, arranging for a joint inspection of the Pre-Closing Work – as noted above, that is a duty that the Purchase Agreement puts upon Stonebrae rather than Toll. Also, that dispute is governed by the express terms of the Agreement.

### 5. Improper Notice of Default

Finally, Stonebrae alleges that there was a breach of the implied covenant because, on November 2, 2007, Toll sent a letter to Stonebrae which was not a proper notice of default and opportunity to cure, and, after November 2, 2007, Toll did not cooperate with Stonebrae "which had the effect of frustrating and/or foreclosing Stonebrae's ability to ascertain the nature of and commence a cure of any material breaches that might have existed." SAC ¶¶ 44(g)-(h).

As the Court noted at the hearing on Stonebrae's motion, the Purchase Agreement does not expressly define what is required to be in a Default Notice. As noted at the hearing, however, if the Purchase Agreement were interpreted to require that a Default Notice to be sufficiently specific such that Stonebrae could cure the default without further information or cooperation from Toll, then Stonebrae's claim of breach of the implied covenant would be redundant of the express breach-of-contract claim. There is noting that the implied covenant would add to the obligations already required under the express Purchase Agreement. At the hearing, Toll conceded that the Default Notice required that level of specificity under the Purchase Agreement. Accordingly, Stonebrae's claim of breach of the implied covenant is superfluous.

### 6. Summary

Because Stonebrae's claim for breach of the implied covenant is either redundant or at odds with the express terms of the contract, the Court denies Stonebrae's first proposed amendment.

## C. Validity and Enforceability of Liquidated Damages Clause

Stonebrae's second proposed amendment is to include a new claim for declaratory relief about the validity and enforceability of the liquidated damages clause in the parties' Purchase Agreement. Basically, Stonebrae wants this amendment so that it can obtain damages in excess of the liquidated damages provision in the Purchase Agreement. *See* Purchase Agreement § 17.1(c)(ii) (providing that, "IN THE EVENT THAT BUILDER FAILS TO CLOSE ESCROW AS REQUIRED

HEREIN BY REASON OF A BUILDER DEFAULT, THEN STONEBRAE SHALL HAVE THE RIGHT, AS ITS SOLE REMEDY FOR SUCH BUILDER DEFAULT, TO TERMINATE THE AGREEMENT . . . AND INSTRUCT THE ESCROW HOLDER . . . TO DRAW THE LETTERS OF CREDIT AND [TO] DISBURSE THE PROCEEDS THEREOF AND ANY CASH DEPOSIT THEN HELD BY ESCROW HOLDER TO STONEBRAE TOGETHER WITH ALL ACCRUED INTEREST THEREON"). In its opposition, Toll presents three arguments as to why the Court should deny leave to amend: (1) the new claim for relief would be futile; (2) the new claim for relief is a sham; and (3) the new claim for relief is untimely and would be unduly prejudicial to Toll.

The Court rejects Toll's first argument. According to Toll, the new claim for relief is futile because "the purpose of the law governing liquidated damages is not to protect contracting parties from improvidently agreeing to liquidated damages that are too low" but rather "to protect parties from liquidated damages that are so excessive that they amount to a penalty or a forfeiture." Opp'n at 13. The argument is not persuasive. Toll presents no cases so holding. Indeed, as Stonebrae points out, the legislative history for California Civil Code § 1671, the statute that governs liquidated damages clauses, indicates otherwise. The 1977 Law Revision Commission comments state in relevant part as follows:

> Unlike subdivision (d), subdivision (b) gives the parties considerable leeway in determining the damages for breach. All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract. Other relevant considerations in the determination of whether the amount of liquidated damages is so high *or so low* as to be unreasonable include, but are not limited to, such matters as the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving causation and foreseeability, and whether the liquidated damages provision is included in a form contract.

Cal. Civ. Code § 1671, 1977 Law Revision Commission comments (emphasis added).

As for Toll's second argument, it presents a closer question but ultimately is not convincing. While it is true that Stonebrae is not making any new factual allegations contradicting its earlier

11

pleadings,[4] Stonebrae did in its original complaint and first amended complaint seem to concede that its damages were limited to the amount provided for in the liquidated damages clause of the Purchase Agreement. *See* Docket No. 1 (Complaint ¶ 25; Prayer ¶ 2); Docket No. 7 (FAC ¶ 25; Prayer ¶ 2). In other words, arguably, Stonebrae made a judicial admission that its damages were limited to liquidated damages. A judicial admission is an admission in a pleading which has "the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal quotation marks omitted); *see also United States Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005) (noting that "[j]udicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute"). It is considered conclusively binding. *See American Title*, 861 F.2d at 226.

A judicial admission, however, may be amended. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 960-61 (9th Cir. 2006) (noting that a judicial admission is no longer binding if the party subsequently amends the pleading). As the Ninth Circuit has stated: "Where . . . the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995). In *Sicor*, the plaintiff had sued the defendant for, *inter alia*, breach of contract. The district court held that, even if there were a contract between the parties, the alleged promise by the defendant – as characterized in the plaintiff's complaint, a promise to litigate certain cases fully to judgment – was void because it ran afoul of California's public policy favoring settlement. On appeal, the Ninth Circuit acknowledged the judicial admission in the plaintiff's complaint but noted that, in its opposition to the defendant's motion for summary judgment, the

---

[4] *Compare Reddy v. Litton Indus.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (denying plaintiff leave to amend on the basis of futility because "[i]t would not be possible for Reddy to amend his complaint to allege a completely new injury that would confer standing to sue without contradicting any of the allegations of his original complaint" that the injury was caused by his alleged wrongful termination); *Azadpour v. Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 U.S. Dist. LEXIS 55502, at *6 n.2 (N.D. Cal. July 23, 2007) (stating that, "[w]here allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham'").

plaintiff had explained, that by saying the defendant would litigate fully to judgment, the parties did not mean that there would be no settlement; rather, they intended only that the defendant would litigate fully and aggressively with the plaintiff's interests in mind. The Ninth Circuit concluded that the plaintiff had "retracted its judicial admission by subsequently recharacterizing the alleged oral agreement in its opposition to [the defendant's] motion for summary judgment." *Id.* at 860.

The Court acknowledges that the instant case is somewhat distinguishable from *Sicor* in that, in *Sicor*, the plaintiff essentially provided a clarification as to the allegation in its complaint. Here, Stonebrae is not making a clarification; rather, it is making a contention – *i.e.*, that it is not limited to liquidated damages – that is contrary to what was pled in the previous complaints. Nevertheless, the Ninth Circuit in *Sicor* did not allow only for clarifications but specifically recognized that a judicial admission might be made in error. *See id.* at 859-60. Here, Stonebrae has not explicitly stated the reason for its error, *i.e.*, why it did not plead alternative damages in its prior complaints. Implicit in Stonebrae's papers, however, is its contention that it did not need to plead alternative damages because Toll's first affirmative defense (filed in February 2008) put the validity of the liquidated damages clause at issue; only when Toll stated that it wanted to strike that part of the affirmative defense did Stonebrae have a reason to seek leave to amend to preserve the issue for litigation. While this explanation is somewhat dubious as it appears that the parties have largely conducted this litigation as if the liquidated damages clause were enforceable, *see* Reply at 12 (stating that "[t]he first and only discovery into the issue was Stonebrae's request to Toll many months ago for the facts supporting Toll's First Affirmative Defense"), this Court must follow the Ninth Circuit's directive in *Sicor* that an explanation for an error must be accorded due weight.

Accordingly, this leaves only Toll's third argument – *i.e.*, that Stonebrae has delayed in pursuing the amendment and that Toll would be unfairly prejudiced by the amendment. The Court agrees with Toll that there has been delay. Stonebrae initiated this lawsuit in November 2007; it is now almost two years later. But regardless of delay, the dispositive question is whether Toll would be prejudiced by the amendment. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (noting that "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend"). Toll's prejudice argument seems to be that it has relied on Stonebrae's statement that it seeks only

liquidated damages, *e.g.*, by not conducting any discovery into the matter. To counter the fact that trial in this case is not until July 2010,[5] Toll tries to argue that, since May 2006 when the parties negotiated the contract at issue, memories have faded, documents may no longer be in existence, and witnesses may be difficult to locate. *See* Opp'n at 18. This argument is not convincing. Toll makes no specific showing in this regard. It gives no example of any evidence relevant to the enforceability of the liquidated damages clause which was lost in the interim. Moreover, any asserted reliance interest would be dubious since Toll's own pleading kept the issue in play since the outset of this litigation. There has been no agreement or stipulation to deem the liquidated damages provision valid.

Toll argues that, if the amendment were allowed, Toll would have to add new affirmative defenses and counterclaims. "For example, in order to prove its claim, Stonebrae will have to prove that its representatives, Mr. Yuen and Mr. Letchinger, made factual misrepresentations about the reasonableness of the amount of liquidated damages. In addition to an estoppel defense, this give[s] rise to counter claims for fraud and negligent misrepresentation against Stonebrae and Mr. Yuen and Mr. Letchinger personally." Opp'n at 19. Stonebrae does not squarely address this contention other than noting in a footnote that Toll's representatives also initialed the liquidated damages clause and yet Toll claimed invalidity of the clause in its first affirmative defense. *See* Reply at 14 n.11. At bottom, the question is whether adding new affirmative defenses or counterclaims would derail the current trial schedule. Given that the subject matter appears fairly narrow, that is unlikely.

The Court therefore grants Stonebrae leave to amend with respect to the liquidated damages issue.

## II. CONCLUSION

For the foregoing reasons, Stonebrae's motion for leave to amend is granted in part and denied in part. The motion is granted to the extent Stonebrae seeks leave to include a claim for declaratory relief regarding the validity and enforceability of the liquidated damages clause. The motion is denied to the extent Stonebrae seeks leave to include, as part of its breach-of-contract

---

[5] Fact discovery does not close until March 1, 2010. *See* Docket No. 119.

14

claim, a claim for breach of the implied covenant of good faith and fair dealing. Because of this denial, Stonebrae's request to take discovery on the issue of Toll's motive is therefore denied.

Stonebrae shall file its amended complaint consistent with this order within five days of the date of this order.

This order disposes of Docket No. 130.

IT IS SO ORDERED.

Dated: January 7, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge