1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2      Including Professional Corporations
   PHILIP F. ATKINS-PATTERSON, Cal. Bar No. 94901
3  ARTHUR J. FRIEDMAN, Cal. Bar No. 160867
   Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
   Telephone:   415-434-9100
5  Facsimile:   415-434-3947
   E-Mail:      patkinspatterson@sheppardmullin.com
6               afriedman@sheppardmullin.com

7  COOPER & KIRKHAM, P.C.
   JOSEF D. COOPER, Cal. Bar No. 53015
8  TRACY R. KIRKHAM, Cal. Bar No. 69913
   357 Tehama Street, 2nd Floor
9  San Francisco, CA 94103-4169
   Telephone:   415-788-3030
10 Facsimile:   415-882-7040
   E-Mail:      jdc@coopkirk.com
11              trk@coopkirk.com

12 Attorneys for Plaintiff and Counter-Defendant
   STONEBRAE L.P.
13

14                  **UNITED STATES DISTRICT COURT**

15                 **NORTHERN DISTRICT OF CALIFORNIA**

16                    **(SAN FRANCISCO DIVISION)**

17 STONEBRAE L.P., a Delaware limited        Case No. C 08-00221-EMC
   partnership,
18                                           **STONEBRAE L.P.'S MOTION FOR**
                   Plaintiff,                **AWARD OF ATTORNEYS' FEES,**
19                                           **TAXABLE AND NON-TAXABLE**
              v.                             **COSTS**
20
   TOLL BROS., INC.; a Pennsylvania corporation;   DATE:      March 16, 2011
21 TOLL BROTHERS, INC., a Pennsylvania
   corporation; DOES 1 through 15, inclusive,      TIME:      10:30 a.m.
22
                   Defendants.                     Trial Date: February 28, 2011
23                                                             [Vacated]

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. ISSUES TO BE DECIDED ............................................................. 1

II. INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 2

III. FACTS RELEVANT TO THIS MOTION ....................................... 6

    A. November 2007 – April 2008: Filing, Removal, Initial Pleadings Motions And Preparations For Discovery ....................................... 7

    B. May – July 2008: Preparation Of Initial Disclosures, Rule 26(f) Report And Initial Case Management Conference ........................... 7

    C. August 2008 – April 2009: Preparation Of Stonebrae's Motions To Dismiss ("Closing Date" and "Black Hills" Issues), Opposing Toll's "Black Hills" Summary Judgment Motion, And Discovery ........................... 8

    D. May – December 2009: Enforceability Of Liquidated Damages Clause, Document Production And Discovery, Settlement Conference ........ 9

    E. January – March 2010: Rolling Document Production, Discovery, Preparation Of Partial Summary Judgment Motions And "Issues Modules" ....................................................................... 11

    F. April - July 2010: Document Production, Partial Summary Judgment Motions, Preparations For And Commencement Of Deposition Discovery ............................................................... 12

    G. August – October 2010: Depositions, Partial Summary Judgment Motions, Expert Disclosures, And Toll's Rule 68 Offer Of Judgment ........ 13

IV. ARGUMENT ............................................................... 17

    A. Stonebrae Is Entitled To Recover Its Reasonable Attorneys' Fees, Court Costs, Litigation Expenses, And Interest On Amounts Of Fees And Costs Paid ....................................................... 17

    B. Stonebrae's Requested Lodestar Amount Is Reasonable ............... 19

        1. The Number Of Hours Claimed Is Reasonable ..................... 20

        2. The Hourly Rates Claimed Are Reasonable ........................ 23

    C. Stonebrae Is Entitled To Recover All Of Its Costs ...................... 24

-i-

     D.     Stonebrae Is Entitled Also To Recover Its Attorneys' Fees And Costs
In Connection With This Motion And Its Companion Motion For
Mandatory Pre-Judgment Interest ................................................................. 27

V.     CONCLUSION .................................................................................................. 28

Case No. C 08-00221-EMC

W02-WEST:FAP\403169745.1

STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS'
FEES, TAXABLE AND NON-TAXABLE COSTS

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Blum v. Stenson*
    465 U.S. 886 (1984)..................................................................................... 23

*Carbonell v. INS*
    429 F.3d 894 (9th Cir. 2005) ..................................................................... 26

*Davis v. City and County of San Francisco*
    976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 .. 26, 27

*Davis v. Mason County*
    927 F.2d (9th Cir. 1991)............................................................................. 26

*Grove v. Wells Fargo Financial California, Inc.*
    606 F.3d 577 (9th Cir. 2010) ................................................................. 25, 26

*Hensley v. Eckerhart*
    461 U.S. 424 (1983)................................................................................... 19

*Herrington v. County of Sonoma*
    12 F.3d 901 (9th Cir. 1993) ....................................................................... 26

*Johnson v. Univ. Coll. of the Univ. of Alabama*
    706 F.2d 1205 (11th Cir. 1983) ................................................................. 21

*Metavante Corp. v. Emigrant Savings Bank*
    619 F.3d 748 (7th Cir. 2010) ............................................................... 19, 20

*Missouri v. Jenkins*
    491 U.S. 274 (1989)................................................................................... 25

*Shakey's Inc. v. Covalt*
    704 F.2d 426 (9th Cir. 1983) ..................................................................... 19

*Sorenson v. Mink*
    239 F.3d 1140 (9th Cir. 2001) ................................................................... 21

*Taco Bell Corp. v. Cont'l Cas. Co.*
    388 F.3d 1069 (7th Cir. 2004) ................................................................... 19

*Trs. of the Constr. Indus. and Laborer Health and Welfare Trust v. Redland Ins. Co.*
    460 F.3d 1253 (9th Cir. 2006) ................................................................... 25

*Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*
298 F.3d 1238 (11th Cir. 2002) ........................................................ 26

CALIFORNIA CASES

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*
47 Cal.App.4[th] 464 (1996) .............................................................. 25

*Children's Hosp. & Med. Ctr. v. Bonta*
97 Cal.App.4[th] 740 (2002) .............................................................. 23

*City of Oakland v. Oakland Raiders*
203 Cal.App.3d 78 (1988) ................................................................. 23

*Clauson v. Superior Court*
67 Cal.App.4[th] 1253 (1998) ............................................................ 18

*Cruz v. Ayromloo*
155 Cal.App.4[th] 1270 (2007) .......................................................... 23

*Downey Cares v. Downey Comty. Dev. Comm'n.*
196 Cal.App.3d 983 (1987) ............................................................... 21

*Hadley v. Krepel*
167 Cal.App.3d 677 (1985) ............................................................... 20

*Hogar Dulce Hogar v. Comty. Dev. Comm'n.*
157 Cal.App.4[th] 1358 (2007) .......................................................... 21

*Horsford v. Bd. of Trustees*
132 Cal.App.4[th] 359 (2005) ............................................................ 21

*Ketchum v. Moses*
24 Cal.4[th] 1122 (2001) ............................................................. 20, 21

*Municipal Court v. Bloodgood*
137 Cal.App.3d 29 (1982) .................................................................. 6

*Niederer v. Ferreira*
189 Cal.App.3d 1485 (1987) ............................................................. 23

*Peak-Las Positas Partners v. Bollag*
172 Cal.App.4[th] 101 (2009) ......................................................... 2, 23

*PLCM Group, Inc. v. Drexler*
22 Cal.4[th] 1084 (2000) .................................................................. 19

-iv-

*Rice v. Schmid*
    25 Cal.2d 259 (1944) ................................................................................ 18

*Serrano v. Unruh*
    32 Cal.3d 621 (1982) ................................................................................ 27

*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*
    185 Cal.App.4th 1050 (2010) ................................................................... 25

*Vo v. Las Virgenes Mun. Util. Dist.*
    79 Cal.App.4th 440 (2000) ....................................................................... 20


FEDERAL STATUTES

28 U.S.C. § 1920 ........................................................................... 5, 24, 25, 26


CALIFORNIA STATUTES

Civil Code
    § 1717(b)(1) .............................................................................................. 18
    § 3287 ........................................................................................................ 17

Code of Civil Procedure
    § 1033.5 .................................................................................................... 25


COURT RULES

Federal Rules of Civil Procedure
    Rule 26 ........................................................................................................ 9
    Rule 26(f) .................................................................................................... 7
    Rule 56(f) .................................................................................................. 13
    Rule 68 ........................................................... 2, 5-6, 13, 16-18, 21, 25-28

Federal Rules of Evidence
    Rule 408 .................................................................................................... 11

Local Rules
    Rule 7-4 ...................................................................................................... 1


MISCELLANEOUS

Pearl, Richard M., *California Attorney Fee Awards* (3rd Edition, 2010) ......................... 20

STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS'
FEES, TAXABLE AND NON-TAXABLE COSTS

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 16, 2011, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C, 15th Floor, of the United States District Court located at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff and Counter-Defendant Stonebrae L.P. ("Stonebrae") will and hereby does move this Court, pursuant to Local Rule 7-2, this Court's Civil Minutes and (Dkt. # 249) and Order on the parties' stipulation, dated December 15, 2010 (Dkt. # 252), for an Order awarding Stonebrae its attorneys' fees and costs and interest thereon.[1]

This motion is based on this notice of motion, the accompanying Memorandum of Points and Authorities, the Declarations of Philip F. Atkins-Pattenson, Josef D. Cooper, Wayne E. Costa and Richard M. Pearl, the papers and pleadings on file in this action, and such other papers as may be submitted prior to or at the hearing of this motion, and the arguments at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4, Stonebrae submits that the issues to be decided on this motion are:

1. The amount of attorneys' fees to be awarded to Stonebrae, as the prevailing party, for the prosecution and defense of the claims and counterclaims in this

---

[1] Because this motion is submitted pursuant to the procedures agreed upon by the Court and the parties at the November 3, 2010 Status Conference, and Judgment has not been entered, Stonebrae is not submitting a separate Bill of Costs. Rather, for the reasons set forth herein, Stonebrae seeks an award of all of its expenses incurred in this litigation, not just its taxable costs under 28 U.S.C. § 1920, as provided in the parties' contract. Further, Stonebrae is concerned that if it were to file a Bill of Costs, Toll would argue that Stonebrae had waived its right to recover expenses beyond the taxable costs in 28 U.S.C. § 1920. The amount of expenses sought is set forth in the invoices attached as Exhibits to the supporting Declarations of Philip F. Atkins-Pattenson ("Atkins-Pattenson Decl.") and Josef D. Cooper ("Cooper Decl."), and summarized at Paragraph 49 of the Atkins-Pattenson Decl.

-1-

1   action through the date of Toll's Rule 68 Offer of Judgment, on October 18, 2010. (Dkt.

2   # 248).

3              2.    The amount of costs (taxable and non-taxable) to be awarded to

4   Stonebrae.

5              3.    The amount of pre-judgment interest to be awarded to Stonebrae on

6   amounts paid for attorneys' fees and costs to its co-counsel during the pendency of this

7   litigation.

8              4.    The amount of attorneys' fee to be awarded to Stonebrae in

9   connection with the instant motion, and its companion motion for mandatory pre-judgment

10  interest.

11                              **II.**

12              **INTRODUCTION AND SUMMARY OF ARGUMENT**

13              Starting with its November 2, 2007 letter to Stonebrae, purporting to place

14  Stonebrae in default under the Village B Purchase Agreement,[2] Toll embarked on a

15  strategy of asserting demonstrably false and unsubstantiated claims and defenses as a

16  means of avoiding the consequences of walking away from its $32 million obligation to

17  buy an additional 56 lots that Toll had determined it no longer wanted or needed.  Toll

18  aggressively pursued this same strategy for the next three years in this litigation where,

19  among other things:[3]

20

21  [2] The term "Village B Purchase Agreement" refers to that certain Purchase and Sale
    Agreement and Joint Escrow Instructions Between Stonebrae L.P. and Toll Brothers, Inc.
22  for Lot Numbers 29, 63-117 of Stonebrae Community Village B, dated May 1, 2006, as
    amended.  A true and correct copy of the Village B Purchase Agreement is attached as
23  Exhibit 1 to Stonebrae's Second Amended Complaint (the "SAC").  (Dkt. # 142.)  Defined
    terms herein are used in the same manner as the Village B Purchase Agreement, unless
24  otherwise indicated.

25  [3] As demonstrated by this Court's docket in this case (consisting of over 250 entries to
    date), this case has been vigorously litigated every step of the way.  Thus, it should come
26  as no surprise to Toll that Stonebrae has incurred significant attorneys' fees and costs in the
    prosecution of its claims while defending against Toll's ever-changing counterclaims.
27  Toll's "aggressive litigation posture" is a factor to be considered in determining the
    reasonableness of Stonebrae's claimed lodestar. (*Peak-Las Positas Partners v. Bollag*,
28  172 Cal.App.4th 101, 114 (2009).)  Here, as Stonebrae shows, Toll's litigation posture

                                    -2-

- Toll opposed Stonebrae's early motion to dismiss Toll's affirmative defenses and counterclaims based on Toll's contention that the Village B Purchase Agreement specified November 1, 2007 as a fixed date for the close of escrow. (Dkt. # 63.) Knowing that if the Court granted Stonebrae's motion the case would be over, since all Toll's alleged defaults depended on a November 1, 2007 closing date, Toll promised that parol evidence would establish that the parties actually intended that escrow close on that date, and no later date. Yet, Toll produced no such parol evidence and, indeed, each of Toll's witnesses admitted under oath in deposition that they had no such parol evidence.[4] This tactic by Toll prolonged this litigation by another 21 months, at a cost of several million dollars.

- Toll moved for summary judgment on Stonebrae's First Amended Complaint on the grounds that the Village B Purchase Agreement was illegal and thus void because these sophisticated parties purportedly agreed to waive the requirements of California's Subdivision Map Act. (Dkt. # 71.) The Court, however, rejected Toll's argument, which failed to consider all the provisions of the parties' contract, and denied Toll's summary judgment motion and granted Stonebrae's companion motion to dismiss. (Dkt. # 89.)

- Toll attempted to defend its deficient November 2, 2007 Default Notice by arguing that it was not required to tell Stonebrae what alleged defaults Toll considered material to the contract so that Stonebrae could timely cure those defaults and proceed to closing. Instead, Toll chose to "hide the ball," arguing that Stonebrae knew what the contract required of it, while also hiding from Stonebrae until the deposition of a key Toll witness in

contributed directly to the substantial amount of attorneys' fees and costs incurred by Stonebrae. (*See* Section III, below.)

[4] *See* Stonebrae's Motion For Partial Summary Judgment No. 4(A) [Re Closing Date]. (Dkt. ## 229, 232-233; 235-246.)

-3-

September 2010 the existence of inspections of the Stonebrae Pre-Closing Work performed by Toll – without Stonebrae's knowledge – in October 2007.[5] In other words, Toll had the information to specify any alleged Stonebrae Default, but did not do so.

- At the same time Toll was purporting to place Stonebrae in default, Toll knew - as all the Toll witnesses admitted under oath in their depositions - that Toll had not satisfied (or waived) Toll's closing conditions under the Village B Purchase Agreement.[6]

- Toll next fabricated several defenses and counterclaims, seeking rescission of the parties' contract or damages, each based on the lack of a permanent clubhouse at the private Stonebrae Country Club. For support, Toll relied on Stonebrae's project-related entitlement documents (to which Toll was neither a party nor a third party beneficiary) even though it is abundantly clear from these documents as well as from the Village B Purchase Agreement itself that Stonebrae had made no enforceable promise to Toll or to anyone else to construct a permanent clubhouse prior to November 1, 2007. Indeed, Stonebrae had expressly disclaimed any such commitment to Toll in the Village B Purchase Agreement.[7]

- Toll propounded serial document requests to Stonebrae as Toll invented additional defenses and counterclaims, thus forcing Stonebrae to search for documents relating to virtually every aspect of the Stonebrae Development and spanning many years. Stonebrae's several attempts to narrow the scope

---

[5] *See* Stonebrae's Motion For Partial Summary Judgment No. 4(C) [Re Sufficiency Of Default Notice]. (Dkt. ## 234, 232-233; 235-246.)

[6] *Id.*

[7] *See* Stonebrae L.P.'s Motion For Partial Summary Judgment No. 4(B) [Re Clubhouse Issues]. (Dkt. ## 230, 232-233; 235-246.) Notably, Toll asserted that it was a third party beneficiary of the Development Agreement between Stonebrae and the City of Hayward despite the fact that the Development Agreement expressly states that there are no third party beneficiaries. (Dkt. # 238, Exh. 14, at p. 25.)

-4-

of Toll's requests were rejected by Toll, and Stonebrae ultimately reviewed over 1 million pages of documents for responsiveness and privilege, and produced over 334,000 pages of documents to Toll.[8]

Presumably, Toll adopted and pursued this litigation strategy in the hopes that Stonebrae would succumb and agree to a settlement for less than the amount of the liquidated damages clause in the Village B Purchase Agreement ($4,774,944), pre-judgment interest, attorneys' fees, court costs and litigation expenses. Toll's strategy, which forced Stonebrae to incur substantial attorneys' fees and costs to address and demonstrate the lack of merit in Toll's various defenses and counterclaims, and prepare for trial, ultimately failed. In deposition after deposition of Toll's witnesses, and from the responses it was forced to give to key Requests for Admission propounded by Stonebrae,[9] the fatal flaws in Toll's case were unmasked and had become apparent to all concerned.

Thus, just five days after the conclusion of the deposition of the last of the fact witnesses - James Boyd, Toll's Regional President for California - Toll threw in the proverbial towel and served Stonebrae with a Rule 68 Offer of Judgment that provides for payment of the full amount of liquidated damages ($4,774,944), plus prejudgment interest and attorneys' fees and costs as determined by the Court. (Dkt. # 248.)

Section 19.7 of the Village B Purchase Agreement provides that in any action or proceeding "regarding this Agreement or Property," the prevailing party "shall be entitled to the payment by the losing party of its reasonable attorneys' fee, court costs and litigation expenses, as determined by the court." [10] Toll has conceded that Stonebrae is the prevailing party, and Stonebrae now seeks to recoup the significant amount of attorneys'

---

[8] *See* Atkins-Patterson Decl. ¶¶ 13, 21; Cooper Decl., at ¶ 7.

[9] *See* Dkt. # 243.

[10] The text of Section 19.7 shows that the parties intended for the prevailing party to recover *all* of its costs, not just its taxable costs. That is why Section 19.7 includes recovery of "litigation expenses" in addition to recovery of "court costs." (*See* Section IV.C, below [discussion of right to recover all costs incurred, not just taxable costs under 28 U.S.C. § 1920].)

STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS'
FEES, TAXABLE AND NON-TAXABLE COSTS

fees and costs it was forced to incur in prosecuting its claims relating to Toll's breach of the Village B Purchase Agreement, and defending against Toll's continued efforts to avoid responsibility for its breach of the parties' agreement.[11] As Stonebrae shows, the amount of attorneys' fees, costs and interest on the amount of attorneys' fees and costs paid by Stonebrae during the three years of this litigation, totaling $4,364,971.35 is reasonable under the circumstances of this case, and should be awarded in full.[12]

## III.

## FACTS RELEVANT TO THIS MOTION

Through the extensive motion practice in this case, the Court is generally familiar with the facts and issues relating to the underlying dispute between the parties, and Stonebrae will not repeat them here. Rather, in this section Stonebrae will summarize the principal activities in the course of this litigation relevant to its motion for an award of attorneys' fees and costs,[13] which are described in greater detail in the billing invoices submitted to and paid by Stonebrae.[14]

---

[11] Consistent with its "scorched earth" litigation strategy, despite offering to have Judgment entered against it in the full amount of the Deposits under the Village B Purchase Agreement ($4,774,944) – clearly a "sum certain" – Toll wants to litigate whether or not Stonebrae is entitled to pre-judgment interest on this amount. So, simultaneously with the filing of this motion, Stonebrae is moving to have the issues of entitlement and amount of pre-judgment interest determined in its favor.

[12] In addition to the amount of its attorneys' fees and costs incurred through the date of Toll's Rule 68 Offer of Judgment (the "Merits Fees"), Stonebrae also seeks (1) the amount of its attorneys' fees and costs incurred in connection with the present motion and its companion motion relating to recovery of pre-judgment interest and (2) an amount representing interest on the amounts of attorneys' fees and expenses it has paid to its co-counsel over the past three years. (*Municipal Court v. Bloodgood*, 137 Cal.App.3d 29, 47 (1982). Calculated from the dates of payment through the noticed hearing on this motion at 10% per annum, the total amount of is $366,775.17. (Atkins-Patteson Decl., ¶ 48.)

[13] The facts summarized below are reflected in the extensive docket in this case, comprising over 250 entries, and the accompanying Declarations of Messrs. Atkins-Patteson and Cooper, Stonebrae's co-counsel in this case.

[14] True and correct copies of Sheppard, Mullin's invoices to Stonebrae are attached as Exhibits 1-37 to the Atkins-Patteson Decl. True and correct copies of the Cooper & Kirkham invoices to Stonebrae are attached as Exhibits 2-16 to the Cooper Decl.

**A.     November 2007 – April 2008:  Filing, Removal, Initial Pleadings Motions And Preparations For Discovery**

Toll terminated the Village B Purchase Agreement on November 20, 2007. Stonebrae filed its Complaint against Toll, and its parent, in Alameda County Superior Court on November 29, 2007.  On January 11, 2008, Toll removed this action to this Court where it was assigned to Magistrate Judge Chen.  (Dkt. # 1.)  On January 15, 2008, Stonebrae filed a First Amended Complaint to address Toll's assertion in its removal papers that Toll's parent enjoyed a "financial interest privilege" to direct Toll to breach the Village B Purchase Agreement, and thus had been "fraudulently joined" for purposes of removal analysis.  (Dkt. # 7.)  Stonebrae researched and prepared a motion to remand (Dkt. # 13), Toll filed an Answer and Counterclaim to the First Amended Complaint (Dkt. # 22), and Toll's parent filed a motion to dismiss the First Amended Complaint.  Stonebrae's motion to remand, and the motion to dismiss, were fully briefed and argued together on April 23, 2008.  On May 21, 2008, the Court denied the motion to remand and granted the motion to dismiss Toll's parent.  (Dkt. # 48.)  During this period, Stonebrae also analyzed the substantive issues in the case relating to Toll's alleged Default Notice, coordinated internally regarding preservation of evidence, and drafted document requests and interrogatories to Toll.

**B.     May – July 2008:  Preparation Of Initial Disclosures, Rule 26(f) Report And Initial Case Management Conference**

The Court continued the Initial Case Management Conference to July 2, 2008 pending its ruling on Stonebrae's motion to remand.  During this period, Stonebrae identified fact witnesses and document categories for its Initial Disclosures, met and conferred with Toll's counsel regarding the parties' Rule 26(f) Report and Joint Case Management Conference and attended the Initial Case Management Conference. Stonebrae also revised and finalized its document requests to the Toll entities.

**C.** **August 2008 – April 2009: Preparation Of Stonebrae's Motions To Dismiss ("Closing Date" and *Black Hills* Issues), Opposing Toll's *Black Hills* Summary Judgment Motion, And Discovery**

In late July, Toll sent Stonebrae a letter that asserted, for the first time, that the Village B Purchase Agreement was void because it purportedly permitted these sophisticated parties to illegally waive the requirements of the Subdivision Map Act. Stonebrae researched and analyzed the issue and advised Toll that its argument lacked merit. Since Toll was insistent that its position be presented to the Court even though Toll had not raised this issue in its original Answer and Counterclaim (Dkt. # 24), to save time and money Stonebrae stipulated to Toll's request to file a First Amended Answer and Counterclaim. (Dkt. ## 59, 61.)

During this period, Stonebrae also was carefully researching the factual and legal bases for a motion to dismiss Toll's defenses and counterclaims based on its assertion that escrow was required to close on November 1, 2007, and no later date. Stonebrae decided to bring this motion early in the case because, if successful, it effectively would end the case in Stonebrae's favor. (Dkt. # 65.) Stonebrae also further researched the factual and legal basis for a motion to dismiss and to strike Toll's newly-added defenses and counterclaims based on the "*Black Hills*" argument that the parties' contract was void under the Subdivision Map Act.[15]

Stonebrae's motion to dismiss on the "closing date" issue, its motions to dismiss and strike on the *Black Hills* issue, and Toll's motion for summary judgment on the *Black Hills* issue were all heard together on January 28, 2009. The Court found for Stonebrae on the parties' respective *Black Hills'* motions. (Dkt. # 89.) The Court also concluded that Stonebrae "had the better of the argument" on the closing date issue under

---

[15] In addition to opposing Stonebrae's motion to dismiss Toll's defenses and counterclaims in Toll's First Amended Answer based on *Black Hills,* Toll separately filed a motion for summary judgment based on this same argument, which Stonebrae successfully opposed. (Dkt. # 71.)

1  all applicable rules of contract construction; however, because Toll had blithely asserted
2  that parol evidence would establish that the contract was ambiguous and the parties had
3  actually agreed to a fixed date of November 1, 2007 for the close of escrow, the Court was
4  compelled to deny Stonebrae's motion to dismiss on the closing date issue.  (Dkt. # 90)[16]
5  Stonebrae had no idea what Toll was talking about, and as we discuss below, the promised
6  parol evidence never materialized; but Toll's opposition served Toll's immediate purpose
7  of forestalling the day of reckoning.  Toll's promise of parol evidence also prolonged this
8  litigation unnecessarily by another 21 months at great additional cost to Stonebrae.

9        During this same period, Stonebrae also worked on the identification and
10  retrieval of Stonebrae-related documents, in both hard copy and electronic form, from
11  multiple sources, including Stonebrae, YCS Investments, Sheppard, Mullin, and numerous
12  contractors and sub-contractors involved in the Stonebrae Development in satisfaction of
13  Stonebrae's Rule 26 obligations.  (Atkins-Pattenson Decl., ¶¶ 14-21.)

14  **D.    May – December 2009:  Enforceability Of Liquidated Damages Clause,**
15  **Document Production And Discovery, Settlement Conference**

16        Both Toll's original and amended Answer and Counterclaims alleged that the
17  liquidated damages clause in the Village B Purchase Agreement was unenforceable, which
18  prompted Stonebrae to undertake a close and careful legal and factual analysis of this
19  issue. (Dkt. ## 24, 61.)  This included legal research and the engagement of a real estate
20  consultant to analyze Stonebrae's potential actual damages as of the date of Toll's breach,
21  as well as several in-depth discussions with the client.  Having satisfied itself with the legal
22  and factual merits of this claim, Stonebrae prepared and requested Toll to stipulate to the
23  filing of a Second Amended Complaint, which Toll refused to do (even though it had first

24

25  [16] The Court converted Stonebrae's motion to dismiss to a motion for partial summary
    judgment to address Stonebrae's alternative argument that Toll did not provide a proper
26  Default Notice as required by Section 17.2 of the Village B Purchase Agreement, but after
    separate briefing on the parties cross-motions for summary judgment on this issue,
27  concluded that genuine issues of material fact existed and so denied both motions.
    (Dkt. # 99.)

28

-9-

raised the issue of enforceability of the liquidated damages clause), thus requiring Stonebrae to move for leave to amend. (Dkt. # 130.)[17] The Court granted Stonebrae's motion over Toll's opposition. (Dkt. # 141.)

During this period, Stonebrae also met and conferred with Toll on numerous occasions in an effort to narrow Toll's document requests, as well as obtain supplements to Toll's inadequate responses to Stonebrae's document requests and interrogatories; these efforts, however, were largely unsuccessful. Generally, with regard to Toll's discovery responses Stonebrae just moved on, taking Toll's obfuscation as an admission that, as Stonebrae knew, Toll lacked the evidence to back up its defenses and counterclaims. Stonebrae only filed a single motion to compel. (Dkt. # 109.)[18] Even though Toll was not forthcoming in its interrogatory responses and production of documents, Stonebrae took the opposite approach as it had nothing to hide no matter how implausible Toll's defenses and counterclaims. However, given the enormous breadth of Toll's document requests, which expanded in scope as Toll chased after new defenses and counterclaims, Stonebrae was put to the challenge (and great cost) of retrieving, reviewing for responsiveness and privilege, well in excess of one million pages of documents relating to the Stonebrae Development, and ultimately producing over 334,000 pages to Toll on "rolling production" basis. (Atkins-Patterson Decl., ¶¶ 14-21.)

Further, during this period Stonebrae prepared for and participated in a Settlement Conference before Magistrate Judge LaPorte. This entailed taking a "hard look" at the factual and legal merit of the parties' various positions in the case, and the formulation of a settlement demand to Toll. That settlement effort was unsuccessful,

---

[17] As noted, when Toll requested Stonebrae to stipulate to permit Toll to file a First Amended Answer in order to include an affirmative defense and counterclaim based on *Black Hills*, Stonebrae agreed and avoided putting Toll to the expense of moving for leave to amend.

[18] Notably, this is the only discovery motion brought before the Court for resolution. The Court denied in part and deferred ruling in part on Stonebrae's motion to compel. (Dkt. #129.)

which forced the parties to proceed with further document discovery, deposition discovery, summary judgment motions, and trial preparations.[19]

**E.      January – March 2010:  Rolling Document Production, Discovery, Preparation Of Partial Summary Judgment Motions And "Issues Modules"**

To meet the deadlines in the Court's First Amended Case Management Order (Dkt. # 119),[20] and given the breadth of Toll's document requests, Stonebrae was forced to "pull out all the stops" in its efforts to identify and retrieve, review for responsiveness and privilege, and produce documents to Toll.  To accomplish this task, Stonebrae recruited a team of document reviewers, comprised of junior associates from Sheppard, Mullin's California offices.  During this period, Stonebrae produced approximately 180,400 pages of additional documents to Toll.  (Atkins-Pattenson Decl., ¶ 21.)

At the further Case Management Conference on February 10, 2010, the Court considered alternative proposals for trial and pre-trial dates, and elected to retain the existing July 19, 2010 trial date, but reserved also the alternative trial date of February 28, 2011.  (Dkt. # 146.)  At a further Case Management Conference on March 31, 2010, with Toll's full consent, the trial date and pre-trial dates were continued.  (Dkt. # 161.)

Simultaneous with its extensive production of documents to Toll, during this period Stonebrae commenced work on identifying and researching potential partial summary judgment motions for the purpose of narrowing and eliminating issues and shortening deposition discovery.  On February 24, 2010, Stonebrae filed the first such partial summary judgment motion directed to four specific issues in the case.  (Dkt. ## 149 -151.)[21]  On a parallel track, Stonebrae commenced preparation of "issues modules" for use

---

[19] Since this was a Settlement Conference, Stonebrae is not at liberty to divulge what transpired at the Conference.  (Fed. R. Evid. 408.)

[20] That Order set a trial date of July 19, 2010, with March 1, 2010 as the date for completion of fact discovery and April 28, 2010 as the last date for hearing dispositive motions.  (Dkt. # 119.)

[21] In response to Toll's request, Stonebrae stipulated to the continuance of the hearing date on Stonebrae's motion for partial summary judgment.  (Dkt. ## 158-159.)

STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS' FEES, TAXABLE AND NON-TAXABLE COSTS

1  in taking and defending upcoming depositions and organizing evidence (documents and

2  testimony) for trial preparation.  Finally, Stonebrae moved to dismiss Toll's Sixth

3  Counterclaim (relating to Toll's bad faith claim for failure to construct a permanent

4  clubhouse).  (Dkt. # 148.)

5  **F.     April - July 2010:  Document Production, Partial Summary Judgment**

6  **Motions, Preparations For And Commencement Of Deposition Discovery**

7              Stonebrae continued with the completion of its rolling production of

8  documents to Toll, including in response to Toll's third set of document requests that were

9  served February 22, 2010.  Stonebrae's document production was substantially completed

10 by July 20, 2010.  Stonebrae produced a total of 334,695 pages of documents to Toll.[22]

11 Also, in July the parties agreed to a comprehensive deposition schedule for all the fact

12 witnesses.  The depositions were scheduled to begin with Michael Letchinger, Stonebrae's

13 Project Manager and principal witness, on August 3, 2010.

14             During this period, Stonebrae researched, prepared and filed several

15 additional motions for partial summary judgment – all for the purpose of eliminating or

16 narrowing the remaining issues in order to streamline the deposition process and of course,

17 ultimately, the trial.  These included a motion for partial summary judgment regarding

18 Toll's alleged defaults that were not included in its November 2, 2007 letter to Stonebrae

19 (Dkt. ## 168-169);[23] a motion for partial summary judgment regarding the adequacy of

20

21 [22] By contrast, Toll continued to dribble out its document production during the course of
   depositions, eventually producing just 16,464 pages to Stonebrae.  Many of the documents
22 belatedly produced by Toll confirmed what Stonebrae had suspected from the outset, *i.e.*,
   that Toll's sales experience in Village A of the Stonebrae Development in the Spring and
23 Summer of 2007 had brought Toll to the point where it no longer needed or wanted the
   additional 56 lots in Village B that it was under contract to purchase for $32 million.  (*See*
24 Dkt. # 243 [Toll's Responses to RFA Nos. 81-84].)  From Stonebrae's perspective, this
   belatedly-produced evidence established its chief case themes, *i.e.*, that Toll was motivated
25 to breach the Village B Purchase Agreement and created a number of pre-textual reasons
   in an effort to justify its breach.

26 [23] This motion was noticed for hearing on June 23, 2010, but continued on the Court's own
   motion to July 28, 2010.  For that reason, the remaining partial summary judgment
27 motions filed by Stonebrae were filed in order to be heard also on July 28, 2010.
   However, the Court continued these motions on its own motion to August 25, 2010.

28

-12-

Toll's Default Notice (Dkt. # 172); a motion for partial summary judgment regarding Toll's failure to tender performance and inability to place Stonebrae in default (Dkt. ## 173-174); a motion for partial summary judgment regarding Toll's sixth claim for relief (bad faith relating to the permanent clubhouse) (Dkt. # 175.); and a motion for partial summary judgment regarding Toll's alleged default based on acceptance of the Village B streets by the City of Hayward. (Dkt. ## 176-177.)

Even though these five partial summary judgment motions did not involve genuine issues of material fact, Toll opposed them all under Rule 56(f), claiming that it could not adequately present is opposition without completing deposition discovery. Since the Court had continued the hearing date for the motions into August when depositions were noticed to begin, Stonebrae agreed to Toll's request to take them off-calendar in order to permit Toll to take the depositions of Stonebrae's witnesses. (Dkt. # 187). During this same period, Toll filed a motion for partial summary judgment regarding the validity of the liquidated damages clause in the Village B Purchase Agreement. (Dkt. #192.) When Stonebrae requested that Toll stipulate to take this motion off calendar to permit Stonebrae to take the deposition of Toll's witnesses, including James Boyd (who had submitted the sole supporting Declaration but whose deposition was not scheduled until two weeks after Stonebrae's opposition was due), Toll refused, forcing Stonebrae to bring a motion for administrative relief. (Dkt. ## 197-198.) The Court granted Stonebrae's motion in part and continued the hearing on Toll's partial summary judgment motion until after Mr. Boyd's deposition. (Dkt. # 202.)

G.   **August – October 2010: Depositions, Partial Summary Judgment Motions, Expert Disclosures, And Toll's Rule 68 Offer Of Judgment**

Depositions began on August 3, 2010 and continued through October 13, 2010. A total of 18 witnesses were deposed (8 Stonebrae witnesses and 10 Toll

-13-

witnesses).[24] The effort to prepare its witnesses, defend their depositions and take the depositions of Toll's witnesses were shared between Mr. Atkins-Pattenson of Sheppard, Mullin and Ms. Kirkham of Cooper & Kirkham. (Atkins-Pattenson Decl., ¶ 27; Cooper Decl., ¶ 10.)

The depositions of the Toll witnesses were notable in the following respects:

- Despite Toll's promise that parol evidence would show that the parties had negotiated and intended for November 1, 2007 to be a fixed date for closing, not a single Toll witness testified to that effect.[25] In other words, Toll had no evidence apart from the terms of the Village B Purchase Agreement, which the Court earlier had observed provided Stonebrae "with the better of the argument" on the closing date issue.[26]

- Despite claiming that Stonebrae was in default because the Stonebrae Pre-Closing Work was incomplete as of November 1, 2007, Toll's witnesses with personal knowledge conceded that the allegedly incomplete work consisted only of "punch list" items that could be completed within a few days, or at most, weeks, and that they were immaterial to Toll's ability to obtain building permits and begin construction of homes in Village B. Thus, they could not constitute a Stonebrae Default under the Village B Purchase Agreement.[27]

---

[24] Stonebrae videotaped its depositions of the Toll-related witnesses for use at trial in this matter. With one exception, Toll elected not to videotape.

[25] *See* Stonebrae's Motion For Partial Summary Judgment No. 4(A)[Re Closing Date Issue]. (Dkt. ## 229, 232-233; 235-246.)

[26] *Id.*

[27] *See* Stonebrae's Motion For Partial Summary Judgment No. 4(C)[Sufficiency Of Default Notice]. (Dkt. ## 234, 232-233, 235-246.)

-14-

STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS' FEES, TAXABLE AND NON-TAXABLE COSTS

- Despite alleging that Stonebrae was in bad faith for failure to complete a permanent clubhouse, no Toll witness could identify an enforceable promise that Stonebrae had made to Toll.[28]

- Despite alleging that Stonebrae had anticipatorily repudiated its alleged promise to build a permanent clubhouse, every Toll witness admitted that Stonebrae had never told them that it had cancelled or terminated its plans to build a permanent clubhouse (when it reached Phase 5 of the Stonebrae Development per its entitlement requirements or had 200 Full Golf Members).[29]

- Every Toll witness with knowledge admitted that Toll had not taken any steps to prepare for the close of escrow on November 1, 2007, and had not satisfied or waived its closing obligations under the Village B Purchase Agreement (and thus could not place Stonebrae in default).[30]

- Every Toll witness with knowledge of the liquidated damages clause admitted that Toll had made no effort to estimate Stonebrac's actual losses if Toll breached, there were no negotiations relating to an estimate of Stonebrae's actual losses if Toll breached, that the amount of the Deposits (which would serve as liquidated damages) was required by Stonebrae's construction lender (that required 15% of the purchase price), and the final amount (representing 14.99% of the purchase price) was agreed to for Toll's internal accounting reasons.[31]

---

[28] *See* Stonebrae's Motion For Partial Summary Judgment No. 4(B)[Re Clubhouse Issues]. (Dkt. ## 230, 232-233, 235-246.)

[29] *Id.*

[30] *See* Stonebrae's Motion For Partial Summary Judgment No. 4(C) [Re Sufficiency Of Default Notice].  (Dkt. ## 234, 232-233, 235-246.)

[31] *See* Stonebrae's Motion For Partial Summary Judgment No. 4(D) [Re Misrepresentation Claims].  (Dkt. ## 231-233, 235-246.)

-15-

STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS'
FEES, TAXABLE AND NON-TAXABLE COSTS

1  In other words, when put to the test, under oath, Toll's defenses and counterclaims fell

2  away.

3          During this period, Stonebrae also reworked its partial summary judgment

4  motions to reflect the abundant, favorable evidence it was obtaining from Toll during the

5  course of deposition discovery.  At the October 14, 2010 Status Conference, the Court

6  directed the parties to file any dispositive motions by November 1, 2010 and set them for

7  hearing on December 6, 2010.  (Dkt. #215.)  Stonebrae filed four partial summary

8  judgment motions on October 29, 2010.  (Dkt. ## 229 – 246.)  These motions establish

9  what Stonebrae believed to be true on November 2, 2007, when it received Toll's

10  purported Default Notice, and continued to believe throughout the next three years – *i.e.*,

11  that Toll's various defenses, counterclaims and arguments had been invented by Toll in the

12  hopes that Stonebrae would eventually settle for something less than the liquidated

13  damages, and other relief, that Stonebrae was entitled to under the parties' contract.

14          During this period, Stonebrae also worked with its consultants and potential

15  expert witnesses.  On October 7, 2010, Stonebrae filed its Supplement To Initial

16  Disclosures describing certain elements of its actual damages (Dkt. # 208) and on October

17  11, 2010, served Toll with three detailed expert witness reports.  These materials showed

18  that Stonebrae's actual damages (Stonebrae's alternative measure of damages if the

19  liquidated damages clause was found to be unenforceable at trial) would exceed

20  $22 million.

21          On October 18, 2010, just days after the final session of Mr. Boyd's

22  deposition (the last fact witness), Toll served Stonebrae with a Rule 68 Offer of Judgment,

23  which provides for:

24          • Payment of $4,744,944 – the exact amount of the Deposits in the parties'

25              contract, which represented the specific Letter of Credit in escrow;

26          • Costs incurred by Stonebrae through the date of the offer, which "shall

27              include reasonable attorneys' fees as determined by the Court"; and

28

-16-

1    • Pre-judgment interest as determined by the Court "pursuant to Civil Code
2        section 3287."

3    Toll's Rule 68 Offer of Judgment reflects a complete capitulation by Toll on all the liability

4    issues in this case, including its amended defenses and counterclaims seeking to rescind

5    the Village B Purchase Agreement on various grounds, the weakness of which had become

6    clear to all concerned during the course of deposition discovery.  Presumably, Toll's offer

7    was prompted also by the desire to avoid the risk of exposure to Stonebrae's alternative

8    measure of actual damages, which (as recently disclosed in Stonebrae's expert reports and

9    its Supplement To Initial Disclosures [Dkt. # 208]) exceeded $22 million.  Following a

10   careful legal analysis of Toll's Rule 68 Offer of Judgment, on November 1, 2010 Stonebrae

11   accepted.  (Dkt. # 248.)

12       At the Status Conference on November 3, 2010, Toll conceded Stonebrae's

13   entitlement to attorneys' fees, reserving for argument only the amount.  (Dkt. #250.)  Toll

14   also reserved for argument the issue of Stonebrae's entitlement to pre-judgment interest,

15   and the Court set a schedule for briefing and hearing on both issues.  (Dkt. # 249.)  The

16   briefing and hearing schedule were subsequently modified.  (Dkt. # 252.)

17                                    **IV.**

18                                  <u>**ARGUMENT**</u>

19   **A.    Stonebrae Is Entitled To Recover Its Reasonable Attorneys' Fees, Court Costs,**

20   **Litigation Expenses, And Interest On Amounts Of Fees And Costs Paid**

21       Section 19.7 of the Village B Purchase Agreement contains a broad fee-

22   shifting provision: "In the event of any legal action…between the parties regarding this

23   Agreement or the Property…, the prevailing party shall be entitled to the payment by the

24   losing party of its reasonable attorneys' fees, court costs and litigation expenses, as

25   determined by the court."  Here, the parties' claims for relief, defenses and counterclaims

26   each "regard[] the Agreement or the Property."  Thus, this motion presents no issues of

27   allocation between claims subject to fee-shifting and claims that are not.  Similarly, this

28   motion presents no issue regarding Stonebrae's entitlement to recover its attorneys' fees

-17-

and costs. Toll's Rule 68 Offer of Judgment clearly so provides ("which shall include reasonable attorneys' fees as determined by the Court".) (Dkt. # 248.) Stonebrae's entitlement to attorneys' fees was conceded by Toll at the November 3, 2010 Status Conference in response to the Court's direct question. (Dkt. # 250 [RT at 4:22-5:13].) Moreover, even under a "prevailing party" analysis, there is no question that Stonebrae is the prevailing party. (Cal. Civ. Code § 1717(b)(1) ["the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."].) Here, Stonebrae obtained the right to entry of a Judgment that includes the precise amount of the Deposits ($4,774,944), which serve as the amount of liquidated damages under Section 17.1(c)(ii) due to Toll's admitted breach of the Village B Purchase Agreement. Thus, Stonebrae should be awarded the full amount of its claimed lodestar. [32]

Stonebrae seeks an award consisting of the following elements: (1) "merits fees" from November 20, 2007 (the date of Toll's termination of the Village B Purchase Agreement) through October 18, 2010 (the date of Toll's Rule 68 Offer of Judgment); (2) costs, both taxable and non-taxable; (3) "fees on fees," consisting of the fees incurred in connection with both this motion, (4) fees incurred in connection with Stonebrae's companion motion for mandatory pre-judgment interest; and (5) pre-judgment interest on the amounts Stonebrae has paid its counsel during the course of this three-year litigation.

---

[32] Toll cannot successfully argue that Stonebrae's claimed lodestar should be reduced because it recovered only $4,774,944 when its actual damages were approximately $22 million. As the Court is aware, Stonebrae's SAC contains *alternative* measures of damages (liquidated or actual), depending upon whether the liquidated damages clause in the Village B Purchase Agreement was found at trial to be enforceable or unenforceable. However, Stonebrae was not required to make the election until the close of the evidence (*See Clauson v. Superior Court*, 67 Cal.App.4th 1253, 1256 (1998)[election between punitive damages for common law violation of privacy and statutory penalty for same injury not required until verdict is returned]; *see also Rice v. Schmid*, 25 Cal.2d 259 (1944) [affirming award of actual damages where plaintiffs sought both liquidated and actual damages and trial court awarded actual damages based on finding that liquidated damages clause was unenforceable].) By accepting Toll's Rule 68 Offer of Judgment, Stonebrae made the election between these alternative damages measures earlier than required, thereby achieving all the relief it sought.

**B.    Stonebrae's Requested Lodestar Amount Is Reasonable**

As this Court knows, the starting point for deciding this motion is to calculate a "lodestar" amount.  "[That] is, the number of hours reasonably expended multiplied by a reasonable hourly rate." (*Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000).  The lodestar formula is *presumed* to yield a reasonable attorneys' fee award, which is "adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys." (*Hensley,* 461 U.S. at 430 n.4.)  This Court has wide discretion in deciding what attorneys' fees are reasonable in the context of the circumstances of a particular case. (*Id.* at 436; *PCLM Group,* 22 Cal.4th at 1095.)

This Court's review of Stonebrae's lodestar is matter of procedure, and thus is governed by federal law. (*Taco Bell Corp. v. Cont'l Cas. Co.,* 388 F.3d 1069, 1076 (7th Cir. 2004); *Shakey's Inc. v. Covalt*, 704 F.2d 426, 435 (9th Cir. 1983) ["decision to hold an evidentiary hearing when making an attorneys' fee award is matter of procedure, and is therefore governed by federal law".)  In contractual fee-shifting cases, where the attorneys' fees sought in an attorneys' fee motion have been billed to and paid by a client, individual scrutiny of line-item entries by the court is "neither necessary or appropriate." (*Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 774 (7th Cir. 2010) "Given the fact that the fees were paid by a party who had no reassurance of indemnity, we believe[] that market considerations normally would render unnecessary resort to the time-consuming examination of individual expenses." (*Id.*)  Here, the amount of attorneys' fees requested by this motion through October 18, 2010 (the "Merits Fees") have been reviewed and paid by Stonebrae; thus, the reasonableness of the claimed lodestar is established by the "presumptive validity of market forces." (*Id.; see* Costa Decl., ¶¶ 10-14; Atkins-Pattenson Decl., § 30; Cooper Decl., ¶ 14; Pearl Decl., ¶¶ 6, 14.)

In support of this motion, Stonebrae has submitted the Atkins-Pattenson Declaration, covering the fees incurred by Sheppard, Mullin, Richter & Hampton LLP, and the Cooper Declaration, covering the fees incurred by Cooper & Kirkham P.C., which

-19-

declarations are *prima facie* evidence that the time spent by Stonebrae's attorneys and paralegals was reasonable. (*Hadley v. Krepel,* 167 Cal.App.3d 677, 682 (1985).) As noted, these fees reflected in the detailed invoices have been paid by Stonebrae, who had no assurance of shifting them to Toll, and so are "presumptively" reasonable. (Costa Decl., ¶¶ 10-14; *Metavante Corp.,* 619 F.3d at 774.) Finally, Stonebrae has submitted also the Declaration of Richard M. Pearl (the "Pearl Decl."), a leading authority on attorneys' fee awards and the author of CEB publication, *California Attorney Fee Awards* (3rd Edition, 2010 ), who opines that the lodestar amount requested by Stonebrae is reasonable. (Pearl Decl., ¶¶ 8-10.)

### 1.     The Number Of Hours Claimed Is Reasonable

Under California law, Stonebrae's counsel are entitled to be compensated for all the hours reasonably spent on this case. "[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." (*Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001).) The reasonableness of the hours spent is to be assessed in light of "the entire course of the litigation, including pretrial matters, [] discovery, litigation tactics, and the trial itself." (*Vo v. Las Virgenes Mun. Util. Dist.*, 79 Cal.App.4th 440, 447 (2000).)

Here, the hours claimed by Stonebrae's counsel are set forth in detailed, contemporaneous records in the form of invoices submitted to and paid by Stonebrae. Both Mr. Atkins-Pattenson and Mr. Cooper have submitted Declarations that describe the method of preparation of their firm's invoices, including their respective review of the tasks performed, time expended and their respective exercise of billing judgment prior to finalizing their firm's invoices for submission to Stonebrae for payment. (Atkins-Pattenson Decl., ¶¶ 32, 34-36; Cooper Decl., ¶¶ 11, 13-14.) In the case of Sheppard, Mullin's invoices, Stonebrae receives a 5% discount from the final amount of fees reflected on the monthly invoices. (Atkins-Pattenson Decl., ¶ 35.) In the case of Cooper & Kirkham's invoices, Mr. Cooper states that he routinely performs services for this client in this litigation that do not appear in the invoices. (Cooper Decl., ¶ 13.)

-20-

1    In this case, there are no "circumstances rendering the award unjust."

2    (*Ketchum,* 24 Cal.4th at 1133.)  Normally, this exception applies where a party prevails on

3    some, but not all claims.  (*Downey Cares v. Downey Comty. Dev. Comm'n.,* 196

4    Cal.App.3d 983, 997 (1987).)  Here, of course, Toll's Rule 68 Offer of Judgment resolves

5    *all* the liability issues in this action in Stonebrae's favor and awards Stonebrae the *full*

6    *amount* of the Deposits ($4,744,944), which represent one of Stonebrae's alternative

7    measure of damages.  (SAC, Prayer, ¶ 2 [Dkt. # 142].)[33]

8         Moreover, there are no other grounds to find that the claimed lodestar was

9    unreasonable.  For example, the fact that Stonebrae retained two law firms does not itself

10   render the claimed lodestar amount unreasonable.  Generally, fees are awardable for all

11   services reasonably rendered, in the same manner that fees would be billed to a fee-paying

12   client, which in this case they were.  (*Horsford v. Bd. of Trustees,* 132 Cal.App.4th 359,

13   396 (2005); *see also Johnson v. Univ. Coll. of the Univ. of Alabama,* 706 F.2d 1205, 1208

14   (11th Cir. 1983) [no reduction for alleged duplication unless "the attorneys are

15   *unreasonably* doing the same work."].)

16         Both firms are regularly retained as co-counsel to handle significant

17   litigation for YCS Investments, the beneficial owner of Stonebrae, including prior

18   litigation relating to the approvals of the Stonebrae Development.  (Atkins-Patterson

19   Decl., ¶ 7; Cooper Decl., ¶ 5.)  For that reason, they were retained as co-counsel in this

20   case.  (Costa Decl., ¶¶ 4-8.)  From the outset of this litigation, Stonebrae's counsel

21   endeavored to avoid duplication of efforts to the greatest extent possible.  (Atkins-

22   Pattenson Decl. ¶¶ 25; Cooper Decl., ¶ 8.)  Sheppard, Mullin, with its greater resources,

23   provided the majority of the associate and junior partner hours expended, while both firms

24   consulted on key legal and strategic decisions during the case.  (Atkins-Patterson Decl.,

25

26   [33] Of course, it is not necessary to win every issue or gain every bit of the relief sought in
     order for the prevailing party to be entitled to a fully compensable fee.  (*See, e.g., Hogar
27   Dulce Hogar v. Comty. Dev. Comm'n.,* 157 Cal.App.4th 1358, 1369 (2007); *Sorenson v.
     Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001).)

28

-21-

¶¶ 25; Cooper Decl., ¶ 8.)  Sheppard, Mullin was principally responsible for propounding and responding to written discovery, and for the identification, collection, review and production of the substantial volume of Stonebrae's documents to Toll, as well as the review and analysis of the parties' respective document productions.  (Atkins-Pattenson Decl., ¶ 26.)  When it came to motion practice, one of the firms would take the lead on researching and writing the papers, with the other providing review and feedback. (Atkins-Pattenson Decl., ¶ 26; Cooper Decl., ¶ 8.)

With respect to deposition discovery, Mr. Atkins-Pattenson and Ms. Kirkham were the two Stonebrae counsel principally responsible for preparing, defending and taking the 18 depositions in the case.  (Atkins-Pattenson Decl., ¶ 27; Cooper Decl., ¶ 10.)  They divided the preparation along subject matter lines, and then depending upon the subject to which the bulk of a witness's testimony was anticipated to relate, one or the other would take principal responsibility for the preparation and defense of a Stonebrae witness, or the taking of the deposition of Toll witness.  However, because a given witness's knowledge was rarely confined to a single area, they found that the best way to assure continuity and completeness of the questioning or defense was to have both counsel attend each of the depositions.  (*Id.*)

Mr. Pearl has reviewed the Court's docket in the case, Sheppard, Mullin's pleading file and has discussed the case background, strategies and activities with Mr. Atkins-Pattenson, Mr. Cooper and Ms. Kirkham.  (Pearl Decl., ¶ 6.)  Mr. Pearl has also reviewed the moving papers in support of the instant motion.  Based on these activities, and his extensive experience in the area of attorneys' fee awards in California, Mr. Pearl's expert opinion is that the hours claimed by Stonebrae relating to its request for Merits Fees are reasonable.  (Pearl Decl., ¶ 14.)[34]

---

[34] Toll cannot successfully argue that Stonebrae's claimed lodestar is unreasonable by comparing it to the amount of the monetary recovery, *i.e.*, $4,744,944.  *First,* there is no "proportionality rule" that governs the award of attorneys' fees, *i.e.*, a standard that limits the amount of attorneys' fees in relation to the amount of the monetary recovery.  This is true in both statutory and contractual fee-shifting situations under California law.  (*See,*

### 2. The Hourly Rates Claimed Are Reasonable

The second step in the computation of the lodestar is the determination of the reasonable hourly rate for the timekeepers whose hours are being claimed. As Stonebrae shows, the requested rates for each of the timekeepers are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." (*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4[th] 740, 783 (2002) [requested rates reasonable if "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work."]; *City of Oakland v. Oakland Raiders*, 203 Cal.App.3d 78, 82 (1988) [affirming attorneys' fee award at rates charged by "'top law firms in the Bay Area'"] (citation omitted.)

Mr. Atkins-Pattenson's Declaration attaches the *curriculum vitae* for the core group of the Sheppard Mullin lawyers and professionals who worked on Stonebrae's behalf in this litigation. For each individual, the effective hourly rate charged Stonebrae was less than his/her standard hourly rate at Sheppard, Mullin (due to the 5% discount on the amount of fees that was provided to the client for this matter). In two recent cases where Mr. Atkins-Pattenson has sought an award of attorneys' fees and costs, the courts have found the hourly rates of the Sheppard, Mullin lawyers to be reasonable. (Atkins-Pattenson Decl., ¶¶ 39-40.)

---

*e.g., Peak-Las Positas Partners v. Bollag,* 172 Cal.App.4[th] 101, 114 (2009) [affirming attorneys' fee award of $511,282 in a breach of real estate contract to sell land for $475,000, finding that the fees "are well documented and reasonable in light of the complexity of the issues, [defendant's] aggressive litigation posture, and the results obtained."]; *Niederer v. Ferreira,* 189 Cal.App.3d 1485, 1507 (1987)*; see also Cruz v. Ayromloo,* 155 Cal.App.4[th] 1270, 1276 (2007)["It is not uncommon to award attorney fees in an amount higher than the total damages award to a plaintiff or plaintiffs in a particular case. Appellant cites no authority of the proposition an award of attorney fees must always be less than the award of damages in a given case, and we are aware of none."].) *Second,* as the record in this clearly indicates, Toll's various positions in this case forced Stonebrae to incur the substantial attorneys' fees it now seeks to recoup by this motion. (*See* Sections II-III, above; *Bolag,* 172 Cal.App. at 114 [defendant's "aggressive litigation posture" a factor in determining the lodestar].)

STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS'
FEES, TAXABLE AND NON-TAXABLE COSTS

1     Mr. Cooper's Declaration similarly describes the background and experience

2   for each of the Cooper & Kirkham lawyers who worked on Stonebrae's behalf in this

3   litigation.  In contrast to Sheppard, Mullin, Cooper & Kirkham also has a significant

4   plaintiff's contingency practice, and thus has received numerous fee awards in both federal

5   and state courts.  As set forth in Mr. Cooper's Declaration, during the past two years,

6   courts have awarded his firm attorneys' fees at the rates requested here, finding them to be

7   reasonable.  (Cooper Decl. ¶ 16.)

8     As noted, Stonebrae has also submitted the Pearl Declaration in support of

9   this motion.  Through his work as an expert witness in a number of attorneys' fee matters,

10  he is generally familiar with the hourly rates of persons of comparable skill and ability as

11  Stonebrae's co-counsel.  In addition, he has reviewed court-ordered fee awards to

12  Sheppard, Mullin and to Cooper & Kirkham, which confirmed the reasonableness of the

13  rates billed to Stonebrae in the periods covered by this litigation.  Mr. Pearl's opinion is

14  that the hourly rates charged by the various attorneys and timekeepers on Stonebrae's

15  behalf over the course of the three years this case has been pending are reasonable.  (Pearl

16  Decl., ¶ 10.)

17  **C.    Stonebrae Is Entitled To Recover All Of Its Costs**

18    As noted, Section 19.7 provides that Toll, as the losing party, must pay

19  Stonebrae's "reasonable attorneys' fees, court costs *and* litigation expenses, as determined

20  by the court." (Emphasis added.)  As we explain, Stonebrae is entitled to recover all of its

21  reasonable costs incurred in this matter.

22    During the three years of this litigation, Stonebrae's counsel has incurred and

23  invoiced Stonebrae customary, out-of-pocket expenses or disbursements totaling

24  $3,948,803.68.  These disbursements are specifically identified by category on the invoices

25  of Sheppard, Mullin and Cooper & Kirkham submitted to Stonebrae for payment, and paid

26  by Stonebrae.  (Atkins-Patterson Decl., ¶¶ 33-35, Exhs. 1-37; Cooper Decl., ¶¶ 11-12;

27  Exhs. 2-16.)  Stonebrae asserts that it is entitled to recover all of its disbursements (and not

28  just its taxable costs under 28 U.S.C. § 1920) on the following, alternative grounds.

-24-

1      *First,* parties may by contract provide for shifting of a broader category of

2 costs that would be recoverable by statute. (*Arntz Contracting Co. v. St. Paul Fire &*

3 *Marine Ins. Co.,* 47 Cal.App.4[th] 464, 492 (1996) [expert witness fees recoverable by

4 contract even though not recoverable under Cal. Civ. Proc. Code § 1033.5]; *see also*

5 *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC,* 185 Cal.App.4[th] 1050, 1054 (2010)

6 [affirming award of expert witness fees following non-suit even though not pleaded and

7 proven at trial.) Here, the parties' contract provides for shifting all costs to the losing

8 party, not just taxable costs. That is why Section 19.7 provides for recovery of "court

9 costs" and "litigation expenses."

10      *Second,* the Ninth Circuit has recently held that non-taxable costs may be

11 awarded as attorneys' fees. In *Grove v. Wells Fargo Financial California, Inc.,* 606 F.3d

12 577 (9th Cir. 2010), the Ninth Circuit rejected the argument that costs recoverable under a

13 Rule 68 offer were limited to taxable costs, as defined by 28 U.S.C. § 1920. (*Id.* at 580.)

14 In *Grove,* on the eve of trial, the parties stipulated to a Rule 68 Judgment that provided,

15 *inter alia,* for payment of the sum of $20,000 "plus costs incurred to date and recoverable

16 attorneys' fees" and that plaintiff was entitled to "recover his reasonable attorneys' fees and

17 costs" by motion. Plaintiff sought $7,648.41 in taxable costs and $6,770.60 in non-taxable

18 costs, which defendant opposed and which that District Court held it lacked discretion to

19 award. (*Id.* at 579.)

20      The Ninth Circuit reversed, holding that both the Ninth Circuit and the

21 Supreme Court have long held that the phrase "reasonable attorneys' fees" *includes* certain

22 litigation expenses. (*Id.* at 580.) The *Grove* court relied on the Supreme Court's decision

23 in *Missouri v. Jenkins,* 491 U.S. 274, 285 (1989) ["the fee must take into account the work

24 not only of attorneys,…[but] it must also take account of other expenses and profit."] and

25 its prior decisions based on *Jenkins.* (*Id.* at 580 ["We have interpreted *Jenkins* to mean

26 that '"reasonable attorney's fees include litigation expenses…when it is 'the prevailing

27 practice in a given community' for lawyers to bill those costs separate from their hourly

28 rates.'"]; *Trs. of the Constr. Indus. and Laborer Health and Welfare Trust v. Redland Ins.*

-25-

1 | *Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006); *Davis v. City and County of San Francisco,* 976

2 | F.2d 1536, 1556 (9th Cir. 1992), *vacated in part on other grounds,* 984 F.2d 345 ["we have

3 | continued to hold that attorneys' fee awards can include reimbursement for out-of-pocket

4 | expenses including...travel, courier and copying costs."].)

5 |          While *Grove*, and the other Ninth Circuit cases it discusses, involve fee-

6 | shifting statutes, in contrast to a contractual fee-shifting provision like Section 19.7 of the

7 | Village B Purchase Agreement, that is an irrelevant distinction. That is because both

8 | species of fee-shifting (statutory or contractual) are exceptions to the "American rule" that

9 | litigants ordinarily bear their own litigation expenses. (*Carbonell v. INS,* 429 F.3d 894,

10 | 897-98 (9th Cir. 2005).) The Ninth Circuit has repeatedly held that a variety of fee-shifting

11 | statutes are interpreted to define "reasonable attorneys' fees" to include a variety of types

12 | of litigation expenses, not limited by 28 U.S.C. § 1920, provided they are of the type

13 | "normally billed to fee-paying clients." (*Davis v. Mason County*, 927 F.2d, 1473, 1488

14 | (9th Cir. 1991) [awarding travel expenses as attorneys' fees under 42 U.S.C. § 1988, even

15 | though not taxable under 28 U.S.C. § 1920].) Here, the costs claimed by Stonebrae are of

16 | the type "normally billed to clients" and were billed to and paid by Stonebrae. (Atkins-

17 | Pattenson Decl., ¶ 36; Cooper Decl., ¶ 14; Costa Decl., ¶ 14.)

18 |          *Finally,* Toll's Rule 68 Offer of Judgment also is ambiguous in its use of the

19 | term "costs." If Toll had intended to limit Stonebrae's right to recover from Toll all of its

20 | "litigation expenses" (as provided in Section 19.7) and confine them to only those

21 | considered to be taxable under 28 U.S.C. § 1920, then Toll could have – and should have –

22 | done so. For example, Toll could have phrased its offer to state that the Judgment will

23 | "include costs taxable under 28 U.S.C. § 1920 and Civ. L.R. 54-3, but not including any

24 | other costs or expenses (whether claimed as part of Stonebrae's attorneys' fees or not)."

25 | Toll did not, and the law is clear: "Thus, ambiguities will be construed against the offeror

26 | as the drafting party...." (*Herrington v. County of Sonoma,* 12 F.3d 901, 907 (9th Cir.

27 | 1993); *see also Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.,* 298 F.3d

28 | 1238, 1244 (11th Cir. 2002) ["Rule 68 requires that the responsibility of clarity and

-26-

precision rest with the offeror" since the Rule 68 offeree has no choice but to accept or deny the offer, cannot negotiate the terms and cannot make a counteroffer].)

On any of these alternative grounds, Stonebrae is entitled to recover from Toll the amount of its ordinary and customary out-of-pocket expenses that it advanced on behalf of Stonebrae during the three years of this litigation.

**D. Stonebrae Is Entitled Also To Recover Its Attorneys' Fees And Costs In Connection With This Motion And Its Companion Motion For Mandatory Pre-Judgment Interest**

Toll's Rule 68 Offer of Judgment left for determination by this Court (1) the amount of Stonebrae's attorneys' fees and costs and (2) pre-judgment interest. Stonebrae's attorneys' fees and costs incurred in connection with both these motions are recoverable under the fee-shifting in Section 19.7 of the Village B Purchase Agreement and California law. "[W]e hold…that, absent circumstances rendering the award unjust, fees recoverable…ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." (*Serrano v. Unruh*, 32 Cal.3d 621, 639 (1982); *Davis v. City and County of San Francisco* (976 F.2d at 1544 ["This Court has repeatedly held that the time spent by counsel establishing the right to a fee award is compensable."], *vacated in part on other grounds* 984 F.2d 345 (9th Cir. 1993).)[35]

In light of the general rule allowing for recovery of future attorneys' fees incurred to "establish and defend the fee claim," and the fact that Toll chose to leave for future determination the amount of attorneys' fees to be awarded, Stonebrae reasonably interpreted Toll's limitation in its Rule 68 Offer of Judgment to apply only to Stonebrae's Merits Fees, not to its fees incurred in connection with either this motion or its motion for mandatory pre-judgment interest. If Toll had wanted to clearly exclude the fees that Stonebrae would incur litigating these two motions, Toll's Rule 68 Offer of Judgment

[35] The rationale for including "fees and fees" as part of an attorneys' fee award applies with equal force to Stonebrae's attorneys' fees incurred in connection with Stonebrae's companion motion for mandatory pre-judgment interest.

could have stated, for example, "the attorneys' fees and costs incurred by Stonebrae in connection with a motion for an award of attorneys' fees and costs, and to determine the entitlement and amount of pre-judgment interest shall be the responsibility of Stonebrae, and Toll shall have no responsibility for such fees and costs." Alternatively, Toll could have offered a specified amount of attorneys' fees and costs to be part of the Judgment, but did not do that either. Why? Because Toll obviously wanted Stonebrae to construe its Rule 68 Offer of Judgment to make Stonebrae as whole as the liquidated damages and fee-shifting provisions of the contract could achieve, and thus accept the Offer and thereby end Toll's exposure to actual damages and additional attorneys' fees and costs in this litigation that was going so poorly for Toll. By leaving the issue of the amount of attorneys' fees (and pre-judgment interest) open, thus requiring Stonebrae to incur additional attorneys' fees beyond those Merits Fees that would be incurred during the 14-day period following the date of the offer, Toll was expanding and not limiting its exposure to Stonebrae's further attorneys' fees. Since Toll did not *unambiguously* limit its liability for Stonebrae's further fees beyond its Merits Fees, they are properly awarded to Stonebrae and against Toll.

In connection with the filing of this motion and its companion motion for mandatory pre-judgment interest, which Toll required Stonebrae to file under the terms of its Rule 68 Offer of Judgment, Stonebrae has incurred additional attorneys' fees in the amount of $76,024.76. (*See* Atkins-Patterson Decl., ¶ 45.) With its reply brief, Stonebrae will provide an update on these amount and a projection through the hearing on these motions.

## V.

## CONCLUSION

For all the foregoing reasons, Stonebrae respectfully requests that the Court grant this motion, and award Stonebrae its attorneys' fees and costs as requested herein.

-28-

Dated: December 29, 2010　　　　SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

COOPER & KIRKHAM P.C.


By _____ */s/ Philip F. Atkins-Pattenson*
　　　　　PHILIP F. ATKINS-PATTENSON
　　　Attorneys for Plaintiff and Counter-Defendant
　　　　　　　STONEBRAE L.P.