COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
TRACY R. KIRKHAM, Cal. Bar. No. 69913
JOHN D. BOGDANOV, Cal. Bar No. 215830
357 Tehama Street, Second Floor
San Francisco, California 94103
Telephone:     415-788-3030
Facsimile:     415-882-7040
E-Mail:        jdc@coopkirk.com
               trk@coopkirk.com
               jjb@coopkirk.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PHILIP F. ATKINS-PATTENSON, Cal. Bar No. 94901
ARTHUR J. FRIEDMAN, Cal. Bar No. 160867
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415-434-9100
Facsimile:     415-434-3947
E-Mail:        patkinspattenson@sheppardmullin.com
               afriedman@sheppardmullin.com

Attorneys for Plaintiff and Counter-Defendant
STONEBRAE L.P.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| STONEBRAE L.P., a Delaware limited partnership, <br><br>            Plaintiff, <br><br>      v. <br><br> TOLL BROS., INC., a Pennsylvania corporation; TOLL BROTHERS, INC., a Delaware corporation; DOES 1 through 15, inclusive, <br><br>            Defendants. <br><br> And Related Counterclaims. | Case No. 08-CV-00221 EMC <br><br> **DECLARATION OF JOSEF D. COOPER IN SUPPORT OF STONEBRAE L.P.'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS** <br><br> Date:    March 16, 2011 <br> Time:    10:30 a.m. <br> Crtrm:  C, 15th Floor <br> Before: The Honorable Edward M. Chen |

1    I, JOSEF D. COOPER, declare as follows:

2    1.    I am an attorney admitted to practice before this Court and a member in good

3    standing of the State Bar of California.  I am a principal in Cooper & Kirkham, P.C., one of the

4    counsel of record for Plaintiff and Counter-Defendant Stonebrae, L.P. ("Stonebrae") in the

5    above-captioned matter.  I have personal knowledge of the facts set forth in this Declaration

6    and, if called as a witness, I could and would competently testify to them.  I submit this

7    Declaration in support of of "Stonebrae L.P.'s Motion for Award of Attorneys' Fees, Taxable

8    and Non-Taxable Costs," filed contemporaneously with this Declaration.

9    2.    Stonebrae is the owner and master developer of the Stonebrae Development, the

10   residential master planned community and private country club located in Hayward, California,

11   that was the subject of this litigation.  Stonebrae is an indirect subsidiary of Yeung Chi Shing

12   Estates Limited ("Yeung Chi Shing"), which is headquartered in Hong Kong.  YCS

13   Investments, Inc. ("YCS Investments"), another subsidiary of Yeung Chi Shing headquartered in

14   San Francisco, manages the California assets of Yeung Chi Shing, including Stonebrae.

15   3.    Cooper & Kirkham began its representation of Yeung Chi Shing's California

16   subsidiaries, including YCS Investments and the entities that it manages, more than 20 years

17   ago.

18   4.    Cooper & Kirkham is a small "boutique" litigation firm highly experienced in

19   complex commercial litigation.  In addition to its representation of hourly clients, the firm has a

20   significant contingency practice in the areas of antitrust and complex business class actions.

21   The background and experience of the firm and the attorneys who worked on this matter are

22   summarized in the firm resume attached hereto as Exhibit 1.

23   5.    Because of Cooper & Kirkham's small size, it has been YCS Investment's

24   practice for many years to retain both our firm and Sheppard, Mullin, Richter & Hampton LLP

25   ("Sheppard, Mullin") in matters where significant litigation is anticipated.  Both firms have

26   served as co-counsel for entities managed by YCS Investment in matters involving real estate

27   development, land use entitlements, and federal and state natural resources permitting, including

28   the challenges to the 1988 approvals of the Stonebrae Development brought in federal court

1  under the Endangered Species Act.  Given this long-standing collaborative relationship, Cooper

2  & Kirkham and Sheppard, Mullin have become skilled at apportioning responsibilities and

3  managing workflow to avoid unnecessary duplication of effort and to minimize client billings.

4         6.       Following the termination of the Village B Purchase Agreement by Defendant

5  and Counter-Claimant Toll Bros., Inc. ("Toll") on November 20, 2007, Stonebrae instructed

6  Cooper & Kirkham and Sheppard, Mullin, as co-counsel, to institute litigation to recover its

7  damages.  A description of the major claims and defenses in the litigation, highlights of

8  Stonebrae's attempts to limit their scope and Stonebrae's discovery efforts appears in the

9  "Declaration of Philip F. Atkins-Pattenson in Support of Stonebrae L.P.'s Motion for Award of

10 Attorneys' Fees and Costs," filed contemporaneously with this Declaration.  I have read Mr.

11 Atkins-Pattenson Declaration and found the history of the litigation set forth therein to be true

12 and accurate to the best of my recollection and belief, and on that basis (and in the interests of

13 the environment and the court's time constraints) incorporate and adopt that description herein.

14        7.       From the inception of this litigation, it has been my intent, and I am informed and

15 believe the intent of my partner Tracy Kirkham and of our co-counsel Philip Atkins-Pattenson

16 (who managed the Sheppard, Mullin team) to prosecute this case in a manner that would lead to

17 as speedy a resolution of the dispute as possible and minimize Stonebrae's litigation fees and

18 costs.  We made numerous efforts to limit the issues and the scope of discovery.  Most notably,

19 as described in Mr. Atkins-Pattenson's Declaration, we believe that the litigation could and

20 should have been resolved in March 2009, by a ruling of this Court construing the provisions

21 regarding the date for the close of escrow in the Village B Purchase Agreement.  Instead, based

22 upon the representation of Toll's counsel that parol evidence existed that would demonstrate

23 that (a) those provisions were ambiguous, and (b) the parties' true intent was to establish a fixed

24 and final closing date of November 1, 2007, the litigation proceeded for more than another year

25 and a half.  During that time, Toll advanced factually unsupported claims that material aspects

26 of the Stonebrae Pre-Closing Work remained undone in November 2007, and greatly expanded

27 the scope of the case by alleging that Toll was entitled to terminate the Village B Purchase

28 Agreement at that time because Stonebrae had not constructed a permanent clubhouse.

8.      Cooper & Kirkham participated in all aspects of this litigation from the initial organization of the case through the decision to accept Toll's Rule 68 offer of judgment, with Tracy Kirkham devoting the most time to the matter of any Cooper & Kirkham attorney.  In addition to Ms. Kirkham, John D. Bogdanov, an associate of our firm, assisted primarily in legal reseach and drafting.  Associates Rebecca Arons and Inna Zatulovsky also assisted Ms. Kirkham and me in the preparation of various motions and memoranda.  In all aspects of our involvement in the case, we coordinated our efforts with those of Sheppard, Mullin, working more like a single law firm than two distinct entities.  We were consistently aware of what work was being done by Sheppard, Mullin and Mr. Atkins-Patteson was aware of the work that was being done at Cooper & Kirkham.  Through this intense level of cooperation, we endeavored to avoid any unnecessary duplication of effort.

9.      Although it was our practice that all strategy decisions were made jointly and all major filings were reviewed by both Cooper & Kirkham and Sheppard, Mullin, only one firm had principal responsibility for any given task, motion, portion of a motion or opposition brief.  For example, for the most part, Sheppard, Mullin had the laboring oar in the preparation of both written and document discovery.  Motion practice was more evenly divided, with Cooper & Kirkham being primarily responsible for the drafting of:  (1) Stonebrae's motion to strike Toll's 13th Affirmative Defense and dismiss its 4th Claim for Relief, and the opposition to Toll's cross-motion for summary judgment on the *Black Hills* issue (Dkt. ## 63,63-2, 63-3, 64, 71, 72, 73 and 82); (2) the portion of Stonebrae's motion for leave to file a second amended complaint dealing with the addition of the allegations that the liquidated damages provisions of the Village B Purchase Agreement were invalid (Dkt. ## 130 and 135); (3) Stonebrae's motion to dismiss Toll's 6th Counterclaim alleging a breach of the covenant of good faith and fair dealing arising from the failure to construct a permanent clubhouse (Dkt. ## 148,155,156); (4) the clubhouse portion of Stonebrae's motion for summary judgment on Toll's alleged breaches arising from the failure to construct a permanent clubhouse and failure to assist Toll in obtaining building permits (Dkt. # 149); (5) Stonebrae's motion for partial summary judgment or *in limine* to exclude evidence of any alleged defaults not mentioned in Toll's November 2, 2007 purported

1  Default Notice (Dkt. ## 168, 169, 184 and 185); (6) the portion of Stonebrae's motion for partial

2  summary judgment on the specificity of the purported Default Notice as it related to the alleged

3  defective mass grading and other aspects of the Stonebrae Pre-Closing work (Dkt. ## 172 and

4  172-1); and (7) Stonebrae's motion for administrative relief to continue Toll's motion for partial

5  summary judgment on the liquidated damages issue until after the close of deposition discovery

6  (Dkt. # 197).

7          10.      Deposition discovery was almost exclusively conducted by Mr. Atkins-Pattenson

8  and Ms. Kirkham, who divided up responsibility for the preparation and defense of Stonebrae's

9  witnesses as well as the interrogation of Toll's witnesses.  A total of eighteen (18) witnesses

10  were deposed, three of whom (Michael Letchinger, Stonebrae's Project Manager and chief

11  negotiator of the Village B Purchase Agreement; Matt White, the Project Manager for Toll's

12  Village A, who was on site at Stonebrae at all times relevant to the lawsuit; and James Boyd,

13  Toll's Regional President) returned for a partial second day of testimony by the agreement of

14  counsel.  Ms. Kirkham and Mr. Atkins-Pattenson divided responsibility for the depositions

15  primarily along subject matter lines, although the person assigned to depose a witness covered

16  all subject areas as to which that witness had knowledge.  Ms. Kirkham took the laboring oar

17  with regard to the adequacy of Toll's purported Default Notice and the status of the Stonebrae

18  Pre-Closing work, while Mr. Atkins-Pattenson concentrated on the drafting history of the

19  Village B Purchase Agreement and the issue of whether Stonebrae was obligated to Toll to build

20  a permanent clubhouse.  Since a given deponents' knowledge did not divide up so neatly, it was

21  decided that the most efficient means of maintaining continuity and ensuring that all relevant

22  testimony was obtained was to have both of them attend most depositions.  Ms. Kirkham was

23  responsible for the defense of the depositions of Stonebrae witnesses Paul Yuen, Roy K. C.

24  Chan, John Sabine and Marshall Carr, as well as third-party witness, Keith Donahue, a principal

25  in the construction firm that did the Stonebrae Pre-Closing Work, and for deposing Toll

26  witnesses Matt White, Glenn Martin and Jeff Schnurr.  I did not attend any of the depositions

27  and did not participate in the briefing of any of the witnesses other than one short meeting with

28  Mr. Letchinger, Stonebrae's chief witness, and the initial preparation session with Mr. Howard

1   P. L. Yeung, the member of the Yeung Chi Shing Board of Directors with primary

2   responsibility for the company's California assets.

3         11.    I supervised the work performed on this case by the associates of the firm and am

4   familiar with the work performed by Ms. Kirkham. I also have knowledge of the firm's policies

5   regarding the assignment of work and the recording of time and expense records. All attorneys,

6   paralegals and law clerks at Cooper & Kirkham are instructed to maintain contemporaneous

7   time records reflecting the time spent on this and other matters. Attached as Exhibits 2 through

8   16 are copies of the detailed time records that accompanied the invoices submitted to and paid

9   by YCS Investments in the above-captioned litigation. This time detail covers the work done on

10  the merits of the litigation from the inception of the matter on November 21, 2007, through

11  October 18, 2010, the date of Toll's Rule 68 offer of judgment (the month of October is partially

12  redacted). The time detail shows the time spent by each timekeeper on each day of the month

13  for which time was recorded and billed. The monthly totals are then multiplied by the

14  timekeeper's ordinary and customary hourly rate. The firm's hourly rates are set commensurate

15  with the rates charged by other San Francisco law firms practicing in the area of plaintiffs'

16  antitrust, securities and complex business litigation. Hourly rates are usually adjusted annually;

17  however, the firm did not raise rates in 2009, but continued to bill at the same rates that were

18  charged in 2008. Cooper & Kirkham's total lodestar fees for this period are $1,330,203.00. The

19  merits fees for the period after October 18, 2010, for which reimbursement from Toll is not

20  being requested, total $76,719.50 and were incurred principally in evaluating Roll's Rule 68

21  offer and in the preparation and filing of Stonebrae's summary judgment motions, which were

22  due on November 1, 2010, the last date to accept the Rule 68 offer.

23        12.    Attached as Exhibit 17 is a statement of out of pocket costs and expenses

24  incurred or advanced by my firm in connection with the prosecution of this litigation, which

25  were submitted to and paid by YCS Investments. My firm made its usual and customary

26  charges for costs and expenses incurred in this litigation, and added no surcharge to any cost or

27  expense. With the following exception, these out-of-pocket costs are not included in my firm's

28  hourly rates: on August 1, 2008, we adopted a policy of not charging clients for telephone,

1  facsimile and in-house copying.  The expenses incurred pertaining to this case are reflected in

2  the books and records of the firm.  These books and records are prepared from expense vouchers

3  and check records, and are an accurate record of the expenses incurred.  Costs incurred in this

4  matter total $12,315.11.

5         13.    Prior to the submission of any statement to a client, either Ms. Kirkham or I

6  review the draft detail of each timekeeper's records and make billing judgments about the time

7  spent and recorded.  Where appropriate, we reduce the amount of time shown for a particular

8  task to a level that appears commensurate with the circumstances.  In addition, it has been our

9  practice not to bill YCS Investments for much of the time that I spend keeping myself informed

10  of developments in a case.  For example, the client was not billed for any time that I spent

11  reviewing deposition transcripts or the deposition summaries prepared by Ms. Yip (of Sheppard,

12  Mullin), and only for a portion of the time that I spent in consultation with Ms. Kirkham and

13  Mr. Atkins-Pattenson about the testimony they were eliciting.  In general, I bill only for

14  activities when I am actively engaged in a substantive task.  This accommodation to the client

15  resulted in the removal of a significant number of my hours, which I believe enhances the

16  reasonableness of Stonebrae's request for reimbursement by Toll of the fees it has paid to my

17  firm.

18         14.    Stonebrae paid each of the invoices for the time detailed in Exhibits 2 through 16

19  at the hourly rates indicated thereon in the usual course of business.  The costs shown on Exhibit

20  17 were likewise paid in the amounts indicated.

21         15.    Attached as Exhibit 18 is the time detail that accompanied the invoice submitted

22  to and paid by Stonebrae for the month of November 2010.  As described in more detail in Mr.

23  Atkins-Pattenson's Declaration, Stonebrae is requesting fees for the efforts it has and will

24  expend obtaining the attorneys' fees and prejudgment interest offered in Toll's Rule 68 offer.

25  Cooper & Kirkham has taken the lead in preparing Stonebrae's motion for prejudgment interest,

26  including the preparation of a research memorandum for the client.  Cooper & Kirkham has also

27  reviewed and commented on Sheppard, Mullin's briefing of the request for the award of

28  attorneys' fees and costs.  Cooper & Kirkham's lodestar fee for these activities in November is

1    $49,392.50.  At the time Stonebrae files its reply papers on these motions, Cooper & Kirkham

2    will provide the Court with the amount of its fees and costs subsequent to November, and an

3    estimate of its fees and costs through the hearing on these issues.

4           16.    As stated above, a significant portion of Cooper & Kirkham's practice is in

5    complex business class action litigation.  Consequently, the reasonableness of the firm's hourly

6    rates and expenditures of time in various litigation tasks has been reviewed by numerous federal

7    and state courts over the years.  Specifically, the hourly rates charged to Stonebrae in the years

8    2008 and 2009 were found to be reasonable by United States District Court Judge Chesler of the

9    District of New Jersey (*Sullivan v. DB Investments, Inc.*, 2008 U.S. Dist. LEXIS 81146, 2008-1

10   Trade Cases (CCH) P76,304 (D.N.J. 2008)), and the hourly rates charged to Stonebrae in 2010

11   were found to be reasonable by San Francisco Superior Court Judge Richard A. Kramer

12   (*Credit/Debit Card Tying Cases*, J.C.CP. No. 4335, Order Granting Plaintiffs' Motion for

13   Attorneys' Fees, entered August 23, 2010).

14          I declare under penalty of perjury under the laws of the State of California that the

15   foregoing is true and correct, and that this Declaration was executed this 27th day of December

16   2010 at San Francisco, California.

17

18

19   _____
                 JOSEF D. COOPER

20

21

22

23

24

25

26

27

28