DONALD J. PUTTERMAN (SBN 90822)
235 Montgomery Street, 18th Floor
San Francisco, California  94104
Email:  dputterman@djplit.com
Telephone:  (415) 794-4473
Facsimile:  (415) 954-4480

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Christopher J. McNamara (SBN 209205)
E-mail:  cmcnamara@kasowitz.com
101 California Street, Suite 2300
San Francisco, California  94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

TIMOTHY J. HOBAN (SBN 192461)
Regional Counsel for Toll Bros., Inc.
E-mail:  thoban@tollbrothersinc.com
725 Town & Country Road, Suite 500
Orange, California  92868
Telephone:  (714) 347-1300
Facsimile:  (714) 835-9683

Attorneys for Defendant
TOLL BROS, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| STONEBRAE L.P., a Delaware limited partnership,<br><br>        Plaintiff,<br><br>  v.<br><br>TOLL BROS, INC., a Pennsylvania Corporation, TOLL BROTHERS, INC., a Delaware corporation, DOES 1 through 15, inclusive,<br><br>        Defendants.<br><br>And Related Counterclaims. | Case No. 08-cv-00221 EMC<br><br>**TOLL BROS, INC.'S OPPOSITION TO STONEBRAE'S MOTION FOR ATTORNEYS' FEES, TAXABLE AND NON-TAXABLE COSTS**<br><br>Date:       March 16, 2011<br>Time:      10:30 a.m.<br>Courtroom: C, 15th Floor<br>Judge:    Hon. Edward M. Chen |

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1

2

**TABLE OF CONTENTS**

3    I.    INTRODUCTION ................................................................................................ 1

4    II.   ARGUMENT .................................................................................................... 3

5          A.    Stonebrae Has Not Met Its Burden ................................................... 3

6          B.    Stonebrae's Attorneys' Fees Are Not Presumed Reasonable .................. 6

7          C.    Stonebrae's Attorneys' Hours Are Grossly Excessive............................ 7

8                1.    This Case Was Not Complex ..................................................... 8

9                2.    Stonebrae, Not Toll, Expanded the Scope of the Litigation with
                      Meritless Claims, Pointless Motions, and Unnecessary Discovery ............. 9

                 3.    Stonebrae's Attorneys' Hours Substantially Exceed Hours In Similar
                      Cases................................................................................. 12

                 4.    Stonebrae Did Not Exercise Billing Judgment ........................... 13

                 5.    Stonebrae's Request Includes Substantial Fees Incurred on
                      Unsuccessful Unrelated Claims. .............................................. 14

                 6.    Stonebrae's Attorneys Performed Unnecessary and Excessive Work ........ 16

                 7.    Stonebrae's Attorneys Were Inefficient and Duplicative ...................... 17

                 8.    Stonebrae Settled for Less Than 25% of its Purported Actual
                      Damages. ........................................................................... 23

                 9.    The Reasonable Amount of Hours Is 3,199. ................................. 23

           D.    The Reasonable Hourly Rates are between $125 and $550 Per Hour .................. 24

           E.    The Total Lodestar Amount is between $$879,875 and $1,212,610 ..................... 25

           F.    Stonebrae's Excessive Request Warrants a Further Reduction............................ 25

           G.    Stonebrae Is Not Entitled to Any Post-October 18, 2010 Fees. ........................... 26

           H.    Stonebrae's Claimed Costs Are Also Excessive. ................................................ 27

           I.    Stonebrae is not Entitled to Interest on Attorneys' Fees. ................................... 29

    III.   CONCLUSION ................................................................................................ 30

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

i

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Akins v. Enterprise Rent-A-Car Co.,* 79 Cal. App. 4th 1127 (2000)................................. 14

*Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163 (N.D. Cal. 2004) ................... 4, 24

*APL Co. PTE. Ltd., v. UK Aerosols Ltd.,* 2010 U.S. Dist. LEXIS 91853 (N.D. Cal. 2010)......... 4, 5

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.,* 47 Cal. App. 4th 464 (1996) ............. 28

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................................. 4, 24

*Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973 (9th Cir. 2008) ...................................... 3

*Chalmers v. Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) .............................................. 17

*Chavez v. City of Los Angeles*, 47 Cal. 4th 970 (2010)................................................. 14

*Children's Hosp. & Med. Center v. Bonta*, 97 Cal. App. 4th 740 (2002)................................. 4, 24

*Cruz v. Ayromloo*, 155 Cal. App. 4th 1270 (2007) ...................................................... 23

*EnPalm, LLC v. Teitler*, 162 Cal. App. 4th 770 (2008) ................................................. 7, 23

*Gates v. Deukmejian,* 987 F.2d 1392 (9th Cir. 1992) ................................................... 4

*Gold v. NCO Fin. Sys.,* 2010 U.S. Dist. LEXIS 86433 (S.D. Cal. Aug. 20, 2010)................... 17, 22

*Grove v. Wells Fargo Financial California, Inc.,* 606 F.3d 577 (9th Cir. 2010)..................... 28, 29

*Guerrero v.Cummings*, 70 F.3d 1111 (9th Cir. 1995)...................................................... 27

*Harman v. City and County of San Francisco*, 158 Cal. App. 4th 407 (2007) .................... 7, 12, 14

*Hensley v. Eckerhart*, 461 U.S. 424 (U.S. 1983) ................................................ 4, 7, 13, 16, 17, 25

*Hsu v. Semiconductor Systems, Inc.,* 126 Cal. App. 4th 1330 (2005).............................. 28, 29

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975)........................................ 7

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ........................................................ 7, 17, 26

*Mendenhall v. NTSB*, 213 F.3d 464 (9th Cir. 2000)...................................................... 6

*Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748 (7th Cir. 2010) .................... 6

*MRO Communs., Inc. v. AT&T Co.*, 197 F.3d 1276 (9th Cir. 1999)................................... 27

*Municipal Court v. Bloodgood*, 137 Cal. App. 3d 29 (1982) ....................................... 29

*Niederer v. Ferreira*, 189 Cal. App. 3d 1485 (1987) ................................................ 23

*Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP*, 152 Cal. App. 4th 42 (2007) .......... 27

*Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101 (2009) .............................................. 23

*PLCM Group, Inc., v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) .............................................. 3, 7, 24

*RD Legal Funding, LLC, v. Erwin & Balingit, LLP*, 2011 U.S. Dist. LEXIS 2137, *13 (C.D. Cal. Jan. 10, 2011) ........................................................................................................................ 27

*Relion, Inc. v. Hydra Fuel Cell Corp.,* 2008 U.S. Dist. LEXIS 98400 (D. Or. Dec. 4, 2008).......... 6

*Robertson v. Fleetwood Travel Trailers,* 144 Cal. App. 4th 785 (2006) ........................................ 7

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982)...................................................................................... 26

*Thrifty Payless, Inc. v. Mariners Mile Gateway*, LLC, 185 Cal. App. 4th 1050 (2010)................. 28

*Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003)............................................................................. 14

*Welch v. Metro. Life Ins. Co.,* 480 F.3d 942 (9th Cir. 2007)........................................................... 4

## Statutes

California Civil Code § 1638 ........................................................................................................ 26

California Code of Civil Procedure section 1033.5 .................................................................. 27, 28

California Code of Civil Procedure section 1671 ......................................................................... 16

California Government Code section 27648 ................................................................................. 29

Fed. R. Civ. Proc. 68 ....................................................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Toll's Opposition To Stonebrae's Motion For Attorneys' Fees and Costs; Case No. 08-cv-00221 EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

## I.  **INTRODUCTION**

On October 18, 2010, Toll served Stonebrae with a Rule 68 Offer, which Stonebrae accepted on November 1, 2010.  Stonebrae's Motion for Award of Attorneys' Fees, Taxable and Non-Taxable Costs ("Motion for Attorneys' Fees") concerns paragraph (2) of the Rule 68 Offer, which provides for "Costs incurred by plaintiffs through the date of this offer, which shall include reasonable attorneys' fees, as determined by the Court."

Under both California and federal law, the lodestar method is used to determine reasonable attorneys' fees.  Using a variety of factors, the Court determines the reasonable amount of hours spent by each timekeeper on the case, and multiplies the reasonable hours by reasonable hourly rates.  Then, if appropriate, the Court adjusts the lodestar amount upwards or downwards.

The fee applicant must exclude excessive, redundant, or otherwise unnecessary hours from the lodestar amount.  The fee applicant must submit evidence sufficient to determine how much time was spent on particular activities, and, in the Northern District, must comply with Local Rule 54-5.  The fee applicant also must produce satisfactory evidence, in addition to the attorney's own affidavits, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

In diversity actions, federal law governs the procedure and the entitlement to taxable costs.  State law governs entitlement to non-taxable costs.  In either case, the party seeking costs must prove it is entitled to specific items of costs.  Local Rule 54-1 requires that each item of costs be separately stated and supported by an affidavit that the costs are correctly stated, were necessarily incurred, and are allowable by law.

Stonebrae has not met its burden on attorneys' fees or costs.  Stonebrae essentially asks the Court to rubberstamp its attorneys' fees and costs of **$4,364,971.35**.  The amount of Stonebrae's request is staggering.  By comparison, Toll's attorneys' fees for *this case* through October 18, 2010 were $1,118,097.  The total attorneys' fees and costs awarded the sellers in *Toll Brothers, Inc., v. Lin, Case No*. C08-00987 SC (which Stonebrae itself characterized as being virtually

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   identical to this case) after a two-week trial were $1,168,367.[1]  Despite the size of its request,

2   Stonebrae did not provide: (1) a statement of services provided by each timekeeper; (2) a summary

3   of the time spent by each timekeeper; (3) any evidence that excessive, redundant, or otherwise

4   unnecessary hours were excluded from the fee request; (4) evidence sufficient to determine how

5   much time was spent on particular activities; (5) evidence of hourly rates charged by attorneys for

6   similar work (i.e. real estate litigators); (6) a coherent description of claimed costs items; or (7) an

7   affidavit that the costs are correctly stated, were necessarily incurred, and are allowable by law.

8   Stonebrae's failure to meet its burden and the excessiveness of Stonebrae's requests themselves

9   justify a significant across-the-board reduction or a denial altogether.

10         Stonebrae has been simultaneously represented by two law firms for the duration of this

11  action:  Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin"), and Cooper & Kirkham

12  P.C. ("Cooper & Kirkham").  Taken together and individually, each law firm substantially over-

13  staffed the case, billed for excessive, duplicative and unnecessary work, worked the case in a top-

14  heavy manner, and charged excessive fees, as demonstrated by the following:

15  - Stonebrae's attorneys billed 7,865 hours on this case through October 18, 2010 –
16    1.9 times the hours billed by Toll's attorneys.  de Ayora Decl., Ex. C.

17  - 27 attorneys and 14 paralegals billed time on the case.  Rosen Decl., ¶ 40.

18  - Attorneys with the highest hourly rates accounted for 58.5% of the total hours
19    billed and 75.35% of the amount of fees.  Rosen Decl., ¶¶ 36-38.

20  - The fee request includes fees for 36 people at Sheppard Mullin, only 5 of whom are
21    specifically identified in Stonebrae's moving papers.  Atkins-Patterson Decl., ¶ 24.

22  - Atkins-Patterson and Kirkham, who billed $630 and $825 respectively at the time,
23    both attended 11 of 18 depositions.  Rosen Decl., ¶ 34.

24  - Multiple lawyers for Stonebrae attended every hearing, and most were attended by
25    partners from Sheppard Mullin and Cooper & Kirkham.

26  _____

27  [1] The judgment in favor of the Lins was reversed by the Ninth Circuit in an unpublished opinion
    on February 3, 2001.  *Toll Brothers, Inc. v. Lin*, Case No. 09-16955 (9th Cir. Feb. 3, 2011).  The
28  appeal concerned the merits of the case, not the order on attorneys' fees. McNamara Decl., Ex. R.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

- The most expensive attorneys – Atkins-Pattenson, Cooper, and Kirkham – alone billed Stonebrae for more than 800 hours and $571,324 in connection with 18 depositions.  For every hour spent in a deposition for this case, including breaks, these three attorneys billed an average of 6 hours ($4,284) on deposition related tasks.  Rosen Decl., ¶¶ 32-34; *see also* de Ayora Decl., ¶ 13.

- Lawyers from both Sheppard Mullin and Cooper & Kirkham billed substantial amounts in connection with every motion.  *See* Chart below at p. 18.

- Josef Cooper, whose current billing rate is $950 per hour, billed 493 hours, more than double the amount of Toll's lead attorney.  But unlike Toll's lead attorney, Cooper did not do any substantive work.  de Ayora Decl., Exs. B, D.

- Stonebrae attorneys spent approximately 2,268 hours on unsuccessful unrelated claims.  de Ayora Decl., ¶¶ 11, 14.

The hourly rates billed by Stonebrae's attorneys are also excessive and completely out of line with attorneys' fees by comparable attorneys doing comparable work in the Bay Area.  The current hourly rates of Cooper, Kirkham, and Atkins-Pattenson are $950, $825, and $630 respectively, well above the $350 to $550 per hour generally charged by experienced real estate litigators in the area.  Regarding costs, Stonebrae's request should be summarily denied.  Stonebrae has not complied with the local rules and has failed to present sufficient evidence on the cost items it claims.

## II.   ARGUMENT

### A.   Stonebrae Has Not Met Its Burden.

Under California and federal law, the reasonable amount of attorneys' fees is determined by the lodestar method.  Under the lodestar method, the Court multiplies the number of hours reasonably expended times the reasonable hourly rate.  *PLCM Group, Inc., v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).[2]  As the party seeking fees, Stonebrae has the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours.

---

[2] *See also Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008).

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992). The evidence submitted by the fee

2   applicant must be sufficient to permit the Court to determine how much time was spent on

3   particular activities. *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir. 2007); *see also*

4   Local Rule 54-5. By submitting only block-billed time records, Stonebrae has not met its burden.

5   *Welch,* 480 F.3d at 948 ("It was reasonable for the district court to conclude that Welch failed to

6   carry her burden, because block billing makes it more difficult to determine how much time was

7   spent on particular activities"); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (U.S. 1983)

8   (where the documentation of hours is inadequate, the court may reduce the award accordingly).

9   Stonebrae did not provide a summary of the time spent and services provided by each time keeper,

10  as required by Local Rule 54-5. Stonebrae did not provide summaries of time spent on any

11  individual tasks or categories of tasks. Stonebrae did not even provide a calculation of the total

12  amount of hours its attorneys purportedly spent on this case, or the hourly rates of its attorneys at

13  Cooper & Kirkham. Stonebrae simply provided the Court with block billed invoices, leaving it up

14  to the Court to sort through the documents.

15        Stonebrae also failed to meet its burden to produce satisfactory evidence that the requested

16  rates are in line with those prevailing in the community for *similar services* by lawyers of

17  reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 896

18  (1984) (emphasis added); *see also Children's Hosp. & Med. Center v. Bonta*, 97 Cal. App. 4th

19  740, 783 (2002) (market rate is established by a comparison to rates charged by attorneys in the

20  area for similar work and fee awards for comparable work). The purpose of using prevailing

21  market rates is to estimate the hourly rate reasonably competent counsel would charge. *Albion*

22  *Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1170 (N.D. Cal. 2004). For example, in

23  *APL Co. PTE. Ltd., v. UK Aerosols Ltd.,* 2010 U.S. Dist. LEXIS 91853 (N.D. Cal. 2010), the court

24  reduced the hourly rates of Sheppard Mullin attorneys' to the rates charged by maritime lawyers.

25  *Id.,* at *13.

26        The declarations of Atkins-Patteson, Cooper, and Richard Pearl are not sufficient. While

27  the declarations may establish hourly rates for complex antitrust, class action, and environmental

28  cases, they do not establish market rates for real estate litigation like this case. Cooper's and

4

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Atkins-Patteson's self-serving declarations are clearly not sufficient. *APL Co. PTE. Ltd.,* 2010 U.S. Dist. LEXIS 91853, *11 ("To begin with, self-serving declarations cannot provide the sole authority for the reasonableness of the attorneys' rates"). The cases cited by Atkins-Patteson are not comparable to this case. *Dalido v. Responsible County Development LLC,* involved RICO claims against a city and other entities opposing a development plan. Sheppard Mullin's client sought $140,380 ($135,880 in fees, $4,500 in costs). McNamara Decl., Ex. S. The court only awarded $92,232.55, 66% of the requested amount. *Id.,* Ex. T. *Carcione v. Redwood* City, Case No. CIV 463195, was a CEQA case and attorneys' fees were awarded under a public benefit theory. Atkins-Patteson was brought in because of his experience on CEQA and other environmental cases. McNamara Decl., Ex. U, at 9:9-19.[3] Atkins-Patteson's client sought attorneys' fees of $378,672; the court awarded $260,378. McNamara Decl., Exs. U, and W. The cases cited by Cooper are even less comparable. *Sullivan v. DB Investments Inc.* was a nationwide antitrust case that included seven state and federal class actions suits. The litigation took seven years, 39,000 attorney hours, and "class counsel faced complex legal issues including applying differing laws of 50 states for the Indirect Purchaser Class claims, determining whether United States courts have jurisdiction over De Beers, attempting to serve process on De Beers, and applying for class certification." *Sullivan v. DB Invs., Inc.,* 2008 U.S. Dist. LEXIS 81146 (D.N.J. May 22, 2008). *Credit/Debit Card Tying Cases;* J.C.C.P. No. 4335, was a combined action in the complex litigation department of the San Francisco Superior Court. The action consolidated thirteen separately filed suits involving state antitrust and unfair competition claims concerning Visa or Mastercard branded credit and debit cards, the first of which was filed in 2000. McNamara Decl., Ex. X. By contrast, this case involved two parties and a single contract.

Pearl's declaration is similarly flawed. Pearl cites six cases between 2008 and 2010, but does not explain how any of those cases are comparable to this case. Pearl Decl., ¶ 9. Pearl's survey of rates charged by firms is also not helpful. *See APL Co. PTE. Ltd.,* 2010 U.S. Dist.

---

[3] Sheppard Mullins co-counsel was Gregory J. Ryken, who has been lawyer for 38 years and focuses on real estate and construction litigation and transactions, and his standard hourly rate is $400 per hour, substantially less than Stonebrae's requested rates. McNamara Decl., Ex. V.

5

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  LEXIS 91853, *11 ("The published survey, unaccompanied by any documentation to substantiate

2  that the attorneys in this case have comparable skill and experience to the attorneys at the other

3  firms, is essentially meaningless").  There is no indication that the rates listed in Pearl's

4  declaration are charged by the firms' real estate litigators or litigators handling cases of similar

5  complexity.  Moreover, the survey appears to list the firms' published rates, not the actual

6  customary fees charged or collected.

7      **B.     Stonebrae's Attorneys' Fees Are Not Presumed Reasonable.**

8          Stonebrae's argument that the reasonableness of its attorneys' fees "is established by the

9  'presumptive validity of market forces'" (Motion for Interest, at 19:22-24) is contrary to the terms

10  of the Rule 68 Offer and the law in the Ninth Circuit.

11          The Rule 68 Offer does not entitle Stonebrae to all of the attorneys' fees it paid its

12  attorneys, but only those the Court finds reasonable:  "Costs incurred by plaintiffs through the date

13  of this offer, which shall include reasonable attorneys' fees, *as determined by the Court*."  Dkt. #

14  248.  Additionally, in the Ninth Circuit, reasonable rates are not synonymous with the rates

15  actually charged:

16          This court has repeatedly held that the determination of a reasonable hourly rate "'is
            not made by reference to the rates actually charged the prevailing party.'" [Citations
17          omitted.]  To the extent, therefore, that the NTSB relied on the rates Mendenhall's
            attorney actually charged her, it abused its discretion.
18

19  *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000); *see also Relion, Inc. v. Hydra Fuel Cell*

20  *Corp.,* 2008 U.S. Dist. LEXIS 98400 (D. Or. Dec. 4, 2008) (ASRC's request for attorney's fees is

21  therefore denied, on the ground that it has failed to submit adequately detailed billing records,

22  [citations], and on the ground that ASRC has submitted no evidence from which the court can

23  determine the prevailing market rate, as opposed to the rate actually billed, for each timekeeper

24  listed on the billing statement.")[4]

25  ───────────────

26  [4] Stonebrae cannot rely on the Seventh Circuit's decision in *Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748 (7th Cir. 2010).  Moreover, *Metavante* does not stand for the broad
    proposition Stonebrae claims, even in the Seventh Circuit.  The issue in *Metavante* was whether
27  the district court erred in allowing the plaintiff to submit redacted bills in support of its requested
    attorneys' fees.  *Id.,* at 774.  The Seventh Circuit found the district court acted within its
28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**C.**     **Stonebrae's Attorneys' Hours Are Grossly Excessive.**

The first step in determining reasonable fees under the lodestar method is to determine the number of hours reasonably expended. *PLCM Group*, 22 Cal. 4th at 1095. The Court must determine the reasonable, *not actual*, number of hours expended by each attorney involved in the case. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *EnPalm, LLC v. Teitler*, 162 Cal. App. 4th 770, 775 n. 4 (2008). Relevant factors include: "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Harman v. City and County of San Francisco*, 158 Cal. App. 4th 407, 416, n. 5 (2007), citing *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69 (9th Cir. 1975). The fee applicant must show that the hours spent were *reasonably necessary* to the conduct of the litigation and were reasonable in amount. *Robertson v. Fleetwood Travel Trailers,* 144 Cal. App. 4th 785, 818 (2006). Hours that are excessive, redundant, or otherwise unnecessary must be excluded from the lodestar amount. *See Hensley,* 461 U.S. at 434. The initial lodestar calculation should exclude hours that were not reasonably expended in pursuit of successful claims. *Harman*, 158 Cal. App. 4th at 417; *see also Hensley,* 461 U.S. at 434.

---

discretion, noting that in contractual fee shifting cases, the court is not required to do an hour by hour review, but can determine reasonableness based on the aggregate costs in comparison to the stakes of the case. *Id.,* at 775. In addition to presuming reasonableness based on market factors, the district court considered affidavits which assured the court that rates had been negotiated by counsel, supporting documentation reviewed and pertinent questions asked. The court also noted that the general counsel owed his corporation a fiduciary duty, as well as the fact that the defendant refused to disclose "its own fees as a measure of a reasonable expenditure." *Id.,* at 776. Here there is no showing of how the rates were negotiated, or that pertinent questions were asked, or that the invoices were reviewed by anybody with a fiduciary duty to Stonebrae. Moreover, Toll has disclosed its fees as a measure of reasonable expenditure, and its attorneys' fees are about 30% of Stonebrae's.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    Stonebrae's attorneys billed a total of 7865[5] hours on this case through October 18, 2010,

2  for total attorneys' fees of $3,726,268.[6] de Ayora Decl., Ex. C.  Toll by contrast, spent 4,128 for

3  total attorneys' fees of $1,118,097.[7]  *Id.,* Ex. D.  As discussed in the following sections, the hours

4  expended by Stonebrae's attorneys are grossly excessive, and include hours for unsuccessful

5  unrelated claims, excessive and duplicative work, and unnecessary work.

6                    **1.      This Case Was Not Complex.**

7          This case concerned a dispute between two parties over a purchase and sale agreement for

8  real estate.  The dispute was not legally, factually, or procedurally complex.  Rosen Decl., ¶¶ 21-

9  22; McNamara Decl., ¶¶ 6-15.  The principal questions were: whether the closing date of the

10  Village B Agreement was November 1, 2007 or January 31, 2008; whether Stonebrae met its

11  obligation to complete the Pre-Closing Work in a timely manner; whether Stonebrae was obligated

12  to build the clubhouse and related facilities and, if so, by when; whether the liquidated damages

13  provision was unenforceable; and whether Stonebrae's claim that it was never obligated to build

14  the clubhouse and related facilities warranted rescission, none of which were complex issues.

15  There were only 18 depositions and only 261 deposition exhibits.  McNamara Decl., ¶ 15.

16  Stonebrae designated only three experts: one on the value of the property (relevant only if the

17  liquidated damages provision was unenforceable), one on the purported standard deposit amount

18  in real property transactions (relevant only towards the liquidated damages issue), and one on

19  whether governmental approvals obligated Stonebrae to build the clubhouse and related amenities

20  (relevant only to Stonebrae's claim that it had no obligation to build a clubhouse).  *Id.*  Toll also

21  designated only three expert witnesses (one of whom was solely a rebuttal expert): one on the

22  importance of a permanent clubhouse to the success of a golf course community, one on the value

23

24  _____

25  [5] Stonebrae did not provide a total amount of hours in its moving papers.  Toll calculated this amount based on the invoices submitted by Stonebrae.  de Ayora Decl., ¶ 5-8.

26  [6] This figure is based on paragraph 49 of the Atkins-Pattenson's Declaration.

27  [7] This includes time spent on Stonebrae's unsuccessful claim for interference with contract and that the liquidated damages provision was enforceable.

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

of the property, and one (as rebuttal) on the lack of a discernable industry standard deposit amount. *Id.*  The case settled prior to depositions of experts. *Id.*

### 2. Stonebrae, Not Toll, Expanded the Scope of the Litigation with Meritless Claims, Pointless Motions, and Unnecessary Discovery.

#### a. Toll's Claims Had Merit.

Stonebrae cannot justify its excessive fee request by characterizing Toll's claims as frivolous.  There is substantial evidence to support each of Toll's claims and defenses.

Toll's former Northern California Group President testified that he and Stonebrae's project manager discussed the closing date, and agreed that November 1, 2007 was the outside closing date.  McNamara Decl., Ex. B.  Additionally, Stonebrae's contract with its general contractor (DeSilva Gates) required completion of the infrastructure for Village B by November 1, 2007.  When DeSilva Gates requested a one week extension, Stonebrae refused.  McNamara Decl., Ex. C.  Stonebrae also told DeSilva Gates that Stonebrae was under a contractual deadline with Toll to have the work completed by November 1, 2007.  *Id.*

Stonebrae's documents (and the deposition testimony of Stonebrae and DeSilva Gates employees) demonstrate that the Stonebrae Pre-Closing Work was not completed by November 1, 2007 or by November 20, 2007, the biggest problem being the electrical infrastructure.  McNamara Decl., ¶ 18, Ex. D.  Indeed, DeSilva Gates – contractually obligated to complete the work by November 1 – did not notify Stonebrae of substantial completion until December 14, 2007, and the electrical infrastructure was still not finished.  McNamara Decl., Ex. E.

Stonebrae, not Toll, tried to "hide the ball" regarding Pre-Closing Work that was not completed prior to November 1, 2007.  Stonebrae employees responsible for the construction testified that they knew exactly what had and had not been done at any given time.  *See, e.g.,* McNamara Decl., Exs. F, G.  Toll provided Stonebrae with a list of incomplete work it identified on the walk-through of the property.  Stonebrae, however, hid electrical problems that Toll had no way of knowing about.  McNamara Decl., Ex. F.

Regarding Stonebrae's obligation to construct a clubhouse and related facilities, a November 1, 2005 memorandum from Stonebrae's Letchinger, Yuen, and consultant Tony

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  Dawson, to Howard Yeung (the owner of Stonebrae) and Roy Chan (Yeung's advisor),

2  unequivocally states that Stonebrae had an obligation to Toll and other home builders to

3  build the clubhouse and related facilities.  McNamara Decl., Ex. H.

4      Toll did not "throw in the proverbial towel," as Stonebrae claims.  Toll's settlement

5  offer was based in part on the risks going forward, but it was also based on business issues

6  independent of the litigation.

7              **b.      Stonebrae, Not Toll, Expanded the Scope of the Litigation.**

8      Stonebrae is wrong to argue that Toll needlessly expanded the litigation by frivolously

9  amending its claims.  Excepting the Subdivision Map Act issue (which was decided early in the

10  case), Toll's amendments were prompted by Stonebrae's changing positions in the litigation.

11      This dispute began in November of 2007.  On November 18, 2009, (two days before a

12  scheduled mediation), Stonebrae filed a motion to amend its complaint to add a claim for breach

13  of the covenant of good faith and fair dealing and a claim that the liquidated provision was

14  unenforceable.  Dkt. # 130.  The Court granted Stonebrae's motion as to the liquidated damages

15  issue (Dkt. # 141), and Stonebrae filed its Second Amended Complaint on January 12, 2010.  Dkt.

16  # 142.  Toll filed an answer to Stonebrae's Second Amended Complaint on January 26, 2010, and

17  in addition to its existing claims for breach of contract and breach of the covenant of good faith

18  and fair dealing, Toll alleged claims for fraud, negligent misrepresentation, and rescission, which

19  were based on Stonebrae's new claim regarding the liquidated damages provision.  Dkt. # 144.

20  On March 31, 2010, at the hearing on Stonebrae's motion to dismiss, Stonebrae, for the first time,

21  took the position that it had no obligation whatsoever to Toll to build the clubhouse and related

22  facilities.  McNamara Decl., ¶ 13, Ex. A.  Toll subsequently filed amended defenses and

23  counterclaims – rescission based on failure of consideration, rescission based on no meeting of the

24  minds, and anticipatory breach – based on Stonebrae's new position.  Dkt. # 190.

25              **c.      Stonebrae, Not Toll, Over-Litigated This Case.**

26      Stonebrae justifies its excessive fees by arguing that Toll engaged in a "scorched earth"

27  litigation strategy that drove up the cost of the litigation.  Not so.  Stonebrae, not Toll over-

28  litigated this case.  Stonebrae: (1) fraudulently joined Toll's parent corporation in an unsuccessful

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   attempt to defeat diversity and circumvent the liquidated damages provision; (2) filed a motion to

2   compel a broad array of financial documents and a motion for sanctions (which were both denied),

3   without making any attempt to narrow the scope of its requests; (3) unsuccessfully tried to add a

4   breach of covenant of good faith and fair dealing claim solely to force Toll to produce financial

5   documents; (4) asserted that the liquidated damages provision was unenforceable only after the

6   case had been scheduled for mediation in a transparent attempt to gain settlement leverage,

7   changing this case from a dispute over $4,774,944 to a dispute over an unknown amount that

8   Stonebrae eventually claimed exceeded $22,000,000; (5) first argued that Stonebrae had standing

9   to assert the liquidated damages provision was invalid because the amount was too low, then, after

10  discovery proved that position untenable, argued that that provision was invalid because the

11  amount was too high; and, (6) filed 14 motions before Toll's Rule 68 Offer, only one of which

12  was granted in its entirety.  Five were denied, two were granted in part and denied in part, and six

13  were withdrawn by Stonebrae.[8]

                    **d.      Toll Did Not Pursue Needless Discovery.**

15          According to Stonebrae, Toll forced Stonebrae to search for documents relating to virtually

16  every aspect of the Stonebrae development, and Toll rejected Stonebrae's attempts to narrow the

17  scope of Toll's documents request.  *See e.g.* Motion for Attorneys' Fees, at 4:19-5:3.  The record

18  demonstrates otherwise.

19          Toll served its first request for documents on September 29, 2008, seeking documents

20  related to the breach of contract claims.  McNamara Decl., ¶ 33.  Toll served its second and third

21  requests for documents (primarily on the liquidated damages issue) only after Stonebrae claimed

22  the liquidated damages provision was unenforceable.  *Id.*  Stonebrae responded to Toll's second

23  and third requests for documents on February 1, and March 29, 2010 respectively.  *Id.*  In

24  response to Toll's second request, Stonebrae objected and narrowed the scope of seven requests,

25  and objected and refused to produce any documents in response to eight requests.  McNamara

26  Decl., ¶ 33, Ex. M.  In response to Toll's third set of request, Stonebrae objected and refused to

_____

[8] *See* chart on page 18.

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   produce documents in response to four of the requests.  *Id.,* Ex. N.  The parties discussed Toll's

2   request on March 11, 2010, and Toll did not pursue any of the documents Stonebrae objected to

3   producing.[9]  McNamara Decl., ¶ 34.

4         Prior to March 11, 2010, Stonebrae did not complain about the scope of Toll's request

5   (other than in objections which Toll did not pursue).  *Id.,* ¶ 35.  Nor did it tell Toll that its requests

6   would generate anywhere near a million of pages of documents.  Stonebrae made a strategic

7   decision to dump a substantial amount of documents on Toll to justify a continuance of the trial

8   date, and to overwhelm Toll with documents shortly before depositions were to begin.  By January

9   28, 2010, Stonebrae had produced 9,909 documents totaling 36,548 pages.  *See* Atkins-Patterson

10  Decl., ¶ 21.  Then, on January 28, 2010, Stonebrae asked Toll to agree to a continuance of the trial

11  and advised that Stonebrae had yet to review approximately 200,000 pages of documents

12  potentially responsive to Toll's first request for documents, which had been served 16 months

13  earlier.  McNamara Decl., ¶ 35; *see also* Joint Status Conference Statement dated February 5,

14  2010 (Dkt. # 145).  Stonebrae produced additional documents in February and March.  Atkins-

15  Pattenson Decl., ¶ 21.  Then on July 2, 15, and 20, Stonebrae dumped an additional 13,554

16  documents (117,531 pages) shortly before Michael Letchinger's (the most important Stonebrae

17  witness) deposition on August 3, 2010.  *Id.,* ¶ 21, 22.

18          **3.**    **Stonebrae's Attorneys' Hours Substantially Exceed Hours In Similar**

19              **Cases**.

20        Fee awards in similar cases is a factor in determining the reasonable hours and rates.

21  *Harman*, 158 Cal. App. 4th at 416, n. 5.  *Toll Brothers, Inc., v. Lin, Case No.* C08-00987 SC,

22

23  ────────────────
    [9] Atkins-Pattenson's cite to requests nos. 1, 4 and 5 from Toll's third request for documents as

24  examples of the breadth of Toll's requests and Toll's unwillingness to narrow the scope is
    misplaced.  *See* Atkins-Pattenson Decl., ¶¶ 16-18.  In response to Request No. 1, Stonebrae

25  objected and refused to produce any additional documents.  In response to Request No. 4,
    Stonebrae refused to produce any additional documents and noted that "Pursuant to the parties'

26  'meet and confer' discussion on March 11, 2010, Toll has agreed to withdraw this Request."
    McNamara Decl., Ex. N.  In response to Request No. 5, Stonebrae objected and stated it had

27  already produced responsive documents.

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

which was tried before the Honorable Samuel Conti in March 2009, is a similar case.[10] McNamara Decl., ¶¶ 38-41; Rosen Decl., ¶ 48.  Although similar issues were involved, the Lin case was actually more complicated than this case.  Toll asserted claims for rescission, breach of contract, foreclosure of liens, and declaratory relief.  The Lins asserted claims for declaratory relief, two separate claims for breach of contract, breach of the duty of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, quiet title, and promissory estoppel.  Nineteen third parties produced documents.  Toll designated four expert witnesses; the Lins designated five.  Nineteen depositions were taken.  A two week trial was held and three of the Lins' attorneys were present for the entire trial.  After the trial, the Lins sought $1,416,775 in attorneys' fees, which the Court reduced by 22% to $1,111,907.[11]  McNamara Decl., Ex. Q.  Prior to the pre-trial conference (4 weeks before trial) the Lins' attorneys and paralegals had spent 4,414 (attorneys – 2639, paralegals – 1775) hours on the matter, only 56% of the hours expended by Stonebrae's attorneys, and just 286 hours more than Toll has spent on this case to date.  Id., ¶ 39.  In a similar case recently tried by Denis Shanagher, a Bay Area real estate litigator for 29 years, one party's attorneys' fees were $600,000 and the other party's were $834,000.  Shanagher Decl., ¶ 10.

### 4.  Stonebrae Did Not Exercise Billing Judgment.

Stonebrae argues that its attorneys exercised billing judgment, but the declarations and the billing records demonstrate otherwise.  Rosen Decl., ¶¶ 24-48.  Billing judgment means excluding hours that are excessive, redundant, or otherwise unnecessary.  *Hensley,* 461 U.S. at 434.  Cooper's declaration does not show a reasonable exercise of billing judgment.  Cooper states that he personally did not bill for all the time he spent on the matter but does not state how much time

---

[10] In support of its motion to compel, Stonebrae asserted that the *Lin* case was almost identical to this case.  *See* Dkt. # 109:2-19-22 ("Because Toll Brothers, Inc. tried to prevent this very same discovery, based on the same cases and arguments, in another case involving similar claims against Toll Brothers, Inc. for breaching another promise to purchase real estate in another multiphased development in the East Bay." Dkt. # 109:2-19-22; *see also* Dkt. # 115, 2:10-13.

[11] The Lins' attorneys expended 3,795 hours through the filing of the motion for attorneys' fees.  Paralegals, who billed at $100 per hour or less, accounted for an additional 2351 hours.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   was written off.  Cooper Decl., ¶¶ 11-13.  Moreover, Cooper does not state that he or Kirkham

2   reviewed the bills submitted to Stonebrae and removed hours that were excessive, redundant, or

3   otherwise unnecessary.  As discussed below, Cooper & Kirkham's work was largely duplicative of

4   Sheppard Mullin's work.  A reasonable exercise of billing judgment would have resulted in a

5   substantial reduction of time.  Rosen Decl., ¶¶ 25-34.

6          Atkins-Patterson claims to have used billing judgment prior to the finalization of bills, but

7   does not state how much was written off or explain how he exercised billing judgment.[12]  The 5%

8   discount on standard rates Sheppard Mullin gave to Stonebrae is not a substitute for billing

9   judgment; it is a slightly lower rate for one client than Sheppard Mullin may charge another client.

10  There is no showing that the discount had anything to do with billing judgment.  Rosen Decl., ¶¶

11  43-45.

12          **5.      Stonebrae's Request Includes Substantial Fees Incurred on
                     Unsuccessful Unrelated Claims.**

13

14         Reasonable fees do not include fees for unsuccessful claims that are not related to the

15  successful claims.  *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010); *see also Harman*,

16  158 Cal. App. 4th at 417 (2007) ("Counsel's work on such unsuccessful and unrelated claims

17  cannot be deemed to have been expended in pursuit of the ultimate result achieved and therefore

18  no fee may be awarded for services on such claims.").  Claims are not related if the facts or the

19  legal theories are the same.  *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003); *see also Akins v.*

20  *Enterprise Rent-A-Car Co.,* 79 Cal. App. 4th 1127, 1133 (2000) (claims are related where there is

21  a common legal issue).

22         Stonebrae's fee request includes 2,268 hours expended on two unsuccessful unrelated

23  claims:  the claim for interference with contract, and the claim that the liquidated damages

24  provision was unenforceable.

25

26

27  ─────────────────────
    [12] Toll's attorneys wrote off $47,000, including $14,000 for fees in connection with depositions in
    August 2010.  McNamara Decl., ¶ 5.

28

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Stonebrae's unsuccessful claim against Toll's parent corporation for interference with contract involved different legal theories, different facts, and a different defendant.  The interference with contract claim concerned the financial interest privilege and Toll's parent corporation's motive for inducing a breach of contract, not the breach of contract itself.  Dkt. # 48. Stonebrae's attorneys billed 194.8 hours litigating the interference with contract claim.  de Ayora Decl., ¶ 11; *see also* Rosen Decl., ¶ 30.

Stonebrae's claim for declaratory relief that the liquidated damages provision was unenforceable was also an unsuccessful unrelated claim.  Indeed, it was a cudgel, not a legitimate claim.  Stonebrae made the claim shortly before the previously scheduled mediation with Magistrate Judge Laporte, and, as demonstrated by the testimony of Stonebrae's project manager (himself a lawyer), who negotiated the Village B Agreement, Stonebrae knew the claim was meritless.  Letchinger testified the amount of liquidated damages was the subject of substantial negotiations, was reasonable at the time the contract was formed, and remains reasonable in hindsight:

> Q    Now, did you also agree here that the amount of liquidated damages represented by the letters of credit held as a deposit was a reasonable sum considering all of the circumstances existing as of the agreement date?
>
> A    Yes.
>
> Q    And did you believe that statement to be true?
>
> A    Yes.
>
>         \*     \*     \*
>
> Q    Do you now believe that it was not a reasonable sum as of the date of the agreement given all of the circumstances at that time?
>
> A    The criteria that I applied in executing the contract and agreeing to the amount of the deposit was acceptable to me then on behalf of Stonebrae, and the circumstances haven't changed, so it's acceptable to me today.

McNamara Decl., Ex. O.  And, according to Stonebrae, the claim was entirely unnecessary in obtaining the relief it sought.  Stonebrae states:

> By accepting Toll's Rule 68 Offer of Judgment, Stonebrae made the election between these alternative damages measures earlier than required, thereby achieving all the relief it sought.

Motion for Attorneys' Fees, p. 18, n. 32.

15

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    Stonebrae's liquidated damages claim was factually and legally distinct from all other

2    claims in this action.  California Code of Civil Procedure section 1671 was not implicated by any

3    other claims, and the relevant material facts (i.e. facts related to the reasonableness of the amount)

4    were not relevant to other claims, as demonstrated by Toll's motion for partial summary judgment

5    (Dkt. # 192), Stonebrae's opposition thereto (Dkt. # 210), and Stonebrae's expert witnesses, two

6    of which were only relevant to the liquidated damages issue.  McNamara Decl., ¶ 15.

7    Stonebrae spent approximately 2,075.25 hours on the liquidated damages issue, including a

8    substantial amount of hourse associated with the document production Stonebrae's uses to justify

9    its grossly excessive fee request.  de Ayora Decl., ¶ 14; McNamara Decl., ¶¶ 27-37.

10   **6.    Stonebrae's Attorneys Performed Unnecessary and Excessive Work.**

11   Reasonably necessary fees do not include inefficient, excessive, or unnecessary work.

12   *Hensley,* 461 U.S. at 434.  Stonebrae's motion to compel and motion for sanctions were

13   unnecessary.  Stonebrae's motion to compel sought broad categories of financial documents from

14   Toll and Toll's parent corporation, even though motive is not relevant to a breach of contract

15   action.  Stonebrae also sought sanctions against Toll for refusing to produce the requested

16   financial documents.  Both motions were denied.  Stonebrae's attorneys spent 162 hours on the

17   motion to compel and the motion for sanctions.  de Ayora Decl., ¶ 15.

18   Stonebrae's motion for leave to amend was also unnecessary.  This motion was denied

19   with respect to the claim for breach of the covenant of good faith and fair dealing, and as

20   discussed above, Stonebrae's claim that the liquidated damages provision was not made in good

21   faith.  The motion served no purpose other than to drive up the litigation costs.  Stonebrae's

22   attorneys billed 220.5 hours on the motion to amend.  de Ayora Decl., ¶ 14.

23   The vast majority of time spent on Stonebrae's document production was unnecessary.

24   Toll's document requests were not excessively broad, as Stonebrae claims, and should not have

25   required the review of over a million pages of documents.  If, as Stonebrae claims, Toll's requests

26   were enormous in scope, then Stonebrae should have proposed ways to narrow the scope, which

27   Stonebrae did not do.  Rosen Decl., ¶ 23; McNamara Decl., ¶ 35.  Additionally, if Toll's requests

28   were so broad as to require the review of over a million pages of documents and the production of

16

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

101 CALIFORNIA STREET, SUITE 2300

SAN FRANCISCO, CALIFORNIA 94111

1  over 300,000 pages, as Stonebrae claims, then its attorneys had an obligation to move for a

2  protective order (or at least object and force Toll to bring a motion to compel) in order to prevent

3  unnecessary work, regardless of whether the work was going to be paid for by Stonebrae or Toll.

4  *Hensley,* 461 U.S. at 434.  As discussed above, Stonebrae made a strategic decision to dump

5  documents on Toll.  Stonebrae's attorneys expended approximately 2,628.6 hours on discovery.

6  de Ayora Decl., ¶ 12.  1,337.8 hours were billed for discovery relating to liquidated damages,

7  which should be excluded from the calculation.  *Id.*, ¶ 14.  The remaining 1,172 should be reduced

8  by 50% to 586 to account for Stonebrae's excessive and unnecessary document dump strategy.

9  **7.    Stonebrae's Attorneys Were Inefficient and Duplicative.**

10  Stonebrae cannot recover for inefficient and duplicative work.  *Ketchum,* 24 Cal. 4th at

11  1132 ("'padding' in the form of inefficient or duplicative efforts is not subject to compensation");

12  *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 394 (2005)

13  ("'Reasonably spent means that time spent "in the form of inefficient or duplicative efforts is not

14  subject to compensation."); *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("hours

15  may be reduced by the court where documentation of the hours is inadequate; if the case was

16  overstaffed and hours are duplicated").  Overstaffing can include duplicative billing for

17  unnecessary conferences between colleagues, or failure to appropriately delegate tasks to staff or

18  colleagues with lower billing rates.  *Gold v. NCO Fin. Sys.,* 2010 U.S. Dist. LEXIS 86433 (S.D.

19  Cal. Aug. 20, 2010).

20  Based on the time records provided by Stonebrae, a total of 27 attorneys and 14 paralegals

21  or legal assistants worked on this case.  de Ayora Decl., Ex. C.  As discussed in the Declaration of

22  Denis Shanagher, a Bay Area real estate litigator for 29 years, a typical case of this nature would

23  be staffed by a senior partner, a junior partner, an associate, and a paralegal, which is similar to

24  how Toll's attorneys staffed the case.  Shanagher Decl., ¶ 9.  The use of multiple attorneys and

25  two law firms caused duplication here.  Rosen Decl., ¶¶ 24-37.

26  The hours expended by Cooper & Kirkham are almost all redundant of work performed by

27  Sheppard Mullin.  Rosen Decl., ¶ 26.  Sheppard Mullin had the capacity and skill to litigate the

28  case without co-counsel.  Shanagher Decl., ¶ 8; Rosen Decl., ¶ 25.  Cooper & Kirkham's

17

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

expertise – antitrust and class action litigation – was not needed here.  *Id.*  Cooper & Kirkham

expended 1837 hours on this matter for a total of $1,330,778 – which by itself exceeds Toll's

attorneys' fees in this matter.  de Ayora Decl., Ex. B.  86.59% of Cooper & Kirkham's hours were

by people who billed over $800 in 2010, and Cooper & Kirkham's average hourly rate was $724.

*Id*.  With the exception of a few discrete tasks, what Stonebrae received for those fees was

somebody to look over Sheppard Mullin's shoulder.[13]

     The following chart shows the time and the amount of fees billed by Stonebrae's attorneys

and Toll's attorneys on the motions filed before Toll's Rule 68 Offer.[14]  From this side by side

comparison, the extraordinary duplication of work and excessive hours billed by SB's attorneys is

put in clear relief.

| Filing Date Docket No. | Stonebrae Motions | Toll Motions | Result | Hours Billed by Cooper & Kirkham | Hours Billed by Sheppard Mullin | Total Fees Billed by Stonebrae's Attorneys | Total Fees and Hours Billed by Toll's Attorneys |
|---|---|---|---|---|---|---|---|
| 1/31/2008 Dkt. # 13 | Motion to Remand (Fraudulent Joinder) | | Denied (Dkt. # 48) | 32.4[15] | 160.7 | $115,302 | Hours: 59.1<br><br>Fees: $18,144 |
| 2/20/2008 Dkt. # 22 | | Motion to Dismiss (Based on Fraudulent Joinder) | Granted (Dkt. #48) | | | | |
| 10/30/2008 Dkt. # 63 | Motion to Strike and Dismiss (Subdivision Map Issue) | | Granted (Dkt. # 89) | 278.9[16] | 113.4 | $249,303 | Hours: 42.8<br><br>Fees: |

---

[13] Where Cooper & Kirkham took the lead on issues, Sheppard Mullin likewise expended unnecessary hours reviewing Cooper & Kirkham's work.

[14] The table is based on the billing records submitted by Stonebrae, and redacted versions of Toll's attorneys' billing records.  *See* de Ayora Decl., ¶¶ 11, 16, 19, 15, 14, 22, 20, 21, 23, 14 for an explanation of the methodology used to create the chart.

[15] The hours and fees on these motions are combined because both motions hinged on whether Stonebrae had fraudulently joined Toll's parent corporation.  The Court found Stonebrae had.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

| Filing Date Docket No. | Stonebrae Motions | Toll Motions | Result | Hours Billed by Cooper & Kirkham | Hours Billed by Sheppard Mullin | Total Fees Billed by Stonebrae's Attorneys | Total Fees and Hours Billed by Toll's Attorneys |
|---|---|---|---|---|---|---|---|
| 11/25/2008 Dkt. # 71 | | Motion for Summary Judgment (Subdivision Map Issue) | Denied (Dkt. # 89) | | | | $14,098 |
| 10/30/2008 Dkt. # 65 | Motion to Dismiss (Contract Interpretation) | | Converted to Motion for Summary Judgment and Denied (Dkt. ## 90, 99) | 3.3 | 125.3 | $69,297 | Hours: 35.6<br><br>Fees: $13,636 |
| 9/29/09 Dkt. # 109 | Motion to Compel | | Denied (Dkt. ## 129, 141) | 29 | 107 | $79,555 | Hours: 51.2<br><br>Fees: $16,548 |
| 10/02/2009 Dkt. # 115 | Motion for Sanctions | | Denied (Dkt. # 129) | 2.3 | 23.7 | $14,732 | (Toll's hours for Dkt. # 109, above, include work performed on this motion) |
| 11/18/2009 Dkt. # 130 | Motion for Leave to File Amended Complaint | | Granted in part and denied in part (Dkt. # 141) | 90.5 | 130 | $131,245 | Hours: 40.1<br><br>Fees: $13,148 |
| 2/16/2010 Dkt. 148 | Motion to Dismiss (Breach of Covenant of Good Faith and Fair Dealing) | | Denied (Dkt. # 164) | 7.5 | 27.5 | $22,634 | Hours: 25.5<br><br>Fees: $8,114.50 |
| 2/24/2010 Dkt. 149 | Motion for Partial Summary Judgment (Breach of Covenant of Good Faith and Fair Dealing) | | Withdrawn (Dkt. # 166) | 9.1 | 102.1 | $62,033 | Hours: 2.7<br><br>Fees: $826 |

[16] The hours and fees are combined for these motions because both motions hinged on whether the Village B Agreement violated the Subdivision Map Act.

19

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

| Filing Date Docket No. | Stonebrae Motions | Toll Motions | Result | Hours Billed by Cooper & Kirkham | Hours Billed by Sheppard Mullin | Total Fees Billed by Stonebrae's Attorneys | Total Fees and Hours Billed by Toll's Attorneys |
|---|---|---|---|---|---|---|---|
| 5/19/2010 Dkt. # 168 6/23/2010 Dkt. ## 172, 173, 175, 176 | Five Motions for Partial Summary Judgment | | Withdrawn after Toll filed a Rule 56(f) Application to Continue (Dkt. # 187) | 129 | 72.1 | $112,286 | Hours: 78.3 Fees: $25,616 |
| 7/13/2010 Dkt. # 182 | | Rule 56(f) Application to Continue Hearing on Summary Judgment Motions | Mooted by Stonebrae's withdrawal of summary judgment motions (Dkt. # 187) | 4.5 | 12.5 | $12,025 | Hours: 20 Fees: $6,581 |
| 9/1/2010 Dkt. # 192 | | Motion for Partial Summary Judgment | Mooted by Stonebrae's acceptance of Rule 68 Offer | 56.3 | 12 | $56,925 | Hours: 128.9 Fees: $37,197 |
| 9/03/2010 Dkt. # 197 | Motion for Administrative Relief to Continue Hearing on Toll's Motion for Summary Judgment | | Granted in part and denied in part. (Dkt. # 202) | 21.5 | 7 | $18,185 | Hours: 14 Fees: $4,050 |

Cooper's declaration itself demonstrates the pattern of duplicative work by Stonebrae's attorneys.  Cooper states that Cooper & Kirkham took the lead on eight motions – Dkt. ## 63, 71, 130, 148, 149, 168, 172, 197.  Cooper Decl., ¶ 9.  But, as shown on the above chart, Sheppard Mullin billed 451 hours on those motions.  And where Sheppard Mullin took the lead, Cooper & Kirkham billed 137 hours.  Thus, over 587 hours on motions alone are duplicative, and should be excluded from the lodestar.

Moreover, as the chart shows, the tasks on which Cooper & Kirkham took the lead only account for 537 hours.  Those hours, combined with the 272 hours Cooper & Kirkham billed in connection with depositions, total 809 hours, a fraction of Cooper & Kirkham's 1837 total hours.  The remaining Cooper & Kirkham time – 1,028 hours – appears to have been spent duplicating Sheppard Mullins work.

20

Excessive duplication is also demonstrated by the following:

- Multiple attorneys attended almost every hearing. *See e.g.* Exhibits to Cooper and Atkins-Pattenson Declarations, time entries for 4/23/08, 7/2/08, 1/28/09, 4/15/09, 6/24/09, 11/6/09, 12/16/09, 2/10/10, 3/31/10, 7/28/10, 11/3/10.  (33 duplicative hours, assuming 2 hours for every hearing).

- Eighteen depositions were taken in this case.  Sheppard Mullin spent 649 hours in connection with depositions, and Cooper & Kirkham spent 272 hours for a total of 921 hours, an average of 51 hours per deposition.  de Ayora Decl., ¶ 13.  Eleven of the depositions were attended by both Atkins-Pattenson and Kirkham, including defending depositions of Stonebrae's own witnesses.  Not including preparation time and costs, the secondary attorney billed 102 hours (over $70,000), for attending the depositions.  Cooper, who currently bills at $950 per hour, did not attend any depositions but billed approximately 21 hours in connection with depositions (123 duplicative hours).  *Id.;* Rosen Decl., ¶¶ 32-33; *see also* Shanagher Decl., ¶¶ 11, 12.

- Cooper, who currently bills at $950 per hour, billed for 493 hours for a total of $442,842.50, and provided no added value on any matters of substance, but instead merely duplicated or "reviewed" the work of others.  de Ayora Decl., Ex. B.  As indicated by Cooper's time entries, his work was almost completely redundant of work performed by lawyers at Sheppard Mullin, or his partner Kirkham.

- Sheppard Mullin attorney Arthur Friedman, who currently bills at $515 per hour and billed 316 hours, also provided no added value but merely duplicated the work of other Sheppard Mullin attorneys.  For example, Friedman billed approximately 26.6 hours reviewing deposition transcripts, while Ms. Yip billed 75 hours for reviewing deposition transcripts and creating deposition summaries.  At least 80% of Friedman's hours were duplicative (253 duplicative hours).  de Ayora Decl., ¶ 17.

21

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

- Cooper & Kirkham attorney John Bogdanor, who has been a lawyer for 10 years and currently bills $550 per hour, spent 63.6 hours drafting a motion to dismiss. Kirkham, who currently bills at $825, spent roughly 46 hours redrafting the same motion (46 duplicative hours). de Ayora Decl., ¶ 18.

The above examples demonstrate that Stonebrae's attorneys billed approximately 2,070 hours for duplicative work, 25% of the total hours of 7865, and not including time billed for multi-lawyer conferences or meetings, which were substantial.[17] The 25% duplication rate is consistent with the opinion of Mr. Rosen. Rosen opines that Stonebrae's attorneys substantially overstaffed the case and frequently duplicated efforts. Rosen Decl., ¶ 26. Rosen provides examples where Cooper & Kirkham's fees on motions were 22% redundant of Sheppard Mullin's fees. Rosen Decl., ¶¶ 30-31. Rosen's figure does not account for duplications within the individual firms or multi-lawyer conference or meetings.

Stonebrae's attorneys also failed to appropriately delegate tasks to staff or colleagues with lower billing rates. Rosen Decl., ¶¶ 37-38; *Gold,* 2010 U.S. Dist. LEXIS 86433 (S.D. Cal. Aug. 20, 2010). Stonebrae's most expensive attorneys – Atkins-Pattenson, Cooper, and Kirkham – combined account for 41% of the time and 57% of the fees billed. Stonebrae offers no explanation for this top-heavy approach. Rosen Decl., ¶ 38. It cannot be justified, and it is starkly contrasted by Toll's staffing. Rosen Decl., ¶ 39. Donald Putterman, Toll's lead attorney (who charged $500 per hour), accounted for less than 6% of the total time and less than 9% of the total fees. Christopher McNamara (who charged $337.50 per hour) accounted for 32% of the time and 39% of the fees. Emily de Ayora (who charged $250 per hour) accounted for 28% percent of the time and 26% of the fees. Lesa Dinglasan (a paralegal who charged $215 per hour) accounted for 13% of the time and 10% of the fees. McNamara Decl., ¶ 4. The lodestar should be based on the a senior partner accounting for no more than 30% of the time, a junior partner or senior associate 30%, a junior associate 30% and a paralegal 10%. *See* Rosen Decl., ¶¶ 38-39.

---

[17] The word "confer" or variants of it appear 2,442 times in the billing records submitted by Stonebrae; "meet" or variants thereof appear 673 times. de Ayora Decl., ¶ 25.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

**8.      Stonebrae Settled for Less Than 25% of its Purported Actual Damages.**

The level of success is an important factor in determining the lodestar amount.  *See EnPalm, LLC*, 162 Cal. App. 4th at 774.  Stonebrae sought actual damages over $22,000,000, and compromised its claim for less than 25% of that amount. [18]  Stonebrae's limited success warrants an additional reduction of at least 10%.

**9.      The Reasonable Amount of Hours Is 3,199.**

As demonstrated by the chart below, the reasonable amount of hours is 3,199.

| | |
|---|---|
| Stonebrae's Requested Hours | 7,865 |
| Reduction for Hours Billed on Unrelated Unsuccessful Claims | 2,268 |
| Reduction for Unnecessary Motions | 272[19] |
| Reduction for Unnecessary Document Review and Production | 586 |
| Reduction for Duplicative Work (25% of 4739 hours) | 1185 |
| Reduction for Limited Success (10% of 3,554) | 355 |
| **Total Reasonable Hours** | **3,199[20]** |

[18] Stonebrae's reliance on *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101 (2009), *Niederer v. Ferreira*, 189 Cal. App. 3d 1485 (1987), *Cruz v. Ayromloo*, 155 Cal. App. 4th 1270, 1276 (2007), is misplaced.  *Peak-Las Positas* was a case for specific performance.  Regarding defendant's argument that the fees exceeded the purchase price, the Court noted that the case was not about the purchase price: "Not only was plaintiff protecting the $ 465,000 investment it had already paid to defendant, but it was protecting the viability of its entire project and future profits anticipated therefrom." *Peak-Las Positas Partners*, 172 Cal. App. 4th at 114.  *Niederer* rejected a proportionality rule, but noted "the amount of money involved in the litigation is an important factor in determining an award of attorneys' fees."  *Niederer*, 189 Cal. App. 3d at 1507.  *Cruz* rejected the argument that attorneys' fees "must always be less than the award of damages in a given case," which is not Toll's position here.  *Cruz*, 155 Cal. App. 4th at 1276.

[19] This figure includes 50% of the hours billed on the motion to amend and the hours billed on the motions to compel and for sanctions.

[20] Although this is less than the hours Toll attorneys spent on this case, a significant portion of Toll's attorneys' hours were spent on issues relating to the liquidated damages issue, Stonebrae's claim against Toll's parent corporation, and in response to other matters that were unnecessarily raised by Stonebrae.

**D.** **The Reasonable Hourly Rates are between $125 and $550 Per Hour.**

The second step in the lodestar method is to determine the reasonable hourly rate.  *PLCM Group, Inc.,* 22 Cal. 4th at 1095.  "[T]he burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for *similar services* by lawyers of reasonably comparable skill, experience, and reputation."  *Blum,* 465 U.S. at 896 (emphasis added); *see also Children's Hosp. & Med. Center*, 97 Cal. App. 4th at 783 (market rate is established by a comparison to rates charged by attorneys in the area for similar work and fee awards for comparable work).  The purpose of using prevailing market rates is to estimate the hourly rate reasonably competent counsel would charge.  *Albion Pac. Prop. Res., LLC*, 329 F. Supp. 2d at 1170 (N.D. Cal. 2004).

The reasonable hourly rates charged by attorneys in the area is $350 to $550 per hour for partners, $200 to $325 per hour for associates, and $125 to $215 per hour for paralegals.  This is supported by the following:

- The Declaration of Denis F. Shanagher, who has been practicing real estate litigation in the Bay Area for 29 years.  Shanagher's quoted billing rate is $525.00 per hour, but his typical rate for real estate litigation is $475 per hour.  Rates for associates range from $200 to $325 per hour.  Paralegal rates range between $125 to $190 per hour.  Rates at other firms are similar, with some partners charging $550 per hour.  Shanagher Decl., ¶¶ 6-7.

- The Declaration of Gregory J. Ryken submitted in *Carcione v. Redwood City*, Case No. CIV 463195, which Atkins-Pattenson cited in his declaration.  Ryken has been an attorney for 37 years and focuses on real estate litigation and transaction.  In February 2009, Ryken's ordinary billing rate was $400 per hour.  The rate for an associate was $225 per hour, and the paralegal rate was $100 per hour.  McNamara Decl., Ex. V.

- The hourly rates of Toll's attorneys in this action, which ranged from $250 to $500 per hour for attorneys, and $125 to $215 per hour for paralegals/legal assistants.  McNamara Decl., ¶ 4.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

24

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

- The rates charged by opposing counsel in *Toll Brothers, Inc., v. Lin, Case No.* C08-00987 SC.  McNamara Decl., Ex. Q.  The Lins' lead attorney, Steve McNichols,  a litigator for 35 years, charged $395 per hour.  *Id.,* at 4:9-12.  His partner, a litigator for 29 years, charged $350.  *Id.,* at 4:19-21.  Associates charged between $225 and $250.  *Id.,* at 5:4-18.

- The Declaration of Sanford Jay Rosen.  According to Rosen, this was not a complex case, and while the rates of Stonebrae's attorneys may be in the broad range of rates charged by firms in the Bay Area (regardless of subject), the rates appear excessive for a case of this type.  Rosen Decl., ¶ 41.

Recent fee awards in similar cases granted by judges in the Northern District also demonstrate that reasonable hourly rates are between $200 and $550 for attorneys.  In *Toll Brothers, Inc., v. Lin, Case No.* C08-00987 SC, the court approved attorney rates ranging from $225 to $395 per hour.  *See also* Shanagher Decl., ¶ 10 (fees in similar case were $600,000 for one party, $834,000 for the other).

### E.  The Total Lodestar Amount is between $879,875 and $1,212,610.

For the reasons set forth above, the lodestar amount should be calculated as follows:

| Attorney/Paralegal | Hours | Rate | Fees |
|---|---|---|---|
| Senior Partner | 960 | $350 - $550 | $336,000 - $528,000 |
| Junior Partner - Senior Associate | 960 | $325 - $350 | $312,000 - $336,000 |
| Associate | 960 | $200 - $300 | $192,000 - $288,000 |
| Paralegal | 319 | $125 - $190 | $39,875 - $60,610 |
| **Total** | | | **$879,875 - $1,212,610** |

### F.  Stonebrae's Excessive Request Warrants a Further Reduction.

The fee applicant must exclude excessive, redundant, or otherwise unnecessary hours from the lodestar amount.  *See Hensley,* 461 U.S. at 434.  If the fee applicant fails to do so and instead submits an inflated fee request, the Court has broad authority to reduce the attorneys' fee award or

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

deny it altogether. *Ketchum*, 24 Cal. 4th at 1137. It is not enough simply to reduce the attorneys' fees to the reasonable amount, because that would encourage parties to make unreasonable demands:

> If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful.

*Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982). Here, Stonebrae's fee request is grossly excessive, both in the hours claimed and in the rates requested. There is no indication that Stonebrae made any attempt to exclude excessive, redundant, or otherwise unnecessary work, including hours spent on the interference with contract claim or the liquidated damages issue.

### G.      Stonebrae Is Not Entitled to Any Post-October 18, 2010 Fees.

Consistent with its practice of overreaching at every stage of the litigation, Stonebrae contends that it is entitled to $76,024.76 in attorneys' fees and costs in connection with its Motion for Attorneys' Fees and its Motion for Interest. Stonebrae is wrong.

Toll's Rule 68 Offer expressly limits costs, including reasonable attorneys' fees, to those incurred before the date of the Offer (October 18, 2010):

> Costs incurred by plaintiffs *through the date of this offer*, which shall include reasonable attorneys' fees, as determined by the Court.

Dkt. # 248. The Rule 68 Offer cannot be interpreted as providing for any costs or attorneys' fees after October 18, 2010. *See* Cal. Civ. Code § 1638 ("language of the contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity").[21]

Stonebrae's argument that it "reasonably interpreted Toll's limitation in its Rule 68 Offer of Judgment to apply only to Stonebrae's Merits Fees, not to its fees incurred in connection with

---

[21] Stonebrae cannot rely on the terms of the Village B Agreement. Stonebrae is not seeking fees and costs under the Village B Agreement; it is seeking fees and costs under the Rule 68 Offer.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

either this motion or its motion for mandatory pre-judgment interest," was rejected by the Ninth Circuit in *Guerrero v.Cummings*, 70 F.3d 1111, (9th Cir. 1995):[22]

> We see nothing ambiguous in these offers. By their own terms, the offers explicitly limit fees and costs to those "*incurred by this plaintiff prior to the date of this offer* in an amount to be set by the court." (Emphasis added). It is the reasonableness of those fees only - i.e., fees incurred before the offers - that may be left to the court to determine.

*Id.,* at 113.

**H.     Stonebrae's Claimed Costs Are Also Excessive.**

Stonebrae has failed to comply with Local Rules 54-1 through 54-4, and its request for costs should be summarily denied. *See e.g. RD Legal Funding, LLC, v. Erwin & Balingit, LLP*, 2011 U.S. Dist. LEXIS 2137, *13 (C.D. Cal. Jan. 10, 2011).

The Rule 68 Offer does not provide for "non-taxable" costs. While federal law governs procedure, in diversity actions state law determines whether non-taxable costs are recoverable. *MRO Communs., Inc. v. AT&T Co.*, 197 F.3d 1276, 1281-82 (9th Cir. 1999). Because this is a diversity action, the "costs" must be interpreted to mean costs allowed under California law. *Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP*, 152 Cal. App. 4th 42, 56 (2007) ("It is well settled the existing applicable law is part of every contract, the same as if expressly referred to or incorporated in its terms"). Costs are governed by Code of Civil Procedure section 1033.5, which contains three categories of costs: (1) those that are allowable; (2) those that are not allowable, except when expressly authorized by law; and (3) those not specifically mentioned in the section, which may be awarded at the court's discretion. Cal. Code Civ. Proc. § 1033.5(a), (b) & (c)(4). The majority of Stonebrae's claimed expenses are not recoverable. McNamara Decl., ¶¶ 45-47.

Stonebrae is wrong to contend that it is entitled to all of its costs in this matter simply because, according to Stonebrae, the Village B Agreement "provides for shifting all costs to the losing party, not just taxable costs." Motion for Attorney's Fees, at 25:7-8. Stonebrae's

---

[22] This case was decided without oral argument.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1  entitlement to costs is not governed by the Village B Agreement, nor by Stonebrae's self-

2  proclaimed status as the prevailing party; it is governed by the Rule 68 Offer, which only allows

3  for "costs," meaning costs under California Code of Civil Procedure section 1033.5:

4  > [A]n undefined general contractual provision entitling the prevailing party to
> 'reasonable attorney's fees and costs' must be interpreted in light of Code of Civil
5  > Procedure section 1033.5's limited definition of costs.

6

7  *Hsu v. Semiconductor Systems, Inc.,* 126 Cal. App. 4th 1330, 1341 (2005).  Stonebrae's costs are

8  limited by Section 1033.5, even if the Village B Agreement was controlling.  Recovery of costs in

9  addition to those allowed by Section 1035.5 under a contract must be specially pleaded and proven

10  at trial, and not awarded post-trial.  *Hsu,* 126 Cal. App. 4th at 1341.

11        Stonebrae's reliance on *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.,* 47 Cal.

12  App. 4th 464, 492 (1996) and *Thrifty Payless, Inc. v. Mariners Mile Gateway*, LLC, 185 Cal. App.

13  4th 1050, 1066 (2010) is misplaced.  In *Arntz Contracting Co.,* the contract provided for the

14  recovery of all costs, charges, and expenses, and litigation expenses were pleaded and proven

15  pursuant to a procedure stipulated to by the parties.  *Arntz Contracting Co.*, 47 Cal. App. 4th at

16  492.  In *Thrifty Payless*, the relevant contract specifically provided for the recovery of "witness

17  and expert fees."  *Thrifty Payless*, 185 Cal. App. 4th at 1066.  Here, the Rule 68 Offer only

18  provides for "costs."  Both *Arntz Contracting Co.* and *Thrifty Payless* acknowledge that the

19  general term "costs" means "costs" under California Civil Code section 1035.5.  *See Arntz*

20  *Contracting Co.,* 47 Cal. App. 4th at 492 ("We recognize there is authority holding that an

21  undefined general contractual provision entitling the prevailing party to 'reasonable attorney's fees

22  and costs' must be interpreted in light of Code of Civil Procedure section 1033.5's limited

23  definition of costs"); *Thrifty Payless,* 185 Cal. App. 4th at 1065 ("Generally, when a contract

24  provision states only that a prevailing party is entitled to 'reasonable attorney's fees and costs,' or

25  similar nonspecific language, courts have held that such language must be interpreted in light of

26  the limits set forth in Code of Civil Procedure section 1033.5").  Stonebrae's reliance on *Grove v.*

27  *Wells Fargo Financial California, Inc.,* 606 F.3d 577 (9th Cir. 2010), and other federal cases is

28  also misplaced.  The issue in *Grove* and the other federal cases Stonebrae cites to was whether

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1    under a particular federal fee shifting statute, a party could recover non-taxable costs as part of an

2    award of attorneys' fees. *See Grove,* 606 F.3d at 579 (9th Cir. 2010) ("In considering whether the

3    FCRA's expense-shifting provision authorizes district courts to award non-taxable costs to

4    prevailing plaintiffs in FCRA cases, we must "carefully inspect [the expense-shifting provision]

5    for clear evidence of congressional intent that non-taxable costs should be available."). This case

6    does not concern a federal fee shifting statute. It concerns a state law contract claim, and under

7    California law, non-taxable costs are not recoverable as an element of attorneys's fees:

> Nor may the disputed costs be awarded to plaintiff as an element of attorney fees
> under the rationale that the expenses were disbursed by the attorneys in the course
> of litigation. We disavow this court's previous adoption of that view as an
> unwarranted conflation of fees and costs. (*Bussey v. Affleck* (1990) 225 Cal.App.3d
> 1162, 1167 [275 Cal. Rptr. 646].) As persuasively argued by our colleagues in the
> Third Appellate District in disagreeing with *Bussey*: "In the absence of some
> specific provision of law otherwise, attorney fees and the expenses of litigation,
> whether termed costs, disbursements, outlays, or something else, are mutually
> exclusive, that is, attorney fees do not include such costs and costs do not include
> attorney fees."

15 *Hsu*, 126 Cal. App. 4th at 1342.

16    **I.**    **Stonebrae is not Entitled to Interest on Attorneys' Fees.**

17        Consistent with its overreaching, Stonebrae seeks an additional $366,775.17 in interest at

18    10% per year on Stonebrae's purported payment of attorneys' fees. Stonebrae does not provide

19    any competent evidence as to how much was paid and when, and the authority upon which

20    Stonebrae relies actually undermines its position in its Motion for Interest.[23] *Municipal Court v.*

21    *Bloodgood*, 137 Cal. App. 3d 29, 48 (1982), concerned rights to attorney fees under California

22    Government Code section 27648. The court found interest was allowable in the court's discretion

23    under Civil Code Section 3287(b). In its Motion for Interest, Stonebrae argues Section 3287(b)

24    does not apply. Moreover, even if interest is allowed in the Court's discretion, Stonebrae's has not

25    articulated any reason for the Court to award it here.

26

27    ---

[23] Which is perhaps why Stonebrae did not claim this aspect of prejudgment interest in its Motion
for Interest.

28

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC

III.     **CONCLUSION**

On a case involving two parties, a single contract, and a $4,775,000 deposit, Stonebrae's request for $4,364,971.35 in fees and costs is, quite simply, grossly excessive. Much like Stonebrae's attempt to drag Toll's parent company into the case, Stonebrae's attempt to quadruple the stakes of the litigation to $22,000,000, and Stonebrae's refusal to acknowledge any obligation to build a clubhouse (an obligation Stonebrae internally acknowledged), Stonebrae's Motion for Attorneys' Fees is overreaching in all respects – hourly rates, number of timekeepers, and number of hours. Moreover, Stonebrae failed to meet its burden on both attorneys' fees and costs. Thus, it is within this Court's discretion to deny Stonebrae's application altogether. At most, however, based on the detailed analyses above, Toll respectfully submits that reasonable attorneys' fees should range between $879,875 and $1,212,610, and all costs, except those specifically authorized by California Code of Civil Procedure section 1033.5 should be denied.


DATED:  February 7, 2011




By:     /s/ Donald J. Putterman
                     Donald J. Putterman
Attorneys for Defendant
TOLL BROS, INC.

#8083021

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

Toll Bros., Inc.'s Opposition To Stonebrae's Motion For Attorneys' Fees, Taxable And Non-Taxable Costs
Case No. 08-cv-00221 EMC