1   Donald J. Putterman (SBN 90822)
    235 Montgomery Street, 18th Floor
2   San Francisco, CA 94104
    Email: dputterman@djplit.com
3   Telephone: (415) 794-4473
    Facsimile: (415) 954-4480

4
    KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
5   Christopher J. McNamara (SBN 209205)
    E-mail: cmcnamara@kasowitz.com
6   101 California Street, Suite 2300
    San Francisco, California 94111
7   Telephone: (415) 421-6140
    Facsimile: (415) 398-5030

8
    TIMOTHY J. HOBAN (SBN 192461)
9   Regional Counsel for Toll Bros., Inc.
    E-mail: thoban@tollbrothersinc.com
10  725 Town & Country Road, Suite 500
    Orange, California 92868
11  Telephone: (714) 347-1300
    Facsimile: (714) 835-9683

12
    Attorneys for Defendant
13  TOLL BROS, INC.

14              IN THE UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                   (SAN FRANCISCO DIVISION)

17

18  STONEBRAE L.P., a Delaware limited        Case No. 08-cv-00221 EMC
    partnership,
19                                            **DECLARATION OF SANFORD JAY
                Plaintiff,                     ROSEN IN SUPPORT OF TOLL'S
20                                             OPPOSITION TO STONEBRAE'S
        v.                                     MOTION FOR ATTORNEYS' FEES,
21                                             TAXABLE AND NON-TAXABLE COSTS**
    TOLL BROS., INC., a Pennsylvania
22  Corporation, TOLL BROTHERS, INC., a       Date:       March 16, 2011
    Delaware corporation, DOES 1 through 15,  Time:       10:30 a.m.
23  inclusive,                                Courtroom:  C, 15th Floor
                                              Judge:      Hon. Edward M. Chen
24              Defendants.

25
    And Related Counterclaims.
26

27

28

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

I, Sanford Jay Rosen, declare:

1. I make this Declaration of my own personal knowledge except for those matters stated on information and belief and, if called to testify, I could and would testify competently to the matters stated herein.

2. I am an attorney, admitted to practice in California and Connecticut, the Supreme Court of the United States, this Court and virtually all U.S. Courts of Appeals and several District Courts around the country.

3. I am a 1962 graduate of the Yale Law School, and have been a licensed attorney since that year. I am the Senior Partner of my firm, Rosen, Bien & Galvan, LLP ("RBG"), which is a 17-lawyer firm in San Francisco that represents parties in litigation, contract and counseling matters in both public interest and private law matters. A more complete recitation of my experience and background in individual and class actions, including civil rights, employment, commercial, contract and other cases and attorneys' fees work is included below and in my curriculum vitae, a copy of which is attached hereto as **Exhibit 1**. See also www.rbg-law.com.

## RELEVANT GENERAL BACKGROUND

4. My practice and that of my firm is national in scope, and emphasizes litigation in numerous fields of the law of public and private law. My practice and that of my firm includes commercial, contract, intellectual property and unfair competition as well as constitutional, civil liberties and rights, consumer and employment litigation.

5. My firm's and my public law practice includes numerous individual and class actions involving prison and parole conditions, police misconduct, First Amendment, public records, consumer, anti-trust, employment and disability matters.

6. My firm and I also represent and have represented several multinational or other major corporations and associations in various litigation and pre-litigation matters, including contract, fraud, personal injury, intellectual property, unfair competition and antitrust. These include the American Society of Composers, Authors and Publishers (ASCAP); Tomen Agro, Inc. (then an American subsidiary of a major Japanese corporation); D'Arcy Massius Benton & Bowles (international model and advertising company); ICA Construction Corporation (Mexico's

1

[473669-2]

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

largest construction company); Estee Lauder (the cosmetics company); Pfizer, Inc. (the drug company); SpatiaLight, Inc. (manufacturer of high-resolution micro-displays); Primark Benefits (benefits administrators); NextCard Inc. (online credit card issuer); AeroSafe Inc. (aerospace consulting); Landmark Screens, LLC (manufacturer of LED displays); Fishman Consulting Group (technology consulting); TransUnion LLC (credit and information services); Greffen Systems, Inc. (marketer of energy saving industrial boilers); Educational Data Systems (educational testing company); Fluor Daniel Company; King Wire, Inc. (aluminum wire and cable company).

7.      I have represented public entities and officials in various litigation and pre-litigation matters ranging from contract to employment law matters.  These include the Dominican Republic; the Public Utilities Commission of the State of California; the General Counsel of the California Agricultural Relations Board; the East Bay Regional Park District; the County of Contra Costa, California; the Ravenswood City[, California] Elementary School District; and the Human Rights Commission of the City and County of San Francisco.  I have also been retained on occasion by Bay Area Rapid Transit ("BART") to represent supervisory personnel in labor-management matters.

8.      I have tried numerous matters on a range of subjects in the San Francisco Bay Area and elsewhere in California, as well as in other jurisdictions, including cases in Denver, Colorado; Arlington, Virginia; New York, New York; Baltimore, Maryland; Cleveland, Ohio; Honolulu and Kauai, Hawaii; and Saipan (the Commonwealth of the Northern Mariana Islands).

9.      I have presented five oral arguments before the Supreme Court of the United States.  In more than 50 additional matters, I have prepared and filed in the United States and California Supreme Courts merits briefs, Petitions for Writs of Certiorari or Oppositions thereto, Stay Applications or Oppositions thereto, and briefs as Amicus Curiae.  I have also argued more than 30 appeals in eight of the United States Courts of Appeals, 10 to 15 appeals in the California Supreme Court and California Courts of Appeal, and one in the Georgia Court of Appeals.  I have also briefed numerous other appeals.  My appellate work usually has involved multiple complex issues.  These appeals have included both public law matters (civil rights, employment rights,

Decl. of Sanford Jay Rosen ISO Toll's Opp. To Stonebrae's Motion for Attorneys' Fees; Case No. 08-cv-00221 EMC

[473669-2]

death penalty, first amendment, prison conditions and consumer rights) and private law matters (commercial, literary property, patent, legal malpractice and tort).

10.     I am also active as an arbitrator, pro tem settlement judge, mediator and early neutral evaluator.

## ATTORNEYS' FEES LITIGATION AND BACKGROUND KNOWLEDGE

11.     My experience in attorneys' fees litigation includes extensive negotiation, law and motion, evidentiary hearings and appellate work in both state and federal court. I have been responsible for briefing and conducting oral argument in state and federal appellate courts in more than ten attorneys' fees matters, including, among others, *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992); *Gates v. Rowland*, 39 F.3d 1439 (9th Cir. 1994); *Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995); *Gates v. Shinn*, Nos. 95-15402-15403 (unpublished Memorandum dated April 8, 1996); *Rebney v. Wells Fargo Bank*, 232 Cal. App. 3d 1344 (1991); *Toussaint v. Gomez*, 826 F.2d 901 (9th Cir. 1987); and *Davis v. California Department of Corrections*, A076411 (First District, October 31, 1997). I was also special fees counsel in *Finkelstein v. Bergna*, 804 F. Supp. 1235 (N.D. Cal. 1992). I also am lead counsel in *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095 N.D. Cal. 2008); 608 F.3d 446 (9th Cir. 2010). I was counsel of record on an amicus curiae brief filed in *City of Burlington v. Dague*, 505 U.S. 557 (1992), and in *Perdue v. Kenny A.*, __ U.S. ____, 130 S. Ct. 1662 (2010). My firm and I have won several other significant attorneys' fees cases, including: *Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003); *Greene v. Dillingham Construction Company*, 101 Cal. App. 4th 418 (2002); *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888 (E.D. Cal. 2009) (in which Judge Karlton reduced Bingham's rates to RBG's); and *Lucas v. White*, 63 F. Supp. 2d 1046 (N.D. Cal. 1999).

12.     My firm has represented, or my partners and I have acted as expert witnesses for or consultants to most of the major law firms in the Bay Area and most of the major public interest organizations in the Bay Area, as well as numerous smaller law firms and public interest organizations, in prosecuting attorney's fees claims. I also have on occasion participated in matters opposing attorneys' fees applications, or as an expert or consultant for a party or law firm opposing attorneys' fees applications.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

3

[473669-2]

13.     I have published numerous articles and lectured frequently in Practicing Law Institute (PLI), California Education of the Bar (CEB), American Attorneys for Justice (Association of Trial Lawyers of America) and State Bar of California Labor Section programs and elsewhere on the subject of statutory attorneys' fees, as well as establishing and financing of plaintiffs' public interest practices.

14.     I frequently have been recognized by federal and state courts, including at least one California Court of Appeal, several United States District Courts and several California Superior Courts, as an expert on attorneys' fees matters. Several times I have testified through depositions as an attorneys' fees expert in connection with court proceedings or arbitrations. I also have testified in court three times — once before a Central Division Los Angeles Superior Court jury, once at a bench trial in Alameda County Superior Court, and once in the United States District Court for the District of Colorado to the bench — as an expert in attorneys' fees dispute cases, on subjects including reasonable rates, billing practices and expenditures of time. I have also served as a mediator and an arbitrator in resolving cases that have included substantial attorneys' fees components.

15.     Continuously since 1976, I have been a senior partner, managing partner or sole principal of a small law firm in San Francisco. In these capacities, I have been setting billing rates and practices for over 35 years. I also frequently employ other law firms to work for my clients, and thereby become familiar with their rates and practices.

16.     I have become familiar with the rates charged and the billing and work practices and case management approaches of lawyers in California and the nation in many ways, over the course of handling or being involved in relevant disputes for more than 30 years: (1) from my own considerable involvement in attorneys' fees litigation and expert consultations and testimony; (2) by discussing attorneys' fees, billing and work practices with other attorneys; (3) by representing other attorneys seeking fees; (4) by obtaining declarations from other attorneys regarding market rates, attorneys' fees, billing and work practices; (5) by reviewing surveys, legal newspapers, reported decisions and treatises regarding prevailing attorneys' rates, fees, billing and work practices; (6) by reviewing attorneys' fees applications and awards in other cases, as well as

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

unpublished decisions; (7) by reviewing rates charged by, and billing and work practices of, other firms that my firm has retained; and (8) writing articles and speaking on such subjects.

17.     I have been retained by Toll Bros, Inc. through its attorneys, Kasowitz, Benson, Torres & Friedman LLP ("the Kasowitz firm"), to review the attorneys fees claim submitted in this matter on behalf of Stonebrae L.P. and to express my opinions concerning the reasonableness of that claim.

**MY OPINIONS**

18.     In coming to and preparing my opinions I have reviewed Stonebrae's attorneys' fees Motion and all the declarations and exhibits that support it, including the time records presented with the fees Motion.  I have also reviewed the redacted billing records that Toll Bros' attorneys submitted to Toll Bros.  I have also the reviewed spreadsheets prepared by Toll Bros' attorneys (attached to this declaration) that summarize and analyze the billing records submitted by Stonebrae's attorneys, the firms of Sheppard, Mullin, Richter & Hampton LLP ("the Sheppard firm") and Cooper & Kirkham, P.C. ("the Cooper firm"); and spreadsheets prepared by Toll Bros' attorneys (attached to this declaration) that summarize and analyze their billings to Toll Bros.  I also have reviewed the Court's docket sheets for this case, and numerous orders (including all the pre-trial orders), pleadings, discovery requests, motions (including briefs and related documents) and transcripts of proceedings in this case and correspondence between counsel pertaining to the case.  Under my supervision, I caused to be prepared additional spreadsheets (attached to this declaration) that summarize and analyze some aspects of Stonebrae's attorneys' time records.

19.     I have met in person with attorneys from the Kasowitz firm on 4 occasions, for an hour or more on each occasion, during which we discussed the firm's billings to Toll Bros, Stonebrae's attorneys' billing records and rates, the fee application, and the course of the merits litigation and the underlying dispute between the parties.  I have also spoken on the telephone with Kasowitz attorneys about these subjects.  On one occasion, I went to the Kasowitz firm's offices and reviewed non-privileged materials in the files, including the pleading files, and the array of materials produced by both sides in discovery.

Decl. of Sanford Jay Rosen ISO Toll's Opp. To Stonebrae's Motion for Attorneys' Fees; Case No. 08-cv-00221 EMC

20.     It is my understanding that on October 18, 2010, Toll Bros submitted a Rule 68 offer agreeing to pay Stonebrae the full amount of contracted liquidated damages which totaled $4,774,944 plus reasonable attorneys fees accrued to the date of the offer. Stonebrae accepted the offer. I further understand that until that point, this case was hard fought on both sides, including with respect to whether case was properly removed to federal court, whether the liquidated damages provision in the pertinent contract was valid and whether Stonebrae could recover damages far greater than the contracted liquidated damages. I also understand that there are questions involved in this attorneys' fees dispute that only this court can resolve, for example, whether the tortious interference claim against Toll Bros' parent, and whether the contention that the liquidated damages provision of the contract was unenforceable in this case were appropriate in this litigation.

21.     Based on my review of file documents and drawing on my experience, it is my opinion that this case, though hard fought, was not complex litigation. Except for the questions concerning the enforceability of the liquidated damages provision, the case involved no novel or difficult legal issues. Despite Stonebrae's interjection of the tortious interference claim, basically it was a straight-forward private law breach of contract case.

22.     This was a private law issue between two sophisticated commercial parties. There were a limited number of depositions (18) and a small number of experts, none of whom was deposed and three of whom opined only about the liquidated damages issues. The hearing transcripts total just under 300 pages. Excluding the post-Rule 68 offer fees, costs and pre-judgment interest proceedings, the pleading files occupy at most 3 feet (and a small fraction) of shelf space. At least 25% of that total is accounted for by the re-filing multiple times of lengthy exhibits, most notably the first amended complaint and the underlying contract or related documents, and by multiple clerk's orders and such other relatively routine documents.

23.     Stonebrae produced a large number of documents, 334,695 pages. Based on my review of file materials, it is unclear whether Stonebrae had to produce so many documents. If in fact, Toll Bros' Requests for Production (RFP's) were unduly broad and burdensome, Stonebrae's lawyers should have attempted to limit their scope and their document production. It appears that

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

[473669-2]

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

1   Stonebrae's attorneys made no effort to limit the scope of Toll Bros' RFP's. Such efforts may

2   well have reduced considerably the 334,695 pages Stonebrae produced and the larger number of

3   documents it reviewed prior to production, thereby substantially reducing the burden of production

4   and review on both sides.

5       24.     Based on all the materials I reviewed, and drawing on my experience, it is doubtful

6   that the case required the joint and frequently duplicative efforts of two law firms, and the host of

7   personnel employed by the Sheppard firm. For example, attorneys from both the Sheppard firm

8   and the Cooper firm attended eleven of the eighteen depositions and all or virtually all hearings.

9   Moreover, on occasion more than two attorneys for Stonebrae were in attendance at these events.

10  Unless properly explained, this duplication of effort, when transcripts are going to be available, is

11  inappropriate as claimed from Toll Bros. The problem with the duplicative billings is exacerbated

12  by the fact that the attorneys from the Cooper firm who attended such events almost invariably

13  were principals of the firm and the attorneys representing Stonebrae with the highest billing rates

14  claimed.

15      25.     As reflected in Exhibit 1 to the declaration of Josef D. Cooper in Support of

16  Stonebrae L.P.'s Motion for Award of Attorneys' Fees and Costs, pp. 3-4, the Cooper firm's work,

17  principally, is in the much more difficult field of anti-trust and related fields, and frequently

18  involves class actions. Rates commanded in its customary fields of work consistently are at the

19  very top of the market. The explanations provided by Stonebrae's counsel that the Cooper firm

20  has long represented Stonebrae and that the Sheppard firm and Cooper firm tried to share

21  responsibilities by subject matter do not explain why, for purposes of the fee application, this case

22  should or could not have been handled solely by the Sheppard firm. Nor do they explain why in

23  this private law, fee shift by contract case the opposing party should be obligated to pay for the

24  redundancy.

25      26.     Stonebrae's attorneys' explanations concerning the division of responsibilities

26  between the two firms do not address compellingly evident and costly duplication of effort as it

27  pertains to duplicative presence at depositions and hearings. Although Mr. Cooper, in his

28  declaration, states that the two firms "coordinated . . . efforts . . . , working more like a single law

7

[473669-2]

firm than two distinct entities," Declaration of Josef D. Cooper ¶ 8, the billing records indicate that there was significant duplication of effort and considerable overstaffing of litigation activities.

27.     As examples of inadequately explained duplication of effort, under my supervision, one of my associates reviewed the Sheppard firm and Cooper firm billings for the following activities: (1) Stonebrae's Motion to Remand and Toll Bros' Motion to Dismiss its parent corporation; (2) Stonebrae's Motion to Compel; and (3) the preparation, taking, and defending of depositions. **Exhibit 2** hereto is a true and exact copy of a spreadsheet prepared in my office summarizing the time expended by the Sheppard firm and Cooper firm to pursue Stonebrae's Motion to Remand and oppose Toll Bros' Motion to Dismiss. **Exhibit 3** hereto is a true and exact copy of a spreadsheet prepared in my office of the time expended by the Sheppard firm and Cooper firm to pursue Stonebrae's Motion to Compel. **Exhibit 4** hereto is a true and exact copy of a spreadsheet prepared in my office of the time expended by Phillip Atkins-Patterson of the Sheppard firm and Josef Cooper and Tracy Kirkham of the Cooper firm to prepare for, take, and defend the 18 depositions in this case. **Exhibit 5** hereto is a true and exact copy of a spreadsheet prepared in my office of the time expended by the Sheppard firm and Cooper firm to attend the 18 depositions in this case.

28.     The billing practices of many of Stonebrae's attorneys complicated the analysis of the reasonableness of the hours they spent on various tasks. In particular, Phillip Atkins-Patterson from the Sheppard firm and Tracy Kirkham from the Cooper firm always billed all of the tasks in this case in a single entry for a given day.

29.     I instructed my associate who prepared the spreadsheets that where any task in a block billing entry related to one of the three activities being examined, he should count all of the hours from that entry toward the activity, even if other tasks listed in the entry related to other activities. For example, on October 21, 2009, Mr. Atkins-Patterson entered the following billing entry: "Continued work on supplemental material for R. Chan regarding liquidated damages issue; work on aspects of reply brief in support of motion to compel Toll; confer regarding same; review and exchange several e-mails regarding Stonebrae's next installment of document production to Toll." Exhibit 24 to the Declaration of Phillip F. Atkins-Patterson in Support of Stonebrae L.P.'s

8

Motion for Award of Attorneys' Fees and Costs. For that entry, Mr. Atkins-Pattenson billed 3 hours at a rate of $615.00 per hour for a total cost of $1,845.00. *Id.* Because it was not possible to determine the amount of time Mr. Atkins-Pattenson devoted to the Motion to Compel, my associate counted all 3 hours as being spent on the Motion to Compel. Accordingly, the figures discussed in paragraphs 30 through 34 are approximations.

30. The analysis of Stonebrae's Motion to Remand and Toll Bros' Motion to Dismiss showed that even though the Sheppard firm was entirely responsible for pursuing the primary tasks for the motions, the Cooper firm charged Stonebrae significant fees related to these two activities. *See* **Exhibit 2**. The billing records indicate that the Sheppard firm drafted, edited, and filed all of the briefs and argued the motions, both of which Stonebrae lost. The analysis of the billing records showed that the Sheppard firm and Cooper firm collectively billed Stonebrae $117,101.00 to pursue the Motion to Remand and oppose the Motion to Dismiss. The Sheppard firm was responsible for $90,313.50 of the billing (77.1%), while the Cooper firm was responsible for $26,787.50 (22.8%). A significant portion of the billings by the Cooper firm was simply to review documents drafted and reviewed by multiple time keepers at the Sheppard firm. Based on these data, it was unreasonable in this case for Stonebrae to claim from Toll Bros such a large amount for the Cooper firm's work related to Stonebrae's Motion to Remand and Toll Bros' Motion to Dismiss.

31. The analysis of Stonebrae's Motion to Compel, which Stonebrae lost, demonstrates a similar pattern of over-billing in this fee application. The analysis of the billing records showed that the Sheppard firm and Cooper firm collectively billed Stonebrae $87,917.50 to pursue the Motion to Compel. The Sheppard firm was responsible for $68,366.00 of the billing (77.7%), while the Cooper firm was responsible for $19,551.50 (22.2%). *See* **Exhibit 3**. The billing records indicate that the Sheppard firm drafted, edited, reviewed and filed all of the briefs and argued the motion using multiple time keepers. Most of the Cooper firm's billing entries indicate its attorneys primarily contributed by reviewing the filings. Based on these data, it was unreasonable for Stonebrae to claim such a large amount for the Cooper firm's work on this activity in the fee application in this case.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

[473669-2]

32. The analysis of the manner in which Stonebrae's attorneys staffed the 18 depositions in this case also presents a picture of overstaffing that should not be rewarded in response to the fee application in this case. *See* **Exhibit 4**. I instructed my associate to review the deposition-related billings for only Mr. Atkins-Patterson, Mr. Cooper and Ms. Kirkham. Collectively, those three attorneys alone billed Stonebrae for more than 800 hours at a value of $571,324 for deposition-related tasks. That figure does not account for the time expended by associates to help the three attorneys prepare. At more than 44 hours per deposition, the amount of time devoted to depositions by these time keepers alone appears excessive, and is not explained to justify the duplication of effort, especially since subject-matter overlapped for most of the depositions.

33. In addition, Mr. Cooper, who attended none of the depositions in this case, billed $20,710 for deposition-related tasks without adequate explanation concerning why these fees should be paid by Toll Bros.

34. As is discussed above, eighteen depositions were taken in this case. I am informed that the total number of hours consumed by the eighteen depositions, including breaks is 133. For eleven of those depositions, both Mr. Atkins-Patterson and Ms. Kirkham, two of the highest billing attorneys working for Stonebrae, attended for the entire duration. This includes two depositions at which Stonebrae's attorneys were defending a deposition and one deposition that required both Mr. Atkins-Patterson and Ms. Kirkham to travel to Orange County. Stonebrae's attorneys billed $74,692.50 simply for the presence of a second attorney at various depositions. *See* **Exhibit 5**. Stonebrae's explanations concerning its deposition attendance staffing choices do not justify making Toll Bros pay for those choices.

35. In contrast to staffing by Stonebrae's attorneys, it is my understanding that the Kasowitz firm sent two attorneys to only two full depositions and for limited periods to two others, all of which were for depositions Toll Bros' lawyers were taking, as opposed to defending.

36. It is particularly striking that virtually all the time committed by the Cooper firm's attorneys was committed by the two highest billers in this matter, and that a substantial majority of the fees billed by the Sheppard firm was billed by its highest billers.

10

[473669-2]

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

37.     In examining spreadsheets prepared by the Kasowitz firm of the time billed by the Sheppard firm and the Cooper firm, I have identified a number of statistics that indicate that Stonebrae's attorneys' billing practices were otherwise abnormal for a fee application in a case of this nature.  Attached hereto as **Exhibit 6** is a true and exact copy of a spread sheet, prepared by the Kasowitz firm, of the time expended by personnel at the Sheppard firm; attached hereto as **Exhibit 7** is a true and exact copy of a spreadsheet, prepared by the Kasowitz firm, of time expended by personnel at the Cooper firm; attached hereto as **Exhibit 8** is a true and exact copy of a spreadsheet, prepared by the Kasowitz firm, of the combined time expended by personnel at the Sheppard firm and the Cooper firm.

38.     As shown on **Exhibit 8**, personnel who billed at a rate of less than $500 per hour for the entire duration of the litigation accounted for only 41.5% of the overall hours billed and only 24.65% of the amount of money claimed from Toll Bros.  In contrast, the attorneys with the highest billing rates — those who billed at a rate of more than $500 per hour at any time during the litigation — accounted for 58.5% of the total hours billed and 75.35% of the amount of money claimed from Toll Bros.  In my experience, where large sums of money have been billed, especially in an uncomplicated case that does not go to trial, it is uncommon in a highly staffed matter for the highest billers to account for such a high proportion of the overall bill to a client or in a fee shifting application.  Stonebrae's attorneys have not provided any explanation for this top heaviness in fees sought from Toll Bros in this case.

39.     By contrast with Stonebrae's attorneys' staffing of the case, Toll Bros' attorneys staffed the case principally with one senior associate (Casey McNamara), one junior associate (Emily de Ayora) and paralegals.  *See* **Exhibit 9** hereto, a true and exact copy of a spreadsheet, prepared by the Kasowitz firm, of the time expended by the Kasowitz firm.  In fact, attorneys and other personnel who billed at a rate less than $500 per hour for the duration of the litigation accounted for 94.5% of hours and 89.9% of the amount of money billed to Toll Bros.

40.     The numbers of personnel — 41 total including 26 attorneys — who worked on and billed for work on the matter for Stonebrae is striking.  *See* **Exhibit 8**.  It is particularly unusual that reimbursement is claimed from an adverse party in prevailing party's attorneys fees

[473669-2]

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

application without explanation, for the time of 15 attorneys and other billers who billed 10 or fewer hours. When my firm makes fee applications our usual practice is to write down such small amounts of time, unless there is a clear and specific reason why a particular person (usually at the partnership level) had to be consulted on the matter.

41. The rates claimed by Stonebrae's attorneys and their paralegals and other chargeable personnel are within the range of rates charged by attorneys within the San Francisco Bay Area. However, the rates charged particularly by the Cooper firm's attorneys are at the top of that range. Given the relative lack of complexity of the case and the evident duplication of effort, even though billed to and paid by the client, those rates are too high for a fee award in a case involving a fee shift based on a contractual fee shifting provision in a private law contract dispute. This opinion is reinforced by my review of the declaration of Denis F. Shanagher, who is an experienced San Francisco real estate litigator at a major firm, Luce, Forward, Hamilton & Scripps LLP. From his testimony I understand that the market for legal services for litigation comparable to the instant case is highly competitive and that the rates claimed here are very high.

42. The Kasowitz firm's billing rates in this case (discussed below) are much more consistent with the appropriate billing rates for a case of this nature. The Kasowitz firm's use of less expensive attorneys and staff also are relevant data points for my opinions in this matter.

43. The Sheppard firm provided Stonebrae with a five percent (5%) discount of its total billings, which is reflected on the claim against Toll Bros. It is notable and unexplained that the Cooper firm provided no comparable discount to Stonebrae or on the fee application.

44. Frequently the discount provided to a repeat client such as Stonebrae is a higher percentage of the total billings or the law firm agrees to hold its rates in a matter to those that pertain at the start of the matter, or they delay rate increases up to a year.

45. It is impossible to assess or take into account the amount of fees that the Sheppard and Cooper firms wrote down (by not including some time on bills to Stonebrae) because neither firm has made any effort or provided any documentation to quantify those downward adjustments. In fact Stonebrae's attorneys have provided no evidence of any billing judgment reductions.

Decl. of Sanford Jay Rosen ISO Toll's Opp. To Stonebrae's Motion for Attorneys' Fees; Case No. 08-cv-00221 EMC

[473669-2]

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111

46.     It is noteworthy that Toll Bros' lawyers provided their clients with much more substantial and knowable discounts.  At the start of the case, Toll Bros was represented by Sideman & Bancroft LLP.  As reflected on Sideman's bills, the billings at that firm were discounted by 15% across the board.  When the case moved to the Kasowitz firm, the Kasowitz firm kept to the lower Sideman rates.  They also froze their rates to the starting rates.  Donald Putterman's customary rate at the Kasowitz firm is $650 per hour.  Kasowitz charged Toll Bros $500 per hour throughout the case.  Mr. McNamara's customary rate is $375 per hour.  Kasowitz charged him at $337.50 per hour throughout the case.  I am informed that in addition, an additional $47,000 was written down on the Kasowitz firm's bills.

47.     There is no apparent explanation for why the fees charged by Stonebrae's attorneys exceed the fees charged and claimed by Toll Bros' attorneys by a factor of about 300%, particularly as both sides engaged in significant, essentially mirror image discovery (including document review) and motion practice.

48.     One appropriate data point for determining the reasonable fee award to Stonebrae is presented by a decision of Judge Samuel Conti in *Toll Brothers, Inc. v. Chang Su-O Lin, et al.*, Case No. 08-987 SC.  (On February 3, 2011 the underlying judgment in that case was reversed.) *Toll Brothers, Inc. v. Lin, et al.*, No. 09-16955 (9th Cir. Feb. 3, 2011)).  From my review of the Court's "order Granting in Part and Denying in Part Defendants' Motion for Attorneys Fees, Expert Fees and Costs," it appears that the case was strikingly similar to the instant case, except that it went to a 10-day bench trial and judgment.  **Exhibit 10** hereto is a true and exact copy of that Order.  Chang Su-O Lin, et al. won and applied for attorneys fees.  They requested a lodestar of $1,416,775.50.  The Court reduced the reasonable lodestar to $1,389,883.75.  It then made a downward adjustment of 20% due to the Lins' lack of success on several key arguments or issues, resulting in a total fees award of $1,111,907.00.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 7th day of February, 2011 at San Francisco, California.

_____
SANFORD JAY ROSEN

13

[473669-2]

**EXHIBIT 1**

# ROSEN, BIEN & GALVAN, LLP

## Sanford Jay Rosen

**Attorneys at Law**

315 Montgomery Street, 10th Floor
San Francisco, CA 94104

Phone: (415) 433-6830
Fax: (415) 433-7104
Email: srosen@rbg-law.com

---

PRESENT:

Senior Partner in a firm of seventeen lawyers specializing in complex litigation.

LAW PRACTICE:

My trial and appellate experience includes a wide variety of civil work for both plaintiffs and defendants, including class actions, and criminal defense work. I have secured numerous judgments and settlements of over a million dollars.

I have presented oral argument in the U.S. Supreme Court in 5 cases, in the U.S. Courts of Appeals for 8 of the Circuits on more than 30 occasions (more than half of which have been in the Ninth Circuit), and before the Supreme Court and Courts of Appeal of California between 10 and 15 times. I have also briefed many more appeals.

I have tried numerous civil cases to bench and jury in federal district courts in California, Colorado, New York, Ohio and Virginia, and in California state courts; misdemeanors in Maryland state courts; arbitrations and special proceedings in California, Hawaii and the Commonwealth of the Northern Mariana Islands.

I also work as an arbitrator, a mediator, an early neutral evaluator and a special master.

BAR ADMISSIONS:

1. Connecticut (August 14, 1962), District of Columbia (November 30, 1973) (inactive), California December 18, 1974)
2. Supreme Court of the United States (March 1, 1966)
3. U.S.C.A.'s for all the Circuits except the First, Eleventh and Federal Circuits
4. U.S.D.C.'s: Md., Conn., S.D.N.Y., N.D. Cal., E.D. Cal. and N. D. Ohio

BAR ASSOCIATIONS (Partial List):

1. California State Bar
2. Connecticut Bar
3. Bar Association of San Francisco
4. District of Columbia Bar Association
5. American Bar Association
6. American Attorneys for Justice
7. Consumer Lawyers of California

EDUCATION:

Cornell University, A.B., 1959; Yale Law School, L.L.B., 1962.

**EXHIBIT 1**

BIOGRAPHICAL LISTING AND RATINGS:

1. Martindale Hubbell; A-V rating
2. Northern California Super Lawyers (general civil litigation)
3. Numerous Who's Who Listings

HONORS:

1. Council on Legal Education Opportunity (CLEO) Honoree Award, 2008
2. Bouton Law Lecturer, Princeton Univ., 1971
3. Prisoner's Union's Free Person Honoree, 1993
4. Legal Services Honoree, MALDEF, 1987
5. NAACP LDF Cooperating Attorney Honoree, 1995

PAST LAW EMPLOYMENT:

1. Principal, Rosen & Associates, 1990.
2. Partner, Rosen & Phillips, 1986 to 1989.
3. Principal, Law Offices of Sanford Jay Rosen, 1982 to 1985.
4. Partner, Rosen, Remcho & Henderson (after 1980 Rosen & Remcho), 1976 to 1982.
5. Legal Director, Mexican American Legal Defendant and Educational Fund, 1973 to 1975.
6. Assistant Legal Director, American Civil Liberties Union (National Office), 1971 to1973; Special counsel; May through August 1970 and 1975 to 1983 (Kent State Litigation Project).
7. University of Texas at Austin, Visiting Professor of Law, 1970-71.
8. Associate Director, Council on Legal Education Opportunity, 1969 to 1970.
9. School of Law, University of Maryland, 1963 to 1971:
    (a) Assistant Professor, 1963 to 1966;
    (b) Associate Professor, 1966 to 1969 (tenured);
    (c) Professor, 1969 to 1971 (tenured).
10. Law Clerk, Chief Judge Simon E. Sobeloff, U.S.C.A. for the 4th Circuit, 1962 to 1963.

IMPARTIAL DISPUTE RESOLUTION ACTIVITIES:

1. Acting Monitor (Special Master), U.S.D.C. N.D. Cal. *San Francisco Firefighters Case*, 1989.
2. Early Neutral Evaluator, U.S.D.C. N.D. Cal., since 1987.
3. Mediator, U.S.D.C. N.D. Cal., since 1993.
4. Appellate Mediator, CA Court of Appeal, 1st Dist., since 2004.
5. Pro Tem Judge, Superior Court, City and County of San Francisco, since 1990.
6. *Ad hoc* Administrative Law Officer, California's Agricultural Labor Relations Board, 1975-80.
7. Member, Baltimore Community Relations Commission, 1966-69.
8. Member, American Arbitration Ass'n National Employment, Labor, Employee Benefits and Commercial Dispute Resolution Panels.
9. Labor Management Relations Arbitrator, since 1965:
    (a) American Arbitration Association;
    (b) Federal Mediation and Conciliation Service Panel;.
10. Member Dalkon Shield damages arbitration panel for Northern California, 1991-93.
11. Past member of U.S. Dept. of the Air Force and AFGE, ATT and Communications Workers, and Social Security Administration and AFGE arbitration panels.

[258393-1]

**EXHIBIT 1**

GOVERNMENT BOARDS:

1. Member, State of Maryland's Patuxent Institution Board of Review (a prison parole board), the Patuxent's Advisory Board and its Board of Governors, 1967 to 1969.
2. Member, Mayor of Baltimore's Committee on Administration of Criminal Justice Under Emergency Conditions, 1968.
3. Member, National Advisory Committee [of the U.S. HEW] project to draft a uniform Child Abuse and Neglect Law, 1974 to 1975.

SELECTED ADDITIONAL PROFESSIONAL ACTIVITIES:

1. Attorney Delegate from the U.S.D.C. N.D. Cal. to the 9th Circuit Judicial Conference, 1996-98.
2. Member Emeritus, Fourth Circuit Judicial Conference, since 1967.
3. Member, ABA Litigation Section's Committee to Study Rule 11, 1986 to 1989.
4. Co-chairperson and/or faculty member, Practicing Law Institute programs on Civil Litigation, Federal Civil Rights Litigation, and/or Attorneys Fees, 1976 to 1989; faculty Member in earlier and subsequent federal practice and attorneys fees programs, most recently in 2004.
5. Faculty member, California's Continuing Education of the Bar, Federal Litigation Program, 1986; Fundamentals of Civil Litigation Before Trial, 1988; (Chair) Litigating Civil Rights Cases in Federal and State Court, 1989, 1992, 1995 and 1996.
6. Faculty, Georgetown Univ. Law Center's CLE § 1983 Civil Rights Litigation Program, 1993.
7. Faculty, ATLA (now AAJ), Civil Rights Section Civil Rights CLE Program, 1992, 1993 (Moderator), 1996, 1998, Employment Rights Section CLE Program Faculty 1999; Civil Rights Section and Minority Caucus CLE 2003.
8. Treasurer, Exec. Comm'n and Chair Education Comm'n of the Civil Rights Section, American Trial Lawyers Ass'n, 1992-93; Chair Civil Rights Section, 1993-94; Civil Rights Newsletter editor, 1994-1999; Member Constitutional Litigation Committee, 1996.
9. California Employment Lawyers Association CLE Program Faculty, 1999.
10. Faculty Los Angeles Consumer Lawyers CLE Program, 2001.
11. Faculty California State Bar Labor Section CLE, 2002.
12. Faculty, Lorman CLE on Police Misconduct and Institutional Reform in California, 2005.

PUBLICATIONS:

1. *Fair Representation, Contract Breach and Fiduciary Obligations: Unions, Union Officials and the Worker in Collective Bargaining*, 15 HASTINGS L.J. 391 (1964).
2. *The Individual Worker in Grievance Arbitration: Still Another Look at the Problem*, 24 MD. L. REV. 233 (1964).
3. *The Law and Racial Discrimination in Employment*, 53 CALIF. L. REV. 279 (1965); *revised and reprinted* in Employment, Race And Poverty (Ross & Hill eds., Harcourt, Brace and World, 1966); Corporate Counsel's Annual 1966 (Matthew Bender & Co.).
4. Book Review, "Marshall, The Negro and Organized Labor" (1965), 75 YALE L.J. 682 (1966).
5. *Division of Authority Under Title VII of the Civil Rights Act of 1964: A Preliminary Study in Federal-State and Interagency Relations*, 34 GEO. WASH. L. REV. 846 (1966).
6. *Contemporary Winds and Currents in Criminal Law, With Special Reference to Constitutional Criminal Procedure*, 27 MD. L. REV. 103 (1967), *revised* and *reprinted* in Sourcebook For Prosecutors (PLI 1969).
7. Book Review, Sovern, "Legal Restraints on Racial Discrimination in Employment" (1966), 81 HARV. L. REV. 276 (1967).

EXHIBIT 1

8. *Preemption and Exemption Under the National Labor Relations Act: Myths, Long Standing Questions and Recent Developments*, 21 N.Y.U. ANN. CONF. ON LAB. 243 (1969).
9. *Civil Disobedience and Other Such Techniques: Law Making Through Law Breaking*, 37 GEO. WASH. L. REV. 435 (1969).
10. Comment on Powell v. McCormack (with Lewis D. Asper), 17 U.C.L.A. L. REV. 58 (1969).
11. Equalizing Access to Legal Education: Special Programs for Law Students Not Admissible by Ordinary Criteria, 1970 TOLEDO L. REV. 321 (1970).
12. The Greening of the Scranton Commission: Campus Unrest and Change in America, 71 COLUM. L. REV. 1120 (1971); 57 AAUP BUL. 506 (Dec. 1971).
13. *Your Rights Before the Grand Jury* (with W. Birtles and D. Fine), ACLU Pamphlet (Feb. 1972).
14. *Your Right to Government Information* (with T. Hayden, J. Samels and J. Shattuck), ACLU Pamphlet (Feb. 1973).
15. Review of several books on Treason, 51 TEX. L. REV. 817 (1973).
16. *Judge Sobeloff's Public School Race Segregation Decisions*, 34 MD. L. REV. 498 (1974)
17. *State and Local Regulation of Religious Solicitation of Funds: A Constitutional Perspective* (with Robin B. Johansen), 446 The Annals 166 (November 1979).
18. *The Legal Battle: Finishing Unfinished Business, in Bills (ed.), Kent State/May 4: Echoes Through a Decade* (1982).
19. *Seeking Environmental Justice For Minorities and Poor People*, Trial Magazine (with Tom Nolan, December, 1994).
20. *Defeating Efforts to Delay Section 1983 cases*, Trial Magazine (August 1999).
21. *Acknowledging a Military Wrong*, Trial Magazine (April 2001).
22. *Additional book reviews and comments* in the Boston College Industrial and Labor Relations Review; Brooklyn, California Western, George Washington, Maryland (2) and Pennsylvania Law Reviews; The Journal of Legal Education; The Law Library Journal; The Maryland Law Forum (2); The Cornell Industrial and Labor Relations Review; The Baltimore Sun (2); Patterns of Prejudice (2); Civil Liberties (4); and the Kent Left Studies/Left Review.
23. Numerous additional outline articles on federal and state civil practice and procedure subjects, on attorneys fees, and on employment and civil rights litigation, commencing 1976, up to the present, for the Practicing Law Institute, California's CEB, AAJ (formerly ATLA), the Georgetown Law Center, the California State Bar Employment Section and other CLE provider organizations.
24. Public lectures at Princeton University, the University of Texas (Austin), Kent State University and Emerson College, and panel presentations at the Yale Law School.
25. Testimony to committees of the United States Congress.
26. At the request of the U.S.D.C. for the N.D. Cal. and the Bar Association of San Francisco in 1988, I wrote, edited and compiled a comprehensive set of written materials to guide appointed counsel for indigent prisoners in cases filed under 42 U.S.C. Section 1983. The Second edition of these materials was issued in the Autumn of 1990, and the Third edition issued in 1992 for the U.S.D.C.'s N. and E. Dists. of Cal. and the Fourth edition issued in June 1996.

SELECTED CASES:

My first United States Supreme Court argument was in <u>Whitehill v. Elkins</u>, 389 U.S. 54 (1967) in which the Supreme Court declared most of Maryland's loyal-security statute unconstitutional, overruling a previous Supreme Court decision sustaining that law. The four other cases I briefed and also argued in the Supreme Court of the United States are: <u>Connell v. Higginbotham</u>, 403 U.S. 207 (1971) (in which the Court recognized due process rights of non-tenured public employees); <u>Socialist Labor Party v. Gilligan</u>, 406 U.S. 583 (1972) (which the Court dismissed as unripe); <u>Communist Party of Indiana v. Whitcomb</u>, 414 U.S. 441 (1974) (in which for the first time the Court applied full blown First Amendment standards to declare unconstitutional a civil disability as opposed to a criminal

**EXHIBIT 1**

sanction); and <u>Collins v. City of Harker Heights</u>, 503 U.S. 115 (1992) (in which the Court significantly clarified the elements and liability standards for many 42 U.S.C. § 1983 claims and for municipal liability in § 1983 actions). I prepared petitions, briefs and motions in numerous other Supreme Court cases.

Among the other appeals in which I have been lead counsel and won are: (1) <u>United States v. Hawthorne</u>, 370 F.2d 330 (4th Cir. 1966), which (on constitutional grounds) narrowed the scope of the 1961 Federal Criminal Travel Act; (2) <u>Vinyl Products Inc. v. Armstrong Asphalt</u> (unreported) (Ca. Ct. of App.) (reversing a JNOV in a negligence and breach of warranty case); (3) <u>Evergreen v. Foundation Films, Inc. v. Davis</u>, (unreported) a 9th Cir. Expedited Appeal involving the motion picture rights to Dee Brown's <u>Bury My Heart at Wounded Knee</u>; (4) <u>Marin City Council v. Marin County Redevelopment Agency</u>, 416 F.Supp. 707 (N.D. Cal. 1976) (9th Cir. decision unreported), a complex case rejecting a claim that HUD and a developer (my client) had provided insufficient federally assisted low-cost housing in a Marin County housing development; (5) <u>Familias Unidas v. Briscoe</u>, 544 F.2d 182 (5th Cir. 1976), an appeal overturning discovery sanctions and the First Amendment in a case involving a Texas statute that required disclosure of a civil rights organization's membership list; (6) several cases arising out of the May 4, 1970 shooting of students at <u>Kent State</u> University (<u>see</u> 671 F.2d 212 (6th Cir. 1982) and 570 F.2d 563 (6th Cir. 1977)) (the civil rights-wrongful death and bodily injury cases I successfully appealed, retried and settled); (7) <u>People v. Mroczko</u>, 35 Cal.3d 86 (1984), in which the California Supreme Court unanimously reversed my client's capital conviction for murder in a decision establishing the rule in California that each indigent criminal defendant presumptively must be represented by his own appointed attorney; (8) two appeals in <u>EEOC v. Pan American World Airways, Inc.</u>, 796 F.2d 314 (9th Cir. 1986) and 897 F.2d 1499 (9th Cir. 1990), one involving the appealability of a decision rejecting on grounds of inadequacy a settlement sponsored by the EEOC that my clients opposed, and the other affirming adoption of the nearly $20 million settlement of this federal Age Discrimination in Employment case that I crafted after a two-month long jury trial; (9) eight appeals in <u>Toussaint v. Gomez</u> (<u>see</u> 926 F.2d 800 (9th Cir. 1990), 826 F.2d 901 (9th Cir. 1987) and 801 F.2d 1080 (9th Cir. 1986)), a prison conditions case; (10) <u>Lucas Valley Home Owners Ass'n v. County of Marin, real-party-in-interest Chabad of Marin</u>, 233 Cal.App.3d 130 (1991), involving the validity under zoning law and constitutional law of a conditional use permit issued to a synagogue; (11) <u>Rebney v. Wells Fargo Bank</u>, 232 Cal.App.3d 1344 (1991), a consumer class action attorney fee matter; (12) four appeals (one unreported) in <u>Gates v. Deukmejian</u>, <u>see</u> 987 F.2d 1392 (9th Cir. 1993), 39 F.3d 1439 (9th Cir. 1994) and 60 F.3d 525 (9th Cir. 1995); (13) <u>Davis v. California Department of Corrections</u> (Ca. Ct. of App.) (unpublished) (upholding multimillion dollar fee award under the Unruh Act, including a 1.25 multiplier under the Unruh Act).

I participated in the briefing of <u>Weeks v. Baker & McKenzie</u>, 63 Cal.App.4th 1128 (1998) (sexual harassment case); <u>Greene v. Dillingham Construction NA</u>, 101 Cal. App. 4th 418 (2002) (attorneys' fees appeal); <u>Prison Legal News v. Schwarzenegger</u>, 561 F. Supp. 1235 (N.D. Cal. 2008); and 608 F.3d 446 (10th Cir. 2010); and <u>L.H. v. Schwarzenegger</u>, 645 F. Supp. 2d 888 (E.D. Cal. 2009).

I also won dispositive summary judgment motions for plaintiffs before three-judge district courts for the District of Columbia in <u>Williams v. Blount</u>, 314 F.Supp. 1356 (D.D.C. 1970), declaring censorship of certain mail unconstitutional as a violation of procedural due process of law, and in <u>Hiss v. Hampton</u>, 338 F.Supp. 1141 (D.D.C. 1972), declaring the "Hiss Act," which denied Alger Hiss and others their United States government annuities, an unconstitutional *ex post facto* law.

**EXHIBIT 2**

Summary of Time Expended by the Sheppard firm and Cooper firm
to Pursue Stonebrae's Motion to Remand and Oppose Toll Bros'
Motion to Dismiss

| Firm/Attorney | Hours | Percent of overall hours | Rate | Billings | Percent of overall billings |
|---|---|---|---|---|---|
| **Sheppard Mullin** | **184.1** | **83.64%** | **$490.57** | **$90,313.50** | **77.12%** |
| Atkins-Pattenson | 47.5 | 21.58% | $595.00 | $28,262.50 | 24.14% |
| Friedman | 6.1 | 2.77% | $485.00 | $2,958.50 | 2.53% |
| Pinedo | 119 | 54.07% | $470.00 | $55,930.00 | 47.76% |
| Sara | 8.4 | 3.82% | $275.00 | $2,310.00 | 1.97% |
| White | 3.1 | 1.41% | $275.00 | $852.50 | 0.73% |
| **Cooper Kirkham** | **36** | **16.36%** | **$744.10** | **$26,787.50** | **22.88%** |
| Bogdanor | 9.5 | 4.32% | $450.00 | $4,275.00 | 3.65% |
| Cooper | 21.1 | 9.59% | $875.00 | $18,462.50 | 15.77% |
| Kirkham | 5.4 | 2.45% | $750.00 | $4,050.00 | 3.46% |
| **Totals** | **220.1** | | **$532.04** | **$117,101.00** | |

**EXHIBIT 2**

**EXHIBIT 3**

Summary of Time Expended by the Sheppard firm and Cooper firm
to Pursue Stonebrae's Motion to Compel

| Firm/Attorney | Hours | Percent of overall hours | Rate | Billings | Percent of overall billings |
|---|---|---|---|---|---|
| **Sheppard Mullin** | **124.4** | **82.82%** | **$549.57** | **$68,366.00** | **77.76%** |
| Atkins-Pattenson | 50.4 | 33.56% | $615.00 | $30,996.00 | 35.26% |
| Friedman | 2 | 1.33% | $505.00 | $1,010.00 | 1.15% |
| Pinedo | 72 | 47.94% | $505.00 | $36,360.00 | 41.36% |
| **Cooper Kirkham** | **25.8** | **17.18%** | **$757.81** | **$19,551.50** | **22.24%** |
| Bogdanor | 1.1 | 0.73% | $365.00 | $401.50 | 0.46% |
| Cooper | 5 | 3.33% | $875.00 | $4,375.00 | 4.98% |
| Kirkham | 19.7 | 13.12% | $750.00 | $14,775.00 | 16.81% |
| **Totals** | **150.2** | | **$585.34** | **$87,917.50** | |

**EXHIBIT 3**

**EXHIBIT 4**

Summary of Time Expended by the Phillip Atkins-Pattenson, Tracy Kirkham, and
Josef Cooper to Prepare for, Take, and Defend Depositions

| Firm/Partner | Hours | Percent of overall hours | Rate | Billings | Percent of overall billings |
|---|---|---|---|---|---|
| Sheppard Mullin | 490.3 | 60.90% | $630.00 | $308,889.00 | 54.07% |
| Atkins-Pattenson | 490.3 | 60.90% | $630.00 | $308,889.00 | 54.07% |
| Cooper Kirkham | 314.8 | 39.10% | $833.66 | $262,435.00 | 45.93% |
| Cooper | 21.8 | 2.71% | $950.00 | $20,710.00 | 3.62% |
| Kirkham | 293 | 36.39% | $825.00 | $241,725.00 | 42.31% |
| Totals | 805.1 | | $709.63 | $571,324.00 | |

EXHIBIT 4

**EXHIBIT 5**

Summary of Philip Atkins-Pattenson and Tracy Kirkham's Attendance at Depositions

| Witness | Date | Take or defend | Travel | Primary attorney | Hours | Cost | Secondary attorney | Hours | Cost |
|---|---|---|---|---|---|---|---|---|---|
| Boyd (Day 1) | 10/5/2010 | Take | | Atkins-Pattenson | 10.5 | $6,615.00 | Kirkham | 7 | $5,775.00 |
| Boyd (Day 2) | 10/13/2010 | Take | | Atkins-Pattenson | 10.5 | $6,615.00 | | | |
| Carr | 9/15/2010 | Defend | | Kirkham | 6.5 | $5,362.50 | | | |
| Chan | 10/7/2010 | Defend | | Kirkham | 10 | $8,250.00 | | | |
| Donahue | 9/8/2010 | Defend (3d party) | | Kirkham | 8.4 | $6,930.00 | Atkins-Pattenson | 10 | $6,300.00 |
| Foster | 9/29/2010 | Take | Orange County | Atkins-Pattenson | 11 | $6,930.00 | Kirkham | 9.5 | $7,837.50 |
| Grossman | 9/24/2010 | Take | | Atkins-Pattenson | 6.5 | $4,095.00 | Kirkham | 5 | $4,125.00 |
| Hurt | 10/6/2010 | Take | | Atkins-Pattenson | 7.5 | $4,725.00 | | | |
| Letchinger (Day 1) | 8/3/2010 | Defend | | Atkins-Pattenson | 10.5 | $6,615.00 | Kirkham | 9 | $7,425.00 |
| Letchinger (Day 2) | 8/4/2010 | Defend | | Atkins-Pattenson | 8 | $5,040.00 | Kirkham | 6.8 | $5,610.00 |
| Martin | 9/1/2010 | Take | | Kirkham | 9.7 | $8,002.50 | Atkins-Pattenson | 9 | |
| Miller | 8/18/2010 | Defend | | Atkins-Pattenson | 10.5 | $6,615.00 | Kirkham | 7 | $5,775.00 |
| Paynter | 9/14/2010 | Take | | Atkins-Pattenson | 11 | $6,930.00 | Kirkham | 7.8 | $6,435.00 |
| Sabine | 9/13/2010 | Defend | | Kirkham | 9.3 | $7,672.50 | | | |
| Scheuring | 9/23/2010 | Defend | | Atkins-Pattenson | 8 | $5,040.00 | Kirkham | 6.3 | $5,197.50 |
| Schnurr | 9/27/2010 | Take | | Atkins-Pattenson | 10 | $6,300.00 | | | |
| Thiessen | 9/21/2010 | Take | Orange County | Atkins-Pattenson | 11.5 | $7,245.00 | | | |
| White (Day 1) | 8/26/2010 | Take | | Kirkham | 9.3 | $7,672.50 | Atkins-Pattenson | 9.5 | $7,837.50 |
| White (Day 2) | 8/31/2010 | Take | | Kirkham | 7.4 | $6,105.00 | Atkins-Pattenson | 9 | $7,425.00 |
| Yeung | 10/8/2010 | Defend | | Atkins-Pattenson | 8.5 | $5,355.00 | Kirkham | 6 | $4,950.00 |
| Yuen | 10/13/2010 | Defend | | Kirkham | 9.7 | $8,002.50 | | | |
| Totals | | | | | 194.3 | $136,117.50 | | 101.9 | $74,692.50 |

**EXHIBIT 5**

**EXHIBIT 6**

EXHIBIT A

## Stonebrae Attorney Fees Billed By Sheppard Mullin (Totals)

| Timekeeper | Years As Attorney | Lowest Rate | Highest Rate | Hours Billed | Percentage of Total Hours Billed (by Sheppard Mullin) | Total Dollars Billed | Percentage of Dollars Billed (by Sheppard Mullin) |
|---|---|---|---|---|---|---|---|
| Atkins-Patterson, Phillip F. | 31 | $550 | $630 | 1905.2 | 31.61% | $1,173,243.00 | 45.22% |
| Manierre, William T. | 36 | $615 | $615 | 2 | 0.03% | $1,230.00 | 0.05% |
| Story, Joan H. | 34 | $575 | $595 | 10.7 | 0.18% | $6,212.50 | 0.24% |
| Pracher, Maria C. | 30 | $560 | $560 | 0.2 | 0.00% | $112.00 | 0.00% |
| Wider, Loretta A. | 28 | $545 | $545 | 4.4 | 0.07% | $2,398.00 | 0.09% |
| Pineda, Craig A. | 14 | $425 | $520 | 639.5 | 10.61% | $317,540.00 | 12.24% |
| Friedman, Arthur J. | 19 | $445 | $515 | 316.8 | 5.26% | $157,186.00 | 6.06% |
| Vogel, Karin D. | 24 | $475 | $475 | 0.2 | 0.00% | $95.00 | 0.00% |
| Schmidt, Misti | 4 | $365 | $365 | 0.4 | 0.01% | $146.00 | 0.01% |
| White, Martin D. | 4 | $365 | $365 | 53.5 | 0.89% | $18,213.00 | 0.70% |
| Rusk, James F. | 4 | $275 | $275 | 116.9 | 1.94% | $35,722.50 | 1.38% |
| Vatanparast, Roxana | 3 | $340 | $340 | 139.7 | 2.32% | $47,383.00 | 1.83% |
| Martinez, Serena F. | 3 | $330 | $330 | 350.1 | 5.81% | $115,533.00 | 4.45% |
| Snyder, David | 3 | $285 | $330 | 656.7 | 10.89% | $216,150.00 | 8.10% |
| Yip, Lai L. | 3 | $330 | $330 | 698 | 11.58% | $216,775.00 | 8.36% |
| English, Cassidy | 2 | $275 | $275 | 34.8 | 0.58% | $9,570.00 | 0.37% |
| Rose, Allen E. | | $270 | $275 | 236.6 | 3.92% | $64,997.00 | 2.51% |
| Sara, Elise | 4 | $260 | $275 | 39.2 | 0.65% | $10,429.00 | 0.40% |
| Suwatanapongched, Juthamas Judy | 2 | $275 | $275 | 80.3 | 1.33% | $22,082.50 | 0.85% |
| Lee, Adrienne W. | 2 | $270 | $270 | 226.9 | 3.76% | $61,263.00 | 2.36% |
| Mueller, Matthew M. | 2 | $270 | $270 | 52.8 | 0.88% | $14,256.00 | 0.55% |
| Tsao, Pamela | 2 | $270 | $270 | 198.5 | 3.29% | $53,595.00 | 2.07% |
| Dolley, David A. | | $245 | $245 | 3.2 | 0.05% | $784.00 | 0.03% |
| Freitas, Richard | | $219 | $225 | 140.9 | 2.34% | $31,195.50 | 1.20% |
| Pumphrey, David L. | | $225 | $225 | 1.3 | 0.02% | $292.50 | 0.01% |
| Smith, Candi A. | | $225 | $225 | 2.4 | 0.04% | $456.00 | 0.02% |
| Smith, Sam | | $215 | $225 | 38.7 | 0.64% | $8,365.50 | 0.32% |
| Bernstein, Aline | | $215 | $215 | 14.6 | 0.24% | $3,139.00 | 0.12% |
| Sircar, Shoma | | $205 | $215 | 8.3 | 0.14% | $1,742.50 | 0.07% |
| Reeder, Virgina E. | | $210 | $210 | 2.6 | 0.04% | $546.00 | 0.02% |
| Bailey, Adam P. | | $195 | $195 | 3.4 | 0.06% | $663.00 | 0.03% |
| Simmons, Jessica | 1 | $195 | $195 | 40.4 | 0.67% | $7,878.00 | 0.30% |
| Moore, Monica L. | | $190 | $190 | 1 | 0.02% | $190.00 | 0.01% |
| Obra, Justin | 3 | $190 | $190 | 1.5 | 0.02% | $268.00 | 0.01% |
| Merritt, Alexander | | $175 | $180 | 4.9 | 0.08% | $685.50 | 0.03% |
| Porcella, Nina | | $135 | $150 | 1.5 | 0.02% | $157.50 | 0.01% |
| Porcella, Nina | | $105 | $105 | | | | |

Total Hours Billed By Sheppard Mullin Through 10/18/2010: 6028.1

Total Fees Requested By Sheppard Mullin Through 10/18/2010: $2,396,065.50

**EXHIBIT 6**

**EXHIBIT 7**

**EXHIBIT B**

**Stonebrae Attorney Fees Billed By Cooper & Kirkham (Totals)**

| Timekeeper | Years As Attorney | Lowest Rate | Highest Rate | Hours Billed | Percentage of Total Hours Billed (by Cooper & Kirkham) | Total Dollars Billed | Percentage of Dollars Billed (by Cooper & Kirkham) |
|---|---|---|---|---|---|---|---|
| Cooper, Josef D. | 39 | $800 | $950 | 493.6 | 26.87% | $442,842.50 | 33.28% |
| Kirkham, Tracy R. | 35 | $675 | $825 | 893.3 | 48.62% | $709,492.50 | 53.31% |
| Bogdanov, John | 10 | $365 | $550 | 335.6 | 18.27% | $147,611.50 | 11.09% |
| Aarons, Rebecca | | $300 | $300 | 11.7 | 0.64% | $3,510.00 | 0.26% |
| Zatylovsky, Inna | | $265 | $265 | 103.1 | 5.61% | $27,321.50 | 2.05% |

| Total Hours Billed By Cooper & Kirkham Through 10/18/2010 | Total Fees Requested By Cooper & Kirkham Through 10/18/2010 |
|---|---|
| 1837.3 | $1,330,203.00 |

**EXHIBIT 7**

**EXHIBIT 8**

# EXHIBIT C
## Total Stonebrae Attorneys Fees Billed By Sheppard Mullin And Cooper & Kirkham

| Timekeeper | Years As Attorney | Lowest Rate | Highest Rate | Hours Billed | Percentage of Total Hours Billed | Total Dollars Billed | Percentage of Total Dollars Billed |
|---|---|---|---|---|---|---|---|
| Cooper, Josef D. (CK)* | 39 | $800 | $950 | 493.6 | 6.28% | $442,842.50 | 11.28% |
| Kirkham, Tracy R. (CK) | 35 | $675 | $825 | 893.3 | 11.36% | $770,492.50 | 18.07% |
| Atkins-Patterson, Phillip F. | 31 | $550 | $630 | 1905.2 | 24.22% | $1,173,243.00 | 29.89% |
| Manente, William T. | 36 | $615 | $615 | 2 | 0.03% | $1,230.00 | 0.03% |
| Story, Joan H. | 34 | $575 | $575 | 10.7 | 0.14% | $6,212.50 | 0.16% |
| Pracher, Maria C. | 30 | $560 | $560 | 0.2 | 0.00% | $112.00 | 0.00% |
| Bogdanov, John (CK) | 10 | $365 | $550 | 335.6 | 4.27% | $147,611.50 | 3.76% |
| Wilder, Loretta A. | 28 | $545 | $545 | 4.4 | 0.06% | $2,398.00 | 0.06% |
| Pineda, Olga A. | 14 | $425 | $520 | 639.5 | 8.13% | $332,540.00 | 8.09% |
| Friedman, Arthur J. | 19 | $445 | $515 | 316.8 | 4.03% | $157,186.00 | 4.00% |
| Vogel, Karin D. | 24 | $475 | $475 | 0.2 | 0.00% | $95.00 | 0.00% |
| Schmidt, Misti | 4 | $365 | $365 | 0.4 | 0.01% | $146.00 | 0.00% |
| White, Martin D. | 4 | $275 | $365 | 53.5 | 0.68% | $18,213.00 | 0.46% |
| Rusk, James F. | 4 | $275 | $340 | 116.9 | 1.49% | $35,722.50 | 0.91% |
| Valanqarasal, Roxana | 3 | $340 | $340 | 139.7 | 1.78% | $47,383.00 | 1.21% |
| Martinez, Serena F. | 3 | $330 | $330 | 350.1 | 4.45% | $115,533.00 | 2.94% |
| Snyder, David | 3 | $285 | $330 | 656.7 | 8.35% | $210,150.00 | 5.35% |
| Yip, Lai L. | 3 | $275 | $330 | 698 | 8.87% | $216,775.00 | 5.52% |
| Aarons, Rebecca (CK) | | $300 | $300 | 11.7 | 0.15% | $3,510.00 | 0.09% |
| English, Cassidy | 2 | $275 | $275 | 34.8 | 0.44% | $9,570.00 | 0.24% |
| Rose, Allen E. | | $270 | $275 | 236.6 | 3.01% | $64,997.00 | 1.66% |
| Sara, Elise | | $260 | $275 | 39.2 | 0.50% | $10,429.00 | 0.27% |
| Suvatsayanohed, Juthamas Judy | 4 | $275 | $275 | 80.3 | 1.02% | $22,082.50 | 0.56% |
| Lee, Adrienne W. | 2 | $270 | $270 | 226.9 | 2.88% | $61,263.00 | 1.56% |
| Mueller, Matthew M. | 2 | $270 | $270 | 52.8 | 0.67% | $14,256.00 | 0.36% |
| Tsao, Pamela | 2 | $270 | $270 | 198.5 | 2.52% | $53,595.00 | 1.37% |
| Zabylovsky, Inna (CK) | | $265 | $265 | 103.1 | 1.31% | $27,321.50 | 0.70% |
| Dolley, David A. | | $245 | $245 | 3.2 | 0.04% | $784.00 | 0.02% |
| Freitas, Richard | | $219 | $225 | 140.9 | 1.79% | $31,195.50 | 0.79% |
| Pimfrey, David L. | | $225 | $225 | 1.3 | 0.02% | $292.50 | 0.01% |
| Smith, Candi A. | | $190 | $225 | 2.4 | 0.03% | $456.00 | 0.01% |
| Smith, Sam | | $215 | $225 | 38.7 | 0.49% | $8,365.50 | 0.21% |
| Bernstein, Aline | | $215 | $215 | 14.6 | 0.19% | $3,139.00 | 0.08% |
| Sircar, Shoma | | $205 | $215 | 8.3 | 0.11% | $1,742.50 | 0.04% |
| Reeder, Virginia E. | | $210 | $210 | 2.6 | 0.03% | $546.00 | 0.01% |
| Bailey, Adam P. | | $195 | $195 | 3.4 | 0.04% | $663.00 | 0.02% |
| Simmons, Jessica | 1 | $195 | $195 | 40.4 | 0.51% | $7,878.00 | 0.20% |
| Moore, Monica L. | 3 | $190 | $190 | 1 | 0.01% | $190.00 | 0.00% |
| Obra, Justin | | $175 | $180 | 1.5 | 0.02% | $268.00 | 0.01% |
| Merritt, Alexander | | $135 | $150 | 4.9 | 0.06% | $685.50 | 0.02% |
| Porcella, Nina | | $105 | $105 | 1.5 | 0.02% | $157.50 | 0.00% |

Total Hours Billed Through 10/18/2010    7865.4

Total Fees Requested By Attorneys For Stonebrae Through 10/18/2010    $3,726,268.50

*(CK) denotes Cooper & Kirkham Timekeeper

**EXHIBIT 8**

**EXHIBIT 9**

# EXHIBIT D
## Total Toll Attorneys Fees Billed By Kasowitz Benson And Its Predecessor (Sideman & Bancroft)

| Timekeeper | Years As Attorney | Lowest Rate | Highest Rate | Hours Billed | Percentage of Total Hours Billed (by Toll Attorneys) | Total Dollars Billed | Percentage of Dollars Billed (by Toll Attorneys) |
|---|---|---|---|---|---|---|---|
| Cross, Robert R. (Sideman) | 37 | $525 | $525 | 0.5 | 0.01% | $262.50 | 0.02% |
| Putterman, Donald J. | 32 | $500 | $500 | 199.2 | 4.82% | $99,600.00 | 8.91% |
| Putterman, Donald J. (Sideman) | 32 | $500 | $500 | 26.5 | 0.64% | $13,250.00 | 1.19% |
| Kingston, Emily J. (Sideman) | 23 | $475 | $475 | 0.2 | 0.00% | $95.00 | 0.01% |
| Ziemianek, Margaret | 7 | $275 | $375 | 72.7 | 1.76% | $24,507.50 | 2.19% |
| Rabkin, Rebecca N. | 5 | $365 | $365 | 2.5 | 0.06% | $912.50 | 0.08% |
| McNamara, Christopher J. | 10 | $337.50 | $337.50 | 1301.54 | 31.53% | $439,269.75 | 39.29% |
| Meckfessel, Ryan J. (Sideman) | 10 | $274.50 | $274.50 | 105.5 | 2.56% | $28,959.75 | 2.59% |
| de Ayora, Emily d. | 4 | $250 | $250 | 1160.2 | 28.10% | $290,050.00 | 25.94% |
| Hsu-Nordstedt, Betty (Sideman) | 11 | $247.50 | $247.50 | 1.8 | 0.04% | $445.50 | 0.04% |
| Ziemianek, Margaret (Sideman) | 7 | $234 | $234 | 84.8 | 2.05% | $19,843.20 | 1.77% |
| Synder, Tobias | Summer Associate | $225 | $225 | 2.4 | 0.06% | $540.00 | 0.05% |
| Dinglasen, Lesa | | $215 | $215 | 544.5 | 13.19% | $117,067.50 | 10.47% |
| Basista, Carolyn M. | | $200 | $200 | 6.8 | 0.16% | $1,360.00 | 0.12% |
| Calarco, Karen L. (Sideman) | | $195 | $195 | 0.4 | 0.01% | $78.00 | 0.01% |
| Albuquerque, Thomas J. | | $175 | $175 | 17.7 | 0.43% | $3,097.50 | 0.28% |
| Russell, Rashaan | | $165 | $165 | 3.8 | 0.09% | $627.00 | 0.06% |
| Ma, Bill | | $155 | $155 | 13.9 | 0.34% | $2,154.50 | 0.19% |
| Pierre, Shon | | $155 | $155 | 18.5 | 0.45% | $2,867.50 | 0.26% |
| Nathan, Aaron | | $150 | $150 | 2.5 | 0.06% | $375.00 | 0.03% |
| White, Amy | | $150 | $150 | 20.2 | 0.49% | $3,030.00 | 0.27% |
| Kedzierski, Ewelina | | $135 | $135 | 2.5 | 0.06% | $337.50 | 0.03% |
| Yee, Elaine | | $130 | $130 | 375.9 | 9.10% | $48,867.00 | 4.37% |
| Fong, Louise | | $125 | $125 | 145.6 | 3.53% | $18,200.00 | 1.63% |
| Li, Joyce | | $125 | $125 | 6 | 0.15% | $750.00 | 0.07% |
| Luttrell, Eric | | $125 | $125 | 1.2 | 0.03% | $150.00 | 0.01% |
| Radeva, Ginka | | $125 | $125 | 8 | 0.19% | $1,000.00 | 0.09% |
| Wong, Roderick | | $125 | $125 | 3.2 | 0.08% | $400.00 | 0.04% |
| TOTALS | | | | 4128.54 | | $1,118,097.20 | |

| Total Hours Billed By Toll Attorneys Through 10/18/2010 | Total Dollars Billed By Toll Attorneys Through 10/18/2010 |
|---|---|
| 4128.54 | $1,118,097.20 |

Page 1 of 1

**EXHIBIT 9**

**EXHIBIT 10**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TOLL BROTHERS, INC., | ) | Case No. 08-987 SC |
| Plaintiff, | ) ) | ORDER GRANTING IN PART AND DENYING IN |
| v. | ) ) | PART DEFENDANTS' MOTION FOR ATTORNEYS' |
| CHANG SU-O LIN; HONG LIEN LIN; HONG YAO LIN, | ) ) | FEES, EXPERT FEES AND COSTS |
| Defendants. | ) ) | |
| AND RELATED COUNTER-CLAIMS. | ) ) | |

**I.   INTRODUCTION**

This case concerned the requirements of a Purchase and Sale Agreement ("PSA") entered into between Chang Su-O Lin, Hong Lien Lin, and Hong Yao Lin (the "Lins") and Toll Brothers, Inc. ("Toll"). See Docket No. 216 ("Decision"). Presently before the Court is the Lins' Motion for Attorneys' Fees, Expert Fees, and Costs. Docket No. 218 ("Motion"). The Lins also submitted a Bill of Costs. Docket No. 220. Toll filed an Opposition, and the Lins submitted a Reply. Docket Nos. 221, 222. For the reasons stated herein, the Motion is GRANTED IN PART and DENIED IN PART.

**II.   BACKGROUND**

Following trial, the Court concluded that the Lins did not breach the PSA, and that Toll breached the PSA by failing to close on Sub-Area 3 and by terminating the PSA on December 7, 2007.

United States District Court
For the Northern District of California

**EXHIBIT 10**

1 Decision at 44. Under the liquidated damages provision of the

2 PSA, the Lins were entitled to retain the deposit in the amount of

3 $7,735,000. Id. The Court determined that the Lins were the

4 prevailing party, and were entitled to recover their attorneys'

5 fees and costs. Id.

6     The Purchase and Sale Agreement contains an attorneys' fees

7 provision:

8         If any legal action or other proceeding is
commenced to enforce or interpret any

9         provision of, or otherwise relating to, this
Agreement, the losing party shall pay the

10         prevailing party's actual expenses incurred in
the investigation of any claim leading to the

11         proceeding, preparation for and participation
in the proceeding, any appeal or other post

12         judgment motion, and any action to enforce or
collect the judgment including contempt,

13         garnishment, levy, discovery and bankruptcy.
For this purpose, "expenses" include, without

14         limitation, court or other proceeding costs
and experts' and attorneys' fees and their

15         expenses. The phrase "prevailing party" shall
mean the party who is determined in the

16         proceeding to have prevailed or who prevails
by dismissal, default or otherwise.

17

18 Second Am. Compl., Docket No. 39, Ex. A ("PSA") § 18.1. Based on

19 this provision in the contract, the Lins initially contended they

20 were entitled to recover attorneys' fees totaling $1,381,493.00,

21 expert fees totaling $111,886.00, statutory costs totaling

22 $78,099.00, and additional expenses totaling $4221.00. Mot. at 2.

23 The Lins seek an additional $35,282.50 for fees incurred preparing

24 the Motion, the Bill of Costs, the Reply and other post-trial

25 work, and an additional $2379.10 in costs. Docket No. 224 ("Beers

26 Decl. in Supp. of the Lins' Reply"). This adds up to a request

27 for $1,416,775.50 for attorneys' fees, and $196,585.10 for costs.

28

2

**EXHIBIT 10**

1    III. **LEGAL STANDARD**

2          The American rule, under which each party to a lawsuit must

3    ordinarily pay his or her own attorneys' fees, does not apply

4    where the parties have agreed to allocate attorneys' fees by

5    contract. Gilbert v. Master Washer & Stamping Co., Inc., 87 Cal.

6    App. 4th 212, 216-17 (Ct. App. 2001).  Such agreements are

7    governed by California Civil Code section 1717(a), which provides

8    that:

9                   In any action on a contract, where the
                   contract specifically provides that attorney's
10                  fees and costs, which are incurred to enforce
                   that contract, shall be awarded . . . to the
11                  prevailing party, then . . . the party
                   prevailing on the contract . . . shall be
12                  entitled to reasonable attorney's fees in
                   addition to other costs. . . .  Reasonable
13                  attorney's fees shall be fixed by the court,
                   and shall be an element of the costs of suit.
14

15   Cal. Civ. Code § 1717(a).

16         The trial court has broad authority to determine the amount

17   of a reasonable fee.  PLCM Group v. Drexler, 22 Cal. 4th 1084,

18   1095 (2000).  The fee setting inquiry in California ordinarily

19   begins with the "lodestar," i.e., the number of hours reasonably

20   expended multiplied by the reasonable hourly rate.  Id.  The

21   reasonable hourly rate is that prevailing in the community for

22   similar work.  Id.  The lodestar figure may be adjusted, based on

23   consideration of factors specific to the case, in order to fix the

24   fee at the fair market value for the legal services provided.  Id.

25   The factors to be considered include the nature and difficulty of

26   the litigation, the amount involved, the skill required and

27   employed to handle the case, the attention given, the success or

28                                      3

**United States District Court**
For the Northern District of California

**EXHIBIT 10**

1  failure, and other circumstances in the case. EnPalm, LCC v.

2  Teitler Family Trust, 162 Cal. App. 4th 770, 774 (Ct. App. 2008).

3

4  **IV.  DISCUSSION**

5      **A.  Requested Attorneys' Fees**

6      The Lins' trial team included Steve McNichols ("McNichols"),

7  Everitt Beers ("Beers"), David Austin ("Austin"), Randy Sullivan

8  ("Sullivan"), Margaret Allen, and Susan Handelman ("Handelman").

9  Beers Decl. ¶ 3.[1]  McNichols was the Lins' lead counsel and his

10  hourly rate is $395. Id. ¶¶ 4-5.  McNichols has been practicing

11  civil litigation in the San Francisco Bay Area since 1974, and he

12  has tried over 150 jury trials and court trials to verdict. Id. ¶

13  5. McNichols supervised all aspects of the litigation, and during

14  trial, he handled the direct examination and cross-examination of

15  most of the non-expert witnesses. Id. ¶ 4.  The invoices show

16  that McNichols spent 1163.6 hours working on this case. See id.

17  Ex. A ("Monthly Invoices").  The Lins were therefore billed

18  $459,622 for McNichols' work on this case.

19      Beers was the Lins' second chair and his hourly billing rate

20  is $350. Id. ¶¶ 6-7.  Beers has been practicing civil litigation

21  in California since 1980. Id. ¶ 7.  In addition to working on

22  motions in this case, Beers was engaged in the retention,

23  preparation and trial examination of the Lins' five expert

24  witnesses. Id. ¶ 6.  He examined all expert witnesses called at

25  trial by both parties. Id.  The invoices show that Beers spent

26  _____

27      [1] Everitt Beers, a partner at McNichols Beers LLP, filed a
   declaration in support of the Motion.  Docket No. 219.

28                                    4

**EXHIBIT 10**

1    995.18 hours working on this case.  See Monthly Invoices.

2    Therefore, the Lins should have been billed $348,313 for Beers'

3    work.[2]

4         Austin is a senior associate at McNichols Beers LLP and his

5    hourly rate is $250.  Beers Decl. ¶ 9.  He has been practicing law

6    since 2001, and has tried several cases to judgment or verdict.

7    Id.  He was primarily responsible for researching and drafting

8    Defendants' Motion for Summary Judgment and opposing Plaintiff's

9    Motion for Judgment on the Pleadings.  Id. ¶ 8.  The invoices show

10   that Austin spent 518.8 hours working on this case, for which the

11   Lins were billed $129,700.  See Monthly Invoices.

12        Sullivan is an associate at McNichols Beers LLP and his

13   hourly rate is $225.  Beers Decl. ¶ 12.  He has been practicing

14   law since 2003.  Id.  He was involved in the discovery phase of

15   this litigation, took two depositions, and briefly examined two

16   witnesses during trial.  Id. ¶ 10.  The invoices show that

17   Sullivan spent 789.7 hours on the case, for which the Lins were

18   billed $177,682.50.  See Monthly Invoices.

19        Allen is a contract attorney and her hourly rate on this

20   matter was $175.  Beers Decl. ¶¶ 13-14.  She received her law

21   degree in 1984.  Id. ¶ 14.  Allen researched motions and reviewed

22   documents and deposition transcripts.  Id. ¶ 13.  The invoices

23   show that Allen spent 239.2 hours working on this case, and the

24   Lins were billed $41,860.  See Monthly Invoices.

25        Susan Handelman is a partner with the law firm Ropers,

27        [2] The Invoice shows a total of $348,314.17.

28                                    5

United States District Court
For the Northern District of California

**EXHIBIT 10**

United States District Court
For the Northern District of California

1  Majeski, Kohn & Bentley, and her hourly rate is $350.  Beers Decl.

2  ¶ 15.  She is certified as an appellate specialist by the State

3  Bar of California.  Id.  Handelman was consulted regarding

4  potential appellate issues.  Id.  The Lins allege that Handelman

5  incurred fees in the amount of $3885.00, but the only evidence

6  presented shows that the Lins were charged $1750.00 for

7  Handelman's services.  See Decl. of Beers in Supp. of the Lins'

8  Reply.  The Court will only include Handelman's fee of $1750.00 in

9  its calculation of reasonable attorneys' fees.

10      The Lins' team also included paralegals Lori Mikkelson,

11  Jennifer DeCoite, Katherine Dayton, and Nicholas Settlemeyer.

12  Submitted invoices show that Mikkelson worked on the case for

13  374.7 hours at a rate of $100 per hour, which totals $37,470.  See

14  Monthly Invoices.  DeCoite worked on the case for 938.9 hours at a

15  rate of $100 per hour, which totals $93,890.  See id.  Dayton

16  worked on the case for 741 hours at a rate of $100 per hour, which

17  totals $74,100.  See id.  Settlemeyer worked on the case for 297.1

18  hours at a rate of $50 per hour, which totals $14,855.  See id.

19  **B.   Toll's Opposition to Requested Attorneys' Fees**

20      Toll presents a number of challenges to the Lins' request for

21  attorneys' fees.  Opp'n at 3-7.  First, Toll contends the Lins

22  cannot recover fees incurred on claims that they voluntarily

23  dismissed at trial.  Id. at 4-5.  Second, Toll contends the Lins

24  should not recover fees incurred prior to the filing of the

25  lawsuit.  Id. at 5.  Third, Toll contends the Lins should not

26  recover attorneys' fees incurred on unnecessary motions.  Id. at

27  5-6.  Fourth, Toll contends the Lins' attorneys' fees should be

28                                    6

**EXHIBIT 10**

United States District Court
For the Northern District of California

1  reduced under the billing judgment rule. <u>Id.</u> at 6-7.  The Court

2  addresses each challenge in turn.

3      During trial, the Lins moved to dismiss their fourth, fifth,

4  and sixth counterclaims. <u>See</u> Docket No. 187 ("Motion to

5  Dismiss").  These counterclaims related to Toll's assignment of

6  Sub-Area 2 to Regent Land Investment LLC ("Regent").  Mot. to

7  Dismiss at 3.  The Court granted the Motion to Dismiss. <u>See</u>

8  Docket No. 192.  Toll contends that the Lins cannot recover

9  attorneys' fees for work performed on these claims that were

10 voluntarily dismissed.  In support of this contention, Toll relies

11 on <u>Glencoe v. Neue Sentimental Film AG</u>, 168 Cal. App. 4th 874 (Ct.

12 App. 2008).

13     That case, however, does not support Toll's position.  In

14 <u>Glencoe</u>, the court held that when the plaintiff dismissed the

15 entire action with prejudice after the start of trial, the

16 defendant could not be considered the prevailing party and

17 therefore was not entitled to attorneys' fees.  168 Cal. App. 4th

18 at 877-78.  Here, the Lins are the prevailing party because the

19 Court found that the Lins did not breach the PSA, and that Toll

20 breached the PSA by failing to close on Sub-Area 3 and by

21 terminating the PSA on December 7, 2007. <u>See</u> Decision at 44.  The

22 Court found that the Lins were entitled to keep the deposit of

23 $7,735,000 relating to Sub-Area 3. <u>Id.</u>  <u>Glencoe</u> does not support

24 reducing the attorneys' fee award.  However, as the Court explains

25 below, the fact that the Lins' attorneys spent a considerable

26 amount of time on unsuccessful arguments does warrant reducing the

27 lodestar figure in this case.

28

7

**EXHIBIT 10**

**United States District Court**
For the Northern District of California

1     Second, Toll contends the Lins should not recover fees

2  incurred prior to the filing of the lawsuit.  As Toll notes, this

3  action was filed on February 19, 2008.  See Docket No. 1

4  ("Compl.").  According to Toll, the Lins seek the recovery of

5  $53,574 based on 144 hours of attorney time spent between October

6  17, 2007 and February 19, 2008, but the Lins offer no explanation

7  for why these pre-suit fees were necessary or reasonable.  Opp'n

8  at 5.

9     Toll cites no authority showing that the Lins cannot recover

10  pre-litigation fees.  The PSA expressly provides that the losing

11  party shall pay the prevailing party's expenses incurred

12  investigating and preparing for the proceeding.  PSA § 18.1.

13  Based on the evidence presented at trial, the Court notes that the

14  parties must have realized as early as April 13, 2007, that their

15  dispute might result in litigation.  On that date, Toll's

16  attorney, Warren Inouye, sent the Lins a letter putting the Lins

17  on notice of a possible default under the PSA.  Ex. P-108.  On

18  June 27, 2007, Toll sent the Lins a letter that was intended "to

19  serve as notice of Seller's default under the Agreement."  Ex. P-

20  139.  Certainly after escrow failed to close on Sub-Area 3 on June

21  30, 2007, as scheduled, it would have been reasonable for the Lins

22  to begin investigating and preparing for litigation.  The billing

23  invoices show that attorneys from McNichols Beers LLP started

24  working on the case on October 17, 2007.  See Monthly Invoices.

25  Much of their early work was focused on trying to resolve the

26  dispute via mediation.  See id.  The Court finds that the Lins are

27  entitled to an award of attorneys' fees for work performed

28

8

**EXHIBIT 10**

1    investigating and preparing for the proceeding that commenced on

2    February 19, 2008.

3         Third, Toll contends the Lins should not recover attorneys'

4    fees incurred on unnecessary motions.  Toll argues that the Lins'

5    motion for summary judgment and their motion for judgment on

6    partial findings at trial were completely unnecessary.  Opp'n at

7    5-6.  The Court disagrees.  It was not improper to file these

8    motions, and the arguments presented were not frivolous.  See Mot.

9    for Summary Judgment; Docket No. 197 ("Motion for Judgment on

10   Partial Findings.").  Toll cites to no authority suggesting that

11   attorneys' fees should not be awarded merely because a motion is

12   denied.

13        **C.**   **Determining Reasonable Attorneys' Fees**

14        Finally, Toll contends that the billing judgment rule

15   requires reducing the Lins' attorneys' fees.  Opp'n at 6.  The

16   Supreme Court has emphasized that a fee applicant should "exercise

17   'billing judgment' with respect to hours worked."  Hensley v.

18   Eckerhart, 461 U.S. 424, 437 (1983).  "Counsel for the prevailing

19   party should make a good-faith effort to exclude from a fee

20   request hours that are excessive, redundant, or otherwise

21   unnecessary . . . ."  Id. at 434.  Toll argues that the Lins'

22   attorneys did not exercise billing judgment because (1) Mr. Beers

23   spent at least thirty hours on legal research regarding the Black

24   Hills case, which was also researched by other attorneys at his

25   firm, (2) individual attorneys billed in excess of eight hours per

26   day on sixty-five occasions, not including the time spent in

27   trial, and (3) there were numerous, apparently redundant, meetings

28

9

**EXHIBIT 10**

1     among attorneys, experts, and witnesses.  Opp'n at 6.

2        The Court agrees that the Lins request for attorneys' fees of

3     $1,416,775.50 is excessive.  The lodestar figure is based on the

4     number of hours reasonably expended multiplied by the reasonable

5     hourly rate.  PLCM, 22 Cal.4th at 1095 (2000).  When arriving at a

6     lodestar figure, the Court must determine "the reasonable, not

7     actual, number of hours expended by counsel for the prevailing

8     party."  EnPalm, 162 Cal. App. 4th at 774 n.4.  The Court has

9     reviewed the billing records submitted by the Lins, and, for the

10    most part, the Court finds that they are reasonable.  For example,

11    while Toll complains that the Lins' attorneys often billed more

12    than eight hours a day, a review of the invoices show that these

13    long days were always warranted, and they often occurred prior to

14    major filing deadlines in the case, such as in December 2008.  See

15    Monthly Invoices.

16       However, there are several exceptions.  First, the Court

17    finds that it was not reasonable for Beers -- who has a high

18    billing rate of $350 per hour -- to spend over thirty hours

19    researching the Black Hills issue.  The Court notes, for example,

20    that on November 18, 2008, Beers spend 8.2 hours on the issue.

21    See Monthly Invoices.  This work could have been performed by

22    attorneys with lower billing rates, and indeed, other attorneys at

23    the firm were also researching the same issue.  See id.  The Court

24    finds that it would have been reasonable for Beers to spend no

25    more that ten hours on the issue, and reduces the lodestar figure

26    accordingly.

27       Second, the Lins' request $35,282.50 in attorneys' fees for

28

**EXHIBIT 10**

United States District Court
For the Northern District of California

1    post-trial work on this Motion, the Bill of Costs, and their

2    Reply.  Decl. of Beers in Supp. of the Lins' Reply.  While fees

3    and costs associated with pursuit of a motion for attorneys' fees

4    are recoverable, <u>Doran v. Corte Madera Inn Best Western</u>, 360 F.

5    Supp. 2d 1057, 1062 (N.D. Cal. 2005), the Court finds the Lins'

6    request to be excessive.  The Lins' attorneys spent over 100 hours

7    on this work, with the vast majority of the work being performed

8    by McNichols and Beers, the two attorneys at the firm with the

9    highest billing rates.  <u>See</u> Decl. of Beers in Supp. of the Lins'

10   Reply.  Much of this work could have been performed by attorneys

11   with lower billing rates, or by paralegals, and therefore the

12   Court reduces the request for $35,282.50 by fifty percent.

13       The Court therefore sets the lodestar figure at

14   $1,389,883.75.  This figure is based on a finding that it was

15   reasonable for the Lins' attorneys to bill $1,169,568.75,[3] and it

16   was reasonable for the Lins' paralegals to bill $220,315.00.[4]

17       Next, the Court must determine whether the lodestar figure

18   should be reduced based on factors including the nature and

19   difficulty of the litigation, the amount involved, the skill

20

21       [3] McNichols billed $459,622.00; Beers should have billed
     $341,313.00 (975.18 hours at $350 per hour); Austin billed
22   $129,700.00; Sullivan billed $177,682.50; and Allen billed
     $41,860.00.  <u>See</u> Monthly Invoices.  Handelman billed $1750.00.  <u>See</u>
23   Decl. of Beers in Supp. of the Lins' Reply.  This figure also
     includes an award of $17,641.25 for the post-trial request of fees.

24       [4] Mikkelson billed $37,470.00; DoCoite billed $93,890.00;
25   Dayton billed $74,100.00; and Settlemeyer billed $14,855.00.  <u>See</u>
     Monthly Invoices.  Many statutory provisions in California have
26   been interpreted to include paralegal fees in attorneys' fees.
     <u>See</u>, <u>e.g.</u>, <u>Guinn v. Dotsun</u>, 23 Cal. App. 4th 262, 268-70 (Ct. App.
27   1994).  Toll does not dispute that paralegal fees can be included
     in the Lins' attorneys' fees award.

28                                    11

**EXHIBIT 10**

United States District Court
For the Northern District of California

1   required and employed to handle the case, the attention given, the

2   success or failure, and other circumstances in the case. EnPalm,

3   162 Cal. App. 4th at 774.  The Court begins by noting that this

4   was a case of considerable size, length, and complexity, where

5   $7,735,000 was at stake.  A review of the Lins' invoices reveals

6   that discovery in this case was extensive.  The Lins' attorneys

7   were required to review documents from many sources, including the

8   city of Dublin, Pacific Gas & Electric, Regent, Robert Gray &

9   Associates, and McKay & Somps.  See Monthly Invoices.  Nineteen

10  depositions were taken, and both sides retained numerous expert

11  witnesses.  See id.  The trial lasted ten court days, and involved

12  approximately 900 exhibits.

13      Success is one of the factors that the Court can take into

14  account when determining if the lodestar figure should be reduced.

15  See EnPalm, 162 Cal. App. 4th at 774; see also Clejan v. Reisman,

16  5 Cal. App. 3d 224, 241 (Ct. App. 1970) (listing "the success of

17  the attorney's efforts" as factor in determining reasonable

18  attorneys' fee).  Here, some of the Lins' key legal arguments were

19  not successful.  The Lins spent a significant amount of time, both

20  pre-trial and during trial, trying to convince the Court that Toll

21  failed to perform a condition precedent by failing to transfer the

22  school site to the Lins.  See, e.g., Mot. for Summary Judgment;

23  Docket No. 150 ("Defs.' Trial Br.").  The Court concluded that

24  Toll's failure to reconvey the school site was not a failure to

25  perform a condition precedent.  Decision at 41.  While the Lins

26  were the prevailing party in this case, they prevailed due to

27  considerations not explicitly presented by their attorneys.  The

28                                  12

**EXHIBIT 10**

United States District Court
For the Northern District of California

1  Court found that the failure to reconvey the school site permitted

2  the Lins to extend the date for the close of escrow on Sub-Area 3,

3  which meant that the Lins were not in breach of the PSA on the

4  scheduled closing date, and Toll breached the PSA by terminating

5  the contract on December 7, 2007. Id. at 33-34, 41-42. Also, the

6  Court concluded that Toll did not breach the covenant of good

7  faith and fair dealing. Id. at 42-43. Because the Lins failed to

8  persuade the Court concerning some of their key arguments, the

9  Court exercises its discretion to reduce the lodestar figure by

10  twenty percent. See EnPalm, 162 Cal. App. 4th at 773-78

11  (affirming trial court's reduction of lodestar figure by ninety

12  percent based on circumstances of the case). The Court awards the

13  Lins attorneys' fees in the amount of $1,111,907.00.

14      D.  **Expert Fees Not Recoverable**

15      The Lins contend they are entitled to an award of their

16  expert fees because the PSA expressly provides for expert fees in

17  its definition of recoverable expenses. Mot. at 11; PSA § 18.1.

18  The Lins' expert fees are $111,886.50. See Bill of Costs Ex. A

19  ("Itemization in Support of Bill of Costs") at 5. However, the

20  law is clear that "assuming expert witness fees may be recovered

21  under a contractual provision, they must be specially pleaded and

22  proven at trial rather than included in a memorandum of costs."

23  Ripley v. Pappadopoulos, 23 Cal. App. 4th 1616, 1627 (Ct. App.

24  1994); see also Carwash of America-PO LLC v. Windswept Ventures

25  No. I, LLC, 97 Cal. App. 4th 540, 544 (Ct. App. 2002) ("[E]ven

26  where expert witness fees are expressly allowed by contract, this

27  does not mean such fees may be recovered as an item of costs.");

28

**EXHIBIT 10**

United States District Court
For the Northern District of California

1   Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1257 (9th Cir.

2   1997)(expert witness fees not recoverable costs).   Arntz

3   Contracting Co. v. St. Paul Fire & Marine Insurance Co. does not

4   support an award of expert fees because, in that case, the court

5   was focused on "the situation of a broad contractual cost

6   provision where litigation expenses are specially pleaded and

7   proven at trial."   47 Cal. App. 4th 464, 491 (Ct. App. 1996).   The

8   Lins did not specially plead and prove their expert fees at trial,

9   and so they are not entitled to include expert fees in their

10   costs.

11        The Lins' reliance on Bussey v. Affleck, 225 Cal. App. 3d

12   1162 (Ct. App. 1990), and Beasley v. Wells Fargo Bank, 235 Cal.

13   App. 3d 1407 (Ct. App. 1991), is misplaced.   In Beasley, the court

14   relied on Bussey, and held that, under section 1021.5 of the

15   California Code of Civil Procedure, a party can recover expert

16   witness fees when the litigation results in a public benefit.   235

17   Cal. App. 3d at 1421-22.   Here, the litigation did not benefit the

18   public.   In Bussey, the court included expert fees in an award of

19   attorneys' fees, but that decision has been repeatedly rejected by

20   subsequent decisions.   See, e.g., Benson v. Kwikset Corp., 152

21   Cal. App. 4th 1254, 1280-81 (Ct. App. 2007) (noting that every

22   subsequent published decision has rejected Bussey's approach).

23   The Court concludes that the Lins are not entitled to an award of

24   expert fees as part of their costs, and therefore the Court

25   reduces the Lins' award for costs by $111,886.50.

26        **E.   Other Costs**

27        In addition to attorneys' fees and expert fees, the Lins seek

28                                  14

**EXHIBIT 10**

1 recovery of all their other litigation costs under the statutory

2 authority of 28 U.S.C. § 1920, Civil Local Rule 54-3, and the

3 express terms of the PSA. Mot. at 12. The Lins' submitted a Bill

4 of Costs. Docket No. 220.

5     This Court may tax "the costs of making copies of any

6 materials where the copies are necessarily obtained for use in the

7 case." 28 U.S.C. § 1920(4). The Lins' copying costs total

8 $44,717.57. <u>See</u> Itemization in Supp. of Bill of Costs at 3. Toll

9 objects to the Lins' request for copying expenses on the basis

10 that the Lins make no distinction between in-house photocopying

11 expenses, expenses for copies tendered to the Court, or provided

12 to opposing counsel. Opp'n at 9. Toll contends that the Lins are

13 not entitled to an award of any copying costs. <u>Id.</u>

14     In some instances, the Court can determine that the Lins'

15 copies were necessarily obtained for use in the case, but in many

16 instances, the Court is unable to do so. <u>See</u> Itemization in Supp.

17 of Bill of Costs. For example, there is no description of the

18 fax, copy, and print charges for the month of December 2008, which

19 totaled $4,140.75. <u>Id.</u> at 2. Based on the Court's inability to

20 determine if many of these copying costs were necessary, the Court

21 reduces the Lins' award for copying costs by fifty percent.

22 <u>Accord</u> <u>Montgomery County v. Microvote Corp.</u>, No. 97-6331, 2004 WL

23 1087196, at *8 (E.D. Pa. May 13, 2004) (reducing copying costs by

24 fifty percent where court unable to evaluate necessity of costs).

25 The Court reduces the Lins' copying costs to $22,358.79.

26     While the PSA contains a broad expense recovery provision,

27 the Court finds that the Lins cannot recover costs that exceed

28                     15

**EXHIBIT 10**

those provided for under 28 U.S.C. § 1920.  The Lins seek to

recover $1,765.75 for courier and overnight delivery charges, and

$83.49 for postage charges.  See Itemization in Supp. of Bill of

Costs at 4, 6.  These costs are not recoverable under the statute.

See United States v. Shasta Servs., Inc., No. 04-1955, 2007 U.S.

Dist. LEXIS 40590, at *2 (E.D. Cal. May 22, 2007) ("Neither mail

nor courier fees can properly be taxed."); Justin Kraft & Kraft

Piano Servs., LLC v. Arden, No. 07-487, 2009 U.S. Dist. LEXIS

1527, at *25 (D. Or. Jan. 8, 2009) ("Costs for courier, mail,

telephone, and fax charges are outside the scope of § 1920.").

The Lins seek to recover $425.58 for their mediator fee.

Itemization in Supp. of Bill of Costs at 6.  This cost is not

recoverable.  See McAfee v. Metro. Life Ins. Co., No. 05-0227,

2008 U.S. Dist. LEXIS 100765, at *52 (E.D. Cal. Dec. 11, 2008).

The Lins seek to recover $669.98 for online research.  Itemization

in Supp. of Bill of Costs at 6.  This cost is not recoverable.

Tasakos v. Welliver Mental Prods. Corp., No. 04-6205, 2005 U.S.

Dist. LEXIS 4654, at *5 (D. Or. Mar. 16, 2005).  The Lins seek to

recover $851.62 for travel expenses.  Beers Decl. in Supp. of Bill

of Costs ¶ 13.[5]  Travel costs are not recoverable.  McAfee, 2008

U.S. Dist. LEXIS 100765 at *52.

Finally, Toll objects to the Lins' request for $181.25 for

transcription services.  Opp'n at 10.  These transcription

---

[5] The Bill of Costs includes a declaration by Everitt Beers.
See Docket No. 220.  There is a discrepancy between this
declaration, and the itemized list, which seeks $1,095.91 for
travel expenses.  See Itemization in Supp. of Bill of Costs at 6.
The discrepancy has no impact on the Court's calculations because
the Court does not award travel expenses.

16

United States District Court
For the Northern District of California

EXHIBIT 10

United States District Court

For the Northern District of California

1  services were for interrogatories, a rough draft letter, and

2  Defendants' closing brief. <u>See</u> Itemization in Supp. of Bill of

3  Costs at 6. While the Court may tax as costs the fees for

4  necessary transcripts, <u>see</u> 28 U.S.C. § 1920(2), the Court is not

5  convinced that these transcription services were necessary. The

6  Court will reduce the Lins' cost award accordingly. Costs are

7  taxed in favor of the Lins in the sum of $56,460.46.[6]

8

9  **V.    CONCLUSION**

10     For the reasons stated above, the Court AWARDS the Lins

11  $1,111,907.00 in attorneys' fees, and $56,460.46 in costs.

12

13     IT IS SO ORDERED.

14

15     Dated: June 25, 2009

16                                    _____

17                                    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23  _____

24     [6] The cost award is based on $22,358.79 for copying costs,
    $15,121.46 for deposition transcripts, $1131.31 for trial exhibits,

25  $2223.00 for service of process, $13,505.80 for trial transcripts,
    and $2120.10 for witness fees. <u>See</u> Bill of Costs. The Court is

26  not persuaded that the Lins are entitled to their post-trial costs.
    Mail and courier costs are not recoverable, and the Court cannot

27  determine if the copying charges were necessary. <u>See</u> Beers Decl.
    in Supp. of the Lins' Reply.

28                                    17

**EXHIBIT 10**