SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
PHILIP F. ATKINS-PATTENSON, Cal. Bar No. 94901
ARTHUR J. FRIEDMAN, Cal. Bar No. 160867
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415-434-9100
Facsimile:   415-434-3947
E-Mail:   patkinspattenson@sheppardmullin.com
         afriedman@sheppardmullin.com

COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
TRACY R. KIRKHAM, Cal. Bar No. 69913
357 Tehama Street, 2nd Floor
San Francisco, CA 94103-4169
Telephone:   415-788-3030
Facsimile:   415-882-7040
E-Mail:   jdc@coopkirk.com
         trk@coopkirk.com

Attorneys for Plaintiff and Counter-Defendant
STONEBRAE L.P.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| STONEBRAE L.P., a Delaware limited partnership,<br><br>            Plaintiff,<br><br>   v.<br><br>TOLL BROS., INC.; a Pennsylvania corporation; TOLL BROTHERS, INC., a Pennsylvania corporation; DOES 1 through 15, inclusive,<br><br>            Defendants. | Case No. C 08-00221-EMC<br><br>**REPLY DECLARATION OF RICHARD M. PEARL IN SUPPORT OF PLAINTIFF STONEBRAE'S MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES**<br><br>Date:   March 16, 2011<br>Time:   10:30 a.m..<br>Dept.:   Courtroom C, 15th Fl.<br><br>Trial Date:   February 28, 2011<br>           [Vacated] |

I, Richard M. Pearl, hereby declare:

I am an attorney admitted to practice before all courts in the State of California and am a member of the bar of this Court in good standing.

1. I have personal knowledge of the matters stated herein and, if called as a witness, could and would competently testify thereto.

2. I reviewed the pleadings filed by Defendant and Counter-Claimant Toll Bros., Inc. ("Toll") in opposition to the motion by Stonebrae L.P. ("Stonebrae") for award of attorneys' fees, taxable and non-taxable costs, and am familiar with the contents thereof.

3. I make this Reply Declaration in further support of Stonebrae's motion for award of attorneys' fees, taxable and non-taxable costs.

4. In its Opposition, Toll challenges the probative value of my original Declaration in this matter. (Dkt. # 257.) More specifically, Toll contends that the data on hourly rates presented in my Declaration is not probative because it gives rates only for major law firms doing more complex litigation. However, earlier versions of my same declaration have been relied on and/or cited in numerous reported fee decisions involving firms of all size doing comparable work, including as recently as this year by the Ninth Circuit in one of Mr. Rosen's cases. *See Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir. 2010). The expert declaration referred to in that opinion is mine, and it contains essentially the same data as my earlier Declaration in this matter.

5. As the reported facts show, that case, which involved enforcement of a settlement agreement and motion for an award of attorneys' fees, was, at that stage of that litigation, *less* complex than this case.

6. Other fee decisions citing and relying on the rate information contained in my Declarations include, *e.g., Prison Legal News v. Schwarzenegger,* 561 F.Supp.2d 1095 (N.D. Cal. 2008) (an earlier motion in the same case); *Oberfelder v. City of Petaluma,* 2002 U.S.Dist. LEXIS 8635 (N.D. Cal. 2002)(an individual police misconduct action), *aff'd* 2003 U.S.App.LEXIS 11371 (9th Cir. 2003); *Bancroft v.*

-1-

1  *Trizechahn Corp.*, C.D. Cal. No. CV 02-2373 SVW (FMOx), Order Granting Reasonable
2  Attorneys' Fees etc., filed Aug. 14, 2006; *Willoughby v. DT Credit Corp.*, C.D. Cal. No.
3  CV 05-05907 MMM (Cwx), Order Awarding Reasonable Attorneys' Fees After Remand,
4  filed July 17, 2006; *A.D. v. California Highway Patrol*, 2009 U.S.Dist.LEXIS 110743
5  (N.D.Cal. 2009)(police misconduct action); *National Federation of the Blind v. Target
6  Corp.*, 2009 U.S.Dist.LEXIS 67139 (N.D.Cal. 2009); *Church of Scientology v.
7  Wollersheim*, 42 Cal.App.4th 628 (1996)(anti-SLAPP case); *Children's Hospital &
8  Medical Center v. Bonta*, 97 Cal.App.4th 740 (2002)(challenge to government decision);
9  *Wilkinson v. South City Ford*, 2010 Cal.App.Unpub. LEXIS 8680 (1st DCA Div. 1 (2010).
10  *See also Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000) (supporting rate
11  declarations improperly rejected because district court based rejection "on an idealized
12  standard of precision in fee applications that we do not require...")

13       7.  Toll's Opposition asserts that Stonebrae has not met its burden to
14  establish the reasonableness of its lodestar because its attorneys' invoices use so-called
15  "block billing." Nothing in federal or California law or practice supports such a claim, for
16  several reasons.

17       8.  First, California law does not require detailed time records at all.
18  Instead, trial courts have discretion to award fees based on declarations of counsel
19  describing the work they have done and the court's own view of the number of hours
20  reasonably spent. *See, e.g., Raining Data Corp. v Barrenechea* (2009) 175 Cal.App.4th
21  1363, 1375; *Weber v Langholz* (1995) 39 Cal.App.4th 1578, 1587 (upholding fee award
22  based on counsel's declaration, even though time records and billing statements not
23  provided); *Steiny & Co. v California Elec. Supply Co.* (2000) 79 CalApp.4th 285 (same);
24  *Sommers v Erb* (1992) 2 Cal.App.4th 1644, 1651 (fee claim based on estimate of number
25  of hours). Because detailed time records are not required at all under California law, there
26  is no required level of detail that counsel must achieve. *See, e.g., PLCM Group, Inc. v
27  Drexler* (2000) 22 Cal.4th 1084, 1098 ("We do not want 'a [trial] court, in setting an
28  attorney's fee, [to] become enmeshed in a meticulous analysis of every detailed facet of

-2-

the professional representation. It … is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps dwarfing the case in chief,'" quoting *Serrano v Unruh (Serrano IV)* (1982) 32 Cal.3d 621, 642. Here, of course, as the Court can see, Stonebrae's law firms presented detailed and unredacted invoices.

9. The use of "block billing" is, in my long experience involving attorneys' fee awards, the prevailing practice among California law firms. Over the last several years, I have reviewed the billing records of scores of California law firms, large and small. Most, if not the great majority, of these firms submit billing records that describe each time keepers' daily activities but provide only a single numerical total for each time keeper's activities that day – so-called "block billing." Such records are accepted both by clients who pay by the hour and by courts that must determine reasonable fees. The practice of providing only daily totals for the various tasks performed in one day, without giving a separate time value for each task or sub-task, only becomes an issue in fee applications when a significant amount of time is spent on non-compensable claims or tasks that are lumped together with compensable claims or tasks. That concern is not present here, however, because Stonebrae succeeded entirely on its claims in this litigation, and therefore no apportionment is required or appropriate.

10. Third, based on my experience, the use of "block billing" does not impede the determination of whether reasonable hours were spent in most cases because the important issue is how much time was spent on a particular document, phase, or event. *See, e.g, Jordan v. U.S. Dept. of Justice* (D.C. Cir. 1982) 691 F.2d 514, 520. Whether the time spent in a day consisted of 6 hours of drafting and 1 hour of conferring with counsel, or 5 hours of drafting and 2 hours conferring with counsel, makes no difference at all in that determination; different lawyers have different approaches to winning their clients' cases. Similarly, as a practical matter, it is both unduly time-consuming and cost-inefficient to interrupt a day spent working, for example, on a summary judgment brief to separately record the time spent on each phone call about the brief, or the time spent actually writing the brief versus time spent on legal or factual research, or the exact

-3-

amount of time spent on each section of the brief as it is being drafted. Generally all of these tasks are inextricably intertwined. Likewise, when, as here, all of the plaintiff's claims are related, no reduction is appropriate for time spent on unsuccessful claims, and therefore they need not be separately accounted for in counsel's time records. Accordingly, many courts recognize that block billing is not automatically suspect or grounds for a fee reduction, even under the more stringent federal standards. *See, e.g., United Steelworkers v Retirement Income Plan* (9th Cir 2008) 512 F3d 555, 565 (rejecting defendant's arguments that fees should have been reduced for insufficient description and block billing); *Nightingale v Hyundai Motor Am.* (1994) 31 Cal.App.4th 99, 103 ("block billings" acceptable when court can determine that hours claimed were reasonable for tasks described); *A.D. v California Highway Patrol* (N.D.Cal. 2009) 2009 U.S.Dist.LEXIS 110743 ("block billing" summaries "sufficiently describe the tasks performed to enable … review of the fee petition"); *Electronic Frontier Foundation v. Office of the Director of National Intelligence,* 2008 U.S.Dist.LEXIS 44050, at *15-16 (N.D.Cal. 2008) ("block billing may be appropriate when the tasks listed in a block are related"); *Oberfelder v City of Petaluma* (N.D. Cal, Jan. 29, 2002, No. C-98–1470 MHP) 2002 US Dist Lexis 8635, *9, *aff'd* (9th Cir. 2003) 2003 U.S.App.LEXIS 11371 (block billing "does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures").

11. A centerpiece of Toll's Opposition, and a criticism of my earlier Declaration, is that "real estate litigation" is a distinct market for legal services. Toll claims that my Declaration does not adequately address the specialized "real estate litigation" market, which Toll contends does not generally involve "complex" litigation, is highly competitive, and commands lower rates than those Stonebrae paid here. There are several problems with Toll's argument.

12. First, the case law clearly establishes that the hourly rates requested in fee-shifting cases are reasonable if they are "in the range of" or "in line with" the rates

-4-

charged by attorneys of reasonably comparable background, skill, and experience performing reasonably similar services. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984). In determining whether services are similar, the courts may not restrict themselves to the particular area of law (*i.e.*, civil rights, consumer, Workers Compensation), but must look to the type of work performed – in this case, hard-fought federal civil litigation against a well-funded, well-represented opponent. *See, e.g., Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir. 2010). In litigation, clients generally pay for litigation and strategic experience and skills, not expertise in a particular subject area. *See, e.g., Russell v. Foglio,* 160 Cal.App.4th 653, 661(2006). Thus, any specialized "real estate litigation," market, even assuming such a market exists, does not itself define the parameters of the range of reasonable rates.

13. Second, YCS Investments, a sophisticated and successful company, has found these rates reasonable for real estate litigation, in this and prior cases. Obviously, it believes that the skills and experience that Sheppard Mullin and Cooper & Kirkham bring to its litigation are well worth the rates being charged. In my opinion, this is certainly strong evidence that the rates are within the range of rates charged and paid for comparable services. And in fact, counsel's demonstrated skill and experience, in litigation generally and in real estate litigation specifically, clearly justify rates at the top end of any range.

14. Third, looking at the alleged complexity of the case to determine hourly rates is somewhat misleading. I have worked with many large and small firms doing commercial litigation of comparable complexity to this one, including Duane Morris, Morgan Lewis, Heller Ehrman, and Coblentz Patch Duffy & Bass, and it has not been my experience that they discount their rates because a case is not as "complex" as some others.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 28th day of February 2011 at San Francisco, California.

_____
RICHARD M. PEARL