1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6   STONEBRAE, L.P.,                        No. C-08-0221 EMC

7              Plaintiff,                    **ORDER GRANTING IN PART AND
                                            DENYING IN PART PLAINTIFF'S
8        v.                                  MOTION FOR ATTORNEYS' FEES
                                            AND COSTS; DENYING PLAINTIFF'S
9   TOLL BROS., INC.,                        MOTION FOR PREJUDGMENT
                                            INTEREST; AND DENYING
10             Defendant.                    DEFENDANT'S MOTION TO STRIKE

11  _____/        **(Docket Nos. 253, 255, 273)**

12

13         Pending before the Court are Plaintiff Stonebrae L.P.'s (1) Motion for Award of Attorneys'

14  Fees, Taxable and Non-Taxable Costs and (2) Motion for Mandatory Prejudgment Interest Pursuant

15  to Cal. Civ. Code. § 3287(a).  Also before the Court is Defendant Toll Bros., Inc.'s Motion to Strike

16  the Declaration of Richard M. Pearl in Support of Stonebrae's Motion for Fees and Costs.  Having

17  considered the motions, all papers related thereto, and the arguments of counsel, Stonebrae's Motion

18  for Award of Attorneys' Fees and Costs is hereby **GRANTED IN PART** and **DENIED IN PART**;

19  Stonebrae's Motion for Prejudgment Interest is **DENIED**; and Toll's Motion to Strike is **DENIED**

20  as explained herein.

21                      **I.    BACKGROUND**

22         On May 1, 2006, Stonebrae and Toll Bros., Inc. ("Toll") executed the Village B Purchase

23  Agreement ("VBPA") (Docket No. 142-1) pursuant to which Toll agreed to buy from Stonebrae a

24  certain number of residential lots for a residential development.  Under the agreement, the parties

25  agreed that Toll would deliver into escrow a first deposit of $250,000 and then a second deposit of

26  $4,524,944 for a total of $4,774,944, *see id.* (VBPA § 2.2(a)-(b)), which altogether constituted

27  14.99% of the purchase price of $31,854,200.  *See id.* § 2.1.  The first deposit was to be in the form

28  of cash; the second deposit was to be in the form of a letter of credit (in the amount of both the first

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

and second deposits). *See id.* § 2.2(c). According to Stonebrae, Toll later "decided, in light of the deteriorating financial condition of Toll [Parent], and for its own financial reasons, not to proceed with the close of escrow and the purchase of the 56 lots, which would have required Defendant Toll [subsidiary] to pay Plaintiff Stonebrae the sum of $31,854,200.00." Compl. ¶ 17; FAC ¶ 17.

Stonebrae filed suit in state court against Toll, asserting claims for, *inter alia*, breach of contract. Stonebrae also brought a tortious interference claim against Toll's parent company. In January 2008, Toll removed the case to federal court, arguing that the federal court has diversity jurisdiction over the case because Toll's parent corporation was fraudulently joined. This Court exercised diversity jurisdiction over the case, and has since entertained some three years of motion practice by the parties.[1] The Court initially set a July 2010 trial date, but subsequently rescheduled it for February 28, 2011. Docket Nos. 119, 163 (Case Management Orders). On October 18, 2010, Toll served Stonebrae with an offer of judgment pursuant to Rule 68, which provided:

> To resolve all claims in this action, Defendant/Counterclaimant Toll Bros., Inc. ("Toll") hereby offers to allow entry of judgment to be taken pursuant to Federal Rules [*sic*] of Civil Procedure 68 in favor of Plaintiff Stonebrae L.P. and against Toll as follows:
>
> (1)   Toll shall direct Old Republic Title Company to release to Stonebrae L.P. funds totaling $4,774,944 that are currently secured by the letter of credit (No. 3082283) held in escrow by the Old Republic Title Company as a deposit under the Purchase and Sale Agreement and Joint Escrow Instructions Between Stonebrae L.P. and Toll Bros., Inc., dated May 1, 2006, plus
>
> (2)   Costs incurred by plaintiffs through the date of this offer, which shall include reasonable attorneys' fees, as determined by the Court; plus
>
> (3)   Pre-judgment interest as determined by the Court pursuant to California Civil Code section 3287.

Stonebrae accepted the offer on November 1, 2010. *See* Docket No. 248. The motions and declarations *sub judice* deal with the sole question left open by the Rule 68 agreement: the amount of attorneys' fees, costs, and prejudgment interest to be awarded to Stonebrae.

---

[1] Specific motions are discussed herein, as appropriate. Because the parties are familiar with the facts and procedural history of the case, the Court will not recount it in greater detail here.

**United States District Court**
For the Northern District of California

1    On November 3, 2010, the Court held a status conference addressing Stonebrae's acceptance

2    of the Rule 68 offer of judgment. *See* Docket Nos. 249 (minute entry), 250 (transcript). The Court

3    vacated the pending summary judgment motions, scheduled briefing and a hearing on fees and costs,

4    and directed the clerk not to enter judgment until the motions *sub judice* are resolved. On December

5    28 and 29, 2010, Stonebrae filed its motions for attorney's fees and costs and for prejudgment

6    interest. On March 16, 2011, the Court held a hearing on those motions which are the subject of this

7    Order.

8                                    **II.   DISCUSSION**

9    A.    Toll's Objections to the Declaration of Richard M. Pearl

10        As a preliminary matter, the Court addresses Toll's Objections to the Declaration of Richard

11   M. Pearl in Support of Stonebrae's Motion for Attorneys' Fees and Costs. Pearl's declaration

12   ("Pearl Declaration") (Docket No. 257) describes, *inter alia*, his experience with attorney's fees

13   awarded by California courts and his opinions regarding the bills of Stonebrae's counsel in this case.

14   Toll contends that Pearl's declaration is inadmissible under Federal Rule of Evidence 702 because

15   (1) Stonebrae has not established that he is an "expert" for purposes relevant here, and (2) his

16   opinions are based on an unreliable methodology. Toll also argues (1) that portions of the

17   declaration are inadmissible under the best evidence rule, and (2) other portions are inadmissible

18   hearsay. Toll's Objs. at 2-3.

19        1.    Admissibility of Expert Testimony

20        Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to

21   F.R.E. 702, a witness qualified as an expert in "scientific" knowledge may testify thereto if: "(1) the

22   testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles

23   and methods; and (3) the witness has applied the principles and methods to the facts of the case."

24   Fed. R. Evid. 702. The trial court acts as a gatekeeper to the admission of expert scientific

25   testimony under F.R.E. 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

26   Under *Daubert*, the Court must conduct a preliminary assessment to "ensure that any and all

27   scientific testimony or evidence admitted is not only relevant but reliable." *Id.* at 589. This

28   two-step assessment requires consideration of whether (1) the reasoning or methodology underlying

**United States District Court**
For the Northern District of California

1  the testimony is scientifically valid (the reliability prong); and (2) whether the reasoning or

2  methodology properly can be applied to the facts in issue (the relevancy prong). *Id.* at 592-93;

3  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998).

4        Reliable testimony must be grounded in the methods and procedures of science and signify

5  something beyond "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.  The

6  inferences or assertions drawn by the expert must be derived by the scientific method. *Id.*  In

7  essence, the court must determine whether the expert's work product amounts to "'good science.'"

8  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (quoting

9  *Daubert*, 509 U.S. at 593).  In *Daubert*, the Supreme Court outlined factors relevant to the reliability

10  prong, including: (1) whether the theory can be and has been tested; (2) whether it has been

11  subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or

12  methodology employed is generally accepted in the relevant scientific community. *Daubert*, 509

13  U.S. at 593-94.

14        The relevancy, or "fit," prong requires that the testimony be "relevant to the task at hand, . . .

15  i.e., that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d

16  at 1315 (quoting *Daubert*, 509 U.S. at 597).  Relevancy requires opinions that would assist the trier

17  of fact in reaching a conclusion necessary to the case. *Kennedy v. Collagen Corp.*, 161 F.3d 1226,

18  1230 (9th Cir. 1998).  The proponent of the evidence must prove its admissibility by a

19  preponderance of proof. *Daubert*, 509 U.S. at 593 n. 10; *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir.

20  1988).

21        Toll first objects to the Pearl Declaration on the grounds that Mr. Pearl has not been shown

22  to have "the relevant expertise to offer a reliable opinion about the hourly rates for real estate

23  litigators in the Bay Area."  Toll's Objs. at 2.  According to Toll, Mr. Pearl's general experience

24  with "non-contingent market rates charged by attorneys in California and elsewhere" is insufficient

25  to establish relevant expertise here, which requires knowledge specific to "real estates [*sic*]

26  litigators."  *Id.*  Citing *APL Co. Pte. v. UK Aerosols Ltd.*, Toll argues that reasonable hourly rates are

27  based on rates for "similar types of litigation," meaning, for present purposes real estate litigation in

28  the Bay Area.  2010 U.S. Dist. LEXIS 91853 (N.D. Cal. Sept. 3, 2010), *2-3.  In reply, Stonebrae

United States District Court
For the Northern District of California

1    notes, *inter alia*, that Mr. Pearl's opinions regarding attorneys' fees have been cited with approval in

2    other cases.  Stonebrae's Reply Br. ("Reply") (Docket No. 277) at 2 n.2 (citing Pearl Decl. ¶ 4).

3            Toll's objection is without merit.  Generally, the relevant community, *i.e.*, geographic

4    market, "is the forum in which the district court sits."  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir.

5    1997).  The relevant rates in that community are those charged "for similar services by lawyers of

6    reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11

7    (1984).  Toll failed to establish that the relevant market with respect to the instant motion is limited

8    to real-estate litigation: it cites no authority so holding.[2]  Stonebrae presented evidence and case law

9    to the contrary.  As Mr. Pearl correctly points out, "In litigation, clients generally pay for litigation

10   and strategic experience and skills, not expertise in a particular subject area."  (Pearl Reply Decl. ¶

11   12).  Courts have rejected arguments similar to those advanced by Toll.  *See, e.g., Prisa Legal News*

12   *v. Schwarzenneger*, 608 F.3d 446, 455 (9th Cir. 2010) ("Although the state officials urge us to look

13   only to the rates charged by other attorneys involved in prison litigation, the proper scope of

14   comparison is not so limited, but rather extends to all attorneys in the relevant community engaged

15   in equally complex Federal litigation, no matter the subject matter") (internal quotation marks and

16   citation omitted); *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1081 (C.D. Cal. 2002) (rejecting

17   argument, in a voting rights case, that "Michelangelo should not charge Sistine Chapel rates for

18   painting a farmer's barn" where the case was of comparable complexity to cases handled by the law

19   firm's commercial litigation practice); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979-81 (9th

20   Cir. 2008) (noting that, in assessing "the complexity and difficulty of [an] attorneys' services," the

21   court "should not restrict its analysis to FDCPA cases"); *Oberdorfter v. City of Petaluma*, No. 98-

22   1470, 2002 U.S. Dist. LEXIS 8635, *15-16 (N.D. Cal. Jan. 29, 2002) (rejecting expert opinion and

23   argument that determination of reasonable rates of major Bay Area law firms should be based only

24   _____

25       [2] *UK Aerosols Ltd.*, 2010 U.S. Dist. LEXIS 91853 at *12-13 is inapposite.  As the case
     involved maritime law, the defendants argued that the requested rates unreasonably exceeded those
26   typically charged by maritime attorneys in this district, and provided two supporting declarations
     from maritime lawyers. *Id.* at *12 (arguing that the top hourly rate should not exceed $375).  The
27   plaintiff "did not provide any satisfactory rebuttal."  *Id.*  The court therefore applied hourly rates
     lower than those requested by plaintiff.  *Id.* (setting, *e.g.*, a top rate of $450 for lead counsel, rather
28   than the $650 requested).  *UK Aerosols* did not establish that in the field of general commercial
     litigation, real estate litigation constitutes a separate relevant market.

United States District Court

For the Northern District of California

on rates for police misconduct cases); *Utility Reform Network v. PUC*, 166 Cal. App. 4th 522, 537 (2008) (rejecting argument that hourly rates should be based only on those awarded to PUC practitioners, but should also take into account attorneys' trial and appellate litigation experience); *Russell v. Foglio*, 160 Cal. App. 4th 653, 661 (2006) (upholding finding that associate's court experience in family law context is relevant to calculation of rate charged in defamation case due to the "practical extent" of that experience). The Court rejects Toll's first challenge to the Pearl Declaration.

Toll also contends that the declaration is not admissible "because it is based on an unreliable survey." Toll's Objs. at 3. By relying on six seemingly unrelated cases, Toll argues, Mr. Pearl fails to utilize reliable principles in reaching his conclusions. *See generally Levi Strauss v. Abercrombie & Fitch Trading Co.*, 2008 U.S. Dist. LEXIS 87625, *22 (N.D. Cal. Oct. 16, 2008) (noting that opinions based on unreliable survey data should be excluded) *reversed on other grounds*, 2011 U.S. App. LEXIS 2361 (9th Cir. Feb. 8, 2011). However, as noted in *Levi Strauss*, so long as the data are reliable, methodological deficiencies go to "the weight to be accorded the survey, rather than its admissibility." *Id.* (citing *Wendt v. Host Int'l, Inc*., 125 F.3d 806, 814 (9th Cir. 1997); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997). Even if it is true that Mr. Pearl cherry-picked the cases mentioned in ¶ 9 of the declaration without explaining why those rates are particularly probative here (Pearl Decl. ¶ 9), that alleged deficiency alone, does not undermine the reliability of the entire declaration, which is based on Mr. Pearl's broad and extensive experience with fee awards in California (*id.* ¶¶ 2-4) as well as data from other sources (*see id. ¶¶* 12, 13). As discussed below, Mr. Pearl's declaration references substantial evidence justifying his conclusions.

2.     Best Evidence Rule & Hearsay Objections

Paragraph 10 of the Pearl Declaration describes hourly rates found reasonable by courts in or near this district in 2010. Toll objects to this paragraph under the so-called best evidence rule, Fed. R. Evid. 1004, which restricts the admission of evidence purporting to prove the content of certain writings. Toll also objects to ¶ 13 (describing rates charged by various law firms in the area), Ex. B (a 2009 survey), and Ex. C (Westlaw CourtExpress Legal Billing Reports) of the declaration on hearsay grounds. Whether the documents referred to by the declaration are admissible on their own

1    is besides the point.  Mr. Pearl is allowed to rely on otherwise inadmissible evidence as a basis for

2    his expert opinions if, as is the case here, it is reasonable for experts to do so.[3]  *See* Fed. R. Evid.

3    703.

4    B.        Authority to Award Fees and Costs

5            In the instant case, the Parties have agreed that Stonebrae is entitled to fees and costs.  Under

6    the accepted Rule 68 offer, Toll agrees to pay

7                   (2)      Costs incurred by plaintiffs through the date of this offer,
                    which shall include reasonable attorney's fees, as determined by the
8                   Court; plus

9                   (3)      Pre-judgment interest as determined by the Court pursuant to
                    California Civil Code section 3287.
10

11   Docket No. 248 (Notice of Accepted Offer of Judgment).  The VBPA, the contract at the heart of

12   this case, provided:

13                  In the event of any legal action or other proceeding between the
                   parties regarding the Agreement or the Property (an "Action"), the
14                  prevailing party shall be entitled to the payment by the losing party of
                   its reasonable attorneys' fees, court costs and litigation expenses, as
15                  determined by the court.  The term "prevailing party" as used herein
                   includes, without limitation, a party: (a) who agrees to dismiss an
16                  Action on the other party's performance of the covenants allegedly
                   breached, (b) who obtains substantially the relief it has sought, or (c)
17                  against whom an Action is dismissed (with or without prejudice).

18   VBPA § 19.7 (Docket No. 142-1 at 38).  While the VBPA has been superceded by the Rule 68

19   Settlement Agreement, it is noteworthy that both agreements provide for reasonable fees and costs

20   "as determined by the court."  Neither party disputes Stonebrae is the prevailing party and is entitled

21   to fees.  The question for the Court is what constitutes reasonable attorneys' fees under the

22   circumstances.  *Cf. Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir. 1997) (noting that the parties'

23   settlement agreement provided for an award of attorneys' fees which did not limit the district court's

24   discretion in determining the fee).  The Court accordingly turns to the task of scrutinizing the record

25   _____

26          [3] The Court acknowledges Toll's letter (Docket No. 282) in response to Stonebrae's
     contention that Toll's reference to Stonebrae's settlement demand was a breach of a confidentiality
27   agreement.  *See* Pl.'s Reply Br. in Support of Mot. for Interest 10:5-6 (Docket No. 275).  However,
     that evidence is introduced not to establish liability on the merits or the amount of damages but to
28   inform the reasonableness of the fee award.  Regardless of whether Fed. R. Evid. 408 applies, this
     evidence has no material impact on the analysis herein.

United States District Court

For the Northern District of California

1   of this case and the amounts requested to ensure that the award of fees and costs is reasonable.  *See*

2   *generally Yeagley v. Wells Fargo & Co.*, No. C 05-03403 CRB, 2008 U.S. Dist. LEXIS 5040, *16

3   (N.D. Cal. Jan. 18, 2008) (describing the Court's scrutiny of a fee award in the class action context).

4   C.     Attorneys' Fees

5          The parties dispute whether state or federal substantive law applies in determining the

6   reasonableness of a fee award where there is a settlement under Rule 68 in a case grounded in

7   diversity jurisdiction.  *See James v. Cardinal Health 200, Inc.*, 2010 LEXIS 123312 (N.D. Cal.

8   2010) cited by Toll and *Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 774 (7th Cir.

9   2010) cited by Stonebrae.  However, the parties agree that for purposes of this motion, state and

10  federal law on attorney fees award do not differ materially.  As both parties have liberally and

11  interchangeably cited state and federal cases, so does the Court.

12         1.     Calculation Methodology: The Lodestar Method

13         The Ninth Circuit "has affirmed the use of two separate methods for determining attorneys

14  fees, depending on the case," *i.e.*, the percentage method and the lodestar method.  *Hanlon v.*

15  *Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  In its opening brief, Stonebrae urges the Court

16  to use the lodestar method.  Although Toll disputes various aspects of Stonebrae's claims and

17  calculations, it does not dispute application of the lodestar method.

18         Under the lodestar method, a reasonable attorney's fee is determined by the number of hours

19  reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*,

20  461 U.S. 424, 433 (1983); *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) ("the fee

21  setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours

22  reasonably expended multiplied by the reasonable hourly rate"); *Melnyk v. Robledo,* 64 Cal. App. 3d

23  618, 623-624 (1976) ("The trial court makes its determination after consideration of a number of

24  factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in

25  its handling, the skill employed, the attention given, the success or failure, and other circumstances

26  in the case.").  In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court held that the hourly

27  rates to be employed in calculating reasonable fees are determined by the "prevailing market rates in

28  the relevant community, regardless of whether the plaintiff is represented by private or nonprofit

United States District Court

For the Northern District of California

counsel." *Id.* at 895; *see also Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). "The burden is on the plaintiff to produce evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (internal quotations omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [plaintiff's] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The defendant may introduce rebuttal evidence in support of a lower hourly rate." *Sorenson*, 239 F.3d at 1145. As to the number of hours reasonably expended, a fee applicant "should make a good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The hours spent must be reasonable through "the entire course of the litigation, including pretrial matters, [ ] discovery, litigation tactics, and the trial itself." *Vo v. Las Virgenes Mun. Util. Dist.*, 79 Cal. App. 4th 440, 447 (2000).

In most cases, the lodestar figure is presumptively a reasonable fee award. *See Hensley*, 461 U.S. at 430 n.4; *United Steelworkers*, 896 F.2d at 407 (holding that, absent competent rebuttal evidence or a finding that counsels' rates are unwarranted by their level of performance, the requested rates are presumed reasonable). That presumption is particularly forceful where, as here, the fees were billed to and actually paid by the plaintiff during the course of the litigation, the relationship between counsel and the plaintiff was a valid business relationship, and the plaintiff, as client, exercise business judgment in retaining and paying counsel. *Cf. Metavante Corp.*, 619 F.3d at 774.[4] On the other hand, what the plaintiff paid is not dispositive as to what is a "reasonable" fee for purposes of shifting fees to the defendant. There may be a number of extraneous reasons why a plaintiff might pay fees to its counsel in excess of what is otherwise reasonable. The fact that the fees in question were actually paid by a party employing business judgment nonetheless adds weight to the presumption of reasonableness.

---

[4] Although neither the Ninth Circuit nor California state courts have addressed *Metavante*, and thus it is not binding, the Court finds its reasoning persuasive.

United States District Court

For the Northern District of California

1    If circumstances warrant, the Court may adjust the lodestar to account for factors including

2  those enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) which are not

3  subsumed within the lodestar.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir.

4  2008); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988); *Harman v. City

5  and County of San Francisco*, 158 Cal. App. 4th 407, 416 n.5 (citing *Kerr* and enumerating twelve

6  factors).  In *Cunningham*, the Ninth Circuit emphasized that the *Kerr* factors subsumed in the

7  lodestar "may not act as independent bases for adjustments of the lodestar.  *Cunningham*, 879 F.2d

8  at 487.[5]

9    The Ninth Circuit has suggested that "the 'results obtained' is among the factors that are

10  ordinarily subsumed in the lodestar," and that "[a]djustments to the lodestar based on 'results

11  obtained' must be supported by evidence in the record demonstrating why such a deviation from the

12  lodestar is appropriate." *Id.* at 488.  "In exceptional cases, such deviation may be proper, but the

13  court must explain why the results of the lawsuit are not adequately factored into the lodestar." *Id.*

14  at 489.  On the other hand, the Supreme Court has made clear that a reduction may be appropriate

15  where the plaintiff achieves only partial or limited success.  *Hensley*, 461 U.S. at 436.  The

16  attorney's time must be reasonable in relation to the success achieved.  *Id.*

17    In this case, the Court must evaluate the lodestar for both law firms that represented the

18  Stonebrae:  (1) Cooper & Kirkham, PC, ("C&K") and (2) Sheppard, Mullin, Richter & Hampton

19  LLP ("S&M").  C&K billed 1,837.3 hours on the case, (*see* de Ayora Decl. ¶ 7) charging $1,330,203

20  in fees, (Atkins-Patterson ("A-P") Decl. ¶ 49, Cooper Decl. ¶ 11), and S&M billed 6,028.1 hours on

21  the case (de Ayora Decl. ¶ 6; Rosen Decl. Ex. 6) for a total of $2,396,065.50 in attorney's fees, *see*

22  A-P Decl. ¶¶ 31, 37.  Stonebrae paid a total of $3,726,268 in attorneys fees representing 7,865 hours

23  of work through October 18, 2010.  A-P Decl. ¶ 49 (sum of "merits fees").  As evidence of these

24  claimed fees, Stonebrae has provided billing records in the form of Exhibits attached to the

26    [5] "[S]ubsumed factors presumably taken into account in either the reasonable hours
27  component or the reasonable rate component of the lodestar calculation" include (1) the novelty and
complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of
representation, and (4) the contingent nature of the fee agreement. *Morales v. City of San Rafael*, 96
28  F.3d 359, 364 n.9 (9th Cir. 1996) (internal quotation marks omitted).

United States District Court

For the Northern District of California

1  Declarations of Philip F. Atkins-Patterson (S&M "relationship partner" for YCS investments, which

2  managed the Stonebrae Development), and Josef D. Cooper (C&K principal).  The billing records

3  reflect that the charges were for work performed during the period November 20, 2007 through

4  October 18, 2010.

5          2.      <u>Reasonable Number of Hours</u>

6          The Court has discretion in determining the number of hours reasonably expended on this

7  case.  *See Chalmers v. City of Los Angeles*, 796 F.2d 1211; *see also Hensley*, 461 U.S. at 437 (noting

8  that a district court has discretion in determining the amount of a fee award, which is "appropriate in

9  view of the district court's superior understanding of the litigation and the desirability of avoiding

10  frequent appellate review of what essentially are factual matters").  The fee applicant bears the

11  burden of "documenting the appropriate hours expended" in the litigation and therefore must

12  "submit evidence supporting the hours worked."  *Id.* at 433, 437.  Moreover, the fee applicant

13          should make a good-faith effort to exclude from a fee request hours
          that are excessive, redundant, or otherwise  unnecessary, just as a

14          lawyer in private practice ethically is obligated to exclude such hours
          from his fee submission.  In the private sector, billing judgment is an

15          important component in fee setting.  It is no less important here.
          Hours that are not properly billed to one's *client* also are not properly

16          billed to one's *adversary* pursuant to statutory authority.

17  *Id.* at 434 (internal quotation marks omitted; emphasis in original).  The fee opponent has the burden

18  of submitting evidence challenging the accuracy and reasonableness of the documented hours.  *See*

19  *Blum*, 465 U.S. at 892.

20          Toll raises several challenges to Stonebrae's fees, arguing that they are "grossly excessive"

21  and that the reasonable number of billable hours should total 3,199, less than half of the 7,865 billed.

22          Toll contends Stonebrae attorneys billed 1.9 times the hours billed by Toll's attorneys.

23  Opp'n at 2.  To begin with, Toll argues that Stonebrae's declarations and block-billed time records

24  are insufficient to meet the burden of demonstrating that the amounts billed were reasonable in terms

25  of time and rates.  Opp'n at 4.  Toll also contends that many hours claimed by Stonebrae were not

26  reasonably necessary to the litigation of this case because they were excessive or redundant.  Opp'n

27  at 7 (citing *Robertson v. Fleetwood Travel Trailers*, 144 Cal. App. 4th 785, 818 (2006)).  Toll

28  argues, *inter alia*, that Stonebrae should not recover for time spent on its (1) unsuccessful tort claim

United States District Court

For the Northern District of California

1    against Toll's parent corporation, (2) unsuccessful motions, including its motion to compel and

2    motion for sanctions, (3) unsuccessful contractual claims, (4) liquidated damages claim, or time

3    spent on discovery related to those claims.  Opp'n at 10-11.  The Court addresses Toll's challenges.

4                              a.    Evidence of Billable Time

5           Toll claims that "Stonebrae did not provide a summary of the time spent and services

6    provided by each time keeper as required by Local Rule 54-5."  Opp'n at 4.  A motion for attorney's

7    fees must be supported by a declaration or affidavit containing, *inter alia*, "[a] statement of the

8    services rendered by each person for whose services fees are claimed together with a summary of the

9    time spent by each person, and a statement describing the manner in which time records were

10   maintained."  Civ. Local R. 54-5(b)(2).  The affiant must also provide "[a] brief description of the

11   relevant qualifications and experience and a statement of the customary hourly charges of each such

12   person or of comparable prevailing hourly rates or other indication of value of services."  Civ. Local

13   R. 54-5(b)(3).

14          The Court finds that the Cooper Declaration satisfies these requirements with respect to

15   attorneys Cooper, Kirkham, and Bogdanov.  S&M has likewise met the minimum requirements for

16   the rule to the extent it has submitted the *curriculum vitae* of each timekeeper.  *See* A-P Decl. Exs.

17   38-44.  The Court finds that the time records submitted describe the work performed in satisfaction

18   of the minimum requirements of the rule – the billing records provide sufficient detail as to the tasks

19   performed by each timekeeper on a daily basis.  To the extent Stonebrae has neglected to provide

20   more convenient summaries of its bills, the Court credits the declarations of Emily de Ayora  and

21   Sanford J. Rosen, provided by Toll, which contain helpful summaries of the bills at issue.  *See, e.g.,*

22   Rosen Decl. Exs. 6-8 (summarizing, by individual employee, the rates charged and hours worked for

23   Stonebrae).  The accuracy of those summaries is not disputed.

24          However, there are a number of S&M timekeepers for whom adequate information was not

25   provided.  There is not sufficient information to ascertain their reasonable rates.  Stonebrae

26   concedes, "During the months of January through March 2010, we assembled a team of junior

27   associates from the firm's various California offices to assist with the completion of Stonebrae's

28   extensive document productions to Toll.  I have not attached their *curriculum vitaes*."  A-P Decl. ¶

12

33.  *See* Rosen Decl. ¶ 40 (noting that 41 timekeepers billed time to the case, including 26 attorneys), Ex. 6A (listing 36 S&M timekeepers); de Ayora Decl. Ex. C (concluding that 27 attorneys and 14 paralegals worked on the case).  The Court finds that Stonebrae has failed to meet its burden to present adequate records with respect to these timekeepers, and will remove their time, 459.6 hours in total, from the lodestar.

In particular, based on the cursory description of timekeepers and staffing provided by Mr. Atkins-Pattenson (*See* A-P Decl. ¶ 33) and the analysis provided by Mr. Sanford Jay Rosen, (*see* Rosen Decl. ¶¶ 33-41, Exs. 6, 8), the Court disallows the following time billed (in hours) by the following timekeepers:  Allen E. Rose (236.6) ($64,997), David A. Dolley (3.2) ($784), Richard Freitas (140.9) ($31,195), David L. Pumphrey (1.3) ($292.50), Candi A. Smith (2.4) ($456), Sam Smith (38.7) ($8,365.50), Shoma Sircar (8.3) ($1,742.50), Aline Bernstein (14.3) ($3,139), Virginia E. Reeder (2.6) ($546), Adam P. Bailey (3.4) ($663), Justin Obra (1.5) ($268), Alexander Merritt (4.9) ($685), and Nina Porcella (1.5) ($157.50).  The total of excluded timekeepers comes to $113,291.

Based principally on the information consolidated in the Rosen Declaration, including each attorney's years of experience, the Court will permit time billed by the following people to be included in the lodestar:  William T. Manierre (2) ($1,230), Joan H. Story (10.7) ($1,230), Maria C. Pracher (0.2) ($112), Loretta A. Wider (4.4) ($2,398), Karin D. Vogel (0.2) ($95), Misti Schmidt (0.4) ($146), Roxana Vatanparast (139.7) ($35,722.50), Serena F. Martinez (350.1) ($115,533), Cassidy English (34.8) ($9,570), Elise Sara (39.2) ($10,429), Juthamas Judy Suwatanapongched (80.3) ($22,082.50), Adrienne W. Lee (226.9) ($61,263), Matthew Mueller (52.8) ($14,256), Pamela Tsao (198.5) ($53,595), Jessica Simmons (40.4) ($7,878), and Monica L. Moore (1) ($190).

Toll also argues that, by submitting only block-billed time records, Stonebrae has failed to satisfy its burden of documenting billable time spent on the case.  While block-billing is not inappropriate *per se*, the party seeking fees bears the burden of adequately documenting the hours claimed.  *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).  Block-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award.  *See* A-P Reply Decl. ¶ 8 (citing *Raining Data Corp. v. Barrenchea*, 175

13

United States District Court

For the Northern District of California

1    Cal. App. 4th 1363, 1375 (2009); *Drexler*, 22 Cal. 4th at 1098 ("We do not want 'a court, in setting

2    an attorney's fee, [to] become enmeshed in a meticulous analysis of every detailed facet of the

3    professional representation.'") (citation omitted)).  By way of example, a S&M invoice dated

4    December 3, 2010 contains the following description for one hour of work performed by Mr.

5    Atkins-Pattenson on November 12, 2010 at the price of $630:

6                    Review an exchange e-mails with T. Kirkham regarding attorneys' fee
                     motion, case status; prepare for meeting with R. Pearl (potential
7                    attorneys' fee expert witness), including outline of points to address.

8    A-P Decl. Ex. 37 at 6. C&K's bills tend to be very similar, if slightly more detailed.  For example,

9    an invoice the month of July 2010 contains the following entry for 0.3 hours of work performed by

10   Mr. Josef D. Cooper on July 20, 2010:

11                   Emails and telephone calls with Atkins-Pattenson and conference with
                     Kirkham re document production/deposition schedule and meeting
12                   with Toll re same/CMC statement (.1+.1+.1).

13   Cooper Decl. Ex. 13 at 2.  The Court concludes that the invoices provide sufficiently detailed

14   information about each timekeeper's activities for present purposes, *i.e.*, the Court has not found any

15   unclear portions of the invoices to be material to its analysis.  It bears noting that Stonebrae paid

16   these invoices, indicating that it was satisfied with the descriptions provided.

17                              b.      Unrelated, Unsuccessful Claims

18           Second, Toll argues that two of Stonebrae's claims were unrelated and unsuccessful, such

19   that it may not recover fees for them.  *Hensley*, 461 U.S. at 434-36.  In *Hensley*, the Supreme Court

20   explained that, where a plaintiff is partially successful in obtaining the relief sought, a two-part

21   analysis must be applied wherein the Court asks (1) "[D]id the plaintiff fail to prevail on claims that

22   were unrelated to the claims on which he prevailed?" and (2) "[D]id the plaintiff achieve a level of

23   success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  *Id.*

24   at 434.  If the claims are unrelated, "the final fee award may not include the time expended on the

25   unsuccessful claims."  *Thorne v. El Segundo,* 802 F.3d 1131, 1141 (9th Cir. 1986); *Harman*, 158

26   Cal. App. 4th at 417 (Under the first step, work on unsuccessful, unrelated claims cannot be

27   considered to have been done "in pursuit of the ultimate result achieved and therefore no fee may be

28   awarded for services on such claims."); *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010)

United States District Court

For the Northern District of California

1   (same).  That time is removed from the lodestar.  If the claims are related, rather than segregating

2   specific hours, "the court must apply the second part of the analysis, in which the court evaluates the

3   'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably

4   expended on the litigation.'"  *Id.* (quoting *Hensley*, 461 U.S. at 435).  The Court noted in *Hensley*

5   that "there is no certain method of determining when claims are 'related' or 'unrelated.'"  *Id.* at 437

6   n.12.  *See also Thorne*, 802 F.2d at 1141 ("The test for relatedness is not precise.").  Typically, the

7   Court explained, related claims "will involve a common core of facts or will be based on related

8   legal theories."  *Hensley*, 461 U.S. at 435.  In these cases, an attorney's time is "devoted generally to

9   the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis,"

10  and "[s]uch a lawsuit cannot be viewed as a series of discrete claims."  *Id.*

11       The Ninth Circuit has generously applied *Hensley*'s test of relatedness, holding that claims

12  are "related if either the facts *or* the legal theories are the same."  *Webb v. Sloan*, 330 F.3d 1158,

13  1169 (9th Cir. 2003) (emphasis in original).  The Ninth Circuit has also stated that, in assessing the

14  issue of relatedness, a court should consider "whether the relief sought on the unsuccessful claim 'is

15  intended to remedy a course of conduct entirely distinct and separate from the course of conduct that

16  gave rise to the injury on which the relief granted is premised.'"  *Thorne*, 802 F.2d at 1141 (quoting

17  *Mary Beth. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983)).  Other factors informing the

18  issue of relatedness are "whether the unsuccessful claims were presented separately, whether

19  testimony on the successful and unsuccessful claims overlapped, and whether evidence concerning

20  one issue was material and relevant to other issues."  *Id.*

21       Toll argues that Stonebrae's claims for:  (1) interference with contract and (2) declaratory

22  relief concerning enforceability of the liquidated damages provision in the VBPA[6] were

_____

[6] The parties agreed that if Toll failed to close escrow by reason of a default,

THEN STONEBRAE SHALL HAVE THE RIGHT, AS ITS SOLE
REMEDY FOR SUCH [] DEFAULT, TO TERMINATE THIS
AGREEMENT BY WRITTEN NOTICE TO [TOLL] AND THE
ESCROW HOLDER AND INSTRUCT THE ESCROW HOLDER (IF
ESCROW HOLDER STILL HOLDS THE DEPOSIT) TO DRAW
THE LETTERS OF CREDIT AND THE [SIC] DISBURSE THE
PROCEEDS THEREOF AND ANY CASH DEPOSIT THEN HELD
BY ESCROW HOLDER TO STONEBRAE TOGETHER WITH ALL

United States District Court
For the Northern District of California

1   unsuccessful, unrelated claims and thus time spent on these claims must be stripped from the

2   lodestar.

3        The Court agrees that the interference with contract claim Stonebrae brought against Toll's

4   parent's company in Stonebrae's original complaint and its first amended complaint, which was

5   ultimately dismissed on the merits (*see* Order, May 21, 2008 (Docket No. 48)), was unrelated to the

6   claims against Toll for purposes of *Hensley* analysis.  The tort of interference with contract, while

7   perhaps emanating from the purported breach of contract, was based on tortious conduct by an entity

8   not a party to the contract and wholly separate from the breach of contract itself.  The gravamen of

9   the tort claim against the parent is based on a set of facts distinct and different from the breach of

10  contract claim against Toll.  It focused on "a course of conduct entirely distinct and separate" from

11  the breach of contract claim.  *Thorne*, 802 F.2d at 1141.  It is thus unrelated (under *Hensley*) to the

12  claims against Toll ultimately settled.  Because the interference claim was dismissed on the merits, it

13  was also unsuccessful.  The Court will accordingly remove all 194.8 hours billed solely for work on

14  the tortious interference claim from the lodestar.  *See* de Ayora Decl. ¶ 11 (calculating the number of

15  hours spent and fees charged – $105,864 ($25,277.50 by C&K; $80,587 by S&M) – on this claim by

16  Stonebrae's counsel); Rosen Decl. ¶ 30 Ex. 2.

17       The declaratory relief claim seeking to invalidate the liquidated damages claim, however, is

18  inextricably intertwined with the breach of contract claim.  Rather than constituting a separate

19  substantive cause of action and focusing on a "distinct and separate" course of conduct, the

20  declaratory relief claim sought to alter the damages recoverable for that conduct.  *Cf. Hensley*, 461

21

22
_____

23      ACCRUED INTEREST THEREON . . . AS STONEBRAE'S
        LIQUIDATED DAMAGES. . . . THE PARTIES EXPRESSLY
24      UNDERSTAND AND AGREE (A) THAT STONEBRAE'S
        ACTUAL DAMAGES RESULTING FROM SUCH BUILDER
25      DEFAULT WOULD BE SUBSTANTIAL BUT EXTREMELY
        DIFFICULT T ASCERTAIN AND (B) SUCH AMOUNT IS A
26      REASONABLE SUM CONSIDERING ALL OF THE
        CIRCUMSTANCES EXISTING AS OF THE AGREEMENT DATE.
27
28  VBPA § 17(c)(ii).

**United States District Court**
For the Northern District of California

1    U.S. at 435 (mere fact that plaintiff failed to recover damages but obtained injunctive relief or vice

2    versa does not automatically warrant a reduction to the lodestar).

3           Furthermore, the declaratory relief claim was not "unsuccessful" for purposes of *Hensley*,

4    *Chavez*, and *Harman*.  In the cases cited by Toll in which hours spent on an unsuccessful claim were

5    reduced from the lodestar, there was an adjudication of the claim at issue.  For instance, in *Chavez*,

6    47 Cal. 4th at 989, there was a trial on the unrelated claims.  Here, there was no adjudication of the

7    liquidated damages claim: the declaratory relief claim was the subject of a pending motion for

8    summary judgment when the Rule 68 offer was made and accepted.  At the hearing, the parties

9    conceded they have found no case applying the first step of *Hensley* (eliminating hours spent on

10   unrelated, unsuccessful claims) to a settlement encompassing such claims[7] where the claim was

11   never finally adjudicated.

12          This is not surprising.  Any attempt to unwind and unravel an all-encompassing global

13   settlement to discern whether a component claim was "unsuccessful" will likely be futile.  It is

14   difficult to determine whether any particular claim contributed to the settlement.  Even here, where

15   the Rule 68 offer mirrored the liquidated damages clause of the VBPA, the Court cannot conclude

16   that the declaratory relief claim (which threatened to enhance Toll's damages exposure by

17   multitudes) did not contribute to Toll's decision to make the Rule 68 offer.  Absent this claim, Toll

18   might well have offered less than it did since it had defenses which might have precluded liability

19   altogether.  The Court cannot conclude that time spent on the declaratory relief claim was not

20   "expended in pursuit of the ultimate result achieved."  *Hensley*, 461 U.S. at 435 (citation omitted).

21   Moreover, there is a good policy reason not to subject global settlements to a first stage

22   *Hensley* analysis.  To do so would require courts to reopen and re-examine the relative merits of

23   various claims and perhaps delve into the states of mind of the parties, causing a second round of

24   litigation and thus defeat one of the primary benefits of settlement – finality.

25          To be sure, the fact that substantial hours were spent on a claim that did not yield an obvious

26   result is not entirely irrelevant under *Hensley*.  As noted above, even where a claim is related, the

27   ─────────────

28          [7] Here the Rule 68 offer, by its own terms, was made "[to] resolve *all* claims in this action."
     Docket No. 248 (emphasis added).

United States District Court

For the Northern District of California

1   Court, under the second prong of *Hensley*, must determine whether the relief obtained justified the

2   expenditure of attorney time.  *Hensley*, 461 U.S. at 435 n.11.  If the plaintiff received only partial or

3   limited success overall, the lodestar may be subject to a reduction based on "the degree of success

4   obtained."  *Id.* at 436.  Whether such an overall reduction (as opposed to deducting specific hours

5   for time spent on a particular claim) is warranted discussed *infra*.  No specific deduction, however,

6   shall be taken for time spent on the declaratory relief claim.

7                          c.    Unnecessary and Excessive Work

8          Toll claims that Stonebrae spent too much time on document production.  It argues "If, as

9   Stonebrae claims, Toll's requests were enormous in scope, then Stonebrae should have proposed

10  ways to narrow the scope, which Stonebrae did not do."  Opp'n at 16.  Toll cites *Henley*, 461 U.S. at

11  434, for the proposition that Stonebrae had an obligation to object to prevent unnecessary work.

12  *Id.* at 17.  In response, Stonebrae points to Toll's broad document requests, arguing that it did not

13  use a "document dump strategy" as Toll claims, but merely searched for the information requested

14  and found over 300,000 pages of documents.  Stonebrae contends the breadth of the document

15  request was driven by the breadth of Toll's assertions and affirmative defenses.  It also contends

16  there were litigation risks were it not to produce the documents requested.  For instance, a meager or

17  parsimonious response by Stonebrae could later result in "motions *in limine* to preclude Stonebrae

18  from introducing favorable evidence at trial on the grounds that it had not been produced during

19  discovery."  Reply at 12.

20         The Court cannot fault Stonebrae for responding fully to Toll's discovery request.  Even if

21  Stonebrae could have sought to narrow the request by motion, Toll is not in a position to complain.

22  The proponent of a discovery request must bear the risk of getting what it asks for.  By launching a

23  broad discovery request, Toll made the bed in which it must sleep.  Accordingly, the Court finds no

24  basis to reduce the lodestar with respect to the time spent on discovery.

25         Toll next argues that Stonebrae's Motion to Compel, Motion for Sanctions, and Motion for

26  Leave to Amend were unnecessary.  Opp'n at 16.  These motions were related.  Stonebrae sought

27  discovery relevant to Toll's motive for breaching the contract.  Stonebrae argued that the

28  information sought was relevant to determining whether Toll had breached the implied covenant of

United States District Court

For the Northern District of California

1  good faith and fair dealing.  The Court denied the motion to compel and the motion for sanctions,

2  noting that Stonebrae had not alleged a breach of the implied covenant separate and apart from its

3  breach of contract claim, to which motivation is irrelevant.  *See* Docket No. 129 (Order).  Stonebrae

4  then sought to amend the complaint to include (1) a separate claim for breach of the implied

5  covenant, and (2) a claim for declaratory relief concerning liquidated damages.  The Court denied

6  the request to amend with respect to Stonebrae's implied covenant claim, finding it to be subsumed

7  by the contract claim.  *See* Docket No. 141 (Order).  The Court granted leave to amend with respect

8  to the liquidated damages claim.

9         Although Stonebrae failed to prevail on its claim for breach of the implied covenant, no

10  deduction will be taken for time spent thereon.  The claim was related to the underlying breach of

11  contract claim – both focused on the same core of events.  There would have been a great deal of

12  overlap in evidence relevant to both claims.  *Thorne*, 802 F.2d at 1141.  As the Supreme Court held

13  in *Hensley*,

14          Where a plaintiff has obtained excellent results . . . . the fee award
           should not be reduced simply because the plaintiff failed to prevail on
15          every contention raised in the lawsuit. . . .  Litigants in good faith may
           raise alternative legal grounds for a desired outcome, and the court's
16          rejection of or failure to reach certain grounds is not a sufficient reason
           for reducing a fee.  The result is what matters.
17

18  461 U.S. at 435 (citation omitted).  *Cf. Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177

19  (6th Cir. 1990) (noting that "the question is not whether a party prevailed on a particular motion" but

20  "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit

21  of success at the point in time when the work was performed").  Again, the Court examines, *infra*,

22  whether the results obtained overall warranted the hours claimed in seeking the fee award.

23                     d.      Overstaffing and Redundant or Duplicative Work

24                            i.      Duplicative Work

25         The Court may reduce the lodestar where the case was overstaffed and hours are duplicated.

26  *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  Toll argues that, due to overstaffing

27  and the use of two law firms, some 25% of the work performed by Stonebrae's counsel (2,070

28  hours) was duplicative.  Opp'n at 17-22 (citing Rosen Decl. ¶¶ 24-37).  While it is not uncommon to

United States District Court

For the Northern District of California

1    have co-counsel in litigation, and fees are commonly awarded to multiple counsel, counsel seeking

2    fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to

3    unreasonable inefficiencies and duplicative efforts engendered by multiple counsel and law firms.

4         In this case, Toll has demonstrated there was an extraordinary amount of redundancy and

5    duplicated efforts between S&M and C&K.  For instance, C&K took the lead on eight motions, but

6    S&M billed 451 hours on these motions.  (Cooper Decl. ¶ 9, chart on Toll's Opp. Brief at pp.

7    18020).  Conversely, on the motions where S&M took the lead, C&K billed 137 hours.  On some

8    motions, C&K's fees were 22% redundant of S&M's fees.  Rosen Decl. ¶¶ 30-31.  As Toll points

9    out in its opposition brief, multiple attorneys attended almost every hearing.  In 11 of 18 depositions,

10   both firms attended, with the secondary attorney billing 102 hours.  Mr. Cooper billed 493 hours

11   reviewing the work of others.  (*See* Toll's Opp. Brief at 21).  These assertions were not directly

12   rebutted by Stonebrae.  Although Stonebrae explained how the firms split responsibility for various

13   subject matters in depositions, requiring both firms to attend depositions when those subjects

14   overlapped, Stonebrae has not explained why one firm could not have handled all subjects for

15   deposition purposes.  Stonebrae has made no showing what special expertise one firm brought to this

16   case above and beyond that possessed by the other firm.

17        While it is impossible to ascertain with precision the number of unnecessarily duplicative

18   and redundant hours spent resulting from multiple counsel performing overlapping work, the Court

19   estimates that 50% of C&K's hours on this case were unnecessarily duplicative of the hours spent by

20   S&M.  The Court deducts those from the lodestar.[8]

21        In addition, Toll has demonstrated a substantial amount of duplication and inefficiency

22   generally resulting from the fact that 26 attorneys worked on this case.  While one would not

23   necessarily expect time spent by plaintiff's counsel (who initiated the case and carries the burden of

24   prosecuting it) and defense counsel to be equal, Toll's comparative chart shows a consistent

25   disparity on a task by task basis between hours spent by Stonebrae's counsel and Toll's counsel.

26   The Court, in light of the apparent inefficiencies, applies a 5% reduction in S&M's hours for

27

28        [8] The Court does so without opining whether it was C&K or S&M's hours which are
     duplicative.  The deduction is taken as an overall adjustment to the lodestar.

1  inefficiency.  *See In re Smith*, 586 F.3d 1169, 1174 (9th Cir. 2009) ("the district court can impose a

2  small reduction, no greater than 10-percent – a 'haircut' – based on its exercise of discretion, but

3  anything more substantial requires clear explanation") quoting, *Moreno v. City of Sacramento*, 534

4  F.3d 1106, 1112 (9th Cir. 2008)).  This deduction takes into account that S&M has already exercised

5  a 5% reduction based on billing judgment.  *See, e.g.,* Rosen Decl. ¶¶ 43-44 (observing Stonebrae's

6  5% discount for S&M services, but not for C&K services); A-P Decl. ¶¶ 34-35.

ii.    Inadequate Delegation

8  Overstaffing can include the failure to appropriately delegate tasks to staff or attorneys with

9  lower billing rates.  *Gold v. NCO Fin. Sys.*, 2010 U.S. Dist. LEXIS 86433, *3 (S.D. Cal. Aug. 20,

10  2010) (citing *Northon v. Rule*, 494 F. Supp. 2d 1183, 1187 (D.Or. 2007) (reducing fee award where,

11  among other things, senior attorney failed to delegate relatively simple tasks to junior associates)).

12  Citing *Gold v. NCO Fin. Sys.*, Toll urges the Court to reduce the lodestar for failure to appropriately

13  delegate tasks to staff or attorneys with lower billing rates.  Opp'n at 22.  Stonebrae's most

14  expensive three attorneys account for 41% of the time and 57% of the fees billed.  Rosen Decl. ¶ 32.

15  According to Toll, "[t]he lodestar should be based on a senior partner accounting for no more than

16  30% of the time, a junior partner or senior associate 30%, a junior associate 30% and a paralegal

17  10%."  Opp'n at 22 (citing Rosen Decl. ¶¶ 38-39 (describing staffing by Toll's attorneys)).

18  However, there is no single formula or ratio of senior to junior attorneys that must apply.  The

19  percentages cited by Toll alone do not warrant a reduction.  Use of more experienced attorneys for

20  certain tasks can be more efficient than deploying less senior attorneys.  Toll has not proven senior

21  level attorneys for Stonebrae were not appropriately deployed on tasks that could obviously be

22  assumed by junior attorneys.  *See* Costa Reply Decl. ¶ 14 ("Stonebrae's expectation was that the

23  senior lawyers . . . would be actively involved in all phases of the litigation . . . .").  No deduction

24  will be taken.  *See generally Moreno*, 534 F.3d at 1115 (admonishing court to avoid "impos[ing] its

25  own judgment regarding the best way to operate a law firm").

e.    Fees Incurred After Date of Rule 68 Offer

27  Stonebrae argues that the Rule 68 offer is ambiguous, such that it should be entitled to

28  recover for fees and costs incurred after October 18, 2010, the date of the Rule 68 offer.  The offer

provides for recovery of "Costs incurred by plaintiff through the date of this offer . . . ."  Docket No.

248 (Notice of Accepted Offer of Judgment).  The Court finds the Rule 68 offer to be clear and

unambiguous, and rejects Stonebrae's argument.

   3. <u>Reasonable Hourly Rate</u>

  The burden is on the fee applicant to produce satisfactory evidence "that the requested rates

are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896; *accord Children's Hosp. &*

*Med. Center*, 97 Cal. App. 4th at 783 (rate is established by a comparison to rates charged by

attorneys in the area for similar work and fee awards for comparable work).  Toll argues that the

reasonable attorney rates for this case range from $200 to $550, not the $190 to $950 charged by

Stonebrae's counsel.  Opp'n at 24.  More specifically, Toll claims that the reasonable hourly rate is

$350 to $550 for partners, $200 to $325 for associates, and $125 to $215 for paralegals.  Opp'n at

24.  Toll has calculated the rates charged by each attorney and paralegal who performed work on

Stonebrae's behalf.  *See generally* Rosen Decl. Ex. 6-8.

  For most attorneys, Stonebrae has identified the number of years each has practiced law, and

offers evidence indicating that Stonebrae was charged no more than each firm's ordinary billing

rates.  Additionally, Stonebrae has shown that the fees for services rendered were its customary rates

and were in fact paid at the rates requested herein.  *See* Declaration of Wayne E. Costa (YCS

Investments Vice President) ¶ 15 ("YCS Investments has paid the invoices that are attached as

Exhibits to the [A-P and Cooper Decls.]").  Further, the Pearl Declaration cites a May 2009

summary table provided by Westlaw CourtExpress setting forth hourly rates charged by other

California-based counsel along with their year of bar admission.  Pearl Decl. Ex. C.  The rates stated

in that summary are comparable to those requested here.  The Court may rely on evidence such as

that presented by Mr. Pearl's declaration in determining reasonable hourly rates.  *See United*

*Steelworkers of Am. v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512

F.3d 555, 564-65 (9th Cir. 2008) (affirming district court's determination of reasonable hourly rate

for prevailing plaintiff's attorney in ERISA case, where district court relied on "customary fee

charged by ERISA plaintiff's attorneys in Arizona" and declaration of plaintiff's counsel as to

United States District Court

For the Northern District of California

counsel's ordinary rate) (internal quotation and citation omitted).  Indeed, Toll's expert Sanford

Rosen concedes that "the rates claimed by Stonebrae's attorneys and their paralegals and other

chargeable personnel are within the range of rates charged by attorneys within the San Francisco

Bay Area."  Rosen Decl. ¶ 41.

Toll argues that these general rates do not apply and that the Court should look at rates

charged by real estate litigators as a discrete submarket.  As noted above, courts have rejected

similar arguments.  Moreover, as Mr. Atkins-Patteson explained, the rates charged by S&M are

applied across the board for all matters and do not vary by particular subject matter.  In fact, the firm

has been awarded its customary rates by courts in a range of subject matters.  (A-P Decl. ¶¶ 39-40);

*Dalidio Family Trust v. San Luis Obispo Downtown Assoc.*, No. 08-55725 (9th Cir. Nov. 16, 2009)

(Order, Docket No. 117) (granting unopposed award at hourly rate of $595 for work performed by

Mr. Atkins-Patteson in 2008); *Carcione v. Redwood City*, No. CIV463195 (San Mateo Supr. Ct.

Feb. 27, 2009) (McNamara Decl. Exs. U, W) (declining to add a multiplier, but awarding fees for

work performed by Mr. Atkins-Patteson at the requested hourly rates $550 (2007), $595 (2008),

and $615 (2009)).  The Court finds S&M's rates are in line with those prevailing in the community

for similar services.  *Blum*, 465 U.S. at 896.

C&K's rates, particularly for its more senior litigators, are substantially higher than S&M's.

Mr. Josef D. Cooper had the highest price tag, billing between $800 and $950 per hour.  Ms. Tracy

Kirkham billed between $675 and $825.  Rosen Decl. Ex. C.  Pointing to two court orders, Mr.

Cooper notes that "the hourly rates charged to Stonebrae [by C&K] in the years 2008 and 2009 were

found to be reasonable . . . ."  Cooper Decl. ¶ 16.  The first case cited by Mr. Cooper does not even

discuss hourly rates, as it does not apply the lodestar method in calculating attorneys' fees.  *See*

*Sullivan v. DB Investments, Inc.*, 2008 U.S. Dist. LEXIS 81146 (D.N.J. 2008) (granting the

requested award of 25% of the common fund in a securities class action settlement, amounting to

$73,750,000 in fees, which equates to approximately $1,899 per hour).  The second case, which

C&K took on a contingency basis, applies both the percentage-fee method and the lodestar-times-

multiplier method with a 2.0 multiplier but does not state what the hourly rates were or how many

hours C&K spent on the case.  *Credit/Debit Card Tying Cases,* No. CJC-03-4335 (August 23, 2010)

United States District Court
For the Northern District of California

1   (awarding attorneys' fees amounting to approximately 29 percent of a $31 million settlement fund in

2   antitrust class action).  Each case is distinguishable from this one, most notably in terms of

3   complexity, delay in payment, and risk of nonpayment.  *See generally Ketchum v. Moses*, 24 Cal.

4   4th 1122, 1132 (2001) (listing factors considered in setting an award of attorneys' fees).

5          Stonebrae has failed to demonstrate that the rates charged by C&K are in line with prevailing

6   rates for general commercial litigation in a case such as this, one that involves only moderate

7   complexity.  While Stonebrae has demonstrated with specific evidence including court awards that

8   S&M's rates are reasonable and in line with prevailing rates for cases of this nature and complexity,

9   it has not shown that either C&K brought special expertise, experience and knowledge to this case

10  above and beyond that provided by S&M (both firms performed substantially similar tasks in this

11  case) or presented other persuasive evidence (*e.g.* court awards to C&K in similar cases, court

12  awards to other firms in comparable cases, etc.) that the rates charged by C&K are in line with

13  prevailing rates as applied to this case.  The Court will, for purposes of calculating the lodestar,

14  adjust C&K's rates to those commensurate and in scale with S&M's.

15         In determining reasonable hourly rates, the Court notes that Mr. Atkins-Pattenson had some

16  31 years of experience at the time he charged his peak hourly rate of $630 in this case.  Ms. Kirkham

17  and Mr. Cooper had approximately 35 and 39 years of experience, respectively.  The Pearl

18  Declaration provides a range of examples of contemporary rates charged by partners at different

19  firms with depending in part on years of experience.  For example the 2010 hourly rate of a Patton

20  Boggs partner with 33 years of experience was $700, and an O'Melveny & Myers partner with 36

21  years of experience charged $860.  Pearl Decl. at 13.  In light of the experience and reputation of

22  C&K's attorneys and the declarations and data provided, for purposes of calculating the lodestar, the

23  Court shall apply Ms. Kirkham's and Mr. Cooper's initial hourly rates (for this case) of $675 and

24  $800, respectively, to all of their time billed to it.  This would keep their rates in scale with Mr.

25  Atkins-Pattenson's rates and in line with Mr. Pearl's data.  The rates of the other C&K timekeepers

26  need not be adjusted.

27  ///

28  ///

24

4.      Summary

Based on the hourly rates and hours as stated above, the lodestar in this case is **2,667,599**.

**Table 1:  Lodestar Summary**

| Name | Hourly Rate | Hours | Amount |
|---|---|---|---|
| **Cooper & Kirkham** | | 1,837.3 (claimed) | $1,330,203 (full lodestar at full rates) |
| Josef D. Cooper | 800 | 493.6 | $394,880 |
| Tracy R. Kirkham | 675 | 893.3 | $602,997.50 |
| John Bogdanov | 365-550 | 335.6 | $147,611.50 |
| Rebecca Aarons | 300 | 11.7 | $3,510 |
| Inna Zatylovsky | 265 | 103.1 | $27,321.50 |
| SUBTOTAL (C&K) | | 1837.3 | $1,176,320.50 (lodestar at reduced rates) |
| Reduction (Unrelated Claim) | | -32.4 | ($25,277.50) |
| Reduction (Redundancy) | | -902.45 [(1804.9/2)] | ($575,521.50) [($1,151,043/2)] |
| TOTAL (C&K Services) | | 902.5 (hours allowed) | $575,521.50 (lodestar allowed) |
| | | | |
| **Sheppard Mullin** | | 6028.1 (full lodestar) | [$2,396,065.50] (full lodestar) |
| Reduction for Excluded Timekeepers | 105-275 | -459.6 | ($113,291) |
| SUBTOTAL (S&M) | | 5568.5 | $2,282,774.50 |
| Reduction (Unrelated Claim) | | -160.7 | ($80,587) |
| Reduction (Inefficiency – 5%) | | -270.4 | ($110,110) |
| TOTAL (S&M Services) | | 5137.4 (hours allowed) | $2,092,077.50 (lodestar allowed) |
| | | | |
| **Total Attorney's Fees** | | 6039.9 | **$2,667,599.00** |
| [Total Fees Billed & Paid] | | [7,865] (total hours sought) | [$3,726,268] (total lodestar sought) |

United States District Court

For the Northern District of California

5.      Adjustment to Lodestar

In *Hensley*, the Supreme Court acknowledged that there are circumstances in which there should be an upward or downward adjustment to the lodestar.  Not surprisingly, Toll argues that there should be a downward adjustment to the lodestar.

Generally, the burden of justifying a deviation rests on the party proposing it.  *See Blum*, 465 U.S. at 898 (stating that "[t]he burden of proving that [an upward] adjustment is necessary to the determination of a reasonable fee is on the fee applicant").  *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C. Cir. 1980) ("The 'lodestar' fee may be adjusted to reflect other factors . . . The burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation."); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (stating that "[t]he party seeking adjustment has the burden of proving that an adjustment [to the lodestar] is necessary").  As the Ninth Circuit cautioned in *Cunningham*, 879 F.2d at 488, "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." Toll bears the burden of proving an entitlement to a downward adjustment to the lodestar.

In *Hensley*, the Supreme Court emphasized that the plaintiff's degree of success (*i.e.*, the "results obtained") is a central consideration as to whether the lodestar should be adjusted.  461 U.S. at 434.  *See Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996).  If the plaintiff succeeded on some claims but not others, and the unsuccessful and successful claims are related, then the court should look at "the significance of the overall relief obtained by the plaintiff."  *Id.* at 435.  If the plaintiff obtained excellent results, then it should be awarded a fully compensatory attorney's fee.  *See id.*  If the plaintiff had only partial or limited success, then a fully compensatory fee may be excessive.  *See id.* at 436.  For example, a reduced fee award would be appropriate if, even though the plaintiff achieved significant relief, it was still "limited in comparison to the scope of the litigation as a whole."  *Id.* at 440.  If the plaintiff achieved only partial or limited success, then the court may "reduce the award to account for the limited success."  *Id.* at 436-37.

The Court cautioned, however, that "it is not necessarily significant that a prevailing plaintiff did not receive all the relief requested.  For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably

United States District Court

For the Northern District of California

expended if the relief obtained justified that expenditure of attorney time." *Hensley*, 461 U.S. at 435 n.11.  The Ninth Circuit has likewise held that "courts should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested. . . . Failure to obtain all relief requested for a claim on which the plaintiff prevailed should not deprive plaintiff's attorney of a reasonable hourly fee for hours needed to obtain the relief." *Quesada v. Thomason*, 850 F.2d 537, 539-40 (9th Cir. 1988).  *See Dang, 422 F.3d at 813* ("a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee."); *Sorensen v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (accord).  The California courts have likewise held, "There is no requirement of proportionality of fees sought to verdict though the court in its discretion may consider the plaintiff's success in determining the reasonableness of fees." *Harman*, 158 Cal. App. 4th 409.  Indeed, "It is not uncommon to award attorney fees in an amount higher than the total damages awarded to a plaintiff or plaintiffs in a particular case." *Cruz v. Ayromloo*, 155 Cal. App. 4th 1270, 1276 (Cal. App. 2d Dist. 2007).

Toll argues that Stonebrae's attorneys performed unnecessary and excessive work, most notably with respect to Stonebrae's liquidated damages claim, which accounts for some 2,075 hours of work.  de Ayora Decl. ¶ 14; McNamara Decl. ¶¶ 27-37.  As noted above, the Court finds the declaratory claim seeking to invalidate the cap on damages set by the liquidated damages claim did not constitute an unrelated claim upon which Stonebrae was unsuccessful.  Nonetheless, in view of Stonebrae's attempt to assert possibly tens of millions of dollars in damages (on a contract for $31 Million) had it prevailed on its declaratory relief claim, Toll seeks a downward adjustment of at least ten percent, arguing that Stonebrae achieved only limited success, as its ultimate recovery of $4,774,944 amounts to a fraction of the possible damages Stonebrae sought.  Opp'n at 23.

The question for the Court is "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  *Hensley*, 461 U.S. at 434. The Court finds that it did.  Stonebrae achieved an excellent result, recovering nearly $5 Million. While it did not recover the potential unliquidated damages of tens of millions, the monetary recovery nonetheless constituted "substantial relief." *Downey Coves v. Downey Comm. Dev.*

United States District Court

For the Northern District of California

1   *Comm'n*, 196 Cal. App. 3d 983, 997 (1987).  Moreover, after the reductions and adjustments taken

2   above, the lodestar is $2,667,599.  This is significantly less than the ultimate recovery obtained

3   herein (slightly more than 50% of the recovery).  Courts have upheld fee awards which have equaled

4   or even exceeded the amount of damages recovered.  *See Comm'r v. Banks*, 543 U.S. 426, 438 (U.S.

5   2005) (observing that court-awarded attorney's fees can exceed a plaintiff's monetary recovery in

6   certain circumstances); *Riverside v. Rivera*, 477 U.S. 561, 564-565 (1986) (compensatory and

7   punitive damages of $33,350; attorney's fee award of $245,456.25); *Harman*, 158 Cal. App. 4th at

8   427 (upholding fee award in excess of amount recovered).  Furthermore, the Court cannot say that

9   the hours spent on the declaratory relief claim was not reasonable in light of the success Stonebrae

10  obtained.  As noted above, in all likelihood the potential exposure and litigation risk presented by

11  Stonebrae's non-frivolous claim for declaratory relief enhanced the settlement offer made by Toll.

12  Without it, the settlement offer, if any, might well have been less.

13          Finally, the Court notes that although the lodestar, $2,667,599 after the adjustments made

14  herein, is substantial and at the high end for commercial litigation of this nature, much of the time

15  spent reflects the vigor by which Toll defended this case, asserting numerous defenses some of

16  which prolonged this litigation.  This case was hard fought and the quality of representation on both

17  sides was excellent.  Accordingly, the Court will not make a further adjustment to the lodestar.

18  D.      Costs

19          In addition to attorneys' fees, Stonebrae asks for an award of its litigation costs, including

20  those which exceed taxable or allowable costs.  Stonebrae requests reimbursement for litigation

21  expenses totaling $159,176.  *See* Cooper Decl. ¶ 12 (describing $12,315.11 in costs incurred); A-P

22  Decl. ¶ 37 (stating that S&M billed for $146,861.07 in "expenses" through November 30, 2010).  As

23  noted above, the penultimate provision of the Rule 68 offer provides for an award of "[c]osts

24  incurred by plaintiffs though the date of this offer, which shall include reasonable attorneys' fees, as

25  determined by the Court . . . ."

26          Toll argues that Stonebrae's request for costs should be denied because Stonebrae has not

27  complied with the Local Rules.  *See, e.g.,* Local Rule 54-1.  Since no judgment has been entered,

28

United States District Court

For the Northern District of California

1   however, the Court will treat Stonebrae's motion as one seeking declaratory relief as to whether

2   costs and expenses beyond those normally allowable by statute may be recovered herein.

3        The question then is how "costs" as that term appears in the Rule 68 offer is interpreted.  Toll

4   argues it should be interpreted as reflecting only allowable court costs as defined by California Code

5   of Civil Procedure § 1033.5 which would normally apply to diversity actions.  *See Partnership v.*

6   *Procopio, Corry, Hargreaves & Savitch*, 152 Cal. App. 4th 42, 56 (2007).  Section 1033.5 limits

7   recoverable costs to those enumerated in the statute and does permit attorneys fees to be included as

8   an item and component of "costs" where fee shifting is authorized by statute or contract.  Section

9   1033.5(a)(10).  The wording of the Rule 68 offer thus comports with § 1033.5, thus suggesting

10  "costs" as used in the offer refers to that defined in § 1033.5.

11       Stonebrae argues that the Rule 68 offer should be construed to include litigation costs and

12  expenses beyond those awardable under § 1033.5.  It points out that the offer did not use the term

13  "allowable costs" which would have implied incorporation of § 1033.5.  Also the offer did not refer

14  to § 1033.5 even though Toll did refer to a statute (California Civil Code § 3287) in the last

15  provision of the Rule 68 offer.  Stonebrae further points out that the VBPA provides for the

16  prevailing party to recover not only taxable or allowable costs but "litigation expenses" not

17  otherwise awarded by statute (VBPA ¶ 19.7).

18       Toll counters that the VBPA itself expressly draws a distinction between costs and "litigation

19  expenses."  Section 19.7 of the VBPA provides the prevailing party is entitled to payment from the

20  losing party of its reasonable attorney's fees, "court costs and litigation expenses," as determined by

21  the court.  Stonebrae argues that whereas the VBPA provides for both court costs *and* litigation

22  expenses, the Rule 68 offer only refers to costs.

23       Given the competing interpretations of the term "costs" as used in the Rule 68 offer, the

24  Court considers parol evidence to assist in its interpretation.  *See, e.g., Renfrew v. Hartford Accident*

25  *& Indem. Co. (In re W. Asbestos Co.)*, 416 B.R. 670, 695 (N.D. Cal. 2009) ("Where the meaning of

26  the words used in a contract is disputed, the trial court must provisionally receive any proffered

27  extrinsic evidence that is relevant to show whether the contract is reasonably susceptible of a

28  particular meaning.") (citation omitted); *Esbensen v. Userware Internat., Inc.*, 11 Cal. App.4th 631,

United States District Court

For the Northern District of California

636-37 (noting that parole evidence is admissible to interpret an ambiguous provision of a written settlement agreement).  Here, the only parol evidence offered by the parties – the VBPA – strongly supports Toll's interpretation.  In it, the parties demonstrated their appreciation of the difference between "costs" and "litigation expenses."  In light of the VBPA, the parties presumably understood the two terms are distinct.  Yet, the Rule 68 offer made no reference to litigation expenses, only costs.

Moreover, the parties were presumably aware that § 1033.5 would normally apply where the Rule 68 offer was made and accepted and a contract (for settlement) was formed.  The wording of the Rule 68 offer did not disavow the application of § 1033.5.  The case law supports Toll's position.  As the court noted in *Hsu v. Semiconductor Systems, Inc.*, 126 Cal. App. 4th 1330, 1341 (2005), "an undefined general contractual provision entitling the prevailing party to 'reasonable attorney's fees and costs' must be interpreted in light of Code of Civil Procedure section 1033.5's limited definition of costs."  *See Arntz Contracting Co. v. St. Paul Fire & Main Ins. Co.*, 47 Cal. App. 4th 464, 492 (1996) ("We recognize there is authority holding that an undefined general contractual provision entitling the prevailing party to 'reasonable attorney's fees and costs' must be interpreted in light of Code of Civil Procedure section 1033.5's limited definition of costs"); *Thrifty Payless, Inc. v. Mariner Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1065 (2010) ("Generally, when a contract provision states only that a prevailing party is entitled to 'reasonable attorney's fees and costs,' or similar nonspecific language, courts have held that such language must be interpreted in light of the limits set forth in Code of Civil Procedure section 1033.5").

Stonebrae's reliance on *Arntz Contracting Co.*, 47 Cal. App. 4th at 492 and *Thrifty Payless*, 185 Cal. App. 4th at 1066, is misplaced.  In *Arntz Contracting Co.*, the contract provided for the recovery of costs, charges, and expenses, and litigation expenses.  *Arntz Contracting Co.*, 47 Cal. App. 4th at 492.  In *Thrifty Payless*, the relevant contract specifically provided for the recovery of "witness and expert fees."  *Thrifty Payless*, 185 Cal. App. 4th at 1066.  In contrast, the Rule 68 offer only provides for "costs."

To be sure, where a contract is ambiguous, the usual rule of contract interpretation is to construe the ambiguity against the drafter, particularly in the context of a Rule 68 offer, which can

United States District Court

For the Northern District of California

1    put the plaintiff to a difficult choice.  *See Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833-34

2    (9th Cir. 1997) (noting that "the usual rules of contract construction apply to a Rule 68 offer . . . ."

3    and that "defendants bear the brunt of uncertainty"); *Nordby v. Anchor Hocking Packaging Co.*, 199

4    F.3d 390, 391-2 (7th Cir. 1999) (reasoning that ambiguities in a Rule 68 offer "must be resolved

5    against the defendant . . . not only because the defendant drafted the offer but because the plaintiff is

6    being asked to give up his right to a trial."); *Laskowski v. Buhay*, 192 F.R.D. 480, 482 (M.D. Pa.,

7    2000) ("if there is any occasion in civil litigation which calls for caution and care by counsel, it is

8    the drafting of a Rule 68 Offer") (citation omitted); *Hennessy v. Daniels Law Office*, 270 F.3d 551,

9    553-554 (8th Cir. 2001) ("It is a longstanding principle of contract law that, absent parol evidence as

10   to the meaning of an ambiguous term, ambiguous terms of a contract are construed against the

11   drafter of the contract.").  However, that rule of construction is not strong enough to overcome the

12   presumptive application of § 1033.5 to the Rule 68 offer and the parol evidence that the parties did

13   not intend to include non-allowable litigation expenses in the Rule 68 offer herein.

14   E.       Prejudgment Interest[9]

15          Stonebrae claims that, pursuant to the Rule 68 agreement, it is "entitled to recover pre-

16   judgment interest under [§ 3287(a)] on $4,774,944.00 for the period from November 20, 2007 (the

17   date that Toll wrongfully terminated the [VBPA] and Stonebrae's damages became 'certain') until

18   November 9, 2010 (the date that the proceeds of the Letter of Credit were received by Stonebrae), in

19   the amount of $1,416,784.75 . . . ."  Pl.'s Mot. for Interest (Docket No. 253) at 2-3.[10]  The parties

20   contest the meaning of the Rule 68 agreement's final provision, which provides for an award of

21   "[p]re-judgment interest as determined by the Court pursuant to California Civil Code section

22   3287."[11]

23

24          [9] As a preliminary matter, the Court sustains each of Toll's objections (Docket No. 265) to

25   portions of the Amended Declaration of Tracy R. Kirkham in Support of Stonebrae L.P.'s Motion
     for Mandatory Interest on relevance grounds.  *See generally* Fed. R. Evid. 402.

26          [10] Stonebrae also requests interest on $30,000 yet to be received.  *See* Pl.'s Mot. at 2 n.2.

27          [11] Notably, the VBPA does not mention interest.  *Cf. Roodenburg v. Pavestone Co., L.P.*, 171

28   Cal. App. 4th 185, 191 (2009) (holding that uncertainty in the amount of damages does not preclude
     recovery of prejudgment interest where the contract at issue contained an interest provision).

California Civil Code § 3287 provides:

> (a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.
>
> (b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

Cal. Civ. Code § 3287 (2010).  "If the damages are certain or capable of being made certain, prejudgment interest pursuant to subdivision (a) of Civil Code section 3287 is a matter of right." *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.*, 90 Cal. App.4th 64, 70 (2001).

The parties dispute whether the damages here were "certain or capable of being made certain" within the meaning of § 3287(a).  Stonebrae contends that they were and thus it is entitled to prejudgment interest as a matter of right.  The certainty requirement of subdivision (a) codifies the "prevailing general rule that prejudgment interest is not allowed on unliquidated obligations." *Lewis C. Nelson & Sons v. Clovis Unified Sch. Dist.*, 90 Cal. App. 4th 64, 69 (2001).  "The usual prohibition against such interest is based upon the rationale that it is unreasonable to expect a defendant to pay a debt before he or she becomes aware of it or is able to compute its amount." *Id.* (citations omitted).

The California Supreme Court has explained, "[d]amages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Leff v. Gunter*, 33 Cal. 3d 508, 519 (1983) (citation omitted).  Hence, "the test for recovery of prejudgment interest under § 3287(a) is whether the *defendant* actually knows the amount owed or from reasonably available information could have computed that amount." *Duale v. Mercedes-Benz USA, LLC*, 148 Cal. App. 4th 718, 728-29 (2007) (emphasis in original) (citations, quotation marks, and

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

brackets omitted).  "Thus, *where the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate*."  *Id.* (emphasis in original).  The policy underlying the certainty requirement of § 3287(a) is that in situations "where the defendant could have timely paid that amount and has thus deprived the plaintiff of the economic benefit of those funds, the defendant should therefore compensate with appropriate interest."  *Wisper Corp. v. California Commercial Bank*, 49 Cal. App. 4th 948, 962 (1996).

According to Stonebrae, the damages were certain because they were set by the VBPA's liquidated damages provision to the amount of the deposit placed in escrow.  Mot. at 14.  Stonebrae points to *Leff*, where the California Supreme Court explained that even a dispute as to the amount of damages does not necessarily prevent those damages from being made certain by calculation "where the amount of recovery closely approximated plaintiff's claims."  33 Cal.3d at 520.  Where the amount of damages is calculable "mechanically, on the basis of uncontested and conceded evidence," the plaintiff is entitled to prejudgment interest.  *Id.* (reversing the trial court's denial of prejudgment interest where the value of the underlying construction project upon its completion, as well as "the balance due on the indebtedness to which it was subject, and the extent of plaintiff's interest in the original joint venture" were uncontradicted).

Here, the damages initially sought were arguably certain, as they were set by the VBPA's liquidated damages provision.  *See* Stonebrae's First Amended Complaint (Docket No. 7).  But in January 2010, Stonebrae amended its complaint to allege that the liquidated damages provision of the VBPA was unenforceable and sought instead damages exceeding the liquidated damages amount.  SAC (Docket No. 142) ¶¶ 42-51; *see also id* at 16 (prayer for relief seeking, *inter alia*, "actual, consequential, incidental and special damages resulting from Toll's breach of contract").  By Stonebrae's own admission, the damages then sought were not certain or mechanically calculable.  *See* SAC at 16 (prayer for relief seeking*, inter alia*, "actual damages against Toll Brothers, Inc. *in an amount to be proven at trial*").  From that point on, the parties disputed the enforceability of the VBPA's liquidated damages provision.  SAC ¶ 50; Ans. to SAC ¶ 50 (acknowledging "there now exists a ripe and justifiable controversy between Stonebrae and Toll regarding the validity and enforceability of the Liquidated Damages Clause.").  Indeed, at the time

United States District Court

For the Northern District of California

1    the Rule 68 offer was made and accepted, Stonebrae's motion for partial summary adjudication on

2    this issue was pending.  *See* Docket No. 175.

3           Stonebrae's claim seeking to invalidate the liquidated damages clause introduced uncertainty

4    with respect to damages.  Unliquidated damages could have exceeded liquidated damages many

5    times over.  Stonebrae seeks to avoid the effect of its amended claim by arguing that, upon accepting

6    the Rule 68 offer, "it is as though Stonebrae had never sought to invalidate the liquidated damages

7    clause . . . ." because "[t]he law permits – and indeed encourages – [it] to pursue simultaneously

8    both liquidated and actual damages as alternative damages measures."  Mot. for Interest at 13-14.

9    Even if the acceptance of the Rule 68 offer were construed to mean that Stonebrae gave up its claim

10   to damages in excess of liquidated damages, it simply is factually inaccurate to retrospectively

11   pretend that it had "never sought to invalidate the liquidated damages clause."  Until it accepted the

12   Rule 68 offer, it had indeed vigorously sought to invalidate the clause, raising the specter throughout

13   this litigation of damages reaching tens of millions of dollars.  While the declaratory relief claim was

14   pending, it cannot be said that "the defendant actually [knew] the amount owed."  *Duale*, 148 Cal.

15   App. 4th at 728-29 (emphasis in original).  Stonebrae's amended claim served to undermine the

16   purpose of the liquidated damages clause of providing certainty – the same certainty essential to

17   prejudgment interest under § 3287(a).[12]  *See Utility Consumers' Action Network, Inc. v. AT&T*

18   *Broadband of Southern Cal., Inc.*, 135 Cal. App. 4th 1023, 1038 (2006) ("Liquidated damages do

19   serve an important function.  They remove the uncertainty factor from determining damages from a

---

[12] It is true that where there are separate additive claims (claims seeking to impose separate elements of damages which can be aggregated), the fact that one claim seeks uncertain damages does not necessarily prevent the § 3287(a) from applying to another claim for which damages are certain.  *See, e.g., Coughlin v. Blair*, 41 Cal. 2d 587 (1941), *A-1-Husry v. Nilsen Farms Mini-Market, Inc.*, 25 Cal. App. 4th 641 (1994); *Olvey v. Errotabere Ranches*, 2008 LEXIS 49140 at *9 (E.D. Cal. 2008).  In that situation, the defendant is aware it will face at least certain damages on one claim regardless of the other claim.  But that occurs when the claims are "separate."  *Olvey* at *9.  It is an entirely different matter where, as here, the claims are in the *alternative*.  Whereas the defendant in the separately additive claims situation is certain of the amounts owed on a claim, the defendant in the situation of alternative claims has no such certainty.  Indeed, at one point in this litigation, Toll sought to invalidate the liquidated damages clause, evidently hoping the calculation of unliquidated damages could yield lower damages.  *See* Toll's Ans. at 5 (Docket No. 24) ("The liquidated sum totals 14.99% of the total purchase price of the Village B lots, which sum, on its face, is unreasonable in violation of the Civil Code Section 1671(b).").  Tellingly, Stonebrae fails to cite any case where § 3287(a) has been applied to alternative claims where the alternate claim asserts uncertain damages and seeks to entirely displace the certain claim.

United States District Court

For the Northern District of California

1    breach of contract and reduce litigation.").  Stonebrae's decision to attack the liquidated damages

2    provision created uncertainty with respect to damages, just as stipulating to damages conversely

3    would remove such uncertainty.  *See generally City of Pasadena v. Los Angeles County*, 235 Cal.

4    App. 2d 153 (1965) (holding that the plaintiff is entitled prejudgment interest from the date an

5    obligation became due where the parties stipulated that there was no dispute as to the due date of

6    payments under contract).

7         Stonebrae also argues that until this Court adjudicated the claim and found the liquidated

8    damages clause unenforceable, the clause was presumptively valid and remained in effect, thus

9    providing the requisite certainty under § 3287(a).  But whether such a clause enjoys presumptive

10   validity or not, once the plaintiff challenges its enforceability and seeks to recover unliquidated

11   damages, the amount to be recovered is uncertain.  While presumptive validity may affect the burden

12   of proof, it does not gainsay the existence of a "dispute between the parties concerning the basis of

13   computation of damages if any are recoverable."  *Leff*, 33 Cal. 3d at 519.

14        Finally, Stonebrae argues that the Rule 68 offer should be interpreted to mean that the parties

15   stipulated to the prejudgment interest under § 3287(a) and that the provision in the offer that the

16   amount is to be "determined by the Court" merely refers to a dispute as to whether interest should

17   run only to the original trial date and not the date of judgment.  This interpretation is based on the

18   fact that the parties previously raised the concern with the Court whether Toll might have to pay

19   additional prejudgment interest as a result of the trial continuance.  Toll, on the other hand, argues

20   that "as determined by the Court" implies the Court was to determine whether any prejudgment

21   interest was to be awarded at all, leaving to the Court the determination whether § 3287(a) applied.

22        The Court finds Toll's construction of the Rule 68 offer more persuasive.  First, the Rule 68

23   offer refers to "pre-judgment interest as determined by the Court pursuant to California Civil Code

24   section 3287."  It referred to § 3287 in its entirety and did not limit its application or otherwise refer

25   to subdivision (a).

26        Second, the Rule 68 offer suggests the Court is to exercise judgment and discretion –

27   otherwise the term "as determined by the Court" would appear superfluous.  Yet, Stonebrae argues

28   that prejudgment interest under subsection (a) is mandatory.  Its position lacks consistency.

1    Third, parol evidence in the form of the parties' discussion about prejudgment interest in

2  earlier court hearings indicated the parties were aware there was a dispute about whether

3  prejudgment interest was awardable at all.  At the February 10, 2010 status conference, Toll's

4  lawyers stated Toll's position that Stonebrae was not entitled to mandatory interest, but interest

5  could be awarded in the Court's discretion:  "[McNamara]:  There's no right to prejudgment interest

6  here because the damages are not capable of being made certain."  McNamara Decl., Ex. D at 14:20-

7  24; "[Putterman]:  I – given our belief that prejudgment interest here is discretionary, I do believe

8  the Court has the ability, for example, to condition an extension till February on a waiver of interest

9  during that period."  *Id.* at 17:12-15.  The issue was also raised in the Joint Status Conference

10  Statement filed on February 5, 2010, in which Toll expressly reserved all arguments regarding

11  prejudgment interest.  At the November 3, 2010 status conference, Toll's counsel stated in

12  connection with the Rule 68 offer:

13          MR. McNAMARA:  And what we have also done is the offer includes
            prejudgment interest as determined by the Court pursuant to California
14          Civil Code Section 3287.

15          The Court:  All right.

16          MR. McNAMARA:  Now, we don't view this as a simple matter, that
            Mr. Atkins-Patteson seems to suggest, that we just pick the dates.
17          Obviously, if that were the case, we could have picked the dates and
            put them out.  The issue is, of course, whether there was a sum certain.
18          And, as the Court knows, they claimed that the sum certain was
            unenforceable.
19
            So it's our position – and if the Court decides against us on that, the
20          Court might decide that it's 3287(a) that applies, which is the sum
            certain; or the Court in its discretion under 3287(b), where it's not a
21          sum certain, the Court has discretion to allow interest from a date that
            the Court can set.  So it's not just a simple picking the dates issue.
22
            And that's what's reflected in our offer.
23
            THE COURT:  Sure.
24

25  Am. Kirkham Decl., Ex. D.  At that hearing, Stonebrae did not then respond or assert a different

26  interpretation of the Rule 68 offer.  Again, while the Court recognizes the general rule of

27  construction that an ambiguity in a Rule 68 offer should be construed against the drafter, that rule is

28

1   not powerful enough to overcome the other indications that the Rule 68 offer was intended to confer

2   upon this Court the determination whether prejudgment interest is awardable at all under § 3287(a).

3          The Court concludes the Rule 68 offer did not mandate prejudgment interest under § 3287(a).

4   The offer left its application to the Court's determination.  The Court finds damages were uncertain

5   and thus § 3287(a) does not apply.  Stonebrae's motion is based solely on § 3287(a); it made no

6   argument for prejudgment interest under § 3287(b).[13]  Accordingly, the Court denies Stonebrae's

7   motion for mandatory prejudgment interest.

8                              **III.   CONCLUSION**

9          For the foregoing reasons, the Court grants in part Stonebrae's Motion for Attorneys' Fees,

10  Costs, and Expenses and denies Stonebrae's Motion for Mandatory Pre-Judgment Interest.  The

11  Court accordingly ORDERS

12         1.     Attorneys' fees in the amount of **$2,667,599** are awarded to Stonebrae;

13         2.     Stonebrae may submit a bill of allowable costs for the Court's consideration within

14                14 calendar days of this order;

15         3.     Stonebrae is awarded no pre-judgment interest on the recovery amount or on amounts

16                paid for fees and costs;[14]

17  ///

18  ///

19  ///

20  ///

21  ///

22

23

24         [13] In an uninvited post-hearing letter (lodged after the Court took the matter under submission), Stonebrae asserts for the first time it should be awarded prejudgment interest under § 3287(b) for the period in which the liquidated damages claim was pending prior to Stonebrae's amendment to the complaint seeking to invalidate the liquidated damages clause.  This letter violates Local Rule 7-3 and is therefore stricken.  The Court notes that Stonebrae had ample opportunity to make such an alternative argument but failed to do so in either its moving papers or in its reply, even though Toll raised the issue of discretionary interest under § 3287(b) in its opposition brief.

27         [14] Stonebrae is entitled to interest on the $30,000 not paid at the time the escrow funds were released pursuant to the Rule 68 offer.  The parties shall meet and confer and reach an agreement on this item.

4. Stonebrae may not recover attorneys' fees in connection with the motions *sub judice* or any other work performed in connection with this case after October 18, 2010.

5. The clerk shall enter judgment in favor of Stonebrae pursuant to Fed. R. Civ. P. 68.

This order disposes of Docket Nos. 253, 255 and 273.

IT IS SO ORDERED.

Dated:  April 7, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge